MORRIS LAW GROUP
Robert McCoy, No. 9121
Email: rrm@morrislawgroup.com
Raleigh C. Thompson, No. 11296
Email: rct@morrislawgroup.com
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 474-9400
Facsimile: (702) 474-9422

STROOCK & STROOCK & LAVAN LLP
Julia B. Strickland *(Pro Hac Vice Pending)*
Email: jstrickland@stroock.com
Scott M. Pearson *(Pro Hac Vice Pending)*
Email: spearson@stroock.com
Brian C. Frontino *(Pro Hac Vice Pending)*
Email: bfrontino@stroock.com
Jeffrey B. Bell *(Pro Hac Vice Pending)*
Email: jbell@stroock.com
2029 Century Park East, Suite 1600
Los Angeles, California 90067
Telephone: (310) 556-5800
Facsimile: (310) 556-5959

Attorneys for Defendant Zappos.com, Inc.,
erroneously named as Amazon.com, Inc.
d/b/a Zappos.com

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| IN RE ZAPPOS SECURITY BREACH LITIGATION<br><br>---------------------------------------<br><br>THIS DOCUMENT RELATES TO:<br><br>   ALL ACTIONS | Case No. 2:12-cv-00182-ECR-VCF<br><br>**MOTION OF DEFENDANT ZAPPOS.COM, INC. TO COMPEL ARBITRATION AND STAY ACTION** |

Defendant Zappos.com, Inc., erroneously named as Amazon.com, Inc. d/b/a Zappos.com moves the Court for an order to compel arbitration and for a stay of these judicial proceedings. This motion is based on the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*), the parties' contract, and the following points and authorities.

MORRIS LAW GROUP

By_____
Robert McCoy, No. 9121
Raleigh C. Thompson, No. 11296
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada  89101

STROOCK & STROOCK & LAVAN LLP
Julia B. Strickland *(Pro Hac Vice Pending)*
Scott M. Pearson *(Pro Hac Vice Pending)*
Brian C. Frontino *(Pro Hac Vice Pending)*
Jeffrey B. Bell *(Pro Hac Vice Pending)*
2029 Century Park East, Suite 1600
Los Angeles, California 90067

Attorneys for Defendant Zappos.com, Inc., erroneously named as Amazon.com, Inc. d/b/a Zappos.com

POINTS AND AUTHORITIES

## I.   INTRODUCTION

In mid-January 2012, a highly sophisticated computer hacker attacked Zappos.com, Inc. ("Zappos") and attempted to download files containing customer information such as names and addresses from a Zappos server (the "Incident"). Through the instant action, plaintiffs Patti Hasner, Stephanie Preira, Robert Ree, Shari Simon and Katharine Vorhoff (collectively, "Plaintiffs"), purportedly on behalf of all Zappos customers in the United States whose data may have been accessed by reason of the Incident, seek damages and other relief based on contract, tort, and statutory theories of liability.[1]

As demonstrated below, Plaintiffs each must resolve their purported claims against Zappos through individual (non-class) arbitration, and not in court. By using the Zappos.com website, Plaintiffs each agreed to the Zappos.com Terms of Use which expressly require individual (non-class) arbitration of any disputes with Zappos. The United States Supreme Court recently made clear in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) ("*AT&T Mobility*"), and subsequent decisions by the Supreme Court as well as state and federal courts throughout the country have confirmed, that the Federal Arbitration Act ("FAA") requires courts to enforce arbitration agreements as written, including when they prohibit class actions. Plaintiffs therefore should be compelled to arbitrate their claims individually, pursuant to their express agreements with Zappos, and this case stayed pending the outcome of their respective arbitration proceedings.

---

[1] In addition to Zappos, Plaintiffs purport to name as a defendant Amazon.com, Inc., doing business as Zappos.com. Zappos, a wholly-owned subsidiary of Amazon.com, Inc. ("Amazon"), was the victim of the Incident. Amazon does not do business as "Zappos.com" and is incorrectly named. *See* Ex. A, Declaration of Arun Rajan ("Rajan Decl."), ¶ 3.

II.  FACTUAL BACKGROUND

  A.  Plaintiffs' Accounts And The Terms Of Use.

Zappos is an Internet retailer of apparel, shoes, handbags, home furnishings, beauty products and accessories. *See* Rajan Decl., ¶ 3. Plaintiffs allegedly are Zappos customers who used the Zappos website to purchase Zappos products. Zappos records confirm this to be true for all of the Plaintiffs with the exception of plaintiff Stephanie Preira ("Preira"), who never had a Zappos account and could not have had any information stolen during the Incident.[2] The facts as to the remaining Plaintiffs are as follows:

On October 6, 2003, plaintiff Patti Hasner ("Hasner"), who has a Florida billing address, visited the Zappos.com website, created a Zappos account, and made a purchase using a credit card. Complaint (#13), ¶ 11; Ex. A, Rajan Decl., ¶ 4. Hasner logged into her account on several occasions in December 2011 and January 2012 to change her credit card information and billing address, place an order which she later returned, and then to close her account on January 4, 2012. *Id.*

On January 4, 2006, plaintiff Shari Simon ("Simon"), who has a California billing address, visited the Zappos.com website, created a Zappos account, and used a credit card to make a purchase which she later returned. Complaint, ¶ 14; Ex. A, Rajan Decl., ¶ 5. Simon logged into her account and made subsequent purchases in 2006, 2008 and 2010, and in December 2010 changed her billing address and credit card information. Ex. A, Rajan Decl., ¶ 5.

On April 20, 2010, plaintiff Robert Ree, who has a California billing address, visited the Zappos.com website, created a Zappos account,

_____

[2] If Preira did have a Zappos account (perhaps under a maiden or other name presently unknown to Zappos), she would be bound to arbitrate for the same reasons as the other Plaintiffs.

and made a purchase using a credit card. Complaint, ¶ 13; Ex. A, Rajan Decl., ¶ 6.

Finally, on December 8, 2009, plaintiff Katharine Vorhoff ("Vorhoff"), who has a Washington billing address, visited the Zappos.com website, created a Zappos account, and made a purchase using a credit card. Complaint, ¶ 15; Ex. A, Rajan Decl., ¶ 7. Vorhoff placed a second order in December 2009 and a third in January 2010. Ex. A, Rajan Decl., ¶ 7.

According to the Complaint, Plaintiffs' purchases through Zappos.com all relied on certain representations on Zappos.com. *See* Complaint, ¶¶ 25-26. These alleged representations are not set forth on the home page of Zappos.com, but rather are accessed by clicking links on the home page and every other page of Zappos.com – specifically, "Privacy Policy" and "Secure Shopping." *See id.*; Ex. A, Rajan Decl., ¶ 8.

The link for the Zappos.com Terms of Use (the "Terms of Use") is immediately adjacent to the referenced links. *See* Ex. A, Rajan Decl., ¶ 8. As relevant here, the Terms of Use expressly provide, in bold print and all caps, that "**ACCESSING, BROWSING OR OTHERWISE USING THE SITE INDICATES YOUR AGREEMENT TO ALL THE TERMS AND CONDITIONS IN THIS AGREEMENT, SO PLEASE READ THIS AGREEMENT CAREFULLY BEFORE PROCEEDING.**" *See id.*, ¶ 8 & Ex. A. The Terms of Use also include a Disputes provision (the "Arbitration Agreement") which reads, in pertinent part, as follows:

> **DISPUTES**
>
> Any dispute relating in any way to your visit to the Site or to the products you purchase through the Site shall be submitted to confidential arbitration in Las Vegas, Nevada . . . . Arbitration under these Terms of Use shall be conducted pursuant to the Commercial Arbitration Rules then prevailing at the American Arbitration Association. The arbitrator's award shall be final and binding and may be entered

> as a judgment in any court of competent jurisdiction. **To the fullest extent permitted by applicable law, no arbitration under this Agreement shall be joined to an arbitration involving any other party subject to this Agreement, whether through class action proceedings or otherwise.**

*Id.*, ¶ 8 & Ex. A (emphasis in original).

### B. Plaintiffs' Claims.

As noted above, the Incident occurred in mid-January 2012. Plaintiffs allege that they received an e-mail from Zappos immediately after the Incident "notifying them that their personal identifying information was stolen and/or compromised." *See* Complaint, ¶¶ 4, 12-15. They further allege that the Incident resulted from supposedly inadequate security measures employed by Zappos, and that Zappos customers now are exposed to the risk of fraud and have suffered "loss of the unencumbered use of their current passwords, the loss of their passwords, expenses for credit monitoring and identity theft insurance, out-of-pocket expenses, anxiety, emotional distress, loss of privacy, and other economic and non-economic harm." *See id.*, ¶¶ 28-34, 38-41. Based on these allegations, Plaintiffs purport to plead claims for negligence, invasion of privacy, breach of contract, breach of implied contract, violation of California's and Florida's deceptive and unfair practices statutes and failure to comply with California's and Washington's data breach notification statutes. *See id.*, ¶¶ 60-109. Plaintiffs seek actual and statutory and/or nominal damages, injunctive relief, attorneys' fees and costs for themselves and the following putative class:

> All persons whose personal identifying information, including, inter alia, name, account number, password, email address, billing and shipping addresses, phone number, and the last four digits of the credit cards used to make purchases, was stolen or otherwise obtained by an unauthorized individual

or individuals from Zappos' servers or other Zappos' computer systems or databases.

*Id.*, ¶ 46; Prayer for Relief, p.23, ¶¶ 2-4.[3]

### III.  ARGUMENT

#### A.  Plaintiffs Each Should Be Compelled To Arbitrate Their Purported Claims.

An arbitration agreement governed by the FAA, like the Arbitration Agreement here, is presumed to be valid and enforceable. *See Shearson/Am. Express v. McMahon*, 482 U.S. 220, 226, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985).  Pursuant to the FAA, arbitration must be compelled where, as here:  (1) a valid agreement to arbitrate exists; and (2) the agreement encompasses the claims at issue. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party resisting arbitration bears the burden of showing that the arbitration provision is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).  As demonstrated below, Plaintiffs each submitted to the Arbitration Agreement which is valid under applicable law and the claims in this action are clearly within its scope.  Accordingly, the Motion should be granted as to each of the Plaintiffs individually.

#### 1.  The Arbitration Agreement Is Valid And Enforceable.

##### a.  The FAA Strongly Favors Arbitration.

Pursuant to the FAA, binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at

---

[3] Plaintiffs also purport to represent California, Washington and Florida subclasses based on the state-specific statutory claims.  *Id.*, ¶¶ 47-49.

law or in equity for the revocation of any contract." 9 U.S.C. § 2.[4] As the Supreme Court confirmed in *AT&T Mobility*, this provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility*, 131 S. Ct. at 1745-46 (internal citations omitted).

"The overarching purpose of the FAA, evident in the text of §§ 2, 3 and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 1748; *accord Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. __, 130 S. Ct. 1758, 1773, 176 L. Ed. 2d 605 (Apr. 27, 2010); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). Indeed, the United States Supreme Court has held that the FAA "leaves no place for the exercise of discretion by a district court, but

---

[4] The FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *See, e.g., Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). Here, there is no question that the transactions at issue involve interstate commerce. None of the Plaintiffs are residents of Nevada (*see* Complaint ¶¶ 11-15), and Zappos is a Delaware corporation with its principal place of business in Nevada (*see* Ex. A, Rajan Decl., ¶ 3). Additionally, "[a]s both the means to engage in commerce and the method by which transactions occur, 'the Internet is an instrumentality and channel of interstate commerce.'" *U.S. v. Sutcliffe*, 505 F.3d 944, 952 (9th Cir. 2007) (quoting *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007)); *see also United States v. MacEwan*, 445 F.3d 237, 245 (3d Cir. 2006); *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004).

instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985) (italics in original); *accord KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25, 181 L. Ed. 2d 323 (Nov. 7, 2011); *Marmet Health Care Center, Inc. v. Brown*, ___ S. Ct. ___, Nos. 11-391, 11-394, 2012 WL 538286, at *2 (Feb. 21, 2012); *Coneff v. AT&T Corp.*, ___ F.3d ___, No. 09-35563, 2012 WL 887598, at *2 (9th Cir. Mar. 16, 2012); *Kilgore v. KeyBank, Nat'l Ass'n*, ___ F.3d ___, Nos. 09-16703, 10-15934, 2012 WL 718344, at *13 (9th Cir. Mar. 7, 2012).

"Underscoring the consensual nature of private dispute resolution, . . . parties are 'generally free to structure their arbitration agreements as they see fit.'" *Stolt-Nielsen*, 130 S. Ct. at 1774 (citations omitted).  Thus, "parties may agree to limit the issues subject to arbitration [citation], to arbitrate according to specific rules [citation], and to limit with whom a party will arbitrate its disputes [citation]." *AT&T Mobility*, 131 S. Ct. at 1748-49 (citations omitted).  Ultimately, "[i]t falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise:  to give effect to the intent of the parties." *Stolt-Nielsen*, 130 S. Ct. at 1774-75; *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002).

As the Supreme Court has noted, section 2 of the FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility*, 131 S. Ct. at 1746.  Thus, the FAA preempts any state law impediments to enforcing arbitration agreements according to their terms, even under the guise of generally applicable contract principles.  *See id.* at 1747 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is

straightforward: The conflicting rule is displaced by the FAA.") (citing *Preston v. Ferrer*, 552 U.S. 346, 353, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008)).

As demonstrated below, the Arbitration Agreement indisputably is valid under the applicable law of Nevada and, therefore, must be enforced according to its terms.

### b. The Arbitration Agreement Is Valid Under Nevada Law.

While the FAA governs the enforceability of the Arbitration Agreement according to its terms, state law governs the determination of whether a valid agreement to arbitrate exists. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269-70 (9th Cir. 2002).[5] Applying Nevada law here, the Arbitration Agreement plainly is enforceable.

Under Nevada law, contracts are formed through traditional mutual assent, offer and acceptance. *See Joyner v. Bank of Am. Home Loans*, No. 2:09-CV-2406-RCJ-RJJ, 2010 WL 2953969, at *3 (D. Nev. July 26, 2010) (citing *Keddie v. Beneficial Ins., Inc.*, 94 Nev. 418, 421, 580 P.2d 955, 956 (1978)). As discussed above, the Terms of Use make clear that "**ACCESSING, BROWSING OR OTHERWISE USING THE SITE INDICATES YOUR AGREEMENT TO ALL THE TERMS AND CONDITIONS IN THIS AGREEMENT.**" *See* Ex. A, Rajan Decl., ¶ 8 & Ex. A (bold in original). Plaintiffs each individually agreed to the Terms of Use, as they each allegedly opened their Zappos account and made credit-card purchases on Zappos.com in reliance on statements they could only have accessed by

---

[5] Nevada's Uniform Arbitration Act of 2000, NRS 38.206 through 38.248, mimics Section 2 of the FAA. Like the FAA, it provides that "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." NRS 38.219(a).

clicking the links immediately adjacent to the link for the Terms of Use. *See* Complaint, ¶¶ 25-26; Ex. A, Rajan Decl., ¶¶ 4-8. Furthermore, there is no dispute that Plaintiffs each "accessed," "browsed" and "otherwise used" the Zappos.com website, thereby accepting the Terms of Use. *See* Complaint, ¶¶ 11-15, 25-26. A valid agreement to arbitrate therefore exists under Nevada law.

### 2. Plaintiffs' Claims Are Squarely Within The Arbitration Agreement's Scope.

As the United States Supreme Court has instructed, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986); *see also McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988). Similarly, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors*, 473 U.S. at 626. Where the clause is broad, as is the case here, there is a heightened presumption of arbitrability such that, "[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Tech.*, 475 U.S. at 650 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)); *accord Fleet Tire Serv. v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997) (holding that a broad clause encompasses disputes collateral to the agreement); *Collins & Aikman Prods.Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (holding that, where the clause is broad, "then there is a presumption that the claims are arbitrable").

The Arbitration Agreement broadly covers "[a]ny dispute relating in any way to your visit to [Zappos.com] or to the products you

purchase through [Zappos.com] . . . ." See Ex. A, Rajan Decl., ¶ 8 & Ex. A. This broad language plainly covers Plaintiffs' claims, all of which arise from the Incident and relate to their use of the Zappos.com site. Specifically, Plaintiffs allege that they were misled by representations they viewed during their visits to Zappos.com, that they provided information to Zappos during those visits in reliance on those representations, and that the information they provided during that visit was stolen by a hacker, causing them damage. See Complaint, ¶¶ 3, 11-15, 25-34, 38-42. This dispute thus plainly falls within the scope of the Arbitration Agreement. See, e.g., Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 720-21 (9th Cir. 1999) (holding that a clause requiring arbitration of any dispute "arising in connection with" a contract reached every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract).[6]

---

[6] Plaintiffs are equitably estopped from resisting arbitration with any entity they might contend is not party to the Terms of Use because their claims against Zappos arise from the same factual allegations. See Truck Ins. Exch. v. Palmer J. Swanson, Inc., 124 Nev. 629, 634-35, 189 P.3d 656, 660 (2008) (recognizing estoppel as a "theor[y] for binding nonsignatories to arbitration agreements"). Although there does not appear to be Nevada authority directly on point, numerous cases from other states recognize that equitable estoppel requires arbitration as to Zappos here. See, e.g., Turtle Ridge Media Group, Inc. v. Pac. Bell Directory, 140 Cal. App. 4th 828, 833, 44 Cal. Rptr. 3d 817 (2006) (noting that equitable estoppel prevents plaintiffs from avoiding arbitration by bringing the same claims against related defendants who are not party to the arbitration agreement); High Sierra Energy, L.P. v. Hull, 259 P.3d 902, 908, 2011 OK Civ. App. 77 (Okla. Civ. App. 2011) ("Oklahoma has approved limited circumstances in which a non-signatory to an agreement may compel arbitration, including 'estoppel, when the claims are integrally related to the contract containing the arbitration clause.'") (quoting Carter v. Schuster, 227 P.3d 149, 153, 2009 OK 94 (Okla. 2009)); Kolsky v. Jackson Square, LLC, 28 So. 3d 965, 969 (Fla. App. 2010); Townsend v. Quadrant Corp., 224 P.3d 818, 829, 153 Wash. App. 870 (Wash. App. 2009); Order Homes, LLC v. Iverson, 685 S.E.2d 304, 310, 300 Ga. App. 332 (Ga. App. 2009); see also Thomas v. Westlake, No. D058531, 2012 WL 974890, at *4-5 (Cal. Ct. App. March 23, 2012) (same result based on agency allegations).

B.  **The Arbitrator Must Hear Plaintiffs' Claims On An Individual Basis.**

The Court also must enforce the Arbitration Agreement as written, with express language requiring arbitration on an individual basis. *See AT&T Mobility*, 131 S. Ct. at 1749-50; *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002); *EEOC*, 534 U.S. at 289; *Stolt-Nielsen*, 130 S. Ct. at 1775. The Arbitration Agreement clearly provides that "no arbitration under this Agreement shall be joined to an arbitration involving any other party subject to this Agreement, whether through class action proceedings or otherwise." Ex. A, Rajan Decl., ¶ 8 & Ex. A.

C.  **The Court Should Stay The Action Pending Arbitration On An Individual Basis.**

Because the Arbitration Agreement is valid and enforceable and all of Plaintiffs' claims are within the Arbitration Agreement's scope, the action should be stayed pending the conclusion of Plaintiffs' respective arbitrations. *See* 9 U.S.C. § 3 (providing that courts shall stay an action "until such arbitration has been had in accordance with the terms of the agreement"); NRS 38.221(b)(7) (same); *Collins v. Burlington N. R. Co.*, 867 F.2d 542, 545 (9th Cir. 1989) (remanding case where district court failed to consider whether a stay was appropriate as a result of binding arbitration agreement); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) ("The FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration' . . . This stay-of-litigation provision is mandatory.").[7]

---

[7] In the alternative, the Court should stay the action pending the outcome of the numerous putative nationwide class actions pending in other federal district courts throughout the country. On February 28, 2012, Zappos filed a motion with the Judicial Panel on Multidistrict Litigation (the "JPML") to transfer six other pending federal actions to the District of Nevada for

## IV. CONCLUSION

For these reasons, Zappos respectfully requests that the Court grant the Motion, order Plaintiffs each to arbitrate their claims on an individual basis, and stay the action pending completion of the Plaintiffs' respective arbitrations.

MORRIS LAW GROUP

By_____
Robert McCoy, No. 9121
Raleigh C. Thompson, No. 11296
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada  89101

STROOCK & STROOCK & LAVAN LLP
Julia B. Strickland *(Pro Hac Vice Pending)*
Scott M. Pearson *(Pro Hac Vice Pending)*
Brian C. Frontino *(Pro Hac Vice Pending)*
Jeffrey B. Bell *(Pro Hac Vice Pending)*
2029 Century Park East, Suite 1600
Los Angeles, California 90067

Attorneys for Defendant Zappos.com, Inc., erroneously named as Amazon.com, Inc. d/b/a Zappos.com

coordination or consolidation with the three cases pending here on the grounds that all of the pending federal lawsuits arise from the Incident, assert identical or overlapping legal theories, and seek certification of substantially identical nationwide classes of Zappos customers purportedly affected by the Incident.  See Ex. B, Declaration of Julia B. Strickland, ¶ 2 & Exs. 1-3. Accordingly, to preserve scarce judicial resources and avoid needless duplicative litigation, this court should exercise its inherent power to stay this action.  See *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163 (1936); *In re Ormat Technologies, Inc.*, 3:10-CV-00177-ECR, 2011 WL 3841089, at *3 (D. Nev. Aug. 29, 2011) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") (quoting *Landis*); *Rohan ex. rel. Gates v. Woodford*, 334 F.3d 803, 817 (9th Cir. 2003); *Innovatio IP Ventures, LLC v. MEI-GSR Holdings LLC*, 3:11-CV-00343-LRH, 2011 WL 6812541 (D. Nev. Dec. 27, 2011) (granting stay pending JPML decision on MDL motion).

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b) and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of MORRIS LAW GROUP, and that the following document was served via electronic service: **MOTION OF DEFENDANT ZAPPOS.COM, INC. TO COMPEL ARBITRATION AND STAY ACTION**

TO:

Robert A. Winner
Brent A. Carson
WINNER & CARSON, P.C.
510 South Eighth Street
Las Vegas, NV 89101
(702) 471-1111
(702) 471-0110 Facsimile

*Interim Liaison Counsel for Plaintiffs and the Class*

Peter J. Mougey
LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
(850) 435-7068
(850) 436-6068 Facsimile

Marc Godino
GLANCY BINKOW & GOLDBERG LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
(310) 201-9150
(310) 201-9160 Facsimile

*Interim Co-Lead Counsel for Plaintiffs and the Class*

DATED this 6th day of April, 2012.

By: /s/ [signature]