UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| IN RE ZAPPOS.COM, INC., CUSTOMER DATA SECURITY BREACH LITIGATION, | 3:12-cv-00325-RCJ-VPC<br>MDL No. 2357<br><br>**Order**<br><br>3:12-cv-00072-RCJ-WGC<br>2:12-cv-00182-RCJ-VCF<br>2:12-cv-00232-RCJ-VCF<br>3:12-cv-00337-RCJ-VPC<br>3:12-cv-00338-RCJ-VPC<br>3:12-cv-00339-RCJ-VPC<br>3:12-cv-00340-RCJ-VPC<br>3:12-cv-00341-RCJ-VPC<br>3:12-cv-00355-RCJ-VPC<br>3:12-cv-00392-RCJ-VPC<br>(Member Cases) |
| This Order applies to all actions | |

This Multidistrict Litigation ("MDL") proceeding arises out of a security breach of servers belong to Defendants Amazon.com, Inc. ("Amazon")[1], doing business as Zappos.com, and Zappos.com, Inc. ("Zappos") in January 2012. Now pending is Defendant Zappos' Motion to Compel Arbitration and Stay action (#3).

## I. Relevant Factual Background

Zappos is an online retailer of apparel, shoes, handbags, home furnishing, beauty products, and accessories. (Rajan Decl. ¶ 3 (#3-

---

[1] Plaintiffs have named both Amazon and Zappos as Defendants. Defendants, however, contend that Amazon does not do business as Zappos.com and is therefore incorrectly named.

1).) Plaintiffs are Zappos customers who gave personal information to Zappos in order to purchase goods via Zappos.com and/or 6PM.com. (Id. ¶¶ 4-7; Rajan Second Supp'l Decl. ¶¶ 3-13 (#13-1).) In mid-January 2012, a computer hacker attacked Zappos.com and attempted to download files containing customer information such as names and addresses from a Zappos server (the "Security Breach"). (Defs.' Mot. Compel at 1 (#3); Pls.' Opp'n at 4 (#10).) Plaintiffs allege that on January 16, 2012, Zappos notified Plaintiffs via email that their personal customer account information had been compromised by hackers. (Def.'s Mot. Compel at 6 (#3); Steven Pls.' Opp'n at 1 (#9); Pls.' Opp'n at 4 (#10).) Plaintiffs have filed complains in federal district courts across the country seeking relief pursuant to state and federal statutory and common law for damages resulting from the Security Breach.

## II. Procedural Background

On June 14, 2012, the United States Judicial Panel on Multidistrict Litigation (the "MDL Panel") transferred nine pending actions[2] to the District of Nevada for coordinated or consolidated

---

[2] In its original Transfer Order (#1), the MDL Panel transferred the following nine cases to this Court, which were consolidated under In re Zappos.com, Inc., Customer Data Security Breach Litigation, 3:12-cv-00325-RCJ-VPC:

1. Josh Richards v. Amazon.com, Inc., 6:12-cv-00212 (M.D. Fl.)
2. Sylvia St. Lawrence v. Zappos.com, Inc., 0:12-cv-60133 (S.D. Fl.)
3. Theresa D. Stevens v. Amazon.com, Inc., 3:12-cv-00032 (W.D. Ky.)
4. Stacy Penson v. Amazon.com, Inc., 3:12-cv-00036 (W.D. Ky.)
5. Tara J. Elliot, et al. v. Amazon.com, Inc., 3:12-cv-00037 (W.D. Ky.)
6. Dahlia Habashy v. Amazon.com, Inc., 1:12-cv-10145 (D. Mass.)
7. Stephanie Priera v. Zappos.com, Inc., 2:12-cv-00182 (D. Nev.)
8. Shari Simon, et al. v. Amazon.com, Inc., 2:12-cv-232 (D. Nev.)

pretrial proceedings. (Transfer Order (#1).) On July 16, 2012, the MDL Panel transferred an additional case into this action.[3]

Also on June 14, 2012, Defendants' Motion to Compel Arbitration and Stay Action (#3) was filed in this Court.[4] On August 30, 2012, Plaintiffs Theresa D. Stevens, Stacy Penson, Tara J. Elliot, Brooke C. Brown, and Christa Seal (the "Stevens Plaintiffs") filed their Opposition (#9). Plaintiffs Stephanie Priera, Patti Hasner, Robert Ree, Shari Simon, and Kathryn Vorhoff (the "Priera Plaintiffs") also filed their Opposition (#10) on August 30, 2012. Plaintiffs Dahlia Habashy and Josh Richards each submitted their respective Joinder (##11, 12) to the Priera Opposition (#10) on August 30, 2012. Defendants submitted a Joinder of Additional Plaintiffs (#14) to their Motion to Compel Arbitration and Stay Action (#3) on August 30, 2012. Defendants filed their Reply (#16) on September 6, 2012. The Court held a hearing on the motion and heard the parties' oral arguments on September 19, 2012.

### III. Legal Standard

The Federal Arbitration Act ("FAA") provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration

---

9.   Robert Ree v. Amazon.com, Inc. dba Zappos.com, 3:12-cv-00072 (D. Nev.)

[3] The additional case is <u>Zetha Nobles v. Zappos.com, Inc.</u>, 3:12-cv-03131 (N.D. Cal.)

[4] The Motion was originally filed on April 6, 2012 as Document No. 26 in District of Nevada case 3:12-cv-00182.

3

agreements are enforced under sections 3 and 4 of the FAA, which provide "two parallel devices for enforcing an arbitration agreement." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983). Section 3 gives courts the power to provides "a stay of litigation in any case raising a dispute referable to arbitration," while section 4 empowers courts to provide "an affirmative order to engage in arbitration." Id.; 9 U.S.C. §§ 3-4.

The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp., 460 U.S. at 24; see also Southland Corp. v. Keating, 465 U.S. 1, 2 (1984) (finding that the FAA "declared a national policy favoring arbitration"); Perry v. Thomas, 482 U.S. 483, 489 (1987) (stating that the FAA "embodies a clear federal policy requiring arbitration" when there is a written arbitration agreement relating to interstate commerce). Thus, "an order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960).

Despite this strong federal policy in favor of arbitration, arbitration is a "matter of contract," and no party may be required to submit to arbitration "any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolders, Inc., 537 U.S. 79, 79 (2002) (quoting United Steelworkers, 363 U.S. at 582); see also Volt

4

Info. Scis., Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989) ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so."). A court's discretion for compelling arbitration is thus limited to a two-step process of "determining (1) whether a valid agreement to arbitrate exists, and if it does; (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostics Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). A party cannot be ordered to arbitration unless there is "an express, unequivocal agreement to that effect." Samson v. NAMA Holdings, LLC, 637 F.3d 915, 923 (9th Cir. 2010) (quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980)).

With regard to the determination of whether there is a valid agreement to arbitrate between the parties, "the liberal federal policy regarding the scope of arbitrable issues is inapposite." Comer v. Micor, Inc., 436 F.3d 1098, 1104 n.11 (9th Cir. 2006). Instead, federal courts "should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Under Nevada law,[5] "[b]asic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." May v. Anderson, 119 P.3d 1254, 1257 (Nev. 2005) (citing Keddie v. Beneficial Ins., Inc. 580 P.2d 955, 956 (Nev. 1978) (Baltjer, C.J.,

---

[5] While which state's law should apply is not entirely clear given the plethora of states from which these cases arise, the parties apply Nevada law in their respective filings, and the Court will do the same.

conurring)). Put differently, an enforceable contract "requires a manifestation of mutual assent in the form of an offer by one party and acceptance thereof by the other . . . [and] agreement or meeting of the minds of the parties as to all essential elements." (<u>Keddie</u>, 580 P.2d at 957 (citations omitted).

## IV. Discussion

The arbitration agreement at issue, founds in the Disputes section of the Terms of Use of the Zappos.com website, provides as follows:

> Any dispute relating in any way to your visit to the Site or to the products you purchase through the Site shall be submitted to confidential arbitration in Las Vegas, Nevada, except that to the extent you have in any manner violated or threatened to violate our intellectual property rights, we may seek injunctive or other appropriate relief in any state or federal court in the State of Nevada. You hereby consent to, and waive all defense of lack of personal jurisdiction and forum non conveniens with respect to venue and jurisdiction in the state and federal courts of Nevada. Arbitration under these Terms of Use shall be conducted pursuant to the Commercial Arbitration Rules then prevailing at the American Arbitration Association. The arbitrator's award shall be final and binding and may be entered as a judgment in any court of competent jurisdiction. To the fullest extent permitted by applicable law, no arbitration under this Agreement shall be joined to an arbitration involving any other party subject to this Agreement, whether through class action proceedings or otherwise. You agree that regardless of any statute or law to the contrary, any claim or cause of action arising out of, related to or connected with the use of the Site or this Agreement must be filed within one (1) year after such claim or cause of action arose or be forever banned.

(Carton Decl. Ex. 8 (#10-16).) Additionally, the first paragraph of the Terms of Use provides in relevant part: "We reserve the right to change this Site and these terms and conditions at any time.

6

ACCESSING, BROWSING OR OTHERWISE USING THE SITE INDICATES YOUR AGREEMENT TO ALL THE TERMS AND CONDITIONS IN THIS AGREEMENT, SO PLEASE READ THIS AGREEMENT CAREFULLY BEFORE PROCEEDING." (Id. (emphasis in original).)

### A. Plaintiffs Did Not Agree to the Terms of Use

The Court's first step when presented with a motion to compel arbitration is to determine whether a valid agreement to arbitrate exists. Chiron Corp., 207 F.3d at 1130.

It is undisputed that Zappos' Terms of Use constitutes what federal courts have deigned a "browsewrap" agreement. With a browsewrap agreement, a website owner seeks to bind website users to terms and conditions by posting the terms somewhere on the website, usually accessible through a hyperlink located somewhere on the website; in contrast, a "clickwrap" agreement requires users to expressly manifest assent to the terms by, for example, clicking an "I accept" button. Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 22 n.4 (2d Cir. 2002) (J. Sotomayor). "Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website, the determination of the validity of a browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." Van Tassell v. United Mktg. Grp., 795 F.Supp.2d 770, 790 (N.D. Ill. 2011) (citing Pollstar v. Gigmania, Ltd., 170 F.Supp.2d 974, 981 (E.D. Cal. 2000)); see also Mark A. Lemley, *Terms of Use*, 90 MINN. L. REV. 459, 477 (2006) ("Court may be willing to overlook the utter absence of assent only when there are reasons to

believe that the [website user] is aware of the [website owner's] terms."); Note, *Ticketmaster Corp. v. Tickers.com, Inc.: Preserving Minimum Requirements of Contract on the Internet*, 19 BERKELEY TECH. L.J. 495, 507 (2004) ("[S]o far courts have held browsewrap agreements enforceable if the website provides sufficient notice of the license."). Where, as here, there is no evidence that plaintiffs had actual knowledge of the agreement, "the validity of a browsewrap contract hinges on whether the website provides reasonable notice of the terms of the contract." Van Tassel, 795 F.Supp.2d at 791 (citing Specht, 306 F.3d at 32).

Here, the Terms of Use hyperlink can be found on every Zappos webpage, between the middle and bottom of each page, visible if a user scrolls down. (Carton Decl. Ex. 1 (#10-9).) For example, when the Zappos.com homepage is printed to hard copy, the link appears on page 3 of 4. (Id.) The link is the same size, font, and color as most other non-significant links. (Id.) The website does not direct a user to the Terms of Use when creating an account, logging in to an existing account, or making a purchase. (Id.; Carton Decl. Ex. 2 (#10-10), Ex. 3 (#10-11), Ex. 4 (#10-12)., Ex. 5 (#10-13); Ex. 6 (#10-14), Ex. 7 (#10-15).) Without direct evidence that Plaintiffs click on the Terms of Use, we cannot conclude that Plaintiffs ever viewed, let alone manifested assent to, the Terms of Use. The Terms of Use is inconspicuous, buried in the middle to bottom of every Zappos.com webpage among many other links, and the website never directs a user to the Terms of Use. No reasonable user would have reason to click on the Terms of Use, even those

8

users who have alleged that they clicked and relied on statements found in adjacent links, such as the site's "Privacy Policy." This case is therefore factually similar to cases that have decline to enforce arbitration clauses, such as <u>Hines v. Overstock.com</u>, wherein the Court refused to enforce an arbitration provision because the plaintiff "lacked notice of the Terms and Conditions because the website did not prompt her to review the Terms and Conditions and because the link to the Terms and Conditions was not prominently displayed so as to provide reasonable notice of the Terms and Conditions." 668 F.Supp.2d 362, 367 (E.D.N.Y. 2009) <u>aff'd</u> 380 F.App'x 22 (2d Cir. 2010); <u>see also</u> <u>Specht</u>, 306 F.3d at 32 ("[A] reference to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms."); <u>Van Tassell</u>, 795 F.Supp.2d at 792 (declining to enforce arbitration provision where "a user only encounters the Conditions of Use after scrolling to the bottom of the home page and clicking the 'Customer Service' link, and then scrolling to the bottom of the Customer Service page or clicking the 'conditions of Use, Notices & Disclaimers' link located near the end of a list of links on the page."); <u>Koch Indus., Inc. v. Does</u>, No. 2:10CV1275DAK, 2011 WL 1775765, at *24-25 (D. Utah May 9, 2011) (finding there was no manifested assent where the "Terms of Use . . . were available only through a hyperlink at the bottom of the page, and there was no prominent notice that a user would be bound by those terms."); <u>Cvent, Inc. v. Eventbrite, Inc.</u>, 739 F.Supp.2d 927, 936-37 (E.D. Va. 2010) (declining to enforce "Terms of Use" where "link only appears

on Cvent's website via a link buried at the bottom of the first page" and "users of Cvent's website are not required to click on that link, nor are they required to read or assent to the Terms of Use in order to use the website or access any of its content."). We therefore agree with the <u>Hines</u> court: "Very little is required to form a contract nowadays - but this alone does not suffice." 668 F.Supp.2d 362, 367. Where, as here, there is no acceptance by Plaintiffs, no meeting of the minds, and no manifestation of assent, there is no contract pursuant to Nevada law.

**B.   The Terms of Use Constitutes an Illusory Contract**

The Priera Plaintiffs argue that because the Terms of Use grants Zappos the unilateral right to revise the Arbitration Clause, the contract is illusory and therefore unenforceable. In other words, Plaintiffs argue that the Arbitration Clause is illusory because Zappos can avoid the promise to arbitrate simply by amending the provision, while Zappos.com users are simultaneously bound to arbitration.

Most federal courts that have considered this issue have held that if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory and unenforceable, especially where there is no obligation to receive consent from, or even notify, the other parties to the contract. See <u>Douglas v. Johnson Real Estate Investors, LLC</u>, 470 F.App'x 823, 825 (11th Cir. 2012). ("Because the employee handbook allowed Johnson to unilaterally modify the arbitration procedures without notifying Douglas, the agreement to arbitrate was illusory and invalid.");

10

1  Morrison v. Amway Corp., 517 F.3d 248, 257-58 (finding arbitration
2  agreement illusory and unenforceable where defendant held unilateral
3  authority to amend or eliminate the arbitration program); Dumais v.
4  Am. Golf Corp., 299 F.3d 1216, 1219 (10th Cir. 2002) ("We join other
5  circuits in holding that an arbitration agreement allowing one party
6  the unfettered right to alter the arbitration agreement's existence
7  or its scope is illusory."); Penn v. Ryan's Family Steak Houses,
8  Inc., 269 F.3d 753, 759-61 (7th Cir. 2001) (denying motion to compel
9  arbitration where agreement was illusory because one party had
10 "sole, unilateral discretion to modify or amend"); Floss v. Ryan's
11 Family Steak Houses, Inc., 211 F.3d 306, 315-316 (6th Cir. 2000)
12 (arbitration agreement was "fatally indefinite" and illusory because
13 employer "reserved the right to alter applicable rules and
14 procedures without any obligation to notify, much less receive
15 consent from," other parties); Hooters of Am., Inc. v. Phillips, 173
16 F.3d 933, 939 (4th Cir. 1999) (holding that employer's ability to
17 modify rules "in whole or in part" without notice to employee
18 renders arbitration agreement illusory); Grosvenor v. Qwest Corp., -
19 -- F.Supp.2d ---, 2012 WL 602655, at *12 (D. Colo. Feb. 23, 2012)
20 ("Because Qwest reserved an unfettered ability to modify the
21 existence, terms and scope of the arbitration clause, it is illusory
22 and unenforceable."); Harris v. Blockbuster, Inc., 622 F.Supp.2d
23 396, 398-99 (N.D. Tex. 2009) (arbitration clause in internet video
24 purchase agreement illusory because defendant reserved the right to
25 alter the terms of the agreement at any time by giving notice to the
26 consumer); Snow v. BE & K Constr. Co. 126 F.Supp.2d 5, 14-15 (D. Me.
27
28                                   11

2001) (holding arbitration agreement illusory and unenforceable because employer "reserve[d] the right to modify or discontinue [the arbitration] program at any time"); <u>Trumbull v. Century Mktg. Corp.</u>, 12 F.Supp.2d 683, 686 (N.D. Ohio 1998) (finding no binding arbitration agreement where "the plaintiff would be bound by all the terms of the handbook while defendant could simply revoke any term (including the arbitration clause) whenever it desired. Without mutuality of obligation, a contract cannot be enforced.").

Here, the Terms of Use gives Zappos the right to change the Terms of Use, including the Arbitration Clause, at any time without notice to the consumer. On one side, the Terms of Use purportedly binds any user of the Zappos.com website to mandatory arbitration. However, if a consumer sought to invoke arbitration pursuant to the Terms of Use, nothing would prevent Zappos from unilaterally changing the Terms and making those changes applicable to that pending dispute if it determined that arbitration was no longer in its interest. In effect, the agreement allows Zappos to hold its customers and users to the promise to arbitrate while reserving its own escape hatch. By the terms of the Terms of Use, Zappos is free at any time to require a consumer to arbitrate and/or litigate anywhere it sees fit, while consumers are required to submit to arbitration in Las Vegas, Nevada. Because the Terms of Use binds consumers to arbitration while leaving Zappos free to litigate or arbitrate wherever it sees fit, there exists no mutuality of obligation. We join those other federal courts that find such arbitration agreements illusory and therefore unenforceable.

## C. Equitable Estoppel

"The equitable estoppel doctrine prevents a plaintiff signatory to a contract that contains an arbitration provision from avoiding the agreement to arbitrate if the plaintiff's claims rely on the contract as the basis for relief." Ahlers v. Ryland Homes Nev., LLC, No. 52511, 2010 WL 3276221, at *2 (Nev. 2010) (citing MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999); Hughes Masonry v. Greater Clark Cty. Sch. Bldg., 659 F.2d 836, 838, 840-41 (7th Cir. 1981); Metalclad v. Ventana Evntl., 1 Cal.Rptr.3d 328, 34-35 (Cal.Ct.App. 2003).

Defendants argue that Plaintiffs cannot assert breach of contract actions against Zappos.com while seeking to avoid the arbitration provision of the Terms of Use. However, Plaintiffs' breach of contract claims do not rely upon the contract they seek to avoid, the Terms of Use, which they never viewed, but on other statements and guarantees found on the website. Furthermore, this issue is more appropriate for individual litigation in each of the member cases of the MDL actions as it depends on the allegations found in each complaint. We therefore decline to apply the doctrine of equitable estoppel here.

## V. Conclusion

A court cannot compel a party to arbitrate where that party has not previously agreed to arbitrate. The arbitration provision found in the Zappos.com Terms of Use purportedly binds all users of the website by virtue of their browsing. However, the advent of the

13

Internet has not changed the basic requirements of a contract, and there is no agreement where there is no acceptance, no meeting of the minds, and no manifestation of assent.  A party cannot assent to terms of which it has no knowledge or constructive notice, and a highly inconspicuous hyperlink buried among a sea of links does not provide such notice.  Because Plaintiffs did not assent to the terms, no contract exists, and they cannot be compelled to arbitrate.  In any event, even if Plaintiffs could be said to have consented to the terms, the Terms of Use constitutes an illusory contract because it allows Zappos to avoid arbitration by unilaterally changing the Terms at any time, while binding any consumer to mandatory arbitration in Las Vegas, Nevada.  We therefore decline to enforce the arbitration provision on two grounds: there is no contract, and even if there was, it would be illusory and therefore unenforceable.

**IT IS, THEREFORE, HEREBY ORDERED** that Defendant Zappos.com, Inc.'s Motion to Compel Arbitration and Stay Action (#3) is **DENIED**.

DATED: September 27, 2012.

_____
UNITED STATES DISTRICT JUDGE

14