# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

IN RE:

**ZAPPOS.COM, INC. CUSTOMER DATA SECURITY BREACH LITIGATION**
_____

**This Document Relates To:**

**3:12-cv-00339-RCJ-VPC (*Stevens*)**
**3:12-cv-00340-RCJ-VPC (*Penson*)**
**3:12-cv-00341-RCJ-VPC (*Elliott, Brown and Seal*)**

**And**

**2:12-cv-00864-RCJ-PAL (*Relethford and Braxton*) (awaiting formal consolidation into the MDL)**

**Case No. 3:12-cv-00325-RCJ-VPC**
**MDL No. 2357**

## KENTUCKY/CALIFORNIA PLAINTIFFS'
## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs Theresa D. Stevens, Stacy Penson, Tara J. Elliot, Brooke C. Brown, Christa Seal, Denise Relethford and Emily E. Braxton (collectively, the "Kentucky/California Plaintiffs"[1] or "Plaintiffs"), on behalf of themselves and all other persons similarly situated, file this Consolidated Amended Class Action Complaint ("CAC") against Defendant Zappos.com, Inc. ("Zappos" or "Defendant"), and respectfully allege the following:

---

[1] Plaintiffs Theresa D. Stevens, Stacy Penson, Tara J. Elliot, Brooke C. Brown and Christa Seal originally filed their actions in the Western District of Kentucky.  Plaintiffs Denise Relethford and Emily E. Braxton originally filed their action in the Southern District of California.

## NATURE OF THE ACTION

1.     Kentucky/California Plaintiffs, individually and on behalf of over 24 million similarly situated persons (the "Class Members") bring this national consumer class action seeking to redress Zappos' intentional, willful, reckless and/or negligent violations of Kentucky/California Plaintiffs' and Class Members' privacy rights.  Kentucky/California Plaintiffs and Class Members are consumers of shoes, apparel and other products sold by Zappos, an online retailer.  Kentucky/California Plaintiffs and Class members, as part and parcel of their retail transactions with Zappos, (i) entrusted their confidential personal customer account information including, *inter alia*, their names, email addresses, billing and shipping addresses, phone numbers and the last four digits of their credit cards to Zappos, and (ii) created a Zappos.com website account password (collectively, "PCAI"). Zappos betrayed Kentucky/California Plaintiffs' and Class Members' trust by failing to properly safeguard and protect their PCAI and publicly disclosing their PCAI without authorization in violation of numerous laws, including, *inter alia*, the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* ("FCRA"), and the statutes and common law of various states.

2.     Zappos is an online retailer of apparel, shoes, handbags, home furnishings, beauty products and accessories.  Zappos is a wholly-owned subsidiary of Amazon.com.  At all relevant times, Kentucky/California Plaintiffs and Class Members were Zappos customers.   On or sometime prior to Sunday, January 15, 2012, Zappos servers in Kentucky and Nevada containing their PCAI were improperly accessed without authorization (the "Data Breach"). Kentucky/California Plaintiffs contend that Zappos' failed to properly safeguard and protect the servers and, in the process, failed to safeguard and protect their PCAI that was stolen by unauthorized third parties in the Data Breach.

2

3.      On January 16, 2012, Zappos sent Kentucky/California Plaintiffs and Class Members an email notifying them that its servers had been breached and their PCAI stolen and compromised.  Zappos also closed its customer service telephone lines for the week immediately following the Data Breach.

4.      Zappos flagrantly disregarded Kentucky/California Plaintiffs' and Class Members' privacy rights by intentionally, willfully, recklessly and/or negligently failing to take the necessary precautions required to safeguard and protect Kentucky/California Plaintiffs' and Class Members' PCAI from unauthorized disclosure.  Kentucky/California Plaintiffs' and Class Members' PCAI was improperly handled and stored, and either unencrypted or improperly partially encrypted, inadequately protected, readily able to be copied by data thieves, and not kept in accordance with basic security protocols.

5.      Zappos' intentional, willful, reckless and/or negligent disregard of Kentucky/California Plaintiffs' and Class Members' privacy rights caused one of the largest unauthorized disclosures of PCAI in history.  The improper use of PCAI by an unauthorized third party can and does result in an adverse impact on, among other things, a victim's credit rating and finances.  The type of wrongful PCAI disclosure made by Zappos is insidiously harmful because it can take a significant amount of time for a victim to become aware of the theft and its consequences.

6.      Kentucky/California Plaintiffs have standing to bring this suit because, as a direct and/or proximate result of Zappos' wrongful actions and/or inactions and the resulting Data Breach, they have incurred (and will continue to incur) harm and damages in the form of, *inter alia,* (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv)

loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud[2] pressed upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, and which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.

7.      Zappos' wrongful actions and/or inaction and the resulting Data Breach have also placed Kentucky/California Plaintiffs and Class Members at an imminent, immediate and continuing increased risk of identity theft and/or identity fraud.  Indeed, Javelin Strategy & Research ("Javelin"), a leading provider of quantitative and qualitative research, recently released its 2012 Identity Fraud Report ("the Javelin Report"), quantifying the impact of data breaches.  According to the Javelin Report, individuals whose PCAI is subject to a reported data breach—such as the Data Breach at issue here—are approximately 9.5 times more likely than the general public to suffer identity fraud and/or identity theft.  Moreover, there is a high likelihood that significant identity theft and/or identity fraud has not yet been discovered or reported, and a

---

[2] According to the United States Government Accounting Office, the terms "identity theft" or "identity fraud" are broad terms encompassing various types of criminal activities, such as when PCAI is used to commit fraud or other crimes (credit card fraud, phone or utilities fraud, bank fraud and government fraud (theft of government services)).

high probability that criminals who may now possess Kentucky/California Plaintiffs' and Class Members' PCAI and have not yet used the information will do so at a later date or re-sell it.

8.     Accordingly, Kentucky/California Plaintiffs and Class Members seek redress against and from Zappos for, *inter alia*, violations of FCRA, various common law torts, breach of implied contract, violations of various state consumer statutes, violations of certain other state statutes, including California's Security Requirements for Consumer Records (Cal. Civ. Code §§ 1714, 1798.29 and 1798.80, *et seq.*), and unjust enrichment.

9.     Kentucky/California Plaintiffs, therefore, on behalf of themselves and Class Members, seek (i) actual damages, nominal damages, statutory damages, liquidated damages and/or double or treble damages (as available), (ii) punitive damages, (iii) injunctive relief, (iv) declaratory relief, and (v) attorneys' fees, litigation expenses and costs of suit.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over Kentucky/California Plaintiffs' FCRA claims pursuant to 28 U.S.C. § 1331 (federal question).  This Court also has subject matter jurisdiction over Kentucky/California Plaintiffs' claims pursuant to 28 § 1332(d) (CAFA) because (a) there are 100 or more Class Members, (b) at least one Class Member is a citizen of a state that is diverse from Zappos' citizenship, and (c) the matter in controversy exceeds $5,000,000 USD, exclusive of interest and costs.  This Court also has subject matter jurisdiction over Kentucky/California Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over Zappos because at all relevant times, Zappos conducted (and continues to conduct) substantial business in the District of Nevada.

12.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because (i) Zappos is subject to personal jurisdiction in the District of Nevada, (ii) per Zappos, the wrongful

disclosure of Kentucky/California Plaintiffs' and Class Members' PCAI giving rise to their claims was made through Zappos' servers located in the Nevada and Kentucky, and (iii) Zappos resides, is located, can be found and/or conducts substantial business in the District of Nevada.

13.     The class action lawsuits referenced in the above caption that are included in this CAC were transferred to this Court and consolidated for pre-trial proceedings by order of the Judicial Panel on Multi-District Litigation.   Kentucky/California Plaintiffs, however, reserve their right to remand these actions to the districts from which they were transferred at or before conclusion of the pre-trial proceedings.[3]

## PARTIES

14.     Plaintiff Theresa D. Stevens is a resident of Beaumont, Texas.  Zappos possesses Plaintiff Stevens' PCAI, which Zappos was (and continues to be) required to safeguard and protect.   On January 16, 2012, Plaintiff Stevens received an email from Zappos notifying her that her PCAI was stolen and compromised as part of the Data Breach.   As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, Plaintiff Stevens has suffered (and will continue to suffer) economic damages and other actual harm (as detailed above).   Zappos' wrongful disclosure of Plaintiff Stevens' PCAI has also placed her at an imminent, immediate and continuing increased risk of harm for identity theft and/or identity fraud.

15.     Plaintiff Stacy Penson is a resident of Miami, Florida.  Zappos possesses Plaintiff Penson's PCAI, which Zappos was (and continues to be) required to safeguard and protect.   On January 16, 2012, Plaintiff Penson received an email from Zappos notifying her that her PCAI had been stolen and/or compromised as part of the Data Breach.   As a direct and/or proximate

---

[3]*See Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, Plaintiff Penson has suffered (and will continue to suffer) economic damages and other actual harm (as detailed above).  Zappos' wrongful disclosure of Plaintiff Penson's PCAI has also placed her at an imminent, immediate and continuing increased risk of harm for identity theft and/or identity fraud.

16.     Plaintiff Tara J. Elliott is a resident of Birmingham, Alabama.  Zappos possesses Plaintiff Elliott's PCAI, which Zappos was (and continues to be) required to safeguard and protect.   On January 16, 2012, Plaintiff Elliott received an email from Zappos notifying her that her PCAI had been stolen and/or compromised as part of the Data Breach.  As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, Plaintiff Elliott has suffered (and will continue to suffer) economic damages and other actual harm (as detailed above).  Zappos' wrongful disclosure of Plaintiff Elliott's PCAI has also placed her at an imminent, immediate and continuing increased risk of harm for identity theft and/or identity fraud.

17.     Plaintiff Brooke C. Brown is a resident of Birmingham, Alabama.  Zappos possesses Plaintiff Brown's PCAI, which Zappos was (and continues to be) required to safeguard and protect.   On January 16, 2012, Plaintiff Brown received an email from Zappos notifying her that her PCAI had been stolen and/or compromised as part of the Data Breach.  As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, Plaintiff Brown has suffered (and will continue to suffer) economic damages and other actual harm (as detailed above).  Zappos' wrongful disclosure of Plaintiff Brown's PCAI has also placed her at an imminent, immediate and continuing increased risk of harm for identity theft and/or identity fraud.

18.     Plaintiff Christa Seal is a resident of Birmingham, Alabama.  Zappos possesses Plaintiff Seal's PCAI, which Zappos was (and continues to be) required to safeguard and protect. On January 16, 2012, Plaintiff Seal received an email from Zappos notifying her that her PCAI had been stolen and/or compromised as part of the Data Breach.  As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, Plaintiff Seal has suffered (and will continue to suffer) economic damages and other actual harm (as detailed above).  Zappos' wrongful disclosure of Plaintiff Seal's PCAI has also placed her at an imminent, immediate and continuing increased risk of harm for identity theft and/or identity fraud.

19.     Plaintiff Denise Relethford is a resident of La Mesa, California.  Zappos possesses Plaintiff Relethford's PCAI, which Zappos was (and continues to be) required to safeguard and protect.  On January 16, 2012, Plaintiff Relethford received an email from Zappos notifying her that her PCAI had been stolen and/or compromised as part of the Data Breach.  As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, Plaintiff Relethford has suffered (and will continue to suffer) economic damages and other actual harm (as detailed above).  Zappos' wrongful disclosure of Plaintiff Relethford's PCAI has also placed her at an imminent, immediate and continuing increased risk of harm for identity theft and/or identity fraud.

20.     Plaintiff Emily E. Braxton is a resident of Parkland, Florida.  Zappos possesses Plaintiff Braxton's PCAI, which Zappos was (and continues to be) required to safeguard and protect.   On January 16, 2012, Plaintiff Braxton received an email from Zappos notifying her that her PCAI had been stolen and/or compromised as part of the Data Breach.  As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data

Breach, Plaintiff Braxton has suffered (and will continue to suffer) economic damages and other actual harm (as detailed above).  Zappos' wrongful disclosure of Plaintiff Braxton's PCAI has also placed her at an imminent, immediate and continuing increased risk of harm for identity theft and/or identity fraud.

21.     Defendant Zappos.com, Inc. is a Delaware corporation with its principal place of business in Henderson, Nevada.  Zappos is an online retailer of apparel, shoes, handbags, home furnishings, beauty products and accessories through its websites, Zappos.com and 6pm.com. Zappos has annual sales of over a $1 billion USD.  At all relevant times, Zappos sold shoes, apparel and other products to Kentucky/California Plaintiffs and Class Members in retail consumer transactions—to-wit, in order to receive the shoes, apparel and other products from Zappos, Kentucky/California Plaintiffs and Class Members were required to, *inter alia*, provide Zappos with their PCAI and create a Zappos.com account password.  At all relevant times, Zappos was (and continues to be) entrusted with, and obligated to safeguard and protect, Kentucky/California Plaintiffs' and Class Members' PCAI.

22.     Zappos is a wholly-owned subsidiary of Amazon.com, Inc., the world's largest online retailer with 2011 revenues of over $48 billion USD.  Zappos is a Consumer Reporting Agency as defined under the FCRA because on its own and/or by and/or through Amazon.com, it regularly engages, in whole or in part, in the practice of assembling information on consumers for the purpose of furnishing consumer reports to third parties and/or uses interstate commerce for the purpose of preparing and/or furnishing consumer reports.  Zappos may be served with Summons and a copy of the CAC by serving its registered agent for service of process, CSC Services of Nevada, Inc., 2215-B Renaissance Drive, Las Vegas, Nevada 89119.

## SUBSTANTIVE ALLEGATIONS

23.    On Zappos' online retail websites, Zappos.com and 6pm.com, Zappos' customers create accounts to purchase shoes, apparel and other products. The customer accounts contain PCAI—which includes, *inter alia*, their names, account numbers, passwords, e-mail addresses, billing and shipping addresses, phone numbers, and the last four digits of the credit cards used to make purchases. Each account is accessed by the customer using a unique username and password.

24.    In its "Privacy Policy," Zappos represents that "[a]ccess to your personal information is restricted. Only employees who need access to your personal information to perform a specific job are granted access to your personal information." Zappos also represents that it "take[s] several steps to protect your personal information in our facilities."

25.    Zappos also makes a "Safe Shopping Guarantee," promising that the use of credit card information on its websites is secure.

26.    Zappos, however, did not live up to its "Privacy Policy" and "Safe Shopping Guarantee," thereby resulting in the Data Breach and the wrongful disclosure of Kentucky/California Plaintiffs' and Class Members' PCAI.

27.    On January 16, 2012, Kentucky/California Plaintiffs and over 24 million Class Members received an email from Zappos notifying them that their PCAI had been stolen and compromised.

28.    According to Tony Hsieh, Zappos' CEO, Kentucky/California Plaintiffs' and Class Members' PCAI was stolen by hackers who gained access to Zappos internal network through its unprotected servers.

10

29.     As a direct and/or proximate result of Zappos' failure to safeguard and protect Kentucky/California Plaintiffs' and Class Members' PCAI including, *inter alia*, failing to maintain a proper firewall and computer security system, failing to properly encrypt data, including Kentucky/California Plaintiffs' and Class Members' PCAI, and violating standard industry practices and protocols for protecting consumer financial data and personal identification information, Kentucky/California Plaintiffs' and Class Members' privacy has been invaded. The compromised and stolen information was private and sensitive in nature and, on information and belief, was left either unencrypted or weakly encrypted by Defendant on its data servers.

30.     Further compounding the problem, Zappos closed its customer service telephone lines after the Data Breach was announced which, in turn, prevented Kentucky/California Plaintiffs and Class Members from contacting Zappos about the Data Breach which, in turn, delayed the implementation of appropriate and reasonable security precautions to prevent identity theft and/or identity fraud.

31.     Kentucky/California Plaintiffs and Class Members will now be required to take the time to change Zappos.com account passwords (as recommended by Zappos and reasonable conduct), change the passwords "on any other web site where [Kentucky/California Plaintiffs and Class Members] use the same or a similar password" (as further recommended by Zappos.com and reasonable conduct), and change other elements of their compromised PCAI. Kentucky/California Plaintiffs and Class Members also now face a greater risk of identity theft and/or identity fraud—including identity theft and other losses, such as usage of and interference with their computers and other electronic devices, including smartphones, battery usage, space /capacity usage, service provider charges and the like, from "phishing" and "pharming."

11

32.     Identity theft occurs when a person's personally identifying information, such as the person's name, e-mail address, billing and shipping addresses, phone number and credit card information is used without his or her permission to commit fraud or other crimes. *See* Federal Trade Commission, Fighting Back against Identity Theft. *See* www.ftc.gov/bcp/edu/microsites/idtheft/consumers/ about-identity-theft.html (Oct. 19, 2011).

33.     According to the Federal Trade Commission ("FTC"), "the range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions and that any privacy framework should recognize additional harms that might arise from unanticipated uses of data".[4] Furthermore, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute PII."[5]

34.     The FTC estimates that the identities of as many as 9 million Americans are stolen each year. *Id.*

35.     "Phishing" is a form of online identity theft that lures consumers into divulging their personal financial information to fraudulent websites, also known as spoofed websites. For example, a phisher sends an email message to an unsuspecting victim instructing him to click on the link to a bank's website (provided in the email) to confirm the consumer's account information. Unbeknownst to the consumer, the website is a convincing fake or copy of the

---

[4] *Protecting Consumer Privacy in an Era of Rapid Change* FTC, Report March 2012 (http://www.ftc.gov/os/2012/03/120326privacyreport.pdf).

[5] *Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers*, *Preliminary FTC Staff Report*, 35–38 (Dec. 2010), *available at* http://www.ftc.gov/os/2010/12/101201privacyreport.pdf; *Comment of Center for Democracy & Technology,* cmt. #00469, at 3; *Comment of Statz, Inc.*, cmt. #00377, at 11-12.

authentic website. The unsuspecting customer takes the bait and provides the information, thereby enabling the phisher to steal his or her personal financial information. The phisher can then use this information to clean out the victim's bank accounts or commit other forms of identity theft.

36.     "Pharming" is similar to phishing but more sophisticated.  Pharmers also send emails. Consumers, however, can be duped by the pharmer without even opening an email attachment. A consumer compromises his or her personal financial information simply by opening the email message. The pharming email message contains a virus (or Trojan horse) that installs a small software program on the user's computer.  Thereafter, when the consumer tries to visit an official website, the pharmer's software program redirects the browser to the pharmer's fake version of the website. In this way, the pharmer is able to capture the personal financial information that the consumer enters into the counterfeit website, thereby compromising the consumer's account.

37.     As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, the hacker(s) and/or their customers (there is a robust international market for information such as the purloined PCAI) now have Kentucky/California Plaintiffs' and Class Members' PCAI, as well as the knowledge that Kentucky/California Plaintiffs and Class Members are accustomed to receiving emails from Zappos.  This, in turn, makes Kentucky/California Plaintiffs and Class Members much more likely to respond to requests from Zappos for more personal information, such as bank account numbers, login information or even Social Security numbers.  As such, consumers—such as Kentucky/California Plaintiffs and Class Members—are more likely to unknowingly give away their sensitive personal information to "phishing" and "pharming" thieves who specialize in

constructing spoof websites and emails that mirror the brand they're spoofing—such as Zappos.com and/or other popular online retailers and financial institutions.

38.    According to the FTC, "Identity theft is serious. While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or be denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit."

39.    Identity theft crimes often involve more than just crimes of financial loss, such as various types of government fraud (such as obtaining a driver's license or official identification card in the victim's name but with their picture), using a victim's name and Social Security number to obtain government benefits and/or filing a fraudulent tax return using a victim's information.  Identity thieves also obtain jobs using stolen Social Security numbers, rent houses and apartments and/or obtain medical services in a victim's name.  Identity thieves also have been known to give a victim's personal information to police during an arrest, resulting in the issuance of an arrest warrant in the victim's name and an unwarranted criminal record.

40.    Zappos' wrongful actions and/or inaction here directly and/or proximately caused the theft and wrongful dissemination into the public domain of Kentucky/California Plaintiffs' and Class Members' PCAI without their knowledge, authorization, or consent. As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, Kentucky/California Plaintiffs and Class Members have suffered, and will continue to suffer, damages including, without limitation, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service

14

telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, and which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.

41.     Although in its emails to Kentucky/California Plaintiffs and Class Members Zappos recommended that they reset their Zappos.com account passwords and change the passwords "on any other web site where [they] use the same or a similar password," to date, Zappos has not offered Kentucky/California Plaintiffs and Class Members any compensation or basic personal protection from the Data Breach—such as credit monitoring services and/or identity theft insurance.

42.     In addition, the FTC publication, "Protecting Personal Information: A Guide for Business," details guidelines that businesses should follow to protect against the theft of personal, sensitive information in their files, including, *inter alia*:

> a.  Do not collect confidential personal identifying information if there is no legitimate business need. If there is a legitimate business need, only keep the information as long as necessary;

15

    b. Encrypt the confidential personal identifying information particularly if the sensitive information is shipped to outside carriers or contractors;

    c. Do not store sensitive computer data on any computer with an Internet connection unless it is essential for conducting the business;

    d. Control access to sensitive information by requiring that employees use "strong" passwords; tech security experts believe the longer the password, the better; and

    e. Implement information disposal practices reasonable and appropriate to prevent an unauthorized access to personally identifying information.

43. PCAI is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for a number of years.[6] Identity thieves and other cyber criminals openly post stolen credit card numbers, Social Security numbers and other PCAI directly on various Internet websites, thereby making the information publicly available. In one study, researchers found hundreds of websites displaying stolen PCAI. Strikingly, none of these websites were blocked by Google's safeguard filtering mechanism—the "Safe Browsing list." The study concluded:

> It is clear from the current state of the credit card black-market that cyber criminals can operate much too easily on the Internet. They are not afraid to put out their email addresses, in some cases phone numbers and other credentials in their advertisements. It seems that the black market for cyber criminals is not underground at all. In fact, it's very "in your face."[7]

44. Zappos flagrantly disregarded and/or violated Kentucky/California Plaintiffs' and Class Members' privacy rights, and harmed them in the process, by depriving

---

[6] Companies, in fact, also recognize PCAI as an extremely valuable commodity akin to a form of personal property. For example, Symantec Corporation's Norton brand has created a software application that values a person's identity on the black market. Risk Assessment Tool, Norton 2010, www.everyclickmatters.com/victim/assessment-tool.html; *see also* T. Soma, *et al.*, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3–4 (2009).

[7] http://www.stopthehacker.com/2010/03/03/the-underground-credit-card-blackmarket/.

16

Kentucky/California Plaintiffs and Class Members of the value of their PCAI, for which there is

a well-established national and international market. *See, e.g.,* Soma, *supra* ("[PCAI], which

companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable

to the value of traditional financial assets.") (citations omitted).

45.     Kentucky/California Plaintiffs and Class Members, not data thieves, should have

the right to sell their PCAI and receive the corresponding financial benefits.

## CLASS ACTION ALLEGATIONS

46.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Kentucky/California

Plaintiffs bring this action against Zappos as a national class action on behalf of themselves and

all members of the following class of similarly situated persons (the "Nationwide Class"):

> All persons whose Zappos.com personal customer account
> information including, *inter alia*, name, account number,
> password, e-mail address, billing and shipping addresses, phone
> number, and the last four digits of the credit cards used to make
> purchases, was stolen by hackers who gained access to
> Zappos.com's internal network through unprotected servers.
> Excluded from the Class are Defendant, any parent corporation,
> subsidiary corporation and/or affiliate entity of Defendant,
> Defendants' officers, directors, employees, agents and legal
> representatives, and the Court.

47.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or the statutes of the

respective states listed below, Kentucky/California Plaintiffs also bring this action against

Defendant on behalf of themselves and all members of the following classes of similarly situated

persons (collectively, the "State Sub-Classes"):

> a.     **ALABAMA:** All persons in Alabama whose Zappos.com
> personal customer account information including, *inter alia*, name,
> account number, password, e-mail address, billing and shipping
> addresses, phone number, and the last four digits of the credit cards
> used to make purchases, was stolen by hackers who gained access
> to Zappos.com's internal network through unprotected servers.
> Excluded from the Class are Defendant, any parent corporation,

17

subsidiary corporation and/or affiliate entity of Defendant, Defendants' officers, directors, employees, agents and legal representatives, and the Court (the "Alabama Sub-Class").

b.    **CALIFORNIA:**    All persons in California whose Zappos.com personal customer account information including, *inter alia*, name, account number, password, e-mail address, billing and shipping addresses, phone number, and the last four digits of the credit cards used to make purchases, was stolen by hackers who gained access to Zappos.com's internal network through unprotected servers. Excluded from the Class are Defendant, any parent corporation, subsidiary corporation and/or affiliate entity of Defendant, Defendants' officers, directors, employees, agents and legal representatives, and the Court (the "California Sub-Class").

c.    **FLORIDA:**    All persons in Florida whose Zappos.com personal customer account information including, *inter alia*, name, account number, password, e-mail address, billing and shipping addresses, phone number, and the last four digits of the credit cards used to make purchases, was stolen by hackers who gained access to Zappos.com's internal network through unprotected servers. Excluded from the Class are Defendant, any parent corporation, subsidiary corporation and/or affiliate entity of Defendant, Defendants' officers, directors, employees, agents and legal representatives, and the Court (the "Florida Sub-Class").

d.    **TEXAS:** All persons in Texas whose Zappos.com personal customer account information including, *inter alia*, name, account number, password, e-mail address, billing and shipping addresses, phone number, and the last four digits of the credit cards used to make purchases, was stolen by hackers who gained access to Zappos.com's internal network through unprotected servers. Excluded from the Class are Defendant, any parent corporation, subsidiary corporation and/or affiliate entity of Defendant, Defendants' officers, directors, employees, agents and legal representatives, and the Court (the "Texas Sub-Class").

48.    The members of the Nationwide Class and State Sub-Classes are so numerous that their joinder is impracticable.  According to Zappos, there are over 24 million Nationwide Class Members.  The precise Nationwide Class and State Sub-Class Members and their addresses are currently unknown to Kentucky/California Plaintiffs, but can be easily derived from Zappos'

internal records that were used to send the Data Breach notification emails to Kentucky/California Plaintiffs and Class Members.

49.     The rights of each Kentucky/California Plaintiff and each Nationwide Class Member and respective State Sub-Class Member were violated in a virtually identical manner as a result of Zappos' wrongful actions and/or inaction that caused the Data Breach and the unauthorized disclosure of their PCAI.

50.     There are questions of law and fact common to the Nationwide Class and individual State Sub-Classes as a whole.  The common questions of law and fact predominate over any questions affecting only individual members of the Nationwide Class and individual State Sub-Classes, and include, without limitation:

    a.   Whether Zappos adequately designed, adopted, implemented, controlled, directed, oversaw, managed, monitored and/or audited the appropriate data security processes, controls, policies, procedures and/or protocols to safeguard and protect Kentucky/California Plaintiffs' and Class Members' PCAI disclosed without authorization in the Data Breach;

    b.   Whether Zappos' failure to properly safeguard and protect Kentucky/California Plaintiffs' and Class Members' PCAI was willful, reckless, arbitrary, capricious and/or otherwise not in accordance with the applicable protocols, procedures, guidelines, laws and/or regulations;

    c.   Whether Zappos failed to inform Kentucky/California Plaintiffs and Class Members of the Data Breach and the unauthorized disclosure of their PCAI in a manner and within the time period required by its own internal policies and procedures and/or the applicable laws;

    d.   Whether Zappos' actions and/or inaction that caused the Data Breach and the unauthorized disclosure of Kentucky/California Plaintiffs' and Class Members' PCAI violated the applicable laws;

    e.   Whether Kentucky/California Plaintiffs and Class Members were harmed by Zappos' actions and/or inaction that caused the Data Breach and the unauthorized disclosure of their PCAI; and

f.   Whether Kentucky/California Plaintiffs and Class Members suffered damages as a direct result of Zappos' actions and/or inaction that caused the Data Breach and the unauthorized disclosure of their PCAI.

51.   Kentucky/California Plaintiffs' claims are typical of the claims of the Nationwide Class Members and respective State Sub-Class Members because Kentucky/California Plaintiffs, like all Class Members, are victims of Zappos' wrongful actions and/or inaction that caused the Data Breach, caused the unauthorized disclosure of their PCAI, and caused them to suffer the resulting damages.

52.   Kentucky/California Plaintiffs and their counsel will fairly and adequately represent the interests of the Nationwide Class Members and respective State Sub-Class Members.   Kentucky/California Plaintiffs have no interests antagonistic to, or in conflict with, any of the Class Members' interests. Kentucky/California Plaintiffs' lawyers are highly experienced in the prosecution of complex commercial litigation, consumer class actions, and data breach cases.

53.   A class action is superior to all other available methods for fairly and efficiently adjudicating Kentucky/California Plaintiffs' and Class Members' claims.   Kentucky/California Plaintiffs and Class Members have been irreparably harmed as a result of Zappos' wrongful actions and/or inaction that caused the Data Breach and the unauthorized disclosure of Kentucky/California Plaintiffs' and Class Members' PCAI.   Litigating this case as a class action is appropriate because (i) it will avoid a multiplicity of suits and the corresponding burden on the courts and Parties, (ii) it would be virtually impossible for all Nationwide Class Members and State Sub-Class Members to intervene as parties-plaintiff in this action, (iii) it will allow numerous individuals with claims too small to adjudicate on an individual basis because of

prohibitive litigation costs to obtain redress for their injuries, and (iv) it will provide court oversight of the claims process once Zappos' liability is adjudicated.

54.    Certification of the Nationwide Class and/or the respective State Sub-Classes, therefore, is appropriate under FED. R. CIV. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

55.    Certification of the Nationwide Class and/or the respective State Sub-Classes also is appropriate under FED. R. CIV. P. 23(b)(2) because Zappos has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and/or equitable relief with respect to the Class as a whole.

56.    Certification of the Nationwide Class and/or the respective State Sub-Classes also is appropriate under FED. R. CIV. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of establishing incompatible standards of conduct for Zappos.  For example, one court might decide that the challenged actions and/or inaction are illegal and enjoin Zappos, while another court might decide that the same actions and/or inaction are not illegal.  Individual actions also could be dispositive of the interests of the other Class Members who were not parties to such actions and substantially impair or impede their ability to protect their interests.

57.    Zappos' wrongful actions and/or inaction are generally applicable to the Nationwide Class and/or the respective State Sub-Classes as a whole, and Kentucky/California Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole.

58.    Zappos' systemic policies and practices also make declaratory relief with respect to the Nationwide Class and/or the respective State Sub-Classes as a whole appropriate.

59.     Absent a class action, therefore, Zappos will retain the benefits of its wrongdoing despite its serious violations of the law and infliction of harm and loss on Kentucky/California Plaintiffs and Class Members.

## CLAIMS AND CAUSES OF ACTION

### COUNT I

### WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT
(15 U.S.C. § 1681, *et seq*.)
(Nationwide Class)

60.     The preceding factual statements and allegations are incorporated herein by reference.

61.     FCRA requires consumer reporting agencies to adopt and maintain procedures for meeting the needs of commerce for consumer credit, personnel, insurance and other information in a manner fair and equitable to consumers while maintaining the confidentiality, accuracy, relevancy and proper utilization of such information.  15 U.S.C. § 1681(b).

62.     FCRA defines a "consumer reporting agency" as:

Any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

63.     FCRA defines a "consumer report" as:

[A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes, employment purposes, or any other purpose authorized under [15 U.S.C. §] 1681(b).

15 U.S.C. § 1681a(d)(1).

64.     Zappos is a Consumer Reporting Agency as defined under FCRA because on a cooperative nonprofit basis and/or for monetary fees, Zappos regularly engages, in whole or in part, in the practice of assembling information on consumers for the purpose of furnishing Consumer Reports to third parties and/or uses interstate commerce for the purpose of preparing and/or furnishing Consumer Reports.

65.     As a Consumer Reporting Agency, Zappos was (and continues to be) required to adopt and maintain processes, controls, policies, procedures and/or protocols to safeguard, protect and limit the dissemination of consumer credit, personnel, insurance, and other information (such as Kentucky/California Plaintiffs' and Class Members' PCAI) in a manner fair and equitable to consumers while maintaining the confidentiality, accuracy, relevancy and proper utilization of such information.   Zappos, however, violated FCRA by failing to adopt and maintain such protective procedures which, in turn, directly and/or proximately resulted in the Data Breach and wrongful dissemination of Kentucky/California Plaintiffs' and Class Members' PCAI into the public domain.

66.     Zappos' repeated violations of FCRA, as set forth above, were willful or, at the very least, reckless.

67.     As a direct and/or proximate result of Zappos' willful violations of FCRA, as described above, Kentucky/California Plaintiffs' and Class Members' PCAI was disclosed and made accessible to unauthorized third parties in the public domain.

68.     As a further direct and/or proximate result of Zappos' willful violations of FCRA, as described above, Kentucky/California Plaintiffs and Class Members suffered (and continue to suffer) actual damages in the form of, *inter alia*, (i) untimely and/or inadequate notification of

the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos'
customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords
and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause
and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket
expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed
upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of
identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account
passwords and passwords for other accounts using the same passwords, (ix) deprivation of the
value of their PCAI, for which there is a well-established national and international market, (x)
receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their
PCAI), and (xi) loss of the customer service access that was part of the services provided for by
Zappos, and which was willfully severed by Zappos at a time of high need by its customers—for
for which they are entitled to compensation.

69.     Kentucky/California Plaintiffs and Class Members, therefore, are entitled to
compensation for their actual damages or statutory damages of not less than $100, and not more
than $1000, per Class Member, as well as their attorneys' fees, litigation expenses, and costs,
pursuant to 15 U.S.C §1681n(a).

## COUNT II

## NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (15 U.S.C. § 1681, *et seq*.)
### (Nationwide Class)

70.     The preceding factual statements and allegations are incorporated herein by
reference.

71.     In the alternative to Count I, and as described above, Zappos negligently violated FCRA by failing to design, adopt, implement, control, direct, oversee manage, monitor and/or audit the appropriate processes, controls, policies, procedures and/or protocols to safeguard, protect and limit the dissemination of consumer credit, personnel, insurance, and other information (such as Kentucky/California Plaintiffs' and Class Members' PCAI) for the permissible purposes outlined by FCRA which, in turn, directly and/or proximately resulted in the Data Breach and wrongful dissemination of Kentucky/California Plaintiffs' and Class Members' PCAI into the public domain.

72.     It was reasonably foreseeable that Zappos' failure to design, adopt, implement, control, direct, oversee manage, monitor and/or audit the appropriate processes, controls, policies, procedures and/or protocols to safeguard, protect and limit the dissemination of Kentucky/California Plaintiffs' and Class Members' PCAI would result in an unauthorized third party gaining access to their PCAI for no permissible purpose under FCRA.

73.     As a direct and/or proximate result of Zappos' negligent violations of FCRA, as described above, Kentucky/California Plaintiffs' and Class Members' PCAI was stolen and made accessible to unauthorized third parties in the public domain.

74.     As a further direct and/or proximate result of Zappos' negligent violations of FCRA, as described above, Kentucky/California Plaintiffs and Class Members suffer (and continue to suffer) damages in the form of, *inter alia*, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii)

out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, and which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.

75.    Kentucky/California Plaintiffs and Class Members, therefore, are entitled to compensation for their above actual damages, as well as their attorneys' fees, litigation expenses and costs, pursuant to 15 U.S.C. §1681o(a).

## COUNT III

### <u>INVASION OF PRIVACY BY PUBLIC DISCLOSURE OF PRIVATE FACTS</u>
**(Nationwide Class Under Nevada Law and/or State Sub-Classes Under Alabama, California, Florida and Texas Common Law)**

76.    The preceding factual statements and allegations are incorporated herein by reference.

77.    Zappos' intentional failure to safeguard and protect Kentucky/California Plaintiffs' and Class Members' PCAI directly and/or proximately resulted in the invasion of their privacy by the public disclosure of such highly confidential and private information.

78.    Access to Kentucky/California Plaintiffs' and Class Members' PCAI, and the wrongful dissemination of such information into the public domain, was easily achieved because the information admittedly was either encrypted improperly or not encrypted at all.

79.     Zappos' wrongful dissemination of Kentucky/California Plaintiffs' and Class Members' PCAI into the public domain is not of a legitimate public concern; publicity of their PCAI would be, is, and will continue to be offensive to reasonable people.

80.     Zappos intentionally invaded Kentucky/California Plaintiffs' and Class Members' privacy by repeatedly failing and refusing to design, adopt, implement, control, direct, oversee, manage, monitor and/or audit appropriate data security processes, controls, policies, procedures and/or protocols of their agents in order to safeguard and protect the PCAI entrusted to it—including Kentucky/California Plaintiffs' and Class Members' PCAI.

81.     Kentucky/California Plaintiffs and the Class Members were (and continue to be) damaged as a direct and/or proximate result of Zappos' intentional invasion of their privacy by publicly disclosing their highly confidential and private facts (*e.g.*, their PCAI) in the form of, *inter alia*, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service

27

access that was part of the services provided for by Zappos, and which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.

82.     Zappos' wrongful actions and/or inaction (as described above) constituted (and continue to constitute) an invasion of Kentucky/California Plaintiffs' and Class Members' privacy by publicly disclosing their private facts (*e.g.*, their PCAI).

## COUNT IV

### NEGLIGENCE
**(Nationwide Class Under Nevada Law and/or State Sub-Classes Under Alabama, California, Florida and Texas Common Law)**

83.     The preceding factual statements and allegations are incorporated herein by reference.

84.     Zappos had a duty to exercise reasonable care in safeguarding and protecting Kentucky/California Plaintiffs' and Class Members' PCAI.

85.     Zappos had (and continues to have) a duty to use ordinary care in activities from which harm might be reasonably anticipated (such as in the storage of private, non-public PCAI within its possession, custody and control), as well as an affirmative duty expressly imposed upon Zappos from other sources as enumerated herein.

86.     Zappos had a duty to design, adopt, implement, control, direct, oversee, manage, monitor and/or audit appropriate data security processes, controls, policies, procedures and/or protocols in order to safeguard and protect the PCAI entrusted to them—including Kentucky/California Plaintiffs' and Class Members' PCAI.

87.     As described above, Zappos' duty arises from, *inter alia*, FTC standards and state data protection statutes.

88.     The standards and duties outlined above are for the express purpose of protecting Kentucky/California Plaintiffs, Class Members and their PCAI.

89.     Zappos violated these standards and duties by failing to exercise reasonable care by failing to safeguard and protect Kentucky/California Plaintiffs' and Class Members' PCAI.

90.     It was reasonably foreseeable that Zappos' failure to exercise reasonable care in safeguarding and protecting Kentucky/California Plaintiffs' and Class Members' PCAI would result in an unauthorized third party gaining access to such information and disseminating such information to the world for no lawful purpose.

91.     Zappos, by and through its above negligent actions and/or inaction, unlawfully breached its duties to Kentucky/California Plaintiffs and Class Members by, among other things, failing to exercise reasonable care in safeguarding and protecting their PCAI within its possession, custody and control.

92.     Zappos, by and through its above negligent actions and/or inaction, further breached its duties to Kentucky/California Plaintiffs and Class Members by failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and safeguarding and protecting Kentucky/California Plaintiffs' and Class Members' PCAI within its possession, custody and control.

93.     The unauthorized third-party access was without Kentucky/California Plaintiffs' and Class Members' authorization or consent.

94.     But for Zappos' negligent and wrongful breach of its duties owed to Kentucky/California Plaintiffs and Class Members, their PCAI would not have been disseminated to the world and compromised.

95. Kentucky/California Plaintiffs' and Class Members' PCAI was compromised, viewed, and/or stolen as the direct and/or proximate result of Zappos' failure to design, adopt, implement, control, direct, oversee, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and safeguarding and protecting Kentucky/California Plaintiffs' and Class Members' PCAI within its possession, custody and control.

96. Kentucky/California Plaintiffs and Class Members suffer (and continue to suffer) damages as a direct and/or proximate result of Zappos' failure to safeguard and protect their PCAI in the form of, *inter alia*, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, and which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.

97.     Zappos' wrongful actions and/or inaction (as described above) constituted (and continue to constitute) negligence and negligence *per se* under common law.

### COUNT V

### BREACH OF IMPLIED CONTRACT
**(Nationwide Class Under Nevada Law and/or State Sub-Classes Under Alabama, California, Florida and Texas Common Law)**

98.     The preceding factual statements and allegations are incorporated herein by reference.

99.     At all relevant times, there were valid and enforceable implied contracts between Kentucky/California Plaintiffs and Class Members, on the one hand, and Zappos, on the other hand, pursuant to which Kentucky/California Plaintiffs and Class Members exchanged money (in the form of payment card payments) and their PCAI for shoes and apparel supplied by Zappos.

100.    As a material and uniform term of these implied contracts, through statements on the Zappos website regarding its security measures and its account password requirements, Zappos impliedly promised Kentucky/California Plaintiffs and the Class Members that it would take adequate measures to protect their PCAI.  In fact, Zappos states in its guarantee that "Zappos.com servers are protected by secure firewalls—communication management computers specially designed to keep information secure and inaccessible by other Internet users. So you're absolutely safe while you shop."  Zappos also impliedly promised Kentucky/California Plaintiffs and Class Members that it would notify them promptly if the PCAI they entrusted to Zappos was ever wrongfully disseminated, lost and/or compromised so that Kentucky/California Plaintiffs and Class Members could take proactive measures to protect themselves from identity theft and/or identity fraud.  Pursuant to these implied contracts, Zappos was (and continues to be)

obligated to take reasonable steps to safeguard and protect Kentucky/California Plaintiffs' and Class Members' PCAI.

101.    Kentucky/California Plaintiffs and the Class Members performed all of their underlying obligations under these implied contracts.  Zappos, however, breached its implied contracts with Kentucky/California Plaintiffs and the Class Members by, *inter alia*, (i) failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and safeguarding and protecting Kentucky/California Plaintiffs' and Class Members' PCAI within its possession, custody and control, and (ii) failing to notify Kentucky/California Plaintiffs and Class Members about the Data Breach on a timely basis.

102.    Kentucky/California Plaintiffs and Class Members suffer (and continue to suffer) damages as a direct and/or proximate result of Zappos' failure to safeguard and protect their PCAI and timely notify them about the Data Breach in the form of, *inter alia*, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid

32

Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, and which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.

103.     Zappos' wrongful actions and/or inaction (as described above) constituted (and continue to constitute) breach of implied contract under common law.

**COUNT VI**

**VIOLATION OF STATE DECEPTIVE TRADE PRACTICES
OR CONSUMER PROTECTION ACTS**
**(Nationwide Class Under Nevada Law and/or State Sub-Classes Under Alabama, Florida
and Texas Common Law)**

104.     The preceding factual statements and allegations are incorporated herein by reference.

105.     The uniform publication and advertising of Zappos' commitment to preserving and maintaining the confidentiality and integrity of PCAI entrusted to it in connection with the sales of shoes and apparel to its customers—including Kentucky/California Plaintiffs' and Class Members' PCAI—were consumer transactions as defined by the relevant statutes below.

106.     Zappos is a supplier as defined by the relevant statutes below.

107.     Kentucky/California Plaintiffs and Class Members are persons and consumers as defined by the relevant statutes below.

108.     Zappos' retail sales of shoes and apparel to its customers was (and continues to be) a consumer oriented enterprise having a broad impact on consumers at large within the meaning of the relevant statutes below.

109.     Zappos' uniform publication and advertising of its commitment to preserving and maintaining the confidentiality and integrity of PCAI entrusted to it in connection such retail sales—including Kentucky/California Plaintiffs' and Class Members' PCAI—that, in fact,

Zappos did not provide to Kentucky/California Plaintiffs and Class Members constitute deceptive acts and practices within the meaning of the relevant statutes below.

110.    Zappos violated the relevant statutes below by engaging in the unfair and deceptive practices as described herein, all of which offend public policies and are immoral, unethical, unscrupulous and/or substantially injurious to consumers.

111.    In connection with the Data Breach, Zappos specifically engaged in unfair, unlawful, unconscionable and/or deceptive acts practices in violation of the statutes below by, *inter alia*:

      a.    uniformly misrepresenting to Kentucky/California Plaintiffs and Class Members that their PCAI would be preserved in strictest confidence with the utmost data integrity when, as alleged herein, Zappos routinely failed to follow corporate or industry standards in safeguarding and protecting such information;

      b.    failing to disclose to Kentucky/California Plaintiffs and Class Members the material fact that their PCAI was not preserved in strictest confidence with the utmost data integrity;

      c.    failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and industry standards for safeguarding and protecting Kentucky/California Plaintiffs' and Class Members' PCAI within its possession, custody and control;

      d.    failing to properly encrypt Kentucky/California Plaintiffs' and Class Members' PCAI;

      e.    failing to properly train its employees in principles of cyber security policies and procedures including, *inter alia*, handling and storing PCAI; and

      f.    failing to adequately inform Kentucky/California Plaintiffs and Class Members about the Data Breach and the risk of identity theft and/or identity fraud resulting from the Data Breach.

112.    Zappos' above uniform willful and wrongful actions and/or inaction, along with its disregard of cyber security, were (and continue to be) the direct and/or proximate cause of the

damages Kentucky/California Plaintiffs and Class Members have suffered (and continue to suffer) in the form of, *inter alia*, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, and which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.

113.    The injury, harm and damages suffered by Kentucky/California Plaintiffs and Class Members sufficiently outweigh any of Zappos' possible justifications or motives for its failure to safeguard and protect their PCAI.

114.    Zappos lost Kentucky/California Plaintiffs' and Class Members' sensitive PCAI entrusted to it. Unless restrained and enjoined, Zappos will continue to engage in the above described wrongful conduct.

115.    Zappos' wrongful actions and/or inaction (as described above) constitute (and continue to constitute) unconscionable conduct in violation of the laws prohibiting unfair and deceptive acts and practices of the states wherein Class Members reside.

116.    By its above wrongful actions and/or inaction, Zappos engaged in unfair competition or unfair or deceptive acts or practices in violation of AL Code §8-19-1, *et seq*.

117.    By its above wrongful actions and/or inaction, Zappos engaged in unfair competition or unfair or deceptive acts or practices in violation of FLA. STAT. § 501.201, *et seq*.

118.    By its above wrongful actions and/or inaction, Zappos engaged in unfair competition or unfair or deceptive acts or practices in violation of NEV. STAT. § 598.0905, *et seq*.

119.    By its above wrongful actions and/or inaction, Zappos engaged in unfair competition or unfair, deceptive and/or unconscionable acts or practices in violation of TEX. BUS. & COM. CODE § 17.41, *et seq*.

120.    As a direct and/or proximate result of Zappos' above statutory violations, Kentucky/California Plaintiffs and Class Members have suffered (and continue to suffer) cognizable injury, harm, ascertainable loss and/or actual damages (as set forth above).

## COUNT VII

### <u>VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW</u>
**(California Business & Professions Code §17200 *et seq*.)**
**(California Sub-Class)**

121.    The preceding factual statements and allegations are incorporated herein by reference.

122.    The California Unfair Competition Law, California Business & Professions Code §17200, *et seq*. ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as those terms are defined by the UCL and

relevant case law.  By reason of the wrongful actions and/or inaction alleged herein, Zappos engaged in unlawful, unfair and fraudulent practices within the meaning of the UCL.

123.    As alleged herein, California Plaintiff has suffered injury in fact and lost money or property as a result of Zappos' wrongful actions and/or inaction including, *inter alia*, the loss of her PCAI, to which she is entitled by virtue of Zappos' violations of the Security Requirements for Consumer Records Act, California Civil Code §1798.29 and 1798.80, *et seq.*, as well as costs incurred to protect against the use of and mitigate the loss of the unlawful or unauthorized use of their confidential PCAI.

124.    In the course of conducting business, Zappos committed "unlawful" business practices by, *inter alia*, failing to provide reasonable security measures for the collection and storage of California Plaintiff's and California Sub-Class Members' PCAI and violated the statutory and common law alleged herein, including the Security Requirements for Consumer Records Act, California Civil Code §§ 1714, 1798.29 and 1798.80, *et seq*.  California Plaintiff and California Sub-Class Members reserve the right to allege other violations of law that constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

125.    Zappos also violated the UCL by failing to immediately notify California Plaintiff and California Sub-Class Members of the theft and compromise of their PCAI.  If California Plaintiff and California Sub-Class Members had been notified in an appropriate fashion, they could have taken precautions to safeguard and protect their PCAI.

126.    Zappos' wrongful actions and/or inaction, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of California Business and Professions Code §17200 *et seq.*, in that

37

Zappos' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive and unscrupulous, and the gravity of its conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to further Zappos' legitimate business interests other than the wrongful conduct described herein.

127.    California Business and Professions Code §17200 also prohibits any "fraudulent business act or practice."

128.    Zappos' claims, nondisclosures and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of California Business and Professions Code §17200.

129.    Zappos' wrongful actions and/or inaction caused (and continues to cause) substantial injury to the California Plaintiff and California Sub-Class Members.  Zappos lost sensitive data entrusted to it.  Unless restrained and enjoined, Zappos will continue to engage in the above described wrongful conduct.

130.    As a direct and/or proximate result of Zappos' wrongful actions and/or inaction, California Plaintiff and California Sub-Class Members have suffered (and will continue to suffer), *inter alia*, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords

for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, and which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.

131.   California Plaintiff, on behalf of herself, the California Sub-Class Members and the general public, seeks restitution and an injunction prohibiting Zappos from continuing such practices and requiring Zappos to take further actions to protect California Plaintiff and California Sub-Class Members, as well as all other relief this Court deems appropriate, consistent with California Business and Professions Code §17203.

**COUNT VIII**

**<u>VIOLATION OF SECURITY REQUIREMENTS FOR CONSUMER RECORDS</u>**
**(California Civil Code §1798.29 and 1798.80, *et seq*.)**
**(California Sub-Class)**

132.   The preceding factual statements and allegations are incorporated herein by reference.

133.   California law requires any business that obtains PCAI from its customers (including financial or personal identification data) to implement and maintain reasonable security procedures and practices to protect such information from unauthorized access, destruction, use, modification or disclosure.

134.   California Civil Code §§1798.29 and 1798.82 further require that any business that obtains and retains PCAI from its customers must promptly and "in the most expedient time

possible and without unreasonable delay" disclose any breach of the security of the system containing such retained data.

135.     Zappos failed to implement and maintain reasonable security systems, including its failure to properly encrypt and store California Plaintiff's and California Sub-Class Members' PCAI in a secured manner.

136.     Zappos also unreasonably delayed and failed to disclose the Data Breach to California Plaintiff and California Sub-Class Members in the most expedient time possible and without unreasonable delay when it knew, or reasonably believed, California Plaintiff's and California Sub-Class Members' PCAI had been wrongfully disclosed to or acquired by an unauthorized person or persons.

137.     On information and belief, no law enforcement agency determined or instructed Zappos that notification of the Data Breach to California Plaintiff and California Sub-Class Members would impede a criminal investigation.

138.     Zappos also failed to comply with the privacy notification rights required in California Civil Code §1798.83.

139.     As a direct and/or proximate result of Zappos' wrongful actions and/or inaction, California Plaintiff and California Sub-Class Members have suffered (and will continue to suffer), *inter alia*, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data

Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, and which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.

## COUNT IX

### VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT
### (California Civil Code §1750, *et seq.*)
### (California Sub-Class)

140.    The preceding factual statements and allegations are incorporated herein by reference.

141.    California Plaintiff and California Sub-Class Members are "consumers" within the meaning of California Civil Code § 1761(d), as they purchased shoes and other apparel from Zappos for personal, family and/or household purposes, and not for resale.

142.    The shoes and apparel are "goods" within the meaning of California Civil Code § 1761(a) as they are tangible chattels bought for private purposes.

143.    The purchase of shoes and other apparel from Zappos by California Plaintiff and California Sub-Class Members were (and continue to be) "transactions" within the meaning of California Civil Code § 1761(e).

41

144.    Zappos engaged in deceptive acts and practices, unlawful methods of competition and/or unfair acts as defined by California Civil Code § 1750, *et seq*., to the detriment of California Plaintiff and California Sub-Class Members.

145.    Plaintiff and California Sub-Class Members had a reasonable expectation that their PCAI would be reasonably protected and maintained by Zappos.  In exchange, California Plaintiff and California Sub-Class Members purchased shoes and apparel from Zappos' retail websites.  Despite its promises, Zappos failed to safeguard and protect California Plaintiff's and California Sub-Class Members' PCAI in violation of the following California Consumers Legal Remedies Act provisions: (i) California Civil Code § 1770(a)(5) (representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which they do not have); (ii) California Civil Code § 1770(a)(7) (representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another); and (iii) California Civil Code § 1770(a)(14) (representing that a transaction confers or involves rights, remedies or obligations which it does not have or involve, or which are prohibited).  Further, Zappos failed to inform California Plaintiff and California Sub-Class Members that it did not maintain appropriate safeguards and procedures to reasonably safeguard and protect their PCAI.

146.    As a direct and/or proximate result of Zappos' wrongful actions and/or inaction, California Plaintiff and California Sub-Class Members have suffered (and will continue to suffer), *inter alia*, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos'

attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, and which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.

147.     Pursuant to California Civil Code § 1780(a), California Plaintiff also seeks an order enjoining Defendant from engaging in the methods, acts or practices alleged herein, restitution, all other relief that this Court deems proper, and attorneys' fees and costs.

148.     Pursuant to California Civil Code § 1782, if Zappos does not rectify its illegal acts detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to California Civil Code § 1782, California Plaintiff intends to amend this Complaint to add claims for damages, including punitive damages.

## COUNT X

### VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT
(TEX. BUS & COM. CODE § 17.50(a)(3) (Unconscionable Acts and Practices))
(Texas Sub-Class)

149.     The preceding factual statements and allegations are incorporated herein by reference.

150.    As described above, Texas Plaintiff and Texas Sub-Class Members are consumers of shoes and apparel sold by Zappos as the term "consumer" is defined in the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA").  TEX. BUS & COM. CODE § 17.45(4).

151.    In order to obtain shoes and apparel from Zappos, Texas Plaintiff and Texas Sub-Class Members were required to provide their PCAI to Zappos.  At all relevant times, Zappos was (and continues to be) entrusted with, and obligated to protect, Texas Plaintiff's and Texas Sub-Class Members' PCAI in connection with such consumer transactions.

152.    Zappos' ongoing acts and practices; to wit, *inter alia*, (i) failing to safeguard and protect Texas Plaintiff's and Texas Sub-Class Members' PCAI entrusted to it (as described in detail above), (ii) failing to properly encrypt all of Texas Plaintiff's and Texas Sub-Class Members' PCAI, and (iii) failing to timely notify Texas Plaintiff and Texas Sub-Class Members of the Data Breach were (and continue to be) glaringly noticeable, flagrant, complete, unmitigated and unconscionable.

153.    Zappos' above unconscionable acts and practices directly and/or proximately caused (and continue to cause) Texas Plaintiff and Texas Sub-Class Members to suffer a glaringly noticeable, flagrant, complete, unmitigated unfairness in the form of, *inter alia*, the wrongful dissemination of their PCAI to the world without their authorization.

154.    Zappos' above unconscionable acts and practices—in particular, Zappos' failure to properly safeguard and protect Texas Plaintiff's and Texas Sub-Class Members' PCAI entrusted to it—occurred in connection with the retail sales of shoes and apparel to Texas Plaintiff and Texas Sub-Class Members in consumer transactions—to-wit, in order to receive such shoes and apparel, Texas Plaintiff and Texas Sub-Class Members were required to provide their PCAI to Zappos.

44

155.    Zappos' above-described willful and wrongful actions and/or inaction were (and continue to be) the direct and/or proximate cause of the damages Texas Plaintiff and Texas Sub-Class Members have suffered (and continue to suffer) in the form of, *inter alia*, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, and which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.

156.    Zappos' wrongful actions and/or inaction (as described above) constitute (and continue to constitute) unconscionable conduct in violation of the DTPA—to-wit, ongoing and continuous violations of TEX. BUS & COM. CODE § 17.50(a)(3).

**COUNT XI**

**UNJUST ENRICHMENT**
**(Nationwide Class Under Nevada Law and/or State Sub-Classes Under Alabama,**
**California, Florida and Texas Common Law)**

157.    The preceding factual statements and allegations are incorporated herein by reference.

158.    Kentucky/California Plaintiffs, on behalf of themselves and Class Members, hereby plead this Count in the alternative to Count V.

159.    Kentucky/California Plaintiffs and Class Members conferred a valuable benefit on Zappos in the form of their PCAI that Zappos, among other things, could use to track their buying habits and target them with specific shoes and apparel that, in turn, increased Zappos' revenues and profits.

160.    Zappos appreciated (and continues to appreciate) such valuable benefits conferred on it by Kentucky/California Plaintiffs and Class Members as part of the retail sales transactions.

161.    A portion of the retail sales prices that Kentucky/California Plaintiffs and Class Members paid to Zappos for shoes and apparel ostensibly was used by Zappos to pay for the administrative costs of electronic data management services and cyber security services.

162.    In light of the Data Breach, and under principles of equity and good conscience, Zappos should not be permitted to retain that portion of the retail sales prices paid by Kentucky/California Plaintiffs and Class Members for shoes and apparel that Zappos supposedly used to pay for the administrative costs of electronic data management services and cyber security services that Zappos, in fact, failed to provide.

163.    Accordingly, Kentucky/California Plaintiffs, on behalf of themselves and the Class Members, seek to impose a constructive trust over (and recover) all amounts by which

Zappos has been (and continues to be) unjustly enriched.  Kentucky/California Plaintiffs and Class Members are entitled to restitution and/or the disgorgement of Zappos' ill-gotten gains pursuant to common law.

## COUNT XII

## DECLARATORY RELIEF
### (28 U.S.C. § 2201, *et seq.*)
### (Nationwide Class)

164.    The preceding factual statements and allegations are incorporated herein by reference.

165.    An actual, justiciable controversy, over which this Court has jurisdiction, now exists between the Parties relating to the legal rights and duties of Kentucky/California Plaintiffs, Class Members and Zappos for which Kentucky/California Plaintiffs and Class Members desire, and are entitled to, a declaration of rights.  This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment pursuant to 28 U.S.C. § 2201.

166.    A declaratory judgment is necessary to determine Kentucky/California Plaintiffs' and Class Members' rights in connection with Zappos' failure to safeguard and protect their PCAI (as set forth in detail above).

167.    Kentucky/California Plaintiffs, on behalf of themselves and Class Members, therefore, seek a declaratory judgment that Zappos violated FCRA and/or the statutes and/or common law of the various states set forth above.

## RELIEF REQUESTED

168.    The preceding factual statements and allegations are incorporated herein by reference.

47

169.   **DAMAGES.**   As a direct and/or proximate result of Zappos' wrongful actions and/or inaction (as described above), Kentucky/California Plaintiffs and Class Members suffered (and continue to suffer) damages in the form of, *inter alia*, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, and which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.  Kentucky/California Plaintiffs and Class Members also are entitled to recover statutory damages and/or nominal damages pursuant to the applicable state and federal statutes set forth above. Kentucky/California Plaintiffs' and Class Members' damages were foreseeable by Zappos and exceed the minimum jurisdictional limits of this Court.

170.   **DOUBLE/TREBLE DAMAGES.**   Kentucky/California Plaintiffs and Class Members also are entitled to double or treble damages (as available) for Zappos' knowing, willful,

intentional, unconscionable and deceptive acts and practices under the applicable state statutes set forth above.

171.   **PUNITIVE DAMAGES.**   Kentucky/California Plaintiffs and Class Members also are entitled to punitive damages from Zappos as punishment and to deter such wrongful conduct in the future.

172.   **INJUNCTIVE RELIEF.**   Kentucky/California Plaintiffs and Class Members also are entitled to injunctive relief in the form of, *inter alia*, without limitation, (i) credit monitoring, (ii) internet monitoring, (iii) identity theft insurance, (iv) periodic compliance audits by a third party to insure that Zappos is properly safeguarding and protecting its customers' PCAI in its possession, custody and control, and (v) clear and effective notice to Class Members about the serious risks posed by the Data Breach and the precise steps that must be taken to protect themselves.

173.   **ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS.**   Kentucky/California Plaintiffs and Class Members also are entitled to recover their attorneys' fees, litigation expenses and court costs in prosecuting this action pursuant to, *inter alia*, 15 U.S.C. §§ 1681n(a); o(a) and applicable the state and federal statutes set forth above.

**WHEREFORE**, Kentucky/California Plaintiffs, on behalf of themselves and Class Members, respectfully request that (i) this action be certified as a class action, (ii) Kentucky/California Plaintiffs be designated the Nationwide Class and/or State Sub-Class Representatives, and (iii) Kentucky/California Plaintiffs' Counsel be appointed as Class Counsel. Kentucky/California Plaintiffs, on behalf of themselves and Class Members, further request that upon final trial or hearing, judgment be awarded against Zappos for:

   (i)   actual damages (as set forth above) to be determined by the trier of fact;

  (ii)  consequential damages (as set forth above) to be determined by the trier of fact;

  (iii)  nominal damages;

  (iv)  statutory damages;

  (v)  double/treble damages (as available);

  (vi)  punitive damages;

  (vi)  pre- and post-judgment interest at the highest legal rates applicable;

  (vii)  appropriate injunctive and/or declaratory relief, as described above, including injunctive relief requiring Zappos to comply with its obligations to design, adopt, implement, control, direct, oversee manage, monitor and/or audit the appropriate processes, controls, policies, procedures and/or protocols to safeguard and protect PCAI with which it has been entrusted in compliance with its internal policies and procedures, industry standards, cyber-security standards and all applicable laws and regulations, and providing the appropriate and effective monitoring services and educating Kentucky/California Plaintiffs Class Members;

  (viii)  attorneys' fees and litigation expenses;

  (ix)  costs of suit; and

  (x)  such other and further relief that this Court deems just and proper.


Dated:  November 12, 2012

           Respectfully submitted,


           By: _/s/ Richard L. Coffman_
           Richard L. Coffman
           **THE COFFMAN LAW FIRM**
           First City Building
           505 Orleans St., Suite 505
           Beaumont, TX 77701
           Telephone: (409) 833-7700
           Facsimile: (866) 835-8250
           rcoffman@coffmanlawfirm.com

Ben Barnow
Erich P. Schork
**BARNOW AND ASSOCIATES, PC**
One N. LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Facsimile: (312) 641-5504
b.barnow@barnowlaw.com
b.strautins@barnowlaw.com

Timothy G. Blood
Thomas J. O'Reardon II
**BLOOD HURST & O'REARDON, LLP**
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
tblood@bholaw.com
toreardon@bholaw.com

Edward K. Wood
**WOOD LAW FIRM, LLC**
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone: (205) 612-0243
Fax: (866) 747-3905
ekirkwood1@bellsouth.net

Lance A. Harke
Howard M. Bushman
**HARKE, CLASBY & BUSHMAN, LLP**
9699 NE Second Avenue
Miami Shores, FL 33138
Telephone: (305) 536-8220
Facsimile: (305) 536-8229
lharke@harkeclasby.com
hbushman@harkeclasby.com

Mark. K Gray
**GRAY & WHITE**
713 East Market Street
Louisville, KY 40202
Telephone: (502) 210-8942
Facsimile: (502) 618-4059
MGray@grayandwhitelaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2012, I electronically filed the foregoing Kentucky/California Plaintiffs' Consolidated Amended Class Action Complaint with the Clerk of Court by using the CM/ECF system, thereby electronically serving a copy of same on all counsel of record.


_/s/ Richard L. Coffman_
Richard L. Coffman