MORRIS LAW GROUP
Robert McCoy, No. 9121
Email: rrm@morrislawgroup.com
Raleigh C. Thompson, No. 11296
Email: rct@morrislawgroup.com
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada  89101
Telephone:  (702) 474-9400
Facsimile:  (702) 474-9422

STROOCK & STROOCK & LAVAN LLP
Julia B. Strickland (Pro HacVice)
Email: jstrickland@stroock.com
Steven J. Newman (Pro Hac Vice)
Email: snewman@stroock.com
Brian C. Frontino (Pro Hac Vice)
Email: bfrontino@stroock.com
Jeffrey B. Bell (Pro Hac Vice)
Email: jbell@stroock.com
2029 Century Park East, Suite 1600
Los Angeles, California 90067
Telephone:  (310) 556-5800
Facsimile:  (310) 556-5959

Attorneys for Defendants Zappos Development,
Inc., Zappos.com, Inc., and Zappos Retail, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | | |
|---|---|---|
| IN RE ZAPPOS SECURITY BREACH LITIGATION | ) ) ) | MDL: 2357<br>Case No. 3:12-cv-00325-RCJ-VPC |
| ----------------------------------- | ) ) ) | **DEFENDANT ZAPPOS.COM, INC.'S MOTION TO DISMISS COMPLAINTS** |
| This document relates to:<br><br>ALL ACTIONS<br>_____ | ) ) ) ) | |

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................1

II.  BACKGROUND FACTS ........................................................................4

     A.   Zappos ........................................................................................4

     B.   The Incident ...............................................................................5

     C.   No Harm Resulted To Plaintiffs From The Incident.....................6

     D.   Plaintiffs' Claims.......................................................................10

III. ARGUMENT .......................................................................................11

     A.   Standard On A Motion To Dismiss. ...........................................11

     B.   Plaintiffs' Complaints Must Be Dismissed In Their Entirety
          Because Plaintiffs Lack Standing. ............................................12

          1.   Standing Is A Critical Threshold Inquiry............................12

          2.   Most Plaintiffs Allege Neither Present Injury Nor
               Immediate Risk Of Direct Injury, Defeating Standing.......13

          3.   Claims Based On The Purchase Of Credit Monitoring
               Also Should Be Dismissed..................................................16

          4.   Claims Of Alleged Unauthorized Access To AOL Email
               Accounts Also Should Be Dismissed. ................................17

     C.   Because Only Claims Under Nevada Law May Be Pursued,
          All Other Claims Must Be Dismissed. ......................................18

     D.   The California And Washington Breach Notice Claims Should
          Be Dismissed. ..........................................................................21

     E.   Claims For Public Disclosure Of Private Facts Should Be
          Dismissed. ................................................................................23

     F.   Plaintiffs' Breach Of Contract And Breach Of Implied Contract
          Claims Fail As A Matter Of Law................................................25

          1.   Plaintiffs Are Judicially Estopped From Pleading A
               Contract Claim. .................................................................25

          2.   Plaintiffs Cannot Identify An Implied Contract. ...............27

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101

702/474-9400 · FAX 702/474-9422

i

G.    If The Contract Claims Survive Dismissal, The Economic Loss Doctrine Bars Plaintiffs' Tort Claims.................................................28

H.    Plaintiffs' Negligence Claims Also Fail Independent Of The Economic Loss Doctrine....................................................................29

    1.    Zappos Breached No Legal Duty To Plaintiffs. ..................30

    2.    The Criminal Act Here Precludes Proximate Causation. ..31

I.    Plaintiffs' Unfair Practices Claims Cannot Proceed......................32

    1.    Plaintiffs Fail To Plead With The Requisite Particularity..32

    2.    No Claim Is Stated Under Nevada's Deceptive Trade Practices Act................................................................................34

    3.    Plaintiffs Do Not State A Claim Under Any Of The Other States' Statutes Either. ...................................................35

        a.    The Alabama Deceptive Trade Practices Act ...........35

        b.    The California UCL, FAL and CLRA ........................35

        c.    Florida Deceptive And Unfair Trade Practices Act..37

        d.    Massachusetts Deceptive Trade Practices Act .........37

        e.    New York Deceptive Practices Act ............................38

        f.    Texas Deceptive Trade Practices-Consumer Protection Act..............................................................39

        g.    Virginia Consumer Protection Act ............................39

        h.    Washington Consumer Protection Act ......................40

J.    The Stevens Plaintiffs' Credit Reporting Claims Fail. ..................41

    1.    Zappos Is Not A Credit Bureau.............................................41

    2.    The Data Subject To The Incident Was Not A Consumer Report. .......................................................................................43

    3.    "Experience Data" Expressly Is Exempt From The FCRA. 44

    4.    At A Minimum, The Claim For A Willful FCRA Violation Should Be Dismissed. ............................................45

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

K.    The Stevens Plaintiffs Cannot Recover For Unjust Enrichment. 46

L.    The Stevens Plaintiffs' Duplicative Declaratory Relief Claim
      Should Be Dismissed. ........................................................................47

IV.  CONCLUSION ..............................................................................................48

# TABLE OF AUTHORITIES

**CASES**                                                                                    Page Nos.

*Abogados v. AT&T, Inc.,*
  223 F.3d 932 (9th Cir. 2000) ................................................................. 18

*Ali v. Vikar Mgmt. Ltd.,*
  994 F. Supp. 492 (S.D. N.Y. 1998) ...................................................... 43

*Am. Bankers Assoc. v. Gould,*
  412 F.3d 1081 (9th Cir. 2005) ............................................................. 44

*Amburgy v. Express Scripts, Inc.,*
  671 F. Supp. 2d 1046 (E.D. Mo. 2009) ......................................... 15, 16

*Ashcroft v. Iqbal,*
  556 U.S. 662, S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................ 11, 17, 41

*Banknorth N.A. v. BJ's Wholesale,*
  442 F. Supp. 2d 206 (M.D. Pa. 2006) .................................................. 29

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .............. 11, 41

*Bell v. Axiom Corp.,*
  No. 4:06-CV-00485–WRW, 2006 WL 2850042 (E.D. Ark. Oct. 3, 2006) ....... 15

*Billions v. White & Stafford Furniture Co.,*
  528 So. 2d 878 (Ala. Civ. App. 1988) ................................................. 35

*Boise Tower Assocs., LLC v. Wash. Cap. Joint Master Trust,*
  No. CV 03-141-S-MHW, 2006 U.S. Dist.
  LEXIS 45851(D. Idaho June 22, 2006) ......................................... 19, 21

*Burrows v. Purchasing Power, LLC,*
  No. 12-cv-22800, Dkt. No. 37 (S.D. Fla. Oct. 18, 2012) ..................... 46

*Caudle v. Towers, Perrin, Forster & Crosby, Inc.,*
  580 F. Supp. 2d 273 (S.D.N.Y. 2008) ................................................. 16

*Cent. Delta Water Agency v. United States,*
  306 F. 3d 938 (9th Cir. 2002) ............................................................. 12

*Chandler v. Roach,*
  319 P.2d 776 (Cal. App. 1957) ........................................................... 27

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101 · 702/474-9400 · FAX 702/474-9422

iv

*City First Mortg. Corp. v. Barton*,
  988 So. 2d 82 (Fla. Dist. Ct. App. 2008) ........................................................37

*ClubCom, Inc. v. Captive Media, Inc.*,
  No. 02:07-cv-1462, 2009 U.S. Dist. LEXIS 7960
  (W.D. Pa. Jan. 31, 2009) ..............................................................................21

*Collegenet, Inc. v. XAP Corp.*,
  No. 04-793-HU, 2004 U.S. Dist. LEXIS 16345
  (D. Or. Aug. 11, 2004) ..................................................................................20

*Del Vecchio v. Amazon.com, Inc.*,
  No. C11-366-RSL, 2011 WL 6325910
  (W.D. Wash. Dec. 1, 2011) ....................................................................40, 41

*Dictor v. Creative Mgmt. Serv., LLC*,
  126 Nev. Adv. Op.4, 223 P.3d 332 (2010) ....................................................18

*DiGianni v. Stern's*,
  26 F.3d 346 (2d Cir. 1994) ............................................................................42

*Doe v. Boy Clubs of Greater Dallas, Inc.*,
  907 S.W.2d 472 (Tex. 1995) .........................................................................39

*Doe v. Pryor*,
  344 F.3d 1282, (11th Cir. 2003) ...................................................................12

*Dotzler v. Perot*,
  914 F. Supp. 328 (E.D. Mo. 1996) ...............................................................43

*Doud v. Las Vegas Hilton Corp.*,
  109 Nev. 1096, 864 P.2d 796 (1993) ............................................................30

*Edwards v. Marin Park, Inc.*,
  356 F.3d 1058 (9th Cir. 2004) .......................................................................32

*Ex parte Exxon Corp.*,
  725 So. 2d 930 (Ala. 1998) ...........................................................................35

*Faigman v. Cingular Wireless, LLC*,
  No. C 06-04622 MHP, 2007 WL 708554
  (N.D. Cal. Mar. 2, 2007)..........................................................................33, 36

*Fayer v. Vaughn*,
  649 F.3d 1061 (9th Cir. 2011) .......................................................................11

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

v

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) ....................................12

*Fuges v. Southwest Fin. Servs., Ltd.*,
No. 11-4504 (3d Cir. Dec. 6, 2012) .................................................................45

*Garcia v. UnionBanCal Corp.*,
No. C06-03762, 2006 WL 2619330 (N.D. Cal. Sept. 12, 2006) .......................44

*Gazija v. Nicholas Jerns Co.*,
215 P.2d 338 (Wash. 1975).............................................................................15

*Gen. Motors Corp. v. Eighth Judicial Dist. Ct. of the State of Nev.*,
122 Nev. 466, 134 P.3d 111 (2006) .................................................................18

*Giordano v. Wachovia Sec., LLC*,
No. 06-476 (JBS), 2006 WL 2177036 (D.N.J. July 31, 2006) ...........................15

*Gomon v. TRW, Inc.*,
28 Cal. App. 4th 1161 (1994) .........................................................................43

*Gratz v. Bollinger*,
539 U.S. 244, 123 S. Ct. 2411, 156 L. Ed. 2d 257 (2003) ..................................7

*Grigsby v. Valve Corp.*,
No. 2:12-cv-00553-JLR, 2012 WL 5993755 (W.D. Wash. Nov. 14, 2012)......17

*Hammond v. The Bank of New York Mellon Corp.*,
No. 08 Civ. 6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010)..........15, 16, 38

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
719 P.2d 531 (Wash. 1986).............................................................................40

*Hodge v. Texaco, Inc.*,
975 F.2d 1093 (5th Cir. 1992).........................................................................45

*Holmes v. Countrywide Fin. Corp.*,
No. 5:08–CV–00205–R, 2012 WL 2873892
(W.D. Ky. July 12, 2012) ........................................................................ passim

*Horner v. Mortgage Elec. Registration Sys., Inc.*,
2:12-CV-269 JCM GWF, 2012 WL 2017589
(D. Nev. June 5, 2012) ...................................................................................33

*Huston v. Verizon Fed. Network Systs., LLC*,
No. 2:07-CV-00201-BES-LRL, 2008 WL 4279418
(D. Nev. Sept. 17, 2008) .................................................................................25

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

vi

*Hycor Corp. v. Dontech, Inc.*,
   No. 84 C 3398, 1985 U.S. Dist. LEXIS 14180
   (N.D. Ill. Nov. 4, 1985)....................................................................20

*In re Expedia Hotel Taxes & Fees Litig.*,
   377 F. Supp. 2d 904 (W.D. Wash. 2005) .........................................18

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   MDL 11-MD-2258 AJB MDD, 2012 WL 4849054
   (S.D. Cal. Oct. 11, 2012) ........................................................ passim

*In re TJX*, 524 F. Supp. 2d 83 (D. Mass. 2007)..................................29

*In re Vioxx Class Cases*,
   180 Cal. App. 4th 116, 129, 103 Cal. Rptr. 3d 83 (2009) ................36

*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,
   170 P.3d 10 (Wash. 2007)...............................................................40

*Joyner v. Bank of Am. Home Loans*,
   No. 2:09-CV-2406-RCJ-RJJ, 2010 WL 2953969
   (D. Nev. July 26, 2010)...................................................................26

*Katz v. Pershing, LLC*,
   806 F. Supp. 2d 452 (D. Mass. 2011) .............................................38

*Keife v. Metro. Life Ins. Co.*,
   797 F. Supp. 2d 1072 (D. Nev. 2011)..............................................26

*Key v. DSW, Inc.*,
   454 F. Supp. 2d 684 (S.D. Ohio 2006) ............................................15

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
   313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941) .........................18

*Koepke v. Loo*,
   18 Cal. App. 4th 1444, 23 Cal. Rptr. 2d 34 (1993) ...........................31

*Konig v. N.-C.-O. Ry.*,
   36 Nev. 181, 135 P. 141 (1913)........................................................31

*Krottner v. Starbucks Corp.*,
   406 F. App'x 129 (9th Cir. Dec. 2010) ......................................16, 27

*Krottner v. Starbucks Corp.*,
   628 F.3d 1139 (9th Cir. 2010)....................................................13, 14

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101 · 702/474-9400 · FAX 702/474-9422

*Kuhn v. Account Control Tech., Inc.,*
   865 F. Supp. 1443 (D. Nev. 1994) ....................................................24

*Kwikset Corp. v. Super. Ct.,*
   51 Cal. 4th 310, 120 Cal. Rptr. 3d 741 (2011) ...................................36

*Lambert v. Hartman,*
   517 F.3d 433 (6th Cir. 2008) .............................................................14

*Lane v. Fein, Such & Crane, LLP,*
   767 F. Supp. 2d 382 (E.D.N.Y. 2011) ................................................38

*Laracuente v. Laracuente,*
   599 A.2d 968 (N.J. Super. Ct. 1991) ..................................................42

*Leal v. Bank of New York Mellon,*
   CA C-12-265, 2012 WL 5465978 (S.D. Tex. Oct. 22, 2012) ..............39

*Leasepartners Corp. v. Brooks Trust,*
   113 Nev. 747, P.2d 182 (1997) ..........................................................46

*Local Joint Exec. Bd. v. Stern,*
   98 Nev. 409, 651 P.2d 637 (1982) ......................................................29

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ..................12

*Malik v. AT&T Mobility, LLC,*
   No. 1:08-cv-234, 2009 WL 198710 (W.D. Mich. Jan. 23, 2009)........43

*Mangeris v. Gordon,*
   94 Nev. 400, 580 P.2d 481 (1978) ......................................................30

*May v. Anderson,* 121, Nev. 668,119 P.3d 1254 (2005)..............................26

*Metro Allied Ins. Agency, Inc. v. Lin,*
   304 S.W.3d 830 (Tex. 2009)...............................................................39

*Meyer v. Sprint Spectrum L.P.,*
   200 P.3d 295 (Cal. 2009).....................................................................36

*Montesano v. Donrey Media Group,*
   99 Nev. 644, 668 P.2d 1081 (1983) ................................................23, 24

*Motenko v. MGM Dist., Inc.,*
   112 Nev. 1038, 921 P.2d 933 (1996) ..................................................19

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

viii

*Nahigian v. Juno Loudoun, LLC,*
   684 F. Supp. 2d 731 (E.D. Va. 2010) ................................................33

*Nevada Tri-County Equip. & Leasing, LLC v. Klinke,*
   128 Nev. Adv. Op. 33, 286 P.3d 593 (2012) ......................................21

*NRDC v. EPA,*
   464 F.3d 1 (D.C. Cir. 2006) ..............................................................14

*Nuttleman v. Vossberg,*
   585 F. Supp. 133 (D. Neb. 1984) ......................................................45

*Patel v. Holiday Hospitality Franchising, Inc.,*
   172 F. Supp. 2d 821 (N.D. Tex. 2001) ..............................................33

*Penn. State Employees Credit Union v. Fifth Third Bank,*
   398 F. Supp. 2d 317 (M.D. Pa. 2005) ................................................29

*Perret v. Wyndham Vacation Resorts, Inc.,*
   No. 11-CV-61904, 2012 WL 718794 (S.D. Fla. Mar. 5, 2012) ..........33

*Picus v. Wal–Mart Stores, Inc.,*
   256 F.R.D. 652 (D. Nev. 2009) ..........................................................34

*Polk v. Crown Auto, Inc.,*
   228 F.3d 541 (4th Cir. 2000) ......................................................39, 40

*Ponder v. Pfizer, Inc.,*
   522 F. Supp. 2d 793 (M.D. La. 2007) ..............................................16

*Price v. Blaine Kern Artista, Inc.,*
   111 Nev. 515, 893 P.2d 367 (1995) ..................................................31

*Quinn v. Thomas,*
   No. 2:09–CV–00588–KJD–RJJ, 2010 WL 3021795
   (D. Nev. July 28, 2010) ....................................................................25

*Randolph v. ING Life Ins. & Annuity Co.,*
   486 F. Supp. 2d 1 (D.D.C. 2007) ......................................................15

*Randolph v. ING Life Ins. and Annuity Co.,*
   973 A.2d 702 (D.C. 2009) ............................................................16, 23

*Ready & Motivated Minds LLC v. Ceridian Corp.,*
   No. 10-1654 (JLL), 2010 WL 2989986 (D.N.J. July 26, 2010) ..........27

*Reilly v. Ceridian Corp.,*
   664 F.3d 38 (3d Cir. 2011) ..........................................................14, 15

ix

*Resnick v. AvMed, Inc.*,
   693 F.3d 1317 (11th Cir. 2012)...............................................15, 17

*Rice v. Montgomery Ward & Co.*,
   450 F. Supp. 668 (M.D.N.C. 1978)....................................................42

*Roberts v. Healey*,
   991 S.W.2d 873 (Tex. App. 1999)....................................................39

*Rollins, Inc. v. Butland*,
   951 So. 2d 860 (Fla. Dist. Ct. App. 2006) .......................................37

*Ruiz v. Gap, Inc.*,
   07-5739 SC, 2009 WL 250481 (N.D. Cal. Feb. 3, 2009)..................36

*Rush v. Macy's New York, Inc.*,
   775 F.2d 1554 (11th Cir. 1985).......................................................42

*Safeco Ins. Co. v. Burr*,
   551 U.S. 47, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) ...............45

*Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*,
   125 Nev. 818, 221 P.3d 1276 (2009) ...............................................30

*Scott v. Pasadena Unified Sch. Dist.*,
   306 F.3d 646 (9th Cir. 2002)...........................................................13

*See In re iPhone Application Litig.*,
   No. 11–MD–02250–LHK, 2011 WL 4403963
   (N.D. Cal. Sept. 20, 2011) ...............................................................36

*See M & R Inv. Co., Inc. v. Mandarino*,
   103 Nev. 711, 748 P.2d 488 (1987) .................................................24

*Shafran v. Harley-Davidson, Inc.*,
   07 CIV. 01365 (GBD), 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008)................16

*Simon v. Bank of Am., N.A.*,
   10-CV-00300-GMN-LRL, 2010 WL 2609436
   (D. Nev. June 23, 2010) ...................................................................34

*Simon v. Eastern Ky. Welfare Rights Org.*,
   426 U.S. 26, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976) .......................12

*Smith v. 2001 S. Dixie Highway, Inc.*,
   872 So. 2d 992 (Fla. Dist. Ct. App. 2004) .......................................37

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

*Smith v. Bob Smith Chevrolet, Inc.,*
  275 F. Supp. 2d 808 (W.D. Ky. 2003) ................................................43

*Smith v. First Nat'l Bank,*
  837 F.2d 1575 (11th Cir. 1988)........................................................42

*Smith v. Recrion Corp.,*
  91 Nev. 666, 541 P.2d 663 (1975) ............................................26, 27

*St. James v. Equilon Enters., LLC,*
  No. 08-CV-00962 W (AJB), 2008 U.S. Dist. LEXIS 70271
  (S.D. Cal. Sept. 15, 2008) ..............................................................20

*Stutman v. Chem. Bank,*
  95 N.Y.2d 24, 731 N.E.2d 608 (2000) ............................................38

*Swanson v. Cent. Bank & Trust Co.,*
  5:03-255-JMH, 2005 WL 1324887
  (E.D. Ky. June 3, 2005) ..................................................................42

*Swartz v. KPMG LLP,*
  476 F.3d 756 (9th Cir. 2007) ..........................................................47

*Tarasoff v. Regents of Univ. of Cal.,*
  551 P.2d 334 (Cal 1976) .................................................................30

*Terracon Consultants W., Inc. v. Mandalay Resort Group,*
  125 Nev. 66, 206 P.3d 81 (2009) ....................................................29

*Thomas v. Bokelman,*
  86 Nev. 10, 462 P.2d 1020 (1970) ..................................................31

*Todd v. Associated Credit Bureau Servs.,*
  451 F. Supp. 447 (E.D. Pa. 1977) ...................................................42

*Unionamerica Mtg. v. McDonald,*
  97 Nev. 210, 626 P.2d 1272 (1981) ................................................46

*United States v. Ritchie,*
  342 F.3d 903 (9th Cir. 2003).........................................................5, 8

*Van Cleave v. Kietz-Mill Minit Mart,*
  97 Nev. 414, 633 P.2d 1220 (1981) ................................................31

*Van Slyke v. Cap. One Bank,*
  No. C 07-00671 WHA, 2007 U.S. Dist. LEXIS 82690
  (N.D. Cal. Nov. 7, 2007) ................................................................20

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101 · 702/474-9400 · FAX 702/474-9422

xi

*Vess v. Ciba-Geigy Corp. USA,*
  17 F.3d 1097 (9th Cir. 2003)....................................................32

*Virgil v. Time, Inc.,*
  527 F.2d 1122 (9th Cir. 1975)...................................................24

*Walker v. Geico Gen. Ins. Co.,*
  558 F.3d 1025 (9th Cir. 2009)...................................................36

*Warren v. Fox Family Worldwide, Inc.,*
  328 F.3d 1136 (9th Cir. 2003)...................................................12

*Warrington v. Empey,*
  95 Nev. 136, 590 P.2d 1162 (1979) .........................................27

*Washington v. CSC Credit Services, Inc.,*
  199 F.3d 263 (5th Cir. 2000)....................................................42

*White v. Imperial Adjustment Corp.,*
  CIV.A. 99-3804, 2002 WL 1809084 (E.D. La. Aug. 6, 2002) ...........42

*Whitmore v. Arkansas,*
  495 U.S. 149, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990) ...............14

*Wilens v. TD Waterhouse Group, Inc.,*
  120 Cal. App. 4th 746, 15 Cal. Rptr. 3d 271 (2003) ......................36

*Worrix v. MedAssets, Inc.,*
  857 F. Supp. 2d 699 (N.D. Ill. Mar. 8, 2012).............................16

*Yoscovitch v. Wasson,*
  98 Nev. 250, 645 P.2d 975 (1982) ...........................................31

*Young v. Facebook, Inc.,*
  790 F. Supp. 2d 1110 (N.D. Cal. 2011) ..............................27, 28

*Youngblood v. Schireman,*
  765 P.2d 1312 (Wash. App. 1988)...........................................30

**STATUTES**

15 U.S.C. § 1681 .....................................................................11

15 U.S.C. § 1681(b) ...........................................................41, 43

15 U.S.C. § 1681a(d)(1) ...........................................................43

15 U.S.C. § 1681a(d)(2)(A)(i).....................................................44

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

15 U.S.C. § 1681a(f) ................................................................41

15 U.S.C. § 1681c(g) ......................................................5, 22, 24

15 U.S.C. § 1681n ...................................................................45

Ala. Code § 8-19-10(f) .............................................................35

California and Washington Data Breach
   Notification Statutes, Civil Code § 1798.80 ........................10

California Civil Code 1798.83(a) .............................................22

California Civil Code section 1798.29 .....................................22

California Civil Code Section 1798.3(b) ...................................22

California Civil Code Section 1798.82(h) .................................21

California Civil Code Section 1798.82(h)(1), (2), (4) or (5) .......22

California Civil Code Section 1798.82(h)(3) .............................22

California Civil Code Section 1798.83 ......................................22

California's Consumers Legal Remedies
   Act, Civil Code § 1750 ........................................................10

California's False Advertising Law,
   Business & Professions Code § 17500 ..................................10

California's Unfair Competition Law, Business
   & Professions Code § 17200 ......................................10, 21, 36

Fed. R. Civ. P. 9(b)............................................................32, 33

Massachusetts Deceptive Trade Practices Act Chapter 93A ...........37

Massachusetts Deceptive Trade Practices Act Chapter 93H...........37

New York Deceptive Practices Act, General Business Law § 349 .................38

NRS 598 ..................................................................................34

NRS 603A.040(3) ....................................................................23

Texas Deceptive Trade Practices-Consumer Protection Act,
   Texas Business & Commercial Code § 17.41 ........................39

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Virginia Consumer Protection Act, Virginia Code § 59.1-196 ........................39

Wash. Rev. Code § 19.255.010(c)...............................................................23

Washington Statutes § 19.255.020..............................................................10

Washington's Consumer Protection Act,
    Washington Revised Code § 19.86.010 ...........................................40

**OTHER AUTHORITIES**:

Prosser, *Privacy*,
    48 Cal. L. Rev. 383 (1960) ..............................................................24

Restatement (Second) of Conflict of Laws, § 145 ...................................18, 19, 20

Restatement (Second) of Torts, § 315 ................................................30

**POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Defendant Zappos.com, Inc. ("Zappos") moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the two Complaints filed on November 12, 2012 (##58, 59) by plaintiffs Stephanie Preira, Robert Ree, Shari Simon, Patti Hasner, Katherine Vorhoff, Dahlia Habashy, Zetha Nobles, Josh Richards, Patricia Gallatin and Sylvia St. Lawrence (collectively, the "Preira Plaintiffs"), and by plaintiffs Theresa D. Stevens, Stacy Penson, Tara J. Elliot, Brooke C. Brown, Christa Seal, Denise Relethford and Emily E. Braxton (collectively, the "Stevens Plaintiffs") (together with the Preira Plaintiffs, "Plaintiffs").

The Complaints arise from a January 2012 cybercrime committed against the online retailer Zappos by a computer hacker (the "Incident"), wherein the hacker may have gained access to a limited amount of data about Zappos's customers (potentially including names, email addresses, billing and shipping addresses, phone numbers, credit card tail and/or cryptographically-scrambled Zappos account passwords).  Acting responsibly, Zappos notified its entire customer base about the Incident, reset its customers' passwords and advised its customers that, as a precaution, they should change passwords on any account where they used the same password as used on their Zappos account.  Zappos also informed customers that it would *not* request personal information from them via email and that they should exercise caution if they receive unsolicited requests for such information.  In response to this notification, multiple counsel and Plaintiffs unreasonably assumed the worst, and filed lawsuits alleging, on information and belief, that the Incident somehow resulted from inadequate security.

1

It appears, however, that no Plaintiff has been the victim of identity theft or experienced unauthorized credit card charges, even though almost a year has passed since the Incident.  As far as Zappos knows (and the Complaints do not suggest otherwise), *none* of Zappos's customers has suffered any financial losses as a result of the Incident.  Plaintiffs claim only that they face heightened risk of identity theft in the future, and that they were inconvenienced by changing passwords.  The lawsuits nevertheless persist, but the Court should let them linger no longer.

As amply demonstrated below, all alleged claims fail and should be dismissed.  As an initial matter, Plaintiffs lack standing to sue.  Only limited data was potentially compromised in the Incident, and Plaintiffs' claims of heightened risk of future identity theft are too attenuated to merit suit.  Nor is the minor inconvenience of changing passwords on other accounts sufficient to allow standing.  Moreover, the few Plaintiffs who allege out-of-pocket expense, in the form of purchasing credit monitoring service, also lack standing because their allegations establish no genuine causal link between the Incident and the purchases; numerous courts recognize that the voluntary decision to purchase credit monitoring does not confer standing.  Finally, the two Plaintiffs who claim that their unrelated email accounts coincidentally were accessed fail to allege how such access is tied to the Incident.

The claims also are defeated for numerous additional reasons:

- Nevada law applies, barring Plaintiffs' non-Nevada statutory claims.

- The information potentially accessed during the Incident is not "personal information" within the meaning of any data breach notification statute, because usable credit card account information was not subject to the Incident.

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

- As the victim of a crime, Zappos did not intend to disclose any private facts, nor did it disclose any information to the public at large, and the facts at issue would not cause embarrassment or humiliation.  Accordingly, no claim for invasion of privacy by public disclosure of private facts can be stated.

- The contract claims are barred because, in opposing Zappos's motion to compel arbitration, Plaintiffs denied any meeting of the minds with respect to any express contract.  Moreover, Plaintiffs' allegations fail to establish any manifestation of assent to any implied contract, or any specific terms thereof. The statements on Zappos's website also directly contradict Plaintiffs' contract allegations.

- To the extent this Court allows a breach of contract claim to proceed, notwithstanding its fatal flaws, the economic loss doctrine bars all tort claims.

- Plaintiffs' negligence claims fail because there was no special relationship, and thus no duty, between Zappos and Plaintiffs.  Because it is undisputed that the Incident resulted from the criminal act of a third party unknown to Zappos, the requisite element of proximate causation also is lacking.

- Plaintiffs' unfair trade practices claims fail because they are not pleaded with adequate specificity, and because no actionably false or misleading statement is alleged.  Zappos disclaimed any commitment to provide perfect security, and no Plaintiff suffered any financial loss subject to the Zappos Safe Shopping Guarantee.  Moreover, Plaintiffs' allegations of

causation and injury do not meet the relevant legal standards for unfair trade practices claims.

- There can be no claim under the federal Fair Credit Reporting Act because Zappos is not a "consumer reporting agency," as defined in the statute, and as a matter of law the Incident did not constitute the "furnishing" of a "consumer report."  Nor do Plaintiffs allege any willful violation of law.

- Plaintiffs cannot demand restitution for unjust enrichment because there has been no inequity and Zappos was not enriched by the Incident.

- Plaintiffs' declaratory relief claim is duplicative of the other claims, and thus not a proper independent claim for relief.

All of these defects are fundamental and cannot be cured by amendment.  Accordingly, each of the Complaints should be dismissed without leave to amend.

## II.   BACKGROUND FACTS

### A.   Zappos

Zappos is a Delaware corporation headquartered in Henderson, Nevada.  Preira Amended Consolidated Complaint ("Preira Complaint") ¶ 21; Stevens Consolidated Amended Class Action Complaint ("Stevens Complaint") ¶ 1.[1]  Zappos sells shoes and other products online.  Preira Complaint ¶ 3; Stevens Complaint ¶ 2.  For convenience, Zappos customers may establish accounts where billing and shipping information is stored, and Zappos customers create their own passwords to control access to these accounts and prevent unauthorized persons from making purchases on their

---

[1] As it must for purposes of this Motion, Zappos treats Plaintiffs' factual allegations as if they are true, except where contradicted by judicially noticeable material.  If this matter proceeds beyond the pleading stage, Zappos would dispute Plaintiffs' allegations.

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

behalf.  *See* Stevens Complaint ¶1.  *Critically, no Plaintiff alleges that he or she was the victim of any unauthorized purchase or even an attempted unauthorized purchase.*

**B.     The Incident**

The Incident occurred in January 2012, when a computer hacker (or group of hackers) accessed Zappos's computer servers without authorization.  Preira Complaint ¶ 4; Stevens Complaint ¶ 2.  During the Incident, the hacker may have learned certain Zappos customers' names, email addresses, shipping and billing addresses and telephone numbers.  *Id.*  Additionally, the hacker may have learned credit card tails, such as are routinely printed on credit card receipts.  *Id.*; *see also* 15 U.S.C. § 1681c(g) (permitting printing of up to five digits).  Full account numbers, expiration dates or credit card security codes[2] were *not* accessed, *and Plaintiffs do not allege otherwise.*  Usable password information also was not accessed; password data the hacker may have observed was cryptographically scrambled.  *See* Preira Complaint ¶ 5; Stevens Complaint ¶ 3; Ex. A.[3]

As a precautionary measure, on January 15, 2012, Zappos transmitted email notice to its entire 24 million customer base about the Incident.  *See* Preira Complaint ¶¶ 4-5; Stevens Complaint ¶¶ 2-3.  The email

_____

[2] These are additional digits that appear elsewhere on a card to allow a merchant to confirm that a telephone or online order is made by a person with physical possession of the card.  *See* http://usa.visa.com/personal/security/visa_security_program/3_digit_security_code.html (visited December 6, 2012).

[3] A true and correct copy of the email notification of the Incident that Zappos sent to its customers is attached hereto as Exhibit A.  Because the email is cited and quoted in both Complaints (*see* Priera Complaint ¶¶ 5, 13-19 & 27; Stevens Complaint ¶¶ 3, 14-20, 27, 41 & 48), but not attached or set forth in its entirety in either, the Court properly may consider it on a motion to dismiss.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

advised customers that the Incident occurred and described the data potentially affected. It also included the following warning:

> SECURITY PRECAUTIONS:
>
> For your protection and to prevent unauthorized access, we have expired and reset your password so you can create a new password. Please follow the instructions below to create a new password.
>
> We also recommend that you change your password on any other web site where you use the same or a similar password. As always, please remember that Zappos.com will *never* ask you for personal or account information in an email. Please exercise caution if you receive any emails or phone calls that ask for personal information or direct you to a web site where you are asked to provide personal information.

Ex. A (emphasis added).

Customer response to the notice was overwhelming, and caused a temporary disruption of Zappos's ability to respond to customers' telephone inquiries. Preira Complaint ¶ 5; Stevens Complaint ¶ 3.

Plaintiffs do *not* allege that Zappos was subject to any prior similar hacking incident, and do *not* allege that it received any specific warning or other information suggesting that it was at risk of cyber attack.

**C.    No Harm Resulted To Plaintiffs From The Incident.**

Soon after the notice was sent, Zappos was sued in multiple jurisdictions, and the cases were coordinated here. Now, after almost a year has passed, it is clear that the Incident did not actually impact Plaintiffs. No Plaintiff pleads any actual identity theft, a specific attempt to commit identity theft, any unauthorized charges to his or her Zappos account or any unauthorized charges to any credit card account used to make prior Zappos purchases. Instead, most Plaintiffs allege only that the Incident caused them an increased risk of identity theft. Stevens Complaint ¶¶ 6-7 (all Stevens

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

Plaintiffs); Preira Complaint ¶¶ 14-16, 19-20 & 50 (Preira Plaintiffs Ree, Simon, Vorhoff, Richards, St. Lawrence and Gallatin).[4]

Plaintiffs also complain about the inconvenience of having to change passwords on other accounts, and about Zappos's inability to answer questions about the Incident over the telephone shortly after it sent its email notice of the Incident.  Stevens Complaint ¶¶ 6-7.  None of these Plaintiffs allege any out-of-pocket expense.  Thus, although Plaintiffs quote selectively from portions of the Zappos website (Preira Complaint ¶¶ 25-26, 32, 78; Stevens Complaint ¶¶ 24-26, 100), the Zappos "Safe Shopping

---

[4] The Preira Plaintiffs' allegations are particularly conclusory.  Essentially, they allege only that they received Zappos's email notification of the Incident.  The only allegation about Plaintiff Gallatin is that she wants to represent a Virginia subclass.  Rather than discuss any real-world impact on the actual Plaintiffs, the Preira Complaint instead references a news story about someone -- not a Plaintiff -- who received a credit card fraud alert shortly after the Incident occurred.  Preira Complaint ¶ 6.  The quoted statement is unreliable hearsay *and does not even cast blame on Zappos*.  Even the speaker considered the fraud alert to be coincidental:  "One Las Vegas customer who asked that her last name not be used, 63-year-old Anne Marie, reached out to the Review-Journal after receiving two emails Monday morning: one from Zappos, about the security breach, then one from American Express, about fraudulent activity on her credit card.  'It could be a coincidence that it happened just after the Zappos email,' the retiree said.  'If I'm the only one out of 24 million people, then I guess it's a coincidence.  I wonder if other people are affected.'" http://www.lvrj.com/business/Zappos-alerts-account-holders-of-hacker-security-breach-137453118.html (last updated Jan. 17, 2012; visited Dec. 6, 2012).  Similar speculation in the Complaints about the possibility of unauthorized wire transfers or other hypothetical malfeasance is wholly unsubstantiated, and none of Plaintiffs alleges that this happened to him or her.  Each plaintiff "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Gratz v. Bollinger*, 539 U.S. 244, 289, 123 S. Ct. 2411, 156 L. Ed. 2d 257 (2003) (internal quotation marks and citations omitted).  Accordingly, the allegations regarding unnamed Zappos customers, not specifically identified as Plaintiffs, must be wholly disregarded.

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

Guarantee," which protects against unauthorized credit card charges, has not been triggered.  The "Safe Shopping Guarantee" states:[5]

**Zappos.com Safe Shopping Guarantee - Protection Against Credit Card Fraud:**

Shopping on Zappos.com is safe.  Every credit card purchase is covered by our Safe Shopping Guarantee:

> 1.   Under the Fair Credit Billing Act, your bank cannot hold you liable for more than $50.00 of fraudulent charges.  If your bank does hold you liable for any of this $50.00, we will cover the liability for you, up to the full $50.00. We will only cover this liability if the unauthorized use of your credit card resulted through no fault of your own from purchases made on our website while using the secure server.

> 2.  In the event of unauthorized use of your credit card, you must notify your credit card provider in accordance with its reporting rules and procedures.

**Shop Safely and Securely:**

Zappos.com takes great pride in offering a safe and secure online shopping experience.

We understand that the safety of your personal information is extremely important to you. We use a wide array of electronic and physical security measures and devices to protect your personal data and credit card information from unauthorized access.

No Plaintiff contends that he or she has been a victim of any unauthorized credit card charge, and thus Zappos has not been called upon to act under its Safe Shopping Guarantee with respect to any of Plaintiffs. Nor does any Plaintiff dispute that Zappos uses "a wide array of electronic and physical security measures," such as scrambling passwords and limiting

---

[5] The "Safe Shopping Guarantee," referenced in both Complaints but only quoted selectively, is attached hereto as Exhibit B.  *See Ritchie*, 342 F.3d at 908.

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

display of credit card information to the trailing four digits -- measures that were apparently effective here, as Plaintiffs identify no unauthorized charges or any actual identity theft.

Four Plaintiffs unsuccessfully include threadbare allegations of something more than inconvenience or fear of future impact:  Nobles, Hasner, Preira and Habashy.  Nobles alleges that her AOL email account was accessed without her authorization, but only speculates that this relates in some way to the Incident and, indeed, does *not* allege that it occurred *after* the Incident.  Nobles also does not allege that, at the time of the 2012 Zappos Incident, her data was secure and uncompromised.  Nor could she, because in 2010 her personal information was compromised by Facebook in an unrelated incident, as she alleged in litigation pursued by her same counsel here.  *See* Request for Judicial Notice ("RJN"), Ex. A.

Hasner alleges unauthorized access to her AOL email account in "late January" 2012.  Preira Complaint ¶ 12.  Like Nobles, she claims she used the same password on her Zappos and AOL accounts, but is otherwise vague as to the connection between the Incident and the supposed unauthorized access of her AOL email account.  *Id*.  For example, she does not allege how the scrambled Zappos password could have been used to access the AOL account.[6]  Moreover, her "late January" allegation suggests that the alleged AOL account access occurred *after* she received notice, on January 15, from Zappos telling her to change passwords on other accounts

---

[6] Neither Hasner, Nobles nor any other Plaintiffs allege that their passwords were particularly unique or secure.  According to public reports, many individuals choose unsecure, easy to crack passwords.  *See* PC World, "Study:  Hacking Passwords as Easy as 123456," http://www.pcworld.com/article/187354/Study_Hacking_Passwords_Eas y_As_123456.html#_methods=onPlusOne%2C_ready%2C_close%2C_open% 2C_resizeMe%2C_renderstart%2Concircled%2Constartinteraction%2Conen dinteraction&id=I0_1354814865569&parent=http%3A%2F%2Fwww.pcworl d.com (Jan. 21, 2010; visited Dec. 6, 2012).

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

using the same or similar passwords.  Hasner further identifies no loss, but only says vaguely that "she had to deal with the consequences of it."  *Id.* While she "purchased a credit and personal identity monitoring service to alert her to potential misappropriation of her identity and to combat risk of further identity theft," she does not allege that this service ever advised her of any attempt to steal her identity or gain access to other accounts since the Incident occurred.  *Id.*

Preira and Habashy do not allege impact on other accounts, but allege they purchased "credit and personal identity monitoring service." Preira Complaint ¶¶ 13, 17.  However, they do not allege when they purchased this service nor that the service ever alerted them to actual identity theft attempts or attempts to access other accounts.

### D.    Plaintiffs' Claims

Based on the above, the Preira Complaint includes claims for: (1) negligence; (2) invasion of privacy by public disclosure of private facts; (3) breach of contract; (4) breach of implied contract; and (5) violation of the state consumer protection statutes of Nevada, Washington, Massachusetts, Virginia, New York and Florida.  *Id.* at ¶¶ 63-86, 105-115, 128-135.  Plaintiffs from California (Ree, Simon and Nobles) also assert violations under: (1) California's Unfair Competition Law, Business & Professions Code § 17200 *et seq.* (the "UCL"); (2) California's False Advertising Law, Business & Professions Code § 17500 *et seq.* (the "FAL"); (3) California's Consumers Legal Remedies Act, Civil Code § 1750 *et seq.* (the "CLRA"); and (4) the California and Washington data breach notification statutes, Civil Code § 1798.80 *et seq.* (the "California Breach Notice Statute"), and Washington Statutes § 19.255.020 *et seq.* (the "Washington Breach Notice Statute"), respectively.  *Id.* at ¶¶ 87-104, 116-127.  Plaintiff Vorhoff, a Washington

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101 · 702/474-9400 · FAX 702/474-9422

resident, also asserts a claim for violation of the California and Washington Breach Notice Statutes.  *Id.* at ¶¶ 98-104.

Similarly, the Stevens Complaint includes claims for: (1) negligence; (2) invasion of privacy by public disclosure of private facts; (3) breach of implied contract; (4) violation of the UCL; (5) violation of the CLRA; (6) violation of Florida's unfair trade practices statute; and (7) violation of the California Breach Notice Statute.  Stevens Complaint ¶¶ 76-148.  The Stevens Plaintiffs also assert claims for (1) willful violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA"), (2) negligent violation of the FCRA, (3) violation of the Alabama and Texas unfair trade practices statutes, (4) unjust enrichment and (5) declaratory relief.  *Id.* at ¶¶ 60-75, 104-120, 149-167.

## III.   ARGUMENT

### A.   Standard On A Motion To Dismiss.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully" and, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (citing *Twombly,* 550 U.S. at 557).  Moreover, "[a]lthough factual allegations are taken as true, we do not 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.' . . . Therefore, 'conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.'"

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101

702/474-9400 · FAX 702/474-9422

*Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations omitted).

Plaintiffs do not meet this rigorous standard here, as detailed below.

    **B.**    **Plaintiffs' Complaints Must Be Dismissed In Their Entirety Because Plaintiffs Lack Standing.**

        **1.**    **Standing Is A Critical Threshold Inquiry.**

        Each Plaintiff must allege sufficient facts that, if true, would confer standing upon him or her personally. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003).  All claims of all Plaintiffs who do not sufficiently allege standing must be dismissed.  "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 37, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976).  Absent standing, dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is required.  *See Doe v. Pryor*, 344 F.3d 1282, 1284 (11th Cir. 2003).

        To meet the "irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992), each Plaintiff must plead and prove, in addition to the elements of causation and redressability, that he or she has suffered an "injury-in-fact" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000). Plaintiffs have the burden of establishing their standing to sue. *Cent. Delta Water Agency v. United States*, 306 F. 3d 938, 947 (9th Cir. 2002).

12

### 2. Most Plaintiffs Allege Neither Present Injury Nor Immediate Risk Of Direct Injury, Defeating Standing.

Virtually all Plaintiffs allege only hypothetical future injury, thus failing to satisfy Article III.[7]   The prevailing law in data security cases is that the mere potential that stolen data may be misused is *not* sufficient to confer standing.  "It is an understatement to say that courts are skeptical of litigants' claims for risk of future identity theft."  *Holmes v. Countrywide Fin. Corp.*, No. 5:08–CV–00205–R, 2012 WL 2873892, at *14 (W.D. Ky. July 12, 2012).

In the Ninth Circuit, *Krottner v. Starbucks Corp.,* 628 F.3d 1139 (9th Cir. 2010) ("*Krottner I*"), sets the pleading standard.  There, the Ninth Circuit found that plaintiffs sufficiently alleged standing because there was an immediate danger of direct injury following the theft of a laptop containing their *unencrypted social security numbers*, names and addresses, *as well as a subsequent specific attempt to open a bank account with a plaintiff's information*.  *Id*. at 1142-43.  This group of allegations showed that plaintiff was "immediately in danger of sustaining some direct injury . . . ."  *Krottner I,* 628 F.3d at 1142 (citing *Scott v. Pasadena Unified Sch. Dist.,* 306 F.3d 646, 656 (9th Cir. 2002)).

The *Krottner I* decision underscores the inadequacy of Plaintiffs' pleadings here.  Simply put, Plaintiffs do not allege the mandatory element of *immediate* danger of *direct* injury.  As is apparent from the Complaints, no actual injury has yet occurred, even though the Incident happened long ago, and injury only may occur (hypothetically) through *indirect* means.  For example, the hacker must unscramble the Zappos password, and then

---

[7] Plaintiffs Nobles, Hasner, Preira and Habashy purport to allege present injury in the form of unauthorized access to an unrelated AOL email account and/or in the form of out-of-pocket credit monitoring expense. However, their allegations fail to satisfy Article III for other reasons, discussed below.

13

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

attempt to use the password against another account, which happens to share the same password.  Additionally, the hypothetical wrongdoer must do this to a plaintiff who has ignored Zappos's notice to change any passwords that might be shared.  Alternatively, the hacker must use the data to contact a Zappos customer and fool them into thinking the hacker was a Zappos representative and then convince them to part with further personal information which the hacker might use to commit some future unspecified wrong against them.  Again, the hypothetical wrongdoer must do this to a plaintiff who has ignored Zappos's notice expressly warning that Zappos *never* would request personal information in such fashion and warning customers not to share such information.  As these hypothetical harms are remote, not immediate, and indirect, not direct, they fail to satisfy the *Krottner I* standard.[8]

It is well-settled that "[a]llegations of possible future injury do not satisfy the requirements of Art. III.  A threatened injury must be certainly impending to constitute an injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990).  Otherwise, "were all purely speculative increased risks deemed injurious, the entire requirement of actual or imminent injury would be rendered moot, because all hypothesized, non-imminent injuries could be dressed up as increased

---

[8] The Third and Sixth Circuits apply a more stringent standard, finding that no claim may be filed until stolen data is *actually* misused.  *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42, 46 (3d Cir. 2011) *cert. denied*, 132 S. Ct. 2395, 182 L. Ed. 2d 1021 (2012) ("Appellants' alleged time and money expenditures to monitor their financial information do not establish standing, because costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more 'actual' injuries than the alleged 'increased risk of injury'"); *Lambert v. Hartman*, 517 F.3d 433, 437 (6th Cir. 2008) (finding that, while actual *financial loss* is sufficient under Article III, the risk of future acts of identity theft is "somewhat 'hypothetical' and 'conjectural'").  Zappos respectfully submits that these standards are the legally correct ones.

14

risk of future injury." *NRDC v. EPA*, 464 F.3d 1, 6 (D.C. Cir. 2006) (internal quotation marks and citation omitted).  Thus, courts routinely have rejected claims based on fear of future identity theft or minor inconvenience resulting from precautions taken in response to notice of a data security incident.[9]  As is clear from the pleadings, the instant case does not involve theft of full account numbers, Social Security numbers or anything else that is generally kept secret.  Addresses, telephone numbers and email addresses are widely shared in multiple contexts, and Plaintiffs cannot plausibly allege that the Incident was the only way they could have been known.  Furthermore, the Zappos passwords potentially accessed were scrambled,

---

[9] *See, e.g., Reilly*, 664 F.3d at 42; *Hammond v. The Bank of New York Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *7 (S.D.N.Y. June 25, 2010) ("The Court concludes that Plaintiffs lack standing because their claims are future-oriented, hypothetical, and conjectural."); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1052 (E.D. Mo. 2009) (plaintiffs lacked standing on the grounds that "the likelihood of [fraudulent use of information] is speculative, and the time when any such occurrence would come to pass (if ever) is entirely uncertain"); *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 8 (D.D.C. 2007) (plaintiffs lacked standing because their allegations "amount to mere speculation that at some unspecified point in the indefinite future they will be the victims of identity theft" and "therefore fail to allege an injury in fact"); *Bell v. Axiom Corp.*, No. 4:06-CV-00485–WRW, 2006 WL 2850042, at *2-3 (E.D. Ark. Oct. 3, 2006) (dismissing similar case for lack of standing because complaint alleged "harm that is speculative" and "potential future injury"); *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 688-90 (S.D. Ohio 2006) (dismissing similar case for lack of standing because plaintiff alleged "only the possibility of harm at a future date"); *Giordano v. Wachovia Sec., LLC*, No. 06-476 (JBS), 2006 WL 2177036, at *4 (D.N.J. July 31, 2006) (dismissing for lack of standing where plaintiff claimed only "hypothetical future injuries"); *see also In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, MDL 11-MD-2258 AJB MDD, 2012 WL 4849054, at *11 (S.D. Cal. Oct. 11, 2012) ("Accordingly, without specific factual statements that Plaintiffs' Personal Information has been misused, in the form of an open bank account, or un-reimbursed charges, the mere 'danger of future harm, unaccompanied by present damage, will not support a negligence action.'") (quoting *Gazija v. Nicholas Jerns Co.*, 215, 543 P.2d 338, 341 ( Wash. 1975)).

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

and thus not readily usable by the hacker.  *Compare Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012) (allegation of *actual* identity theft following theft of *unencrypted* Social Security numbers).  Absent allegations that the information was actually used by the hacker in a manner that harmed Plaintiffs, Plaintiffs' allegations are simply too speculative to justify litigation.  *See Amburgy*, 671 F. Supp. 2d at 1053 ("For plaintiff to suffer the injury and harm he alleges here, many 'ifs' would have to come to pass.").  All claims based on potential future harm or inconvenience therefore must be dismissed for lack of standing.

### 3.   Claims Based On The Purchase Of Credit Monitoring Also Should Be Dismissed.

Plaintiffs Hasner, Preira and Habashy allege they purchased credit monitoring services in response to the Incident.  This allegation does not cure their lack of standing.  "The disfavor for injuries related to risk of identity theft bleeds over to thwart most attempts to recover payments for credit monitoring."  *Holmes*, 2012 WL 2873892, at *6-10.

Multiple authorities hold that the voluntary purchase of a credit monitoring service is not a cognizable loss.[10]  A review of the Complaints here confirms that the allegations support no such claim, as Plaintiffs fail to show how, given the nature of the data at issue, credit monitoring might

---

[10] *See Worrix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 703-06 (N.D. Ill. Mar. 8, 2012); *The Bank of New York Mellon Corp.*, No. 08-CV-6060-RMB, 2010 WL 2643307, at *13 (S.D.N.Y. June 25, 2010); *Shafran v. Harley-Davidson, Inc.*, 07 CIV. 01365 (GBD), 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 277 (S.D.N.Y. 2008); *Ponder v. Pfizer, Inc.*, 522 F. Supp. 2d 793, 795 (M.D. La. 2007); *see also Randolph v. ING Life Ins. and Annuity Co.*, 973 A.2d 702, 708 (D.C. 2009).  The Ninth Circuit has declined to address whether or under what circumstances the cost of credit monitoring may be recovered.  *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 132 (9th Cir. Dec. 2010) (*Krottner II*).

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

have had any reasonable effect on the risk allegedly created by the Incident or even was purchased as a result of the Incident.  The prevailing rule is that "federal courts routinely dismiss actions in which the damages a plaintiff alleges are increased risk of identity theft and money spent monitoring credit and attempting to prevent identity theft." *Grigsby v. Valve Corp.*, No. 2:12-cv-00553-JLR, 2012 WL 5993755, at *2 (W.D. Wash. Nov. 14, 2012). Accordingly, all claims based on the purchase of credit monitoring should be dismissed.

### 4.    Claims Of Alleged Unauthorized Access To AOL Email Accounts Also Should Be Dismissed.

Plaintiffs Hasner and Nobles claim that their AOL email accounts were accessed without their permission near the time of the Incident.  However, these allegations fail to allege standing because they lack sufficient detail to be plausible.  *See Iqbal*, 129 S. Ct. at 1949-50.  No sufficient direct and immediate causal link between the Incident and the alleged injury is alleged, and the Court cannot simply accept Plaintiffs' speculation of a link as true.  *See Resnick*, 693 F.3d at 1326.

Among other things, Plaintiffs Hasner and Nobles fail to allege that their passwords were secure prior to the Incident and could only have been discovered as a result of the Incident, rather than through some other means.  Nor do they allege that their AOL email accounts were hacked after the Incident but before they could respond to Zappos's warning by changing their AOL passwords.  Nobles does not allege when, specifically, her AOL account was accessed, and Hasner alleges that her account was accessed significantly after she was warned by Zappos to change passwords. Particularly fatal to Nobles's claim is her admission in other litigation that her data was compromised in 2010 by Facebook, long before the Incident occurred.  RJN, Ex A; *compare Resnick*, 693 F.3d at 1328 (finding it significant

17

that plaintiffs alleged that they had never previously been the victim of a data security breach, and that they had taken specific, detailed security measures). Because no concrete allegations tie the AOL access claims to the Incident, and because the claims merely speculate about a causal link between the two events, these Plaintiffs do not meet their burden of pleading standing.

### C. Because Only Claims Under Nevada Law May Be Pursued, All Other Claims Must Be Dismissed.

To the extent any Plaintiffs cross the standing threshold, their claims must be limited to those pursued under Nevada or federal law. The Incident occurred in Nevada to data in possession of a Nevada company. Thus, non-Nevada claims may not be pursued.

"In a diversity case, the district court must apply the choice-of-law rules of the state in which it sits." *Abogados v. AT&T, Inc.,* 223 F.3d 932, 934 (9th Cir. 2000) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)). Plaintiffs filed suit under the Class Action Fairness Act (Preira Complaint ¶ 10; Stevens Complaint ¶ 10), a species of diversity jurisdiction. *See In re Expedia Hotel Taxes & Fees Litig.,* 377 F. Supp. 2d 904, 905 (W.D. Wash. 2005) ("CAFA expands federal court diversity jurisdiction over class actions").

In Nevada, the choice-of-law analysis for tort claims[11] is governed generally by Section 145 of the Restatement (Second) of Conflict of Laws ("Section 145"). *Gen. Motors Corp. v. Eighth Judicial Dist. Ct. of the State*

---

[11] The Zappos Terms of Use, in the record at Docket No. 3-1, also selects Nevada law. While Zappos contends that its Terms of Use bind Plaintiffs and members of the putative classes, Plaintiffs have taken the position (and this Court agreed) that they are not bound by the Terms of Use. Moreover, that Zappos is known to operate in Nevada and that it placed a Nevada choice-of-law provision on its website in the Terms of Use are significant factors favoring selection of Nevada law to govern the dispute here.

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

*of Nev.*, 122 Nev. 466, 473, 134 P.3d 111 (2006); *see also Dictor v. Creative Mgmt. Serv., LLC*, 126 Nev. Adv. Op. 4, 223 P.3d 332, 335 (2010).  Under that test, "the most significant relationship test . . . should govern . . . ." *Gen. Motors Corp.*, 122 Nev. at 468, 473 (overruling the "overwhelming interest" test created in *Motenko v. MGM Dist., Inc.*, 112 Nev. 1038, 1039, 921 P.2d 933 (1996)).

The most significant relationship test begins with the general principle, contained in Section 145, that "the rights and liability of parties with respect to an issue in tort are governed by the local law of the state that, 'with respect to that issue has the most significant relationship to the occurrence and the parties under the principles stated in § 6 [of the Restatement].'"  *Id*. at 474 (citing Section 145).  Under the principles stated in Section 6 of the Restatement, the Court is to consider the following factors:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

*Id*.[12]

---

[12] Section 145(2) goes on to provide a list of the contacts that should be considered in evaluating the factors from Section 6.  Comment f to Section 145(2) then clarifies that the relevant contact to be taken into consideration in an unfair competition case is the place of the business.  Specifically, Comment f states that, "in the case of unfair competition, interference with contractual relations or trade disparagement . . . [t]he place of business is the

By its June 13, 2012 Order creating this action and transferring all of the member actions to this Court, the Judicial Panel on Multidistrict Litigation ("JPML") already found that Nevada satisfies the principles set forth in Section 145 in this case. (#39). As the JPML concluded, "This district has the strongest connection to this litigation, inasmuch as Zappos is based in Hendersonville, Nevada." *Id.* Moreover, "personnel who responded to the data breach are located in this district, as are the servers from which customer data was obtained, in addition to other potentially relevant documents and witnesses." *Id.* Applying Nevada law consistently to all claims will promote the goals of the JPML transfer order, and indeed is dictated by Nevada choice-of-law rules.

Accordingly, all non-Nevada state law statutory claims (Preira Complaint Counts V, VI, VII, VIII [except to the extent pursued under Nevada law] and IX; Stevens Complaint Counts VI [except to the extent pursued under Nevada law], VII, VIII, IX and X) must be dismissed without leave to amend. *See, e.g., Van Slyke v. Cap. One Bank*, No. C 07-00671 WHA, 2007 U.S. Dist. LEXIS 82690, at *46 (N.D. Cal. Nov. 7, 2007) (dismissing UCL claim because of the "due-process concerns that arise from applying California law outside of California"); *Collegenet, Inc. v. XAP Corp.*, No. 04-793-HU, 2004 U.S. Dist. LEXIS 16345, at *1 (D. Or. Aug. 11, 2004) (dismissing UCL claim because Oregon law, and not California's, applied); *St. James v.*

more important contact." Applying the Second Restatement, other courts have found Comment f authoritative. *See, e.g., Boise Tower Assocs., LLC v. Wash. Cap. Joint Master Trust*, No. CV 03-141-S-MHW, 2006 U.S. Dist. LEXIS 45851, at *36 (D. Idaho June 22, 2006) (applying Comment f and concluding that "[t]he critical factors [in applying Section 145] are where the parties relationship was centered and where the conduct causing the injury occurred"); *Hycor Corp. v. Dontech, Inc.*, No. 84 C 3398, 1985 U.S. Dist. LEXIS 14180, at *6 (N.D. Ill. Nov. 4, 1985) (applying Section 145 and citing Comment f for the proposition that "[i]n unfair competition cases, the factor given the greatest weight is the location of the defendant's conduct").

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

*Equilon Enters., LLC*, No. 08-CV-00962 W (AJB), 2008 U.S. Dist. LEXIS 70271, at *19 (S.D. Cal. Sept. 15, 2008) (concluding that Texas's and not California's unfair competition law applied, and dismissing unfair competition cause of action); *ClubCom, Inc. v. Captive Media, Inc.*, No. 02:07-cv-1462, 2009 U.S. Dist. LEXIS 7960, at *22 (W.D. Pa. Jan. 31, 2009) (noting that "California's UCL differs substantially from the consumer protection statutes and unfair competition laws in every other state, and there is no comparable law in Pennsylvania," but applying Pennsylvania conflict of law principles, Pennsylvania's unfair competition law, and not California's, must be used); *Boise Tower Assocs., LLC*, 2006 U.S. Dist. LEXIS 45851, at *36 (applying Section 145 to bar Idaho unfair competition-type claim where only a single state's law could apply); *see also Nevada Tri-County Equip. & Leasing, LLC v. Klinke*, 128 Nev. Adv. Op. 33, 286 P.3d 593, 595 (2012) (explaining that in the case of a false conflict, forum law would still apply).

### D.   The California And Washington Breach Notice Claims Should Be Dismissed.

Claims  asserting that Zappos did not give proper statutory notice of the Incident (Preira Complaint Count VII; Stevens Complaint Count VIII) also should be dismissed without leave to amend.  As a matter of law, the Incident did not involve "personal information" subject to the California and Washington Breach Notice Statutes.[13]

A private right of action is created by California Civil Code Section 1798.82, but only if "personal information," as defined expressly in Section 1798.82(h), is compromised.  Section 1798.82(h) defines "personal information" narrowly as:

---

[13] As set forth above, no California or Washington statutory claims may be asserted because Nevada law applies.

21

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

an individual's first name or first initial and last name *in combination with* any one or more of the following data elements, when either the name or the data elements are not encrypted:

> (1) Social security number.

> (2) Driver's license number or California Identification Card number.

> (3) Account number, credit or debit card number, *in combination with* any required security code, access code, or password that would permit access to an individual's financial account.

> (4) Medical information.

> (5) Health insurance information.

Plaintiffs do not allege any of the statutorily-specified information in Section 1798.82(h)(1), (2), (4) or (5) was compromised in the Incident.[14]  Moreover, with respect to Section 1798.82(h)(3), Plaintiffs do not allege that the data potentially subject to the Incident "would permit access to an individual's financial account."  Only the last four digits of credit card account numbers were potentially accessed (Preira Complaint ¶ 4; Stevens Complaint ¶ 1), which is the same information that routinely appears on credit card receipts.  *See* 15 U.S.C. § 1681c(g).  No full account number, expiration date or security code was accessed, and Plaintiffs do not allege to the contrary.  *See* Preira Complaint ¶¶ 4, 30, Stevens Complaint ¶ 1.  Nor was any "financial account" password accessed in unencrypted form.  Zappos passwords were encrypted, which Plaintiffs do not dispute, and

---

[14] The Stevens Complaint also references (at ¶ 134) California Civil Code section 1798.29, but that provision only imposes duties on governmental agencies, not businesses like Zappos.  Cal. Civ. Code § 1798.3(b).  Similarly, the Stevens Complaint's reference (at ¶ 138) to California Civil Code Section 1798.83 has no relevance because it relates to the *sale* of data to third-party direct marketers, and Plaintiffs do not allege that Zappos "knows or should know that the third parties [who committed the Incident] used the personal information for the third parties' direct marketing purposes."  Cal. Civ. Code § 1798.83(a).  The Stevens Plaintiffs' conclusory references to irrelevant provisions of the California Civil Code should be stricken.

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101

702/474-9400 · FAX 702/474-9422

Zappos accounts are not "financial accounts." *See* Preira Complaint ¶¶ 4, 29-30; Stevens Complaint ¶ 1. Specifically, Zappos accounts exist to facilitate retail purchases, not to finance other activities and no Plaintiff alleges in any event that any financial account (such as a credit card account) actually was accessed as a result of the Incident.

The Washington Breach Notice claim fails for the same reasons. Like the California statute, "personal information" is limited to "[a]ccount number or credit or debit card number, *in combination with* any required security code, access code, or password that would permit access to an individual's financial account." Wash. Rev. Code § 19.255.010(c).[15] The Complaints thus fail to allege "personal information" under any Breach Notice Statute. The claims should be dismissed without leave to amend.

### E.   Claims For Public Disclosure Of Private Facts Should Be Dismissed.

Plaintiffs also fail to allege the requisite elements of a claim for invasion of privacy by public disclosure of private facts ("PDPF") (Preira Complaint Count II; Stevens Complaint Count III). An inadvertent data security incident like the one at issue here intentionally impaired no Plaintiff's reputation, and thus does not give rise to a PDPF claim.

As a preliminary matter, the PDPF claims fail because there is no allegation (nor can there be) that Zappos intended for the Incident to occur, and invasion of privacy torts must be alleged as intentional torts. *See Randolph*, 973 A.2d at 711. Because Plaintiffs do not allege, nor could they, that Zappos intended for their data to be accessed, the PDPF claims must be dismissed for this reason alone.

---

[15] No Plaintiff alleges a claim under Nevada's Breach Notice Statute, but that statute is limited in the same way as the California and Washington Breach Notice Statutes. *See* NRS 603A.040(3). Thus, even if a Breach Notice claim were asserted under Nevada law, it would fail.

The limited scope of data involved also bars the PDPF claims.  A PDPF claim cannot be based on information that was previously disclosed.  *Montesano v. Donrey Media Group*, 99 Nev. 644, 649, 668 P.2d 1081, 1085 (1983).  "There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public."  *Id.* (citation omitted).  Here, much of the information about Plaintiffs was already known (or readily knowable).  *See M & R Inv. Co., Inc. v. Mandarino*, 103 Nev. 711, 718, 748 P.2d 488, 493 (1987) (no claim for public disclosure of private facts where the plaintiff previously publicized the same facts).  For instance, Plaintiffs do not allege that their names and addresses are not already publically known.  Nor do they allege that they generally kept their email addresses secret.  Nor could they plausibly allege that the last four digits of their credit card numbers are not known, as federal law authorizes them to be printed on every credit card receipt for every transaction in which they engage.  *See* 15 U.S.C. § 1681c(g).  At best, the claims can relate only to the alleged disclosure of their cryptographically-scrambled Zappos passwords.  The key question on the PDPF claims, then, is whether the disclosure of these limited pieces of data "would be offensive and objectionable to a reasonable person of ordinary sensibilities."  *Montesano*, 668 P.2d at 1084.  Zappos respectfully suggests that it would not be, because disclosure of this information has no impact on any Plaintiff's reputation.

A key element of the tort of public disclosure of private facts is that the particular facts be "embarrassing."  *Virgil v. Time, Inc.*, 527 F.2d 1122, 1125 (9th Cir. 1975) (citing Prosser, *Privacy*, 48 Cal. L. Rev. 383, 389 (1960)).  No Plaintiff alleges that he or she was embarrassed or ashamed by an unknown hacker's learning the scrambled form of his or her Zappos password.  Indeed, it is difficult to conceive of how shame, embarrassment or other reputational harm might result from the Incident here.

24

Similarly, and again because the PDPF tort addresses reputational concerns, it is well established in Nevada that PDPF cannot be pleaded unless the private facts are disclosed by "publicity" to the public at large, rather than to a small group of individuals. *See Kuhn v. Account Control Tech., Inc.*, 865 F. Supp. 1443, 1448 (D. Nev. 1994); *Quinn v. Thomas*, No. 2:09–CV–00588–KJD–RJJ, 2010 WL 3021795, at *4 (D. Nev. July 28, 2010), *later proceeding*, 2011 WL 3444159, at *3 (Aug. 8, 2011); *Huston v. Verizon Fed. Network Systs., LLC*, No. 2:07-CV-00201-BES-LRL, 2008 WL 4279418, at *6 (D. Nev. Sept. 17, 2008). Absent widespread disclosure, which is not alleged here, there could be no impact on any Plaintiff's reputation.

Plaintiffs do not allege that Zappos intentionally allowed their data to be accessed, nor that the compromised data was not previously disclosed, widely disseminated, embarrassing or affected their reputation in any way. No PDPF claim is stated as a matter of law, and the claims should be dismissed without leave to amend.

## F.   Plaintiffs' Breach Of Contract And Breach Of Implied Contract Claims Fail As A Matter Of Law.

Plaintiffs' contract claims also must be rejected. Recognizing that Zappos violated no express contractual term, the Stevens Plaintiffs limit their contract claim (Count V) to a claim for implied contract. The Preira Plaintiffs assert both express and implied contract claims (Counts III & IV). Both groups of Plaintiffs quote selectively from Zappos's website, but their doing so does not establish any contractual violation, express or implied.

### 1.   Plaintiffs Are Judicially Estopped From Pleading A Contract Claim.

First, having denied the existence of a contract based on the terms set forth on Zappos's website that would have required them to arbitrate their claims, Plaintiffs may not now assert contract theories. What

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

Zappos believed was its contract has been denied by Plaintiffs, as Plaintiffs successfully argued to the Court.  Plaintiffs cannot have it both ways -- deny that they agreed to a contract with Zappos for one purpose but not others.

To prevail on a breach of contract claim, a plaintiff must plead and prove: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damages resulting from defendant's breach.  *Keife v. Metro. Life Ins. Co.*, 797 F. Supp. 2d 1072, 1076 (D. Nev. 2011).  "The terms of an express contract are stated in words while those of an implied contract are manifested by conduct."  *Smith v. Recrion Corp.*, 91 Nev. 666, 668, 541 P.2d 663 (1975).  "Both types of contracts are founded upon an ascertainable agreement."  *Id.*  Under Nevada law, contracts are formed through traditional mutual assent, offer and acceptance.  *See Joyner v. Bank of Am. Home Loans*, No. 2:09-CV-2406-RCJ-RJJ, 2010 WL 2953969, at *3 (D. Nev. July 26, 2010); *May v. Anderson*, 121, Nev. 668, 119 P.3d 1254, 1257 (2005).  As this Court previously explained, "Put differently, an enforceable contract 'requires a manifestation of mutual assent in the form of an offer by one party and acceptance thereof by the other . . . [and] agreement or meeting of the minds of the parties as to *all* essential elements.'"  (# 21), p. 6 (emphasis added).

In opposing Zappos's Motion to Compel Arbitration, Plaintiffs disclaimed the Terms of Use containing the arbitration provision Zappos sought to enforce, claiming it was an unenforceable "browsewrap" agreement.  *Id.* at p. 7.  This Court agreed, finding that it could "not conclude that Plaintiffs ever viewed, let alone manifested assent to, the Terms of Use." *Id.* at p. 8.  The Court concluded that "Where, as here, there is no acceptance by Plaintiffs, no meeting of the minds, and no manifestation of assent, there is no contract pursuant to Nevada law." *Id.* at p. 10.  Because Plaintiffs

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101

702/474-9400 · FAX 702/474-9422

26

successfully argued that they and Zappos never agreed on what promises each made to the other, there can be no contract claim here.

### 2.      Plaintiffs Cannot Identify An Implied Contract.

The lack of a meeting of the minds also is fatal to Plaintiffs' implied contract theories.  "In order to prevail on the theory of a contract implied in fact, the court would necessarily have to determine that both parties intended to contract, and that promises were exchanged . . . ." *Smith*, 91 Nev. at 669; *see also Warrington v. Empey*, 95 Nev. 136, 138, 590 P.2d 1162 (1979).  "In an implied contract, such intent is inferred from the conduct of the parties and other relevant facts and circumstances." *Warrington*, 95 Nev. at 138 (citing *Chandler v. Roach*, 319 P.2d 776 (Cal. App. 1957)).  Zappos's conduct was clear -- it put its Terms of Use on its website and it expected its customers to follow them, including with respect to arbitration.  Plaintiffs' conduct -- supposed failure to read the Terms of Use -- shows no meeting of the minds.

Plaintiffs' selective, and inaccurate, quotation from Zappos's website does not cure their fatal problem of the lack of a meeting of the minds.  Plaintiffs' scattershot references to selected statements on the Zappos.com website (without specific allegations that each Plaintiff read and relied upon them, and *only* upon them) do not rise to the level of binding contractual obligations or duties.  *See Krottner II*, 406 F. App'x at 131 ("Plaintiffs-Appellants point to three documents they claim formed an implied contract, but they do not allege that they read or even saw the documents, or that they understood them as an offer.  Nor do they allege that they accepted the purported offer on its terms."); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1116-17 (N.D. Cal. 2011) (dismissing breach of contract claim where plaintiff failed to "allege the specific provisions in the contract creating the obligation the defendant is said to have breached" in website's

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

Statement of Rights and Responsibilities); *Ready & Motivated Minds LLC v. Ceridian Corp.*, No. 10-1654 (JLL), 2010 WL 2989986, at *4 (D.N.J. July 26, 2010) (dismissing breach of contract claim because the complaint did not "specify the particular obligation(s) imposed by each of the respective agreements" alleged to have been violated).

Not only do Plaintiffs' scattershot allegations not support a contract claim, but other language on the website expressly disclaims the obligations Plaintiffs attempt to imply.  Zappos states on its website: "While we use industry-standard precautions to safeguard your personal information, we cannot guarantee complete security.  100% complete security does not presently exist anywhere online or offline."  *See* Ex. B. Given this express warning, Zappos could not have an implied obligation to provide complete security of Plaintiffs' data.  *See Young*, 790 F. Supp. 2d at 1117; *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, MDL No. 11-MD-2258 AJB MDD, 2012 WL 4849054, at *17 (S.D. Cal. Oct. 11, 2012) ("[I]n the presence of clear admonitory language that Sony's security was not 'perfect,' no reasonable consumer could have been deceived.").  Moreover, despite the fact that the "Zappos Guarantee" referenced by Plaintiffs expressly states that Zappos will reimburse any unauthorized charges, Plaintiffs do not allege that any such unauthorized charges occurred, or that they unsuccessfully sought reimbursement from Zappos.

Plaintiffs state no viable theory of contractual liability, and all Counts asserting contract claims should be dismissed without leave to amend.

### G. If The Contract Claims Survive Dismissal, The Economic Loss Doctrine Bars Plaintiffs' Tort Claims.

As demonstrated above, no valid contract theories are available to Plaintiffs.  However, if a contract claim somehow survives, Plaintiffs tort

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101

702/474-9400 · FAX 702/474-9422

claims for negligence and PFPD (Preira Counts I & II; Stevens Counts III & IV) then are defeated by the economic loss doctrine.

"[T]he economic loss doctrine marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby [generally] encourages citizens to avoid causing physical harm to others." *Terracon Consultants W., Inc. v. Mandalay Resort Group*, 125 Nev. 66, 72-73, 206 P.3d 81 (2009). Under Nevada law, the doctrine bars all tort claims "when the plaintiff seeks to recover 'purely economic losses'" based on the same facts supporting a breach of contract claim. *Id.* (citing *Local Joint Exec. Bd. v. Stern*, 98 Nev. 409, 411, 651 P.2d 637 (1982)); *see In re Sony*, 2012 WL 4849054, at *10 ("Under the economic loss doctrine, a plaintiff's tort recovery of economic damages is barred unless such damages are accompanied by some form of physical harm (i.e., personal injury or property damage).").

Here, Plaintiffs allege no physical harm whatsoever, and the damages they seek are identical on their contract and tort theories. Accordingly, the negligence and PDPF claims are barred as a matter of law. *See In re Sony*, 2012 WL 4849054, at *11 (dismissing negligence claim based on economic loss doctrine in data theft case); *Banknorth N.A. v. BJ's Wholesale*, 442 F. Supp. 2d 206, 211-14 (M.D. Pa. 2006) (same); *In re TJX*, 524 F. Supp. 2d 83, 90-91 (D. Mass. 2007); *Penn. State Employees Credit Union v. Fifth Third Bank*, 398 F. Supp. 2d 317, 326-30 (M.D. Pa. 2005).

### H. Plaintiffs' Negligence Claims Also Fail Independent Of The Economic Loss Doctrine.

Plaintiffs' negligence claims (Preira Complaint Count I; Stevens Complaint Count IV) fail for the further independent reason that no breach of any legal duty or proximate causation can be alleged as a matter of law.

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

Moreover, in addition to depriving them of standing under Article III, Plaintiffs fail to plead cognizable damages as required to state a claim for negligence.

### 1. Zappos Breached No Legal Duty To Plaintiffs.

Zappos is not liable for negligence because it breached no duty to Plaintiffs. Plaintiffs do not and cannot dispute that the Incident resulted from the unlawful act of an unknown third-party hacker. "Under the common law, as a general rule, one person owed no duty to control the dangerous conduct of another, nor to warn those endangered by such conduct." *Mangeris v. Gordon*, 94 Nev. 400, 402, 580 P.2d 481 (1978) (citing *Tarasoff v. Regents of Univ. of Cal.*, 551 P.2d 334 (Cal. 1976)); *see also* Rest. 2d Torts, § 315. Such a duty may arise only if "(1) a special relationship exists between the parties or between the defendant and the identifiable victim, and (2) the harm created by the defendant's conduct is foreseeable." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 824, 221 P.3d 1276 (2009); Rest. 2d Torts, § 315. Special relationships include custodian and ward, innkeeper and guest, tavern owner and patron and employer and employee. *Doud v. Las Vegas Hilton Corp.*, 109 Nev. 1096, 1101, 864 P.2d 796 (1993); *Youngblood v. Schireman*, 765 P.2d 1312, 1316 (Wash. App.1988). Special relationships do not include retailer and customer. As Plaintiffs allege, "Zappos is an online retailer of apparel, shoes, handbags, home furnishings, beauty products and accessories." Preira Complaint ¶ 3; Stevens Complaint ¶ 2.

Foreseeability also is lacking. Even if a special relationship did exist, which it plainly does not, Plaintiffs allege no facts (nor can they) establishing that Zappos reasonably could have foreseen the criminal actions of a third-party computer hacker. Plaintiffs do not allege any prior

similar attack on Zappos.  Nor do they allege that Zappos had any specific forewarning of the attack.

The Complaints establish no duty owed by Zappos to Plaintiffs, defeating the negligence Counts as a matter of law.

### 2.      The Criminal Act Here Precludes Proximate Causation.

The negligence claim also fails for lack of proximate causation.  It is well-established that a wrongful act of a third party severs the chain of causation.  *Van Cleave v. Kietz-Mill Minit Mart*, 97 Nev. 414, 416-17, 633 P.2d 1220 (1981) ("'Whenever a new cause intervenes which is not the consequence of the first wrongful cause, and which is not under the control of the first wrongdoer, and which he could not with reasonable diligence have foreseen, and except for which the final catastrophe could not have happened, then such a result must be held too remote to furnish the basis of an action.'") (*quoting Konig v. N.-C.-O. Ry.*, 36 Nev. 181, 214-215, 135 P. 141 (1913)).

Criminal conduct committed by a third party ordinarily is deemed the proximate cause of an injury, superseding any prior negligence which might otherwise be a contributing cause.  *Thomas v. Bokelman*, 86 Nev. 10, 13, 462 P.2d 1020 (1970) (finding that a criminal act is "a superseding cause which is itself the natural and logical cause of the harm"); *Price v. Blaine Kern Artista, Inc.*, 111 Nev. 515, 519, 893 P.2d 367 (1995) ("criminal or tortious third-party conduct typically severs the chain of proximate causation"); *Yoscovitch v. Wasson*, 98 Nev. 250, 645 P.2d 975 (1982) (concluding that proximate cause of injuries brought about by underage drunken driver was driver's consumption of alcohol, not vendor's sale of alcohol); *accord Koepke v. Loo*, 18 Cal. App. 4th 1444, 1449, 23 Cal. Rptr. 2d 34 (1993) ("Criminal conduct which causes injury will ordinarily be deemed the

31

proximate cause of an injury, superseding any prior negligence which might otherwise be deemed a contributing cause.").

Because Plaintiffs' allegations confirm that their supposed injuries resulted from criminal conduct by a computer hacker, Zappos is not responsible as a matter of law. *See* Preira Complaint ¶ 2; Stevens Complaint ¶ 2. Thus, Plaintiffs' negligence claims are fatally defective for this additional reason, and must be dismissed without leave to amend.

## I. Plaintiffs' Unfair Practices Claims Cannot Proceed.

Plaintiffs' claims under the unfair practices acts of California, Nevada, Florida, Alabama, Massachusetts, Virginia, New York and Washington (Preira Complaint Counts VI and VIII; Stevens Complaint Counts VI, VII and X) fail for multiple reasons.[16]

### 1. Plaintiffs Fail To Plead With The Requisite Particularity.

Both the Preira Plaintiffs and the Stevens Plaintiffs allege that Zappos made false or misleading representations to them about maintaining the security of their information in violation of various state consumer-protection statutes. Preira Complaint ¶¶ 110-112, 115; Stevens Complaint ¶¶ 105, 109-111. Such claims trigger the pleading particularity requirements of Federal Rule of Civil Procedure 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (claims grounded or sounding in fraud are subject to Rule 9(b)'s heightened pleading requirements, even if pleaded under a state's unfair trade practices law). To comply with Rule 9(b), a complaint must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (internal quotations omitted). The Complaints do not satisfy Rule 9(b).

---

[16] As discussed above, because Nevada law governs disposition of Plaintiffs' claims, no non-Nevada claims may be asserted.

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

Courts interpreting the California, Florida, Nevada, Texas, Virginia and Washington deceptive trade practices and false advertising acts expressly have found that Rule 9(b) applies when deceptive and fraudulent conduct is alleged, including in the form of misrepresentations. *See Faigman v. Cingular Wireless, LLC*, No. C 06-04622 MHP, 2007 WL 708554, at *3-4 (N.D. Cal. Mar. 2, 2007) (construing plaintiffs' UCL, FAL and CLRA claims to be based on misrepresentations and concealments and therefore governed by Rule 9(b)); *Perret v. Wyndham Vacation Resorts, Inc.*, No. 11-CV-61904, 2012 WL 718794, at *4-5 (S.D. Fla. Mar. 5, 2012) (where plaintiff's deceptive and unfair trade practices act claim claim alleged that defendant made misrepresentations, it was based on fraud and subject to Rule 9(b)'s heightened pleading requirement); *Horner v. Mortgage Elec. Registration Sys., Inc.*, 2:12-CV-269 JCM GWF, 2012 WL 2017589, at *2 (D. Nev. June 5, 2012) ("If plaintiff is filing for misconduct under Nevada's Unfair and Deceptive Trade Practices Act (NDTPA), the claim *must* be pled with particularity under Federal Rule of Civil Procedure 9(b)." (emphasis in original)); *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 825 (N.D. Tex. 2001) ("Claims alleging violations of the [Texas] DTPA are subject to the requirements of Rule 9(b)."); *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010) ("As a claim sounding in fraud, Rule 9(b)'s particularity requirements apply" to the Virginia Consumer Protection Act); *Fidelity Mortgage Corp. v. Seattle Times Co.*, 213 F.R.D. 573, 574-75 (W.D. Wash. 2003) (finding that plaintiff's claim under Washington Consumer Protection Act, alleging knowing publication of false, deceptive, and/or misleading information in print and online publications, sounded in fraud and were subject to Rule 9(b)).

Critically, none of Plaintiffs alleges that he or she *actually read* the statements quoted from Zappos's Privacy Policy or other statements on

33

Zappos.com regarding the safety of shopping online with Zappos.  Unable to plead whether and at what point these alleged misrepresentations were made to them, their unfair and deceptive practices acts claims are not adequately alleged.  Rule 9(b) requires more.

**2.      No Claim Is Stated Under Nevada's Deceptive Trade Practices Act.**

Plaintiffs' purported claims under the Nevada Deceptive Trade Practices Act, Nevada Revised Statutes Section 598, *et seq*. (the "NDTPA"), also fail as a matter of law.  Such a claim requires allegations of:  "(1) an act of consumer fraud by the defendant (2) causing plaintiff (3) damage."  *Simon v. Bank of Am., N.A.*, 10-CV-00300-GMN-LRL, 2010 WL 2609436, at *8 (D. Nev. June 23, 2010) (citing *Picus v. Wal–Mart Stores, Inc.,* 256 F.R.D. 652 (D. Nev. 2009)).

Plaintiffs do not sufficiently allege an act of consumer fraud by Zappos.  Plaintiffs' NDTPA claims are based solely on statements appearing on Zappos's website.  *See* Preira Complaint, ¶¶ 3, 25-26, 32, 44, 77-79; Stevens Complaint, ¶¶ 23-26, 100.  The website, however, always expressly disclaimed that it "cannot guarantee complete security.  100% complete security does not presently exist anywhere online or offline."  *See* Ex. B. Zappos's express disclosure precludes Plaintiffs' allegations that they somehow were misled to believe that Zappos could prevent any risk of a security breach, such as the cyber attack it suffered through the Incident.  *See In re Sony*, 2012 WL 4849054, at *17 ("[I]n the presence of clear admonitory language that Sony's security was not 'perfect,' no reasonable consumer could have been deceived.").  Although decided under California law, the principle discussed in *In re Sony* applies equally in Nevada:  In light of Zappos's clear disclosure, no reasonable Nevada consumer could have been deceived into thinking Zappos was ensuring complete security.

Additionally, Zappos's "Safe Shopping Guarantee" is clear:  if an unauthorized credit card charge occurs as a result of use of the Zappos website, Zappos will compensate the customer for the loss not covered by the credit card issuer.  Plaintiffs do not plead that any unauthorized charges occurred or that Zappos failed to honor the "Guarantee" as set forth on the website.  Moreover, as demonstrated above in the standing discussion, Plaintiffs do not plead causation or cognizable injury.

For these reasons, Count X of the Preira Complaint and Count VI of the Stevens Complaint fail.

### 3.   Plaintiffs Do Not State A Claim Under Any Of The Other States' Statutes Either.

#### a.   The Alabama Deceptive Trade Practices Act

To prevail under Alabama's Deceptive Trade Practices Act, specific showings of monetary damages and causation between the alleged unlawful act or practice and the monetary damages are required.  *See Billions v. White & Stafford Furniture Co.*, 528 So. 2d 878, 880 (Ala. Civ. App. 1988). As explained above in connection with standing, Plaintiffs do not plead these adequately.  Moreover, class actions are prohibited.  Ala. Code § 8-19-10(f); *Ex parte Exxon Corp.*, 725 So. 2d 930, 933 (Ala. 1998) Count VI of the Stevens Complaint must therefore be dismissed.

#### b.   The California UCL, FAL and CLRA

Plaintiffs' California claims are barred because California's statutes also have strict standing requirements, requiring allegations of deprivation of specific money or property as a result of the allegedly improper act.  Indeed, the California statutory standing requirements are stricter than under Article III.

To maintain standing under the UCL and FAL, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

as injury in fact, i.e., economic injury; and (2) show that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *In re Sony*, 2012 WL 4849054, at *14 (citing *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 120 Cal. Rptr. 3d 741 (2011)). "Similarly, the CLRA requires that a plaintiff allege a 'tangible increased cost or burden to the consumer.'" *Id.* (citing *Meyer v. Sprint Spectrum L.P.*, 200 P.3d 295 (Cal. 2009)). This requires showing "not only that a defendant's conduct was deceptive but that the deception caused them harm." *Id.* (citing *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129, 103 Cal. Rptr. 3d 83 (2009)). "Generally, the standard for deceptive practices under the fraudulent prong of the UCL applies equally to claims for misrepresentation under the CLRA." *Id.* "For this reason, courts often analyze California's consumer statutes together." *Id. see also Faigman*, 2007 WL 708554, at *4 ("Relief under the CLRA is therefore 'specifically limited to those who suffer damage, making causation a necessary element of proof.'") (quoting *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal. App. 4th 746, 754, 15 Cal. Rptr. 3d 271 (2003)).

As stated recently by the Southern District of California, "allegations that the heightened risk of identity theft, time and money spent on mitigation of that risk, and property value in one's information, do not suffice as injury under the UCL, FAL, and/or the CLRA." *In re Sony*, 2012 WL 4849054, at *15. Moreover, information about a person is not the person's "property," and thus if that information is compromised, no "property" is lost within the meaning of the California statutes. *See In re iPhone Application Litig.*, No. 11–MD–02250–LHK, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011) ("Numerous courts have held that a plaintiff's 'personal information' does not constitute money or property under the UCL"); *Ruiz v. Gap, Inc.*, 07-5739 SC, 2009 WL 250481, at *4 (N.D. Cal. Feb. 3,

36

2009), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) (stating that credit monitoring and repair expenditures are not the "kind of loss of money or property necessary for standing to assert a claim under [the UCL]"); *Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir. 2009) (finding that under UCL, plaintiff must "ha[ve] lost money or property"). These principles bar the California claims, independent of Article III's standing requirements. Counts V and IX of the Preira Complaint and Counts VII and IX of the Stevens Complaint must therefore be dismissed.

### c.   Florida Deceptive And Unfair Trade Practices Act

Florida's Deceptive and Unfair Trade Practices Act also requires allegations of actual damages proximately caused by the alleged unfair practice. *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006) (holding that actual damages is an element of a claim under Florida consumer protection statute); *Smith v. 2001 S. Dixie Highway, Inc.,* 872 So. 2d 992, 993 (Fla. Dist. Ct. App. 2004) (same); *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 85 (Fla. Dist. Ct. App. 2008). As explained above, Plaintiffs' allegations of these elements are deficient, and Count VIII of the Preira Complaint and Count VI of the Stevens Complaint must be dismissed.

### d.   Massachusetts Deceptive Trade Practices Act

Plaintiffs' claim under the Massachusetts Deceptive Trade Practices Act (the "MDTPA") is barred because the MDTPA does not authorize a private right of action based on an alleged data security breach. Although the claim here is pleaded under MDTPA Chapter 93A, data security and breach notification is regulated exclusively by MDTPA Chapter 93H. *See* Mass. Gen. L. Ch. 93H (providing that the Massachusetts Department of Consumer Affairs and Business Regulation shall adopt regulations with respect to the proper safeguarding and protection of personal information of Massachusetts residents).

37

Chapter 93H expressly provides that only "[t]he attorney general may bring an action pursuant to section 4 of chapter 93A against a person or otherwise to remedy violations of this chapter and for other relief that may be appropriate." Mass. Gen. L. Ch. 93H § 6. Accordingly, federal courts sitting in Massachusetts recognize that no private MDTPA claim based on a data security breach is permitted, as a matter of Massachusetts law. *Katz v. Pershing, LLC*, 806 F. Supp. 2d 452, 458 (D. Mass. 2011), *aff'd* 672 F.3d 64 (1st Cir. 2012). Count VIII of the Preira Complaint must be dismissed with respect to Massachusetts without leave to amend.

### e.  New York Deceptive Practices Act

To state a claim under the New York Deceptive Practices Act, General Business Law § 349 (the "NYDPA"), Plaintiffs must allege a material misrepresentation, that plaintiff suffered an injury, and that the injury is causally connected to the misrepresentation. *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 731 N.E.2d 608 (2000). A material misrepresentation is one that is "likely to mislead a reasonable consumer acting reasonably under the circumstances . . ." *Id*. As demonstrated above, Zappos expressly disclaimed 100% security, and stated its policy of refunding any unauthorized charges to customers' credit cards made as a result of their visit to the Zappos website. Plaintiffs cannot plausibly contend that a reasonable consumer would have been misled. *See In re Sony*, 2012 WL 4849054, at *17. Nor have they alleged sufficient injury, or the necessary causal relationship between the Incident and their purported harm. Accordingly, Count VIII of the Priera Complaint fails as well as to New York law. *See Hammond*, 2010 WL 2643307, at *12 (noting that, under NYDPA, plaintiff must prove that he or she suffered an injury); *see also Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382, 391 (E.D.N.Y. 2011) (granting motion to dismiss NYDPA claim after finding that "plaintiffs have alleged no facts . .

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

. that show that the alleged acts of the defendant caused any quantifiable damage").

### f.   Texas Deceptive Trade Practices-Consumer Protection Act

Similarly, a claim under the Texas Deceptive Trade Practices-Consumer Protection Act, Texas Business & Commercial Code § 17.41, *et seq.* (the "TDTPA"), requires an allegation of false, misleading, or deceptive acts or practices. *See Doe v. Boy Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472 (Tex. 1995); *Roberts v. Healey*, 991 S.W.2d 873 (Tex. App. 1999). Causation and damages are necessary elements of such a claim. *Leal v. Bank of New York Mellon*, CA C-12-265, 2012 WL 5465978, at *13 (S.D. Tex. Oct. 22, 2012) (dismissing claims under TDTPA for plaintiff's failure to allege economic damages); *Metro Allied Ins. Agency, Inc. v. Lin*, 304 S.W.3d 830, 834 (Tex. 2009) (requiring under the TDTPA that defendant's acts were a "substantial factor in bringing about the injury, without which the injury would not have occurred."). Plaintiffs have failed to sufficiently allege these elements, and Count X of the Stevens Complaint under the TDTPA should be dismissed as well.

### g.   Virginia Consumer Protection Act

To state a claim under the Virginia Consumer Protection Act, Virginia Code § 59.1-196, *et seq.* (the "VCPA"), Plaintiffs must allege that they are: (1) a person (2) who suffers a loss (3) as a result (4) of a violation of the VCPA. *See* Va. Code Ann. § 59.1-204; *Polk v. Crown Auto, Inc.*, 228 F.3d 541, 543 (4th Cir. 2000). Fatally, Plaintiff Patricia Gallatin, the only Plaintiff seeking to represent a subclass of Virginia residents, makes no substantive allegations in the Preira Complaint whatsoever. Her name simply appears in the (unnumbered) introductory paragraph of the Preira Complaint and as the purported representative of a Virginia subclass. That is all. This claim

should be dismissed for that reason alone.  Notwithstanding this patently facial deficiency, no claim may proceed under the VCPA for the same reasons as repeated above:  Plaintiffs have not sufficiently alleged causation or damages.  *See Polk*, 228 F.3d at 543 (holding that plaintiff must prove he suffered a loss to sustain a claim under the VCPA).

### h.    Washington Consumer Protection Act

To state a claim under Washington's Consumer Protection Act, Washington Revised Code § 19.86.010  (the "WCPA"), Plaintiffs must allege "(1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered."  *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10 (Wash. 2007) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531 (Wash. 1986)).  Plaintiffs fail to sufficiently allege these elements.

As recently confirmed by the Western District of Washington, the type of speculative harm alleged by Plaintiffs here is not cognizable under the WCPA.  *See Del Vecchio v. Amazon.com, Inc.*, No. C11-366-RSL, 2011 WL 6325910, at *5 (W.D. Wash. Dec. 1, 2011).  In that case, plaintiffs claimed that the defendant website improperly disclosed personal information to third parties obtained by installing internet browser "cookies" on plaintiff's computer.  *Id.*  Dismissing plaintiff's WCPA claim, the court noted that plaintiff's contention that she began receiving unsolicited advertisements soon after visiting defendant's website "stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotations omitted).  "Even construed in a light most favorable to Plaintiffs, the allegation that one Plaintiff began to receive unsolicited mail from pet

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

product companies after purchasing pet products 'through' Defendant's site 'pleads facts that are merely consistent with' Defendant's liability." *Id.*

As in *Del Vecchio*, Plaintiffs' allegations of injury are too speculative to support a WCPA claim. Even Hasner and Nobles (neither of whom are Washington residents), who allege they had their AOL email accounts hacked and suffered unsolicited advertisements like the plaintiff in *Del Vecchio*, Plaintiffs allege no more than a "possibility" that it was caused from the Incident. The one Washington resident, Vorhoff, alleges no harm at all. Plausibility is fatally lacking. *Del Vecchio*, 2011 WL 6325910, at *5; *see also Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 570. Accordingly, Count VIII of the Preira under the WCPA Complaint claim must be dismissed.

### J.    The Stevens Plaintiffs' Credit Reporting Claims Fail.

The Stevens Plaintiffs (but not the Preira Plaintiffs) assert claims under the FCRA (Counts I & II). These claims are frivolous. The FCRA does not apply to data security breach cases involving retailers like Zappos. *See Holmes*, 2012 WL 287892, at *15-16. Zappos is not a "credit bureau" and the data was not a "consumer report." Finally, no claim for intentional violation of the FCRA may be asserted.

### 1.    Zappos Is Not A Credit Bureau.

The FCRA principally regulates credit bureaus, described in the statute as "consumer reporting agencies" ("CRAs"). 15 U.S.C. § 1681(b) ("It is the purpose of this title to require that consumer reporting agencies adopt reasonable procedures . . . ."), 1681a(f) (defining "consumer reporting agencies"). A CRA is engaged in the business of selling consumer credit data (described as "consumer reports") to assist other businesses in determining whether they should extend credit to the consumer, or provide insurance, employment or housing. 15 U.S.C. § 1681a(f). Clearly, as a retail seller of apparel and other products (*see* Preira Complaint ¶ 3; Stevens

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

Complaint ¶ 2), Zappos is not engaged in the business of selling consumer reports within the meaning of the FCRA.  "Courts construing who or what qualifies as consumer reporting agencies have restricted the label to the credit reporting bureaus," such as the major credit bureaus, TransUnion, Experian and Equifax.  *Holmes*, 2012 WL 2873892, at *15; *Washington v. CSC Credit Services, Inc.,* 199 F.3d 263, 265 (5th Cir. 2000) ("The FCRA governs 'consumer reporting agencies' like Equifax and CSC."); *Swanson v. Cent. Bank & Trust Co.,* 5:03-255-JMH, 2005 WL 1324887, at *1 (E.D. Ky. June 3, 2005) ("It is undisputed that Equifax and Trans Union are consumer reporting agencies"); *White v. Imperial Adjustment Corp.,* CIV.A. 99-3804, 2002 WL 1809084, at *6 (E.D. La. Aug. 6, 2002) *aff'd in part, appeal dismissed in part and remanded*, 75 F. App'x 972 (5th Cir. 2003) (same).  Nothing in the Complaints suggests that Zappos regularly sells credit data or qualifies as a credit bureau under the FCRA.

Additionally, courts routinely find that retailers who maintain information based only on their experience with their customers are not consumer reporting agencies.  *See DiGianni v. Stern's*, 26 F.3d 346, 348-49 (2d Cir. 1994); *Rush v. Macy's New York, Inc.,* 775 F.2d 1554, 1557 (11th Cir. 1985); *Rice v. Montgomery Ward & Co.,* 450 F. Supp. 668, 670 (M.D.N.C. 1978); *Todd v. Associated Credit Bureau Servs.,* 451 F. Supp. 447, 448 (E.D. Pa. 1977), *aff'd without opinion*, 578 F.2d 1376 (3d Cir.1978), *cert. denied*, 439 U.S. 1068, 99 S. Ct. 834, 59 L. Ed. 2d 33 (1979); *Laracuente v. Laracuente*, 599 A.2d 968, 969-70 (N.J. Super. Ct. 1991); *Smith v. First Nat'l Bank*, 837 F.2d 1575, 1579 (11th Cir. 1988) (bank that reported information concerning experience with a customer not a consumer reporting agency), *cert. denied*, 488 U.S. 821, 109 S. Ct. 64, 102 L. Ed. 2d 41 (1988).  The claim that Zappos, an online retailer, is a consumer reporting agency, is frivolous.  The FCRA claims must be dismissed without leave to amend for this reason alone.

42

### 2. The Data Subject To The Incident Was Not A Consumer Report.

Moreover, even if Zappos could somehow be considered a CRA, contrary to the law and common sense, the FCRA claims still would fail because the potentially compromised data was not a "consumer report." The FCRA defines a "consumer report" as:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes, employment purposes, or any other purpose authorized under [15 U.S.C. §] 1681(b).

15 U.S.C. § 1681a(d)(1). "This definition suggests that Congress primarily envisioned consumer reports being disseminated for the purposes of assessing 'eligibility.'" *Smith v. Bob Smith Chevrolet, Inc.,* 275 F. Supp. 2d 808, 816 (W.D. Ky. 2003). Thus, for a communication of information to qualify as a "consumer report," the information must "bear" on one of the seven factors noted in the definition -- credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living. *See id.* For example, reports designed solely to verify a person's name, address and/or Social Security number do not constitute "consumer reports" under the FCRA. *See, e.g., Malik v. AT&T Mobility, LLC,* No. 1:08-cv-234, 2009 WL 198710, at *7-8 (W.D. Mich. Jan. 23, 2009); *Ali v. Vikar Mgmt. Ltd.,* 994 F. Supp. 492 (S.D. N.Y. 1998); *Dotzler v. Perot,* 914 F. Supp. 328 (E.D. Mo. 1996), *aff'd* 124 F.3d 207 (8th Cir. 1997); *accord Gomon v. TRW, Inc.,* 28 Cal. App. 4th 1161 (1994).

Plaintiffs do not allege how any of the data subject to the Incident suggested anything at all about their creditworthiness or general reputation.  The data reveals only that they may have shopped at Zappos, which is not a fact that bears on reputation or creditworthiness; it does not even reveal anything as personal as the size of Plaintiffs' feet.  Nor did Zappos "furnish" the data; it is undisputed that the hacker attempted to gain access without Zappos's consent, and this too renders the FCRA claim defective. *Holmes*, 2012 WL 2873892, at *16.  Accordingly, Plaintiffs fail to plead the "furnishing" of any "consumer report" sufficient to trigger a FCRA claim.

### 3.     "Experience Data" Expressly Is Exempt From The FCRA.

Moreover, even if Zappos was a "credit bureau" and even if the data somehow shed light on consumers' creditworthiness and had been furnished voluntarily, Plaintiffs' allegations still fail to state a FCRA claim. Plaintiffs do not and cannot deny that all the data relates to Zappos's own experiences with them.  Accordingly, the data is exempted from the FCRA, pursuant to 15 U.S.C. § 1681a(d)(2)(A)(i), as "experience information."

The Ninth Circuit has construed the "experience information" exemption, clearly stating that the FCRA does not regulate any "report containing information solely as to transactions or experiences between the consumer and the person making the report."  *Am. Bankers Assoc. v. Gould*, 412 F.3d 1081, 1084 (9th Cir. 2005).  As the Stevens Plaintiffs concede, all the compromised information came directly from customers' direct interactions with Zappos and from no other sources.  Stevens Complaint ¶ 159.  This exemption therefore removes the Incident from the FCRA's purview completely.  *See Garcia v. UnionBanCal Corp.*, No. C06-03762, 2006 WL 2619330, at *2 (N.D. Cal. Sept. 12, 2006) (finding that reports contained in stolen briefcase from bank employee relating to personal financial

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

44

information of bank customers were not "consumer reports" because they solely contained information obtained from consumers directly by the bank); *Hodge v. Texaco, Inc.*, 975 F.2d 1093 (5th Cir. 1992) (finding that lab reports based on first-hand tests fell within the experience information exclusion); *Nuttleman v. Vossberg*, 585 F. Supp. 133, 136 (D. Neb. 1984).

For all of the foregoing reasons, each of which defeats Plaintiffs' claims standing alone, both FCRA Counts should be dismissed without leave to amend.

### 4.   At A Minimum, The Claim For A Willful FCRA Violation Should Be Dismissed.

Count I of the Stevens Complaint should be dismissed for the additional reason that it seeks to impose liability under 15 U.S.C. § 1681n for a willful FCRA violation.  Nothing in the Stevens Complaint suggests that Zappos acted willfully with respect to the Incident.  Zappos was a victim of an unlawful cyber attack.  Nor does the Complaint suggest how Zappos could have known that it was subject to the FCRA, in light of the ample authority set forth above declaring retailers exempt from that statute. "Careless" violations of the FCRA may not be punished under 15 U.S.C. § 1681n.  *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 68-69, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007).  Nothing suggests that Zappos had any forewarning or reason to suspect that it would be subject to the kind of Incident that occurred here, or that it might be subject to FCRA compliance obligations.  *Fuges v. Southwest Fin. Servs., Ltd.*, No. 11-4504 (3d Cir. Dec. 6, 2012) (affirming dismissal of FCRA willfulness claim because no prior specific legal authority suggested that the defendant might be a CRA) (RJN Ex. B).  No claim for a willful FCRA claim may be pursued.

45

### K.     The Stevens Plaintiffs Cannot Recover For Unjust Enrichment.

The Stevens Plaintiffs (but not the Preira Plaintiffs) assert a claim for unjust enrichment, alleging that they "conferred a valuable benefit on Zappos in the form of their [personal information] . . . ."  Stevens Complaint ¶ 159.  The elements of an unjust enrichment claim are (1) a benefit conferred on the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, and (3) acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.  *See Leasepartners Corp. v. Brooks Trust,* 113 Nev. 747, 942 P.2d 182, 187 (1997) (quoting *Unionamerica Mtg. v. McDonald*, 97 Nev. 210, 212, 626 P.2d 1272 (1981)).

The Stevens Plaintiffs' claim that they "conferred a valuable benefit on Zappos in the form of their PCAI" simply is not founded in the law.  "Personal data does not have an apparent monetary value that fluctuates like the price of goods."  *Burrows v. Purchasing Power, LLC*, No. 12-cv-22800, Dkt. No. 37 (S.D. Fla. Oct. 18, 2012) (RJN, Ex. C); *see also In re Sony*, 2012 WL 4849054, at *15 (rejecting notion of property value in one's information).

Next, the Stevens Plaintiffs do not sufficiently allege that any inequity would result from Zappos's retention of monies paid by the Stevens Plaintiffs to purchase products from Zappos's website.  Although the Stevens Plaintiffs allege that "a portion of the retail sales price [they] paid to Zappos for shoes and apparel ostensibly was used by Zappos to pay for the administrative costs of electronic data management services and cyber services," (Stevens Complaint ¶ 162), the fact that a criminal hacker was able to gain access to limited, non-critical information does not make it inequitable for Zappos to retain whatever portion of the purchase price was

46

spent on security.  The Stevens Plaintiffs simply cannot force a strict liability standard to be read into the elements of unjust enrichment.  *See In re Sony*, 2012 WL 4849054, at *17.

The insufficiency of the unjust enrichment claim is all the more clear in light of the fact that none of the Stevens Plaintiffs alleges, as mentioned repeatedly herein, that his or her personal information actually has been misused.  Indeed, the Zappos.com website states "you'll pay nothing if unauthorized charges are made to your credit card as a result of shopping at Zappos.com" (Ex. B), and yet no Plaintiff alleges that he or she suffered unauthorized charges or sought reimbursement therefor.  As overwhelmingly demonstrated above, Plaintiffs' claims are too speculative to support any claim of inequity, and their unjust enrichment claim fails.

### L.   The Stevens Plaintiffs' Duplicative Declaratory Relief Claim Should Be Dismissed.

The Stevens Plaintiffs' claim for declaratory relief should be dismissed because it seeks nothing more than relief sought by their other claims.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("To the extent Swartz seeks a declaration of defendants' liability for damages sought for his other causes of action, the claim is merely duplicative and was properly dismissed.").  The Stevens Plaintiffs claim that "a declaratory judgment is necessary to determine [their] rights in connection with Zappos' failure to safeguard and protect their PCAI" and that "Zappos violated the FCRA and/or other statutes and/or common law of the various states set forth above." Stevens Complaint ¶¶ 166-67.  This is nothing more than a duplicative request for relief, which properly should be dismissed without leave to amend.

## IV.    CONCLUSION

For these reasons, the Court should dismiss the Preira Complaint and the Stevens Complaint in their entirety without leave to amend.

MORRIS LAW GROUP


By   /s/ Robert McCoy
    Robert McCoy, No. 9121
    Raleigh C. Thompson, No. 11296
    900 Bank of America Plaza
    300 South Fourth Street
    Las Vegas, Nevada  89101

STROOCK & STROOCK & LAVAN LLP
Julia B. Strickland *(Pro Hac Vice)*
Stephen J. Newman *(Pro Hac Vice)*
Brian C. Frontino *(Pro Hac Vice)*
Jeffrey B. Bell *(Pro Hac Vice)*
2029 Century Park East, Suite 1600
Los Angeles, California 90067

Attorneys for Defendants Zappos Development, Inc., Zappos.com, Inc., and Zappos Retail, Inc.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification on the 14th day of December, 2012.

By   /s/ Heather Suter

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

49