Ben Barnow
**BARNOW AND ASSOCIATES, P.C.**
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Facsimile: (312) 641-5504
Email: b.barnow@barnowlaw.com

Richard L. Coffman
**THE COFFMAN LAW FIRM**
First City Building
505 Orleans Street, Suite 505
Beaumont, TX 77701
Telephone: (409) 833-7700
Facsimile: (866) 835-8250
Email: rcoffman@coffmanlawfirm.com

**ATTORNEYS FOR THE STEVENS PLAINTIFFS**
*(additional counsel listed on signature page)*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | | |
|---|---|---|
| IN RE ZAPPOS.COM, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | ) ) ) | 3:12-cv-00325-RCJ-VPC |
| This Document Relates to: | ) ) | MDL No. 2357 |
| ALL ACTIONS | ) ) | |

**THE STEVENS PLAINTIFFS' APPLICATION FOR
APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL**

Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure and the Court's December 19, 2012 Order (D.E. #68), Plaintiffs Theresa D. Stevens, Stacy Penson, Tara J. Elliot, Brooke C. Brown, and Christa Seal (collectively, the "Stevens Plaintiffs"), by and through their counsel, hereby file this Application for Appointment of Interim Co-Lead Class Counsel ("Application for Appointment"), and respectfully request that the Court enter an Order appointing Ben Barnow, Barnow and Associates, P.C., and Richard L. Coffman, The Coffman Law Firm (together, "Messrs. Barnow and Coffman"), as interim co-lead class counsel.

i

1

**INTRODUCTION**

2        On June 13, 2012, the Judicial Panel on Multidistrict Litigation transferred all pending

3  actions to the District of Nevada for coordinated or consolidated pretrial proceedings.  D.E. #1.  The

4  pending cases transferred included:  *Stevens v. Amazon.com, Inc. d/b/a Zappos.com*, No. 3:12-cv-

5  00032-CRS-JDM (W.D. Ky.) (filed Jan. 16, 2012); *Penson v. Amazon.com, Inc. d/b/a Zappos.com*,

6  No. 3:12-cv-00036 (W.D. Ky.) (filed Jan. 19, 2012); *Elliott et al. v. Amazon.com, Inc. d/b/a*

7  *Zappos.com*, No. 3:12-cv-00037-CRS (W.D. Ky.) (filed Jan. 20, 2012).  These cases, all of which

8  are part of the Stevens Plaintiffs group of cases, are the first, second and third filed cases in this

9  litigation.[1]

10       On November 12, 2012, the Stevens Plaintiffs filed their consolidated amended complaint.

11  D.E. #58.  On November 13, 2012, the other group of plaintiffs in this case, known as the "Preira

12  Plaintiffs," filed their consolidated amended complaint.  D.E. #59.  On December 14, 2012,

13  Defendant Zappos.com, Inc. ("Zappos") filed a single motion to dismiss both complaints.  D.E. #62.

14       In evaluating the class action leadership appointment factors set forth in Rule 23(g), the case

15  law, and the *Manual for Complex Litigation*  (the "*Manual*"), a court should consider the work that

16  will be required to prosecute the case.  This consideration should be made, in part, to avoid

17  overstaffing a case and incurring unnecessary fees and expenses.  That said, it is respectfully

18  suggested that while there are many fine attorneys in this case, Messrs. Barnow and Coffman are

19  "best able to represent the interests of the class." *See, e.g., Manual* (4th ed.) § 21.271 ("If there are

20  multiple applicants, the court's task is to select the applicant best able to represent the interests of the

21  class.").

22       As detailed herein, Messrs. Barnow and Coffman will adhere to the Rule 23(g) guidelines, as

23  evidenced by the work they have performed to date in this case and their history and experience

24  serving as lead counsel in MDL class action cases—specifically, in data breach class actions.  In this

25

26  [1] *Relethford v. Amazon.com, Inc.*, Case No. 2:12-cv-00864-KJD-PAL (D. Nev.), is pending before
   Judge Dawson and Magistrate Judge Leen, and is expected to be transferred to this Court shortly.
27  Counsel for the plaintiff in *Relethford* joins in and supports this motion.

28

1   case, for example, Messrs. Barnow and Coffman investigated, drafted and filed their initial

2   complaints, briefed and argued the non-enforceability of the arbitration clause in Zappos' Terms of

3   Use Agreement, attended the November 5, 2012 Case Management Conference in person, where

4   they took the lead and made several suggestions and proposals (to which Zappos, the Preira

5   Plaintiffs and/or the Court agreed), and filed their consolidated amended complaint by the date they

6   committed to do so. Counsel supporting this application (listed as additional signatories below) also

7   have participated in advancing the litigation and will continue to be available to assist with the

8   litigation at the direction of interim co-lead class counsel.

9          Messrs. Barnow and Coffman, as well as the attorneys who support their appointment as

10   interim co-lead class counsel, have a proven record of accomplishments demonstrating their

11   experience, knowledge, skills, and success in leading the prosecution of consumer class actions in

12   MDL proceedings—including data breach class actions. This record includes decades of experience

13   litigating some of the nation's largest and most complex class actions. In this capacity, often

14   working with numerous other law firms, Messrs. Barnow and Coffman have collectively obtained

15   recoveries for many millions of consumers comprising the certified classes that these counsel have

16   represented. Given the nature of the claims at issue in this case, their experience, ability, and

17   willingness to work with co-counsel, and their knowledge of the law pertaining to consumer data

18   breach and privacy litigation, Messrs. Barnow and Coffman are the lawyers who will advance this

19   matter in the most efficient and effective manner possible.

20          Messrs. Barnow and Coffman are also equipped and willing to spend the necessary time and

21   resources to effectively and efficiently litigate this matter. Messrs. Barnow and Coffman have

22   already invested significant time and resources identifying and investigating the legal claims against

23   Zappos for failing to secure the confidential personal information of more than 24 million putative

24   class members. Although they are fully prepared to litigate the matter to conclusion, if necessary,

25   Messrs. Barnow and Coffman also recognize the benefits of resolving this type of consumer class

26   action litigation early. In this regard, they have already substantively and substantially explored

27   potential avenues of resolving this matter in manners that are fair, reasonable, and adequate, and in

28

2

1  the best interests of the putative class members in an effort to secure immediate and effective relief
2  for them now—rather than after protracted litigation.

3       Messrs. Barnow and Coffman recognize and respect the Court's responsibility to appoint an
4  effective plaintiff leadership structure in this litigation.  Messrs. Barnow and Coffman respectfully
5  suggest that what other attorneys at other law firms might have done in the past is not necessarily
6  indicative of the qualifications or abilities of an attorney in the same firm who does not individually
7  have the experience or expertise of Messrs. Barnow and Coffman in this area.  Accordingly, and for
8  the reasons discussed in greater detail below, Messrs. Barnow and Coffman respectfully request
9  appointment as interim co-lead class counsel.

10  **POINTS AND AUTHORITIES**

11       Rule 23(g)(1)(A) of the Federal Rules of Civil Procedure provides that, in appointing interim
12  class counsel, a court should consider:  "(i) the work counsel has done in identifying or investigating
13  potential claims in the action; (ii) counsel's experience in handling class actions, other complex
14  litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable
15  law; and (iv) the resources that counsel will commit to representing the class."  *See also Taddeo v.*
16  *Am. Invsco Corp.*, No. 2:08–CV–01463–KJD. 2011 WL 3957392, at *4 (D. Nev. Sept. 7, 2011).
17

18       A court may also "consider any other matter pertinent to counsel's ability to fairly and
19  adequately represent the interests of the class."  Rule 23(g)(1)(B); *see also Moradi v. Adelson*, Nos.
20  11–cv–00490–GMN-RJJ, 11–cv–00595–GMN, 11–cv–00636–GMN. 2011 WL 5025155, at *2 (D.
21  Nev. Oct. 20, 2011) (citing as additional factors to be considered:  "(l) the quality of the pleadings;
22  (2) the vigorousness of the prosecution of the lawsuit; and (3) the capabilities of counsel.") (citing *In*
23  *re Bank of America Corp. Sec. Derivative and ERISA Lit.,* 258 F.R.D. 260, 272 (S.D.N.Y. 2009)).

24       Rule 23(g)(2)(B) further states that "[i]f more than one adequate applicant seeks appointment
25  as class counsel, the court must appoint the applicant best able to represent the interests of the class."
26  The 2003 Advisory Committee Notes on Rule 23(g) provide context for application of the rule:
27  "Subdivision (g) . . . responds to the reality that the selection and activity of class counsel are often
28  critically important to successful handling of a class action. . . .  This subdivision recognizes the

3

importance of class counsel, states the obligation to represent the interests of the class, and provides a framework for selection of class counsel."

As discussed in greater detail below, Messrs. Barnow and Coffman satisfy all of the Rule 23(g) factors and are the counsel best suited to represent the interest of the putative class members.

**A.    Messrs. Barnow and Coffman, and the Attorneys Supporting their Appointment, Have Performed Substantial Work to Identify and Investigate Plaintiffs' Claims (Rule 23(g)(1)(A)(i)).**

In considering a motion for appointment of interim class counsel, a court should consider the work undertaken by counsel in the case.  Rule 23(g)(1)(A)(i); *see also Harrington v. City of Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004) (appointing class counsel who had "done significant work in [the] case").  Messrs. Barnow and Coffman have already spent substantial time and effort investigating and researching the potential legal claims against Zappos, as evidenced by filing the first complaint in this litigation (the *Stevens* case) and filing their consolidated amended complaint.  *See, e.g., Moradi*, 2011 WL 5025155 at *3 (noting that courts should consider which action was filed first for lead counsel purposes where "there is a need for an objective tie-breaker") (citing *Biondi v. Scrushy,* 820 A.2d 1148, 1159 (Del. Ch. 2003)).

Here, all of the legal claims first asserted in the original *Stevens* complaint are included in Preira Plaintiffs' complaints.  This certainly speaks to the quality of the Stevens Plaintiffs' pleadings, as "imitation is the sincerest [form] of flattery."[2] *See, e.g., Moradi*, 2011 WL 5025155 at *2 (listing "the quality of the pleadings" as one of the additional factors to be considered in making a Rule 23(g) appointment) (citing *In re Bank of Am. Corp. Sec. Der. and ERISA Lit.,* 258 F.R.D. at 272).

Messrs. Barnow's and Coffman's investigation—and that of the attorneys supporting this application—included emails and conversations with numerous class members, gathering and reviewing relevant documents from available public sources (including public filings, newspaper articles and other materials), legal research, and drawing upon their extensive knowledge and

---

[2] CHARLES CALEB COLTON, LACON, OR, MANY THINGS IN A FEW WORDS: ADDRESSED TO THOSE WHO THINK 114 (1824).

experience in litigating the types of claims at issue in data breach litigation.  Messrs. Barnow and Coffman also appeared personally at the November 5, 2012 Case Management Conference, during which they actively participated on behalf of the Stevens Plaintiffs and the putative class members.

The work Messrs. Barnow and Coffman and their firms have already performed demonstrates their leadership, commitment, knowledge, and experience in how to best proceed with effectively litigating complex consumer litigation and class actions—specifically, data breach cases.  Messrs. Barnow and Coffman have positioned this litigation to maximize the recovery and protections for the putative class in an efficient and timely manner.  They should be allowed to continue their efforts as interim co-lead class counsel and finish the job.

**B.      Messrs. Barnow and Coffman Have Substantial Experience Handling Class Actions and Other Complex Litigation (Rule 23(g)(1)(A)(ii)).**

Courts appointing lead counsel have placed great emphasis on proposed class counsel's experience and knowledge of the applicable law.  Rule 23(g)(1)(A)(ii); *see also In Re Toys R Us Antitrust Litig.,* 191 F.R.D. 347, 351 (E.D.N.Y. 2000) ("Class counsel are highly skilled and experienced and can fairly and adequately represent the interests of the class."); *In re Cree, Inc. Sec. Litig.,* 219 F.R.D. 369, 373 (M.D.N.C. 2003) (appointing class counsel in a securities case where the firm had "extensive experience in representing institutional investors in securities actions throughout the country and . . . [had] long been heavily engaged in securities and corporate litigation.").

As briefly discussed below, Messrs. Barnow and Coffman are successful class action attorneys with extensive experience prosecuting MDL data breach and other class actions.  *See also* Messrs. Barnow's and Coffman's Firm Resumes, attached hereto as Group Exhibit 1.

**1.      Ben Barnow, Barnow and Associates, P.C.**

Ben Barnow of Barnow and Associates, P.C., specializes in the prosecution of complex class actions, including those related to privacy, data breach, consumer, and antitrust claims.  Mr. Barnow has taken a leading role in many federal and state consumer fraud class actions throughout the United States.  He has significant experiencing serving as Lead Class Counsel or Co-Lead Class Counsel in complex consumer class actions and MDL proceedings, including what is believed to be the largest number of consumer data breach class actions:

- ***In re TJX Cos. Retail Security Breach Litigation (Consumer Track).*** This MDL was a data breach case involving the theft of approximately 45,000,000 credit and debit card numbers used at TJX stores and other personal information of approximately 455,000 TJX customers. As one of Co-Lead Settlement Class Counsel, Mr. Barnow took the lead in negotiating a settlement with TJX. The Honorable Judge Young granted final approval to the settlement, which he referred to as "excellent" and as containing "innovative" and "groundbreaking" elements.[3] Mr. Barnow initiated the settlement discussions in this matter, developed a co-leadership structure, and along with his two co-lead counsel, successfully concluded an historic settlement for data breach cases.

- ***In re Countrywide Financial Corp. Customer Data Security Breach Litigation.*** This MDL proceeding was a forty-case data breach matter involving claims relating to a former Countrywide employee's theft and sale of millions of Countrywide customers' private and confidential information. As one of Co-Lead Settlement Class Counsel, Mr. Barnow negotiated a settlement that made substantial benefits available to approximately 17 million Settlement Class Members. The settlement has been granted final approval by the Court. *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, MDL No. 1998, 2010 WL 3342100 (W.D. Ky. Aug. 23, 2010). In granting final approval to the settlement, the Honorable Chief Judge Russell noted that "Co-Lead Settlement Counsel are nationally recognized in the field of class actions, particularly those involving security breaches," and stated that "the Court was impressed with Co-Lead Counsel and Countrywide counsels' knowledge and skill, as represented in the various motions and hearings that took place throughout this settlement process." *Id.* at *11. Mr. Barnow's role was pervasive in the case, where he presented all court motions, including the motions for preliminary approval and final approval.

- ***Lockwood v. Certegy Check Services, Inc.*** This proceeding related to the theft of approximately 37 million individuals' private and confidential information from Certegy Check Services, Inc.'s computer databases. As one of Co-Lead Settlement Class Counsel, Mr. Barnow organized all counsel and pending cases without the benefit of an MDL and negotiated a settlement that was granted final approval. *See* Judgment in *Lockwood v. Certegy Check Servs.*, No. 8:07-cv-1657-T-23TGW (M.D. Fla. Sept. 8, 2008). At the final fairness hearing, the Honorable Judge Merryday described the settlement as a "good deal," providing "a real benefit to a large class of persons" as "the

---

[3]      *See* Judgment in *In re TJX Cos. Retail Sec. Breach Litig.*, No. 07-10162-WGY, MDL No. 1838 (D. Mass. Sept. 2, 2007) (granting final approval of settlement); Transcript of Proceedings at 6, *In re TJX Cos. Retail Sec. Breach Litig.*, No. 07-10162-WGY, MDL No. 1838 (D. Mass. Sept. 27, 2007); Transcript of Fairness Hearing at 8-9, 18, *In re TJX Cos. Retail Sec. Breach Litig.*, No. 07-10162- WGY, MDL No. 1838 (D. Mass. July 15, 2008).

result of the focused attention of skilled counsel for a protracted time." Transcript of Final Fairness Hearing at 20, *Lockwood v. Certegy Check Servs.*, Inc., No. 8:07-cv-1657-T-23TGW (M.D. Fla. Aug. 22, 2008).

- ***Rowe v. Unicare Life and Health Ins. Co.*** Mr. Barnow was Lead Counsel in this data breach case relating to the defendants' alleged failure to secure the private health information of certain individuals enrolled in the defendants' health insurance plans, which resulted in the information being accessible to the public via the Internet. Mr. Barnow negotiated a settlement that was granted final approval by the Court. At the preliminary approval hearing, the late Honorable Judge Hibbler referred to the efforts of the parties as "exemplary." Transcript of Oral Argument at 9, *Rowe v. Unicare Life & Health Ins. Co.*, No. 09-CV-2286 (N.D. Ill. May 19, 2011).

- ***In re Heartland Payment Systems, Inc. Customer Data Security Breach Litigation.*** This MDL data breach case involved the theft of more than 120,000,000 credit and debit card numbers, and is believed to be the largest data breach to date. As one of Co-Lead Settlement Class Counsel for the Consumer Track, Mr. Barnow initiated the settlement discussions in this matter, developed a co-leadership structure, and along with his two co-lead counsel, successfully secured a settlement for the Consumer Track class. *In re Heartland Payment Sys., Inc. Customer Data Security Breach Litig.*, No. 4:09-md-02046 (S.D. Tex.).

It can be fairly said that Ben Barnow has filed, litigated, and settled more substantial data breach cases than any other attorney in the country.

   In addition to his substantial experience in successfully prosecuting data breach consumer class actions,[4] Mr. Barnow has also been appointed to leadership positions in a number of complex consumer class actions and MDL proceedings, serving as lead and co-lead counsel with many firms across the country.[5]  For example, Mr. Barnow was one of Co-Lead Settlement Class Counsel in

---

[4]    Mr. Barnow has also obtained the certification of litigated, nationwide classes in the following privacy breach cases consisting of approximately 40 million and 70 million class members each: *Bovay et al. v. Sears, Roebuck & Co.*, No. 01-CH-18096 (Cir. Ct. Cook Cnty. Ill.); and *Busse et al. v. Motorola, Inc. et al.*, No. 95-CH-10332 (Cir. Ct. Cook Cnty. Ill.).

[5]    For instance, Mr. Barnow was one of Co-Lead Counsel and developed, advanced and gained final approval of settlements in the America Online Access Litigation, *Schwab v. America Online, Inc.*, No. 96 CH 13732 (Cir. Ct. Cook Cnty., Ill.), and the McDonald's Sweepstakes Litigation, *Boland v. McDonald's Corp.*, No. 01 CH 13803 (Cir. Ct. Cook Cnty., Ill.). The McDonald's Sweepstakes settlement included numerous countries. Along with his co-lead counsel, he also led more than thirty (30) firms and developed and brought about the meaningful conclusion to the

1   *Schulte v. Fifth Third Bank*, where he and his co-lead counsel achieved a settlement providing for a

2   $9.5 million settlement fund and substantial injunctive relief valued at more than $50 million.

3   *Schulte v. Fifth Third Bank*, No. 06-cv-06655, 2011 WL 3269340 (N.D. Ill. July 29, 2011). Mr.

4   Barnow also served as a Co-Lead Class Counsel in the Arkansas, Kansas, South Dakota and

5   Wisconsin Microsoft civil antitrust cases, each of which settled and was granted final approval by

6   the respective courts.  In the Wisconsin Microsoft case, prior to reaching a settlement that was

7   valued at approximately $224 million and granted final approval, Mr. Barnow and his co-counsel

8   successfully petitioned the Wisconsin Supreme Court to recognize the right of indirect purchasers to

9   recover under Wisconsin's antitrust laws.  *See Olstad v. Microsoft Corp.*, 700 N.W.2d 139 (Wis.

10  2005).[6]

11          Most recently, Mr. Barnow was appointed to the Plaintiffs' Steering Committee by the

12  Honorable Anthony J. Battaglia in *In re: Sony Gaming Networks and Customer Data Security*

13  *Breach Litigation*, No. 3:11-md-02258-AJB-MDD (S.D. Cal.) (D.E. #60). Mr. Barnow's

14  appointment came after a hotly-contested appointment process, in which more than fifteen (15)

15  highly-qualified attorneys and their respective law firms sought appointment amidst a sea of more

16  than sixty (60) filed cases.

17          **2.      Richard L. Coffman, Coffman Law Firm.**

18          Richard L. Coffman of the Coffman Law Firm also has significant national and regional class

19  action and mass action leadership and logistical experience in courtrooms across the United States.

20  On the data breach front, Mr. Coffman was recently appointed as one of two Interim Co-Lead Class

21  Counsel in MDL No. 2360; *In Re: Science Applications International Corporation (SAIC) Backup*

22  *Tape Data Theft Litigation* (D.D.C.), a data breach case involving the theft of the personally

23

24

---

25  litigation through settlement in *In re M3Power Mktg. & Sales Practices Litig.*, No. 05-11177, MDL
26  No. 1704 (D. Mass.).

27  [6]      Mr. Barnow was also appointed to the nine-member Plaintiffs' Lead Counsel Committee in
    the Microsoft civil antitrust MDL proceeding before Judge Frederick Motz in the United States
28  District Court for the District of Maryland, and later as lead counsel in six individual states.

1    identifying information and medical records of over 4.7 million current and former servicemen,

2    servicewomen and their families.

3        Mr. Coffman is also currently serving as one of three Interim Co-Lead Class Counsel

4    appointed by the court to represent the Financial Institution Track plaintiffs in MDL No. 2046; *In re*

5    *Heartland Payment Systems, Inc. Customer Data Security Breach Litigation* (S.D. Tex.), a data

6    breach case involving the theft of over 120 million credit and debit card numbers and related

7    confidential personal information.  Mr. Coffman also worked with Mr. Barnow on the *TJX*, *Certegy*

8    and *Countrywide* data breach cases and, as part of drafting the *Countrywide* settlement agreement,

9    researched and developed a provision regarding enhanced accessibility of the settlement website that

10   is incorporated into the settlement proposal delivered to Zappos' counsel in this litigation.

11       In non-data breach cases, Mr. Coffman currently is counsel for the Nevada indirect purchaser

12   class representative in MDL No 1827; *In re TFT-LCD (Flat Panel) Antitrust Litigation* (N.D. Cal.),

13   which recently settled for approximately $1.1 billion.  Mr. Coffman also represents one of the lead

14   direct purchaser class representatives in MDL No. 1957; *In re Aftermarket Filters Antitrust Litig.*

15   (N.D. Ill.) (price fixing).  Mr. Coffman also is co-counsel for the plaintiffs in *Quebedeaux v. United*

16   *States*; Case No. 1:11-cv-00389-FMA (Ct. Fed. Cl.), an unconstitutional takings class action on

17   behalf of business and property owners in a 4,600 square mile area of the Atchafalaya River basin in

18   south central Louisiana whose property and businesses were damaged and/or destroyed by

19   floodwaters when the Government opened the Morganza Spillway on the Mississippi River in May

20   2011.

21       In the recent past, Mr. Coffman was appointed to serve as interim co-lead class counsel in

22   MDL No. 1921; *In re: Nissan North America, Inc. Odometer Litigation* (M.D. Tenn.) (defective

23   odometers) and co-lead class counsel in *Wilson, et al v. Texas Windstorm Insurance Association;*

24   Cause No. 09-CV-0421 (56th Judicial District Court of Galveston County, Texas).  The *Wilson* case

25   was a class action and mass action on behalf of over 2,000 property owners on Bolivar Peninsula in

26   Galveston County, Texas, whose homes were completely destroyed by Hurricane Ike.  Mr. Coffman

27   and his co-lead counsel secured approximately $175 million of additional property insurance

28   benefits for the *Wilson* property owners.  Mr. Coffman also represented, as counsel of record or as of

9

1   counsel, nine of the court appointed state indirect purchaser class representatives in MDL No. 1819;

2   *In re Static Random Access Memory (SRAM) Antitrust Litigation* (N.D. Cal.), which settled for over

3   $41 million.

4        Mr. Coffman also served as lead counsel or co-lead counsel in other national class actions,

5   including MDL No. 1354; *In re Citigroup, Inc., Capital Accumulation Plan* (CAP) *Litigation* (D.

6   Mass.) (forfeiture of earned compensation accumulated by securities brokers in an employee benefit

7   plan); Cause No. 1:94CV65; *Robert Castro, Jr., et al v. PaineWebber, Inc., et al* (E.D. Tex.)

8   (securities fraud involving a limited partnership investment); Cause No. 2:98CV3573; *Ronald E.*

9   *Choinacki, et al v. American Home Products Corporation* (D.N.J.) (underpaid lump sum pension

10  benefits) and Cause No.: 9:97CV0087; *Belinda Myers-Garrison v. Johnson & Johnson, et al* (E.D.

11  Tex.) (underpaid lump sum pension benefits).

12        On the mass action front, Mr. Coffman recently represented over 900 Texas, Louisiana and

13  Arkansas rice producers against Bayer CropScience for contaminating the U.S. long grain rice seed

14  stock with genetically engineered rice in MDL No. 1811; *In re Genetically Modified Rice Litigation*

15  (E.D. Mo.). This litigation recently settled for $750 million.  Mr. Coffman also represents (i) a group

16  of pharmacies, dentists, churches and other medium sized to large businesses in connection with

17  their BP oil spill claims, (ii) a group of companies and individuals in the Gulf of Mexico offshore oil

18  and gas industry in connection with their BP oil spill claims, and (iii) a group of opt-out chain

19  grocery stores and grocery wholesalers asserting price fixing claims against the major chocolate

20  manufacturers in MDL No. 1935; *In re Chocolate Confectionary Antitrust Litigation* (M.D. Pa.).  In

21  the past, Mr. Coffman was co-lead counsel for a group of 200 chain drug stores and chain grocery

22  stores with over 1,100 retail locations that opted-out of MDL No. 997; *In re Brand-Name*

23  *Prescription Drug Antitrust Litigation* (N.D. Ill.).

24        In short, Messrs. Barnow and Coffman have ample experience and capabilities leading and

25  litigating complex, nationwide class action litigation, including consumer class actions—

26  specifically, data breach cases—which exceeds the Rule 23(g) appointment requirements.  Their

27  collective leadership experience clearly demonstrates that they are well suited to serve as interim co-

28

lead class counsel in this matter.  *See, e.g., Moradi* at *2  (listing "the capabilities of counsel" as one of the additional factors to be considered in making a Rule 23(g) appointment) (citing *In re Bank of America Corp. Sec. Derivative and ERISA Lit.,* 258 F.R.D at 272).

**C.  Messrs. Barnow and Coffman Have Proven Knowledge of the Applicable Law in Data Breach Litigation, which has been Repeatedly Recognized (Rule 23(g)(1)(A)(iii)).**

Messrs. Barnow and Coffman have extensive knowledge of the applicable federal and state law pertaining to data breach cases, as demonstrated by their success in past MDL proceedings, consumer data breach cases, and general complex consumer class action litigation. Rule 23(g)(1)(A)(iii).  They clearly have the requisite legal knowledge to lead this matter.

For example, Mr. Barnow's expertise was recently recognized when he was asked to present at the following symposiums on cyber theft and data breaches:

1.  NetDiligence 2012 Cyber Risk & Privacy Liability Forum (Philadelphia, PA, June 4–5, 2012); topic:  "State of the Cyber Nation—Cases, Theories, and Damages."

2.  25th Annual Producer Conference (Stowe, VT, Sept. 10–12, 2012); topic: "Cyber 2.0—The Evolution of Cyber in the Boardroom."

3.  NetDiligence Cyber Risk & Privacy Liability Forum (Marina del Rey, CA, Oct. 11–12, 2012).

Altogether, Messrs. Barnow's and Coffman's record of accomplishment and success in serving as a lead or co-lead class counsel in data security breach cases and consumer class actions evidences that they have the requisite knowledge of the applicable law to serve as co-lead counsel in this matter.  Their proposed leadership structure on behalf of the putative class of consumers is lean and efficient.  Messrs. Barnow and Coffman have a history of working efficiently together, and will continue to do so to prevent burdening the class with excess and duplicative attorney time and expenses (as is often the case when unwieldy leadership structures are proposed).  *See, e.g.,* Rule 23(g)(2) Advisory Committee Notes ("the court should be alert to . . . the risk of overstaffing" and the possibility of "an ungainly counsel structure.").

Their experience in data breach class actions was further highlighted and recognized by their colleagues at the November 5, 2012 Case Management Conference.  For example, on the issue of

1    whether Zappos should actually produce documents as part of its initial disclosures, the arguments

2    advanced by Messrs. Barnow and Coffman were joined in by Preira Plaintiffs' counsel:

3            MR. COFFMAN:   I mean these cases have been on file for a long time. Initial

4            disclosures are pretty basic disclosures. I've got to believe that Zappos already

5            knows what information is pertinent, what documents are pertinent, and who knows

6            the facts. And it would seem like, to me, that putting it all together, at this particular

7            point in time, should not be a burden; especially, since they now have at least another

8            couple of months to do so.

9            THE COURT: All right. Mr. O'Mara.

10           MR. O'MARA: Yes, Your Honor. David O'Mara on behalf of Nevada consolidated

11           cases. I don't have anything else to add that would add anything substantive. I

12           believe that we should follow the Kentucky plaintiffs. I think they make good points.

13    Case Management Conference Transcript ("CMC Tr.") at 38:14–39:4, attached hereto as Exhibit 2.

14    Their arguments prevailed.  CMC Tr. at 39:4-13.

15           In opposition to Zappos' request for bifurcation of discovery, the arguments of Messrs.

16    Barnow and Coffman were similarly supported by Preira Plaintiffs' counsel:

17           MR. BARNOW:  So I think discovery ought to go forward with the obligation to be

18           reasonable, and it should not be bifurcated, and we shouldn't wait.

19           * * *

20           MR. O'MARA:  . . . We also agree that bifurcation would not be in the best interest

21           of this case. . . . And I -- while I don't know the cases that the counsel for Kentucky

22           are talking about, I think he's probably right that, in most of those cases, bifurcation

23           is not the right thing, just as it is in this case.

24    CMC Tr. at 41:19–42:25.  Messrs. Barnow's and Coffman's arguments again prevailed ("THE

25    COURT: . . . So what I'm going to order is I'm going to allow discovery to proceed on all issues . . .

26    ."). CMC Tr. at 44:17-18.

27           The remainder of the Case Management Conference transcript further illustrates that Messrs.

28    Barnow and Coffman are the most experienced and most appropriate counsel to lead this litigation.

*See, e.g.*, CMC Tr. at 45:9-48:4; 55:8-58:5 (suggesting a logical manner to proceed with drafting and filing an agreed scheduling order and agreed protective order for the production of documents as part of Zappos' initial disclosures) and the Court's resulting minute order.  D.E. # 53.

**D.**    **Messrs. Barnow and Coffman Have Committed (and Will Continue to Commit) the Appropriate Resources and Effort Necessary to Advance This Litigation in a Timely and Efficient Manner (Rule 23(g)(1)(A)(iv)).**

As their performance to date in this case and their record of class action accomplishments in other cases attests, Messrs. Barnow and Coffman have devoted (and will continue to devote) significant resources to represent the interests of all Plaintiffs and putative class members through pre-trial, trial and any appeals that may be necessary.  Rule 23(g)(1)(A)(iv).

Messrs. Barnow and Coffman have the financial wherewithal to fund this litigation to completion, even if it takes several years or more to resolve.  They are joined in advancing this litigation by the firms of Harke Clasby & Bushman, LLP, Wood Law Firm, LLC, Gray & White and Blood, Hurst & O'Reardon, LLP, each of which has experience in this type of litigation, have actively participated in the advancement of this case, and will continue to do so.  Messrs. Barnow and Coffman have demonstrated their willingness to successfully fund and litigate these types of cases in the past, and will do so here as well.  With the financial resources to do whatever it takes, the potential for a favorable outcome is substantially enhanced.

The importance of selecting the most experienced lawyers to represent a class is even more pressing when considering Zappos' resources and its counsel.  Zappos is a well-capitalized corporate litigant with vast resources that is represented by well-qualified counsel.  To ensure that a class is best represented against an impressive collection of well-funded defense counsel, the class members need aggressive and well-funded advocates with the expertise, wherewithal and willingness to litigate the case effectively to its conclusion, up to and including trial, if necessary.  Messrs. Barnow and Coffman are these type of advocates.

Further evidence of Messrs. Barnow's and Coffman's decisiveness and willingness to commit the appropriate resources to litigate this matter was presented at the November 5, 2012 Case Management Conference, wherein Preira Plaintiffs first took the position that they were ready to

1   proceed with their already-filed consolidated complaint, and were adverse to any extensions of time

2   for Zappos to respond to it.  CMC Tr. at 14–16 ("we've had a consolidated complaint on file since

3   approximately March of this year. . . and we're willing to stand behind that complaint, where that

4   could be one complaint that the defendants could respond to. . . . And we would like a response to

5   that complaint.").

6           During the case management conference, the Stevens Plaintiffs sought a short period of time

7   in which to file their consolidated amended complaint, committing to do so by November 12, 2012,

8   which they did.  D.E. #58.  After the Stevens Plaintiffs were granted leave to do so, Preira Plaintiffs

9   reversed their position and sought leave to file another consolidated amended complaint. CMC Tr. at

10  30–32.  Messrs. Barnow's and Coffman's unwavering dedication to making commitments, not

11  reversing field, meeting their commitments, and advancing the litigation could be no clearer.

12  **E.      Messrs. Barnow and Coffman are Committed to Working Efficiently With All Counsel
           in this Matter.**

13

14          On December 19, 2012, in an effort to promote the efficient and orderly advancement of the

15  litigation, Messrs. Barnow and Coffman initiated contact with Preira Plaintiffs' counsel regarding

16  working together to draft and file a single response to Zappos' pending motion to dismiss.  *See*

17  December 19, 2012 email from Ben Barnow to James Kauffman, one of Preira Plaintiffs' counsel,

18  attached hereto as Exhibit 3.  Mr. Kauffman rejected Mr. Barnow's suggestion that all Plaintiffs'

19  counsel work together:

20
21          Thank you for the email.  We think that it would be best for each group of Plaintiffs to
            respond separately to the motion to dismiss.

22  *See* Exhibit 3.

23          Preira Plaintiffs' counsel's refusal to work cooperatively conclusively defeats the position

24  that they have taken on multiple occasions to date—that they have already been appointed interim

25  class counsel in the MDL proceeding.  *See generally* Stevens Plaintiffs' Motion for Leave (D.E.

26  #45).  In addition to failing to attend the case management conference in person, Preira Plaintiffs'

27

28

1  counsel's refusal to work cooperatively further supports the appointment of Messrs. Barnow and

2  Coffman as interim co-lead class counsel.

3      Preira Plaintiffs' counsel also do not appear to be prepared to file their response to Zappos'

4  motion to dismiss by the January 15, 2013 deadline.  *See* D.E. #69.  The Stevens Plaintiffs, on the

5  other hand, intend to respond by the Court-ordered deadline unless ordered otherwise—even without

6  the assistance of Preira Plaintiffs' counsel.  Preira Plaintiffs' counsel's refusal to work cooperatively

7  undercuts their position that they should be appointed interim co-lead class counsel in this MDL

8  proceeding.    Messrs. Barnow and Coffman are the right lawyers to lead this litigation.  *See, e.g.,*

9  *Moradi*, 2011 WL 5025155 at *2 (listing "the vigorousness of the prosecution of the lawsuit" as one

10  of the additional factors to be considered in making a Rule 23(g) appointment) (citing *In re Bank of*

11  *America Corp. Sec. Derivative and ERISA Lit.,* 258 F.R.D at 272).

12                    **<u>CONCLUSION</u>**

13      The Stevens Plaintiffs respectfully suggest that the appointment of Messrs. Barnow and

14  Coffman as interim co-lead class counsel would facilitate the vigorous, orderly and efficient progress

15  of this litigation.  Indeed, their live attendance and participation at the initial Case Management

16  Conference alone illustrates that they have already taken their role in this matter seriously.

17      Messrs. Barnow and Coffman, and the counsel joining them in support of their appointment,

18  further assert that their experience leading and litigating data breach class actions, decisiveness,

19  active and vigorous prosecution of this litigation to date, efforts at cooperation and coordination with

20  all Plaintiffs' counsel, willingness to make and keep commitments, and the wherewithal and

21  willingness to devote the appropriate resources to litigate this matter to its conclusion, give Plaintiffs

22  and class members the best possible chance of a favorable outcome.

23      Messrs. Barnow and Coffman are the right lawyers to lead this litigation.  The Stevens

24  Plaintiffs respectfully request that they be appointed interim co-lead class counsel.

25

26

27

28

1   Dated:  January 2, 2013                    Respectfully submitted,

2                                              By: /s/ Ben Barnow
                                               Ben Barnow
3                                              **BARNOW AND ASSOCIATES, P.C.**
                                               One North LaSalle Street, Suite 4600
4                                              Chicago, IL 60602
                                               Telephone: (312) 621-2000
5                                              Facsimile: (312) 641-5504

6
                                               Richard L. Coffman
7                                              **THE COFFMAN LAW FIRM**
                                               First City Building
8                                              505 Orleans Street, Suite 505
                                               Beaumont, TX 77701
9                                              Telephone: (409) 833-7700
                                               Facsimile: (866) 835-8250
10

11                                             Timothy G. Blood
                                               **BLOOD HURST & O'REARDON, LLP**
12                                             701 B Street, Suite 1700
                                               San Diego, CA 92101
13                                             Telephone: (619) 338-1100
                                               Facsimile: (619) 338-1101
14

15                                             Lance A. Harke, P.A.
                                               **HARKE CLASBY & BUSHMAN, LLP**
16                                             9699 NE Second Avenue
                                               Miami Shores, FL 33138
17                                             Telephone: (305) 536-8220
                                               Facsimile: (305) 536-8229
18

19                                             E. Kirk Wood, Jr.
                                               **WOOD LAW FIRM, LLC**
20                                             P.O. Box 382434
                                               Birmingham, AL 35238-2434
21                                             Telephone: (205) 612-3905
                                               Facsimile: (866) 747-3905
22

23                                             Mark K. Gray
                                               **GRAY & WHITE**
24                                             713 East Market Street
                                               Louisville, KY 40202
25                                             Telephone: (502) 210-8942
                                               Facsimile: (502) 618-4059
26

27                                             **ATTORNEYS FOR THE STEVENS
                                                   PLAINTIFFS**
28

1

## **CERTIFICATE OF SERVICE**

2

On January 2, 2013, I caused the foregoing document to be electronically filed with the

3

U.S.D.C., District of Nevada, using the CM/ECF system, which will automatically serve copies

of the document on all registered CM/ECF users. For all non-ECF Users, service will be

4

effectuated via First Class Mail.

5

6                                                                                 /s/ Ben Barnow
                                                                                   Ben Barnow

7                                                                                 **BARNOW AND ASSOCIATES, P.C.**
                                                                                   One North LaSalle Street, Suite 4600

8                                                                                 Chicago, Illinois 60602
                                                                                   Telephone: (312)621-2000

9                                                                                 Facsimile: (312) 641-5504
                                                                                   b.barnow@barnowlaw.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28