MORRIS LAW GROUP
Robert McCoy, No. 9121
Email: rrm@morrislawgroup.com
Raleigh C. Thompson, No. 11296
Email: rct@morrislawgroup.com
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 474-9400
Facsimile: (702) 474-9422

STROOCK & STROOCK & LAVAN LLP
Julia B. Strickland *(Pro Hac Vice)*
Email: jstrickland@stroock.com
Steven J. Newman *(Pro Hac Vice)*
Email: snewman@stroock.com
Brian C. Frontino *(Pro Hac Vice)*
Email: bfrontino@stroock.com
2029 Century Park East, Suite 1600
Los Angeles, California 90067
Telephone: (310) 556-5800
Facsimile: (310) 556-5959

Attorneys for Defendant
Zappos.com, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| IN RE ZAPPOS SECURITY BREACH LITIGATION | ) MDL: 2357<br>) Case No. 3:12-cv-00325-RCJ-VPC |
| ------------------------------------ | ) |
| This document relates to:<br><br>ALL ACTIONS | ) **REPLY IN SUPPORT OF DEFENDANT ZAPPOS.COM, INC.'S MOTION TO DISMISS COMPLAINTS** |

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

## TABLE OF CONTENTS

I. INTRODUCTION .................... 1

II. ARGUMENT .................... 3

A. Plaintiffs' Speculative Theories Of Standing Fail To Meet Article III's Standards. .................... 3

1. The United States Supreme Court Recently Confirmed That Risk Of Future Harm Confers Standing Only When The Harm Is "Certainly Impending." .................... 3

2. Plaintiffs Fail To Allege That Their Purported Future Harm Is "Certainly Impending.".................... 6

3. Voluntary Costs Incurred To Purchase Credit Monitoring Cannot Create Standing Where It Otherwise Does Not Exist. .................... 12

4. Plaintiffs Hasner And Nobles Fail To Allege The Unauthorized Access To Their AOL Email Accounts Is Fairly Traceable To The Incident. .................... 13

B. All of Plaintiffs' Claims Are Governed By Nevada Law.................... 16

C. Plaintiffs' Lack An Ascertainable, Enforceable Contract Or Damages. .................... 17

1. Plaintiffs' Previous Positions Taken In This Case Establish The Lack Of A "Meeting Of The Minds" Or Corresponding Ascertainable Agreement. .................... 17

2. If A Contract Did Exist, Which It Does Not, Zappos's Disclaimer Of Complete Security Would Operate To Bar Their Contract Claims. .................... 19

3. Plaintiffs Fail To Allege Cognizable Damages. .................... 21

D. No Claims May Proceed Under The California And Washington Data Breach Notice Statutes. .................... 22

E. Plaintiffs Deceptive Trade Practices Claims Fail. .................... 24

1. Zappos Did Not Engage In Any Deceptive Trade Practices. .................... 24

2. Plaintiffs Cannot Establish The Required Element Of Damages To Their Deceptive Trade Practices Act Claims. .................... 24

3. Zappos Did Not "Waive" Any Arguments Relating To

One Of The Stevens Plaintiffs' Two "Separate" TDTPA Claims. ....... 26

F. The Economic Loss Doctrine Bars Plaintiffs' Tort Claims. ....... 27

1. It Is Appropriate For The Court To Determine Whether The Economic Loss Doctrine Applies On A Motion To Dismiss. ....... 27

2. NRS Chapter 603A Does Not Apply To This Action. ....... 28

3. Plaintiffs Have Only Alleged Economic Loss. ....... 29

G. Plaintiffs' Negligence Claims Fail Independently Of The Economic Loss Doctrine. ....... 29

1. Zappos Breached No Legal Duty To Plaintiffs. ....... 30

2. The Criminal Act Here Breaks The Chain Of Proximate Causation. ....... 31

3. Zappos's Alleged Negligence Did Not Proximately Cause Plaintiffs' Alleged Damages. ....... 32

H. Plaintiffs' Claim For Invasion Of Privacy Should Be Dismissed. ....... 32

I. The Stevens Plaintiffs' Credit Reporting Claims Fail. ....... 35

III. CONCLUSION ....... 38

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

## TABLE OF AUTHORITIES

**CASES** **PAGE NO.**

*Ali v. Vikar Mgmt. Ltd.*, 994 F. Supp. 492 (S.D.N.Y. 1998) .......... 37

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 607 F. Supp. 2d 500 (S.D.N.Y. 2009) .......... 8

*Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273 (S.D.N.Y. 2008) .......... 10, 13

*Central Delta Water Agency v. United States*, 306 F.3d 938 (9th Cir. 2002) .......... 7

*Chapman v. Fed. Power Comm'n.*, 345 U.S. 153 (1953) .......... 12

*Clapper v. Amnesty International USA*, 568 U.S. ___, 2013 WL 673253 (Feb. 26, 2013) .......... passim

*Clark v. Bear Stearns & Co.*, 966 F. 2d 1318 (9th Cir. 1992) .......... 12, 15, 18

*Dave Greytak Enters., Inc. v. Mazda Motors of Am., Inc.*, 622 A.2d 14 (Del. Ch. 1992) .......... 21

*Desert Salon Services, Inc. v. KPSS, Inc.*, 2013 WL 497599 (D. Nev. Feb. 6, 2013) .......... 28

*DiGianni v. Stern's*, 26 F.3d 346 (2d Cir. 1994) .......... 37

*Doe v. Boys Clubs of Greater Dallas*, 907 S.W.2d 472 (Tex. 1995) .......... 27

*Dotzler v. Perot*, 914 F. Supp. 328 (E.D. Mo. 1996) .......... 37

*Frezza v. Google, Inc.*, No. 12-CV-0023, 2012 WL 5877587 (N.D. Cal. Nov. 20, 2012) .......... 19

*Gomon v. TRW, Inc.*, 28 Cal. App. 4th 1161 (1994) .......... 37

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

*Gratz v. Bollinger*,
539 U.S. 244, 123 S. Ct. 2411, 156 L. Ed. 2d 257 (2003)....23

*Hammond v. The Bank of New York Mellon Corp.*,
08 CIV. 6060 RMB RLE, 2010 WL 2643307 (S.D.N.Y. June 25, 2010)....21, 24

*Hines v. Overtock.com*,
668 F. Supp. 2d 362 (E.D.N.Y. 2009)....18

*Holmes v. Countrywide Fin. Corp.*,
5:08-CV-00205-R, 2012 WL 2873892 (W.D. Ky. July 12, 2012)....36

*In re LinkedIn User Privacy Litig.*,
5:12-CV-03088 EJD, 2013 WL 844291 (N.D. Cal. Mar. 6, 2013) ....25

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
MDL No. 11-MD-2258 AJB MDD, 2012 WL 4849054 (S.D. Cal. Oct. 11, 2012) ....9, 20, 28, 32

*Keife v. Metro. Life Ins. Co.*,
797 F. Supp. 2d 1072 (D. Nev. 2011)....21

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ....12

*Krottner v. Starbucks Corp.*,
406 F. App'x 129 (9th Cir. Dec. 2010) ....32

*Krottner v. Starbucks Corp.*,
628 F.3d 1139 (9th Cir. 2010) .... passim

*Laracuente v. Laracuente*,
252 N.J. Super. 384, 599 A.2d 968 (N.J. Super. Ct. 1991) ....37

*Lucatelli v. Texas De Brazil (Las Vegas) Corp.*,
2:11-CV-01829-RCJ, 2012 WL 1681394 (D. Nev. May 11, 2012) ....29

*Malik v. AT&T Mobility, LLC*,
No. 1:08-cv-234, 2009 WL 198710 (W.D. Mich. Jan. 23, 2009) ....37

*McCoy v. Chase Manhattan Bank, USA, N.A.*,
654 F.3d 971 (9th Cir. 2011) ....21

*McLoughlin v. People's United Bank, Inc.*,
CIVA 308CV-00944 VLB, 2009 WL 2843269 (D. Conn. Aug. 13, 2009)...9

*Md. v. Wilson*,
519 U.S. 408 (1997) .......... 12

*Melvin v. Reid*,
112 Cal. App. 285, 297 P. 91 (1931) .......... 34

*Mizrahi v. Wells Fargo Home Mortg.*,
2:09-CV-01387-RLH, 2010 WL 2521742 (D. Nev. June 16, 2010) .......... 17

*Montesano v. Donrey Media Group*,
99 Nev. 644, 668 P.2d 1081 (1983) .......... 33

*New Hampshire v. Maine*,
532 U.S. 742 (2001) .......... 18

*Nguyen v. Barnes & Noble, Inc.*,
No. 12-0812, 2012 WL 3711081 (C.D. Cal. Aug. 28, 2012) .......... 19

*Pardo v. Olson & Sons, Inc.*,
40 F. 3d 1063 (9th Cir. 1994) .......... 12

*People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*,
111 Nev. 615, 895 P.2d 1269 (1995) .......... 33

*Pisciotta v. Old National Bancorp*,
499 F.3d 629 (7th Cir. 2007) .......... 9, 21

*Randolph v. ING Life Ins. & Annuity Co.*,
973 A.2d 702 (D.C. Cir. 2009) .......... 33, 34

*Reilly v. Ceridian Corp.*,
664 F.3d 38 (3d Cir. 2011) .......... 8

*Rice v. Montgomery Ward & Co.*,
450 F. Supp. 668 (M.D.N.C. 1978) .......... 37

*Ruiz v. Gap, Inc.*,
380 F. App'x 689 (9th Cir. 2010) .......... 9, 24

*Rush v. Macy's New York, Inc.*,
775 F.2d 1554 (11th Cir. 1985) .......... 37

*Scialabba v. Brandise Const. Co., Inc.*,
112 Nev. 965, 921 P.2d 928 (1996) .......... 30

*Scott v. Pasadena Unified Sch. Dist.*,
306 F.3d 646 (9th Cir. 2002) .......... 7

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

*Shafran v. Harley-Davidson, Inc.*, 07 CIV. 01365 (GBD), 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) ..... 22, 24

*Smith v. First Nat'l Bank*, 837 F.2d 1575 (11th Cir. 1998) ..... 37

*Smith v. Recrion Corp.*, 91 Nev. 666, 541 P.2d 663 (1975) ..... 17, 18

*Stein v. Bank of Am. Corp.*, 887 F. Supp. 2d 126 (D.D.C. 2012) ..... 8

*Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 125 Nev. 66, 206 P.3d 81 (2009) ..... 29

*Todd v. Associated Credit Bureau Servs.*, 451 F. Supp. 447 (E.D. Pa. 1977) ..... 37

*Van Tassell v. United Mktg. Group, LLC*, 795 F. Supp. 2d 770 (N.D. Ill. 2011) ..... 18, 19

*Whitmore v. Arkansas*, 495 U.S. 149 S. Ct. 1717 L. Ed. 2d 135 (1990) ..... 4

*Willingham v. Global Payments, Inc.*, 1:12-CV-01157-RWS, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ..... 36

*Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110 (N.D. Cal. 2011) ..... 20

**RULES**

NRCP 12(b)(6) ..... 18

**STATUTES**

15 U.S.C. § 1681a(d)(1) ..... 36

15 U.S.C. § 1681a(f) ..... 35

15 U.S.C. § 1681b ..... 36

28 U.S.C. § 1406(a) ..... 18

NRS 603A.040 .......... 29

NRS Chapter 603A .......... 28, 29, 30, 31

Tex. Bus. & Com. Code § 17.50(a) .......... 27

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

## POINTS AND AUTHORITIES

## I. INTRODUCTION

Over a year has passed since the Incident, in which an unknown hacker or hackers potentially gained access to limited information of Zappos customers.[1] Despite this significant passage of time, not one of the seventeen named Plaintiffs in this lawsuit alleges actual identity theft, a specific attempt to commit identity theft or any unauthorized Zappos purchases. Three of the named Plaintiffs -- Hasner, Preira and Habashy -- allege that they purchased credit monitoring services in response to the Incident, and yet still none alleges that such services have detected any attempted identity theft in the year since the Incident.[2] Two of the named Plaintiffs -- Nobles and Hasner -- allege that their email accounts were accessed without permission near the time of the Incident, but neither alleges any details to suggest that the alleged access resulted from the Incident. Neither of the Oppositions submitted by Plaintiffs alter these critical omissions from the Complaints.

The central issue before the Court, then, is whether Plaintiffs' claims may proceed despite Plaintiffs' failure to allege that they have suffered any actual injury in fact as a result of the Incident. The United States Supreme Court's February 6, 2013 decision in *Clapper v. Amnesty International USA*, 568 U.S. ___, 2013 WL 673253 (Feb. 26, 2013), provides a clear answer: Plaintiffs' claims are not adequately pleaded. In *Clapper*, the Supreme Court declared that "increased risk of future harm" generally does

---

[1] Capitalized terms are used herein as defined in the Motion unless otherwise stated.

[2] And fatally, a document Hasner produced with her Initial Disclosures reflects that she was entirely refunded for the cost of the credit monitoring product she claims she purchased in response to the Incident. Supplemental Request for Judicial Notice, Ex. A.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

not confer Article III standing. In reversing the Second Circuit's application of an "objectively reasonable likelihood" of harm standard, the Supreme Court made absolutely clear that, where there is no *present* injury, pleading anything short of *imminent* future harm fails to satisfy standing requirements. Moreover, the Supreme Court stressed that a plaintiff cannot manufacture standing by voluntarily incurring costs to mitigate some hypothetical future harm that is not "certainly impending." Thus, *Clapper* mandates rejection of Plaintiffs' two theories of standing: (1) that the risk of identity theft was increased due to the Incident; and (2) that three Plaintiffs spent money to reduce their hypothetically increased risk. Plaintiffs do not and cannot deny that the information potentially accessed in the Incident did *not* include Social Security Numbers or other sensitive information, or indeed any data that could allow access to any financial account. Plaintiffs' theory of heightened identity theft risk is speculative, and under *Clapper* it must be rejected as a matter of law.

Plaintiffs' remaining claims also have multiple weaknesses, requiring dismissal independent of the standing issue:

- The Stevens Plaintiffs' non-Nevada claims are barred by application of Nevada law.
- Plaintiffs' contract claims fail to allege an ascertainable agreement or damages. Moreover, their declarations submitted to defeat Zappos's motion to compel arbitration contradict the "meeting of the minds" element of any contract claim.
- The asserted California and Washington state data breach notification statutes are not triggered by the Incident, because the data involved falls outside the statutory definition of "personal information." Moreover, Plaintiffs allege no harm

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

resulting from alleged non-compliance with any notice requirement.

- Zappos did not engage in any conduct violating any deceptive practices statute that resulted in any damages.
- The economic loss doctrine bars Plaintiffs' tort claims.
- Plaintiffs do not sufficiently allege the elements of duty, proximate causation or damages in connection with their negligence claim.
- The elements of a common law invasion of privacy claim are not adequately pleaded.
- The Fair Credit Reporting Act does not apply.

For these reasons, and as further demonstrated in the Motion and below, all of Plaintiffs' claims fail as a matter of law and should be dismissed.

## II. ARGUMENT

### A. Plaintiffs' Speculative Theories Of Standing Fail To Meet Article III's Standards.

#### 1. The United States Supreme Court Recently Confirmed That Risk Of Future Harm Confers Standing Only When The Harm Is "Certainly Impending."

In *Clapper*, the Supreme Court rejected two theories of standing, based on speculative future harm, substantially similar to the theories asserted by Plaintiffs here. *Clapper* indeed is fatal to Plaintiffs' claims because Article III standing is not pleaded in conformity with *Clapper*.

*Clapper* addressed the constitutionality of Section 702 of the Foreign Intelligence Surveillance Act of 1978, codified at 50 U.S.C. § 1881a ("Section 1881a"), which permits government surveillance of non-citizens who are reasonably believed to be located outside of the United States. *Clapper*, 2013 WL 673253, at *3; *see* 50 U.S.C. § 1881a. Respondents in *Clapper*,

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

consisting of United States domiciled attorneys, human rights activists, and members of the news media challenged Section 1881a under the First and Fourth Amendments, claiming that it improperly infringed on their ability to engage in sensitive international communications with individuals that they subjectively believe are likely targets of surveillance. *Clapper*, 2013 WL 673253, at *3. Respondents asserted two theories of standing that are, for all practical purposes, identical to those asserted by Plaintiffs here: (1) there was "an objectively reasonable likelihood that their communications [would be] be acquired under § 1881a at some point in the future," and (2) Respondents were suffering a *present* injury "because the risk of § 1881a-authorized surveillance already has forced them to take costly and burdensome measures to protect the confidentiality of their international communications." *Id.* at *3. In rejecting these standing theories, the Supreme Court thoroughly repudiated the Second Circuit's application of an "objectively reasonable likelihood" standard for future harm as an improperly "novel view of standing," and rejected respondent's other standing theories. *Id.* at * 6.

Specifically, the Supreme Court explained that the Second Circuit's application of the "objectively reasonable likelihood" standard "is inconsistent with our requirement that the 'threatened injury must be *certainly impending* to constitute injury in fact.'" *Id.* at *8 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S. Ct. 1717, 1720, 109 L. Ed. 2d 135 (1990)) (emphasis added). It explained, "'Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes -- that the injury is *certainly* impending.'" *Id.* at *7 (quoting *Whitmore*, 495 U.S. at 158) (emphasis in original). The Court then identified a laundry list of speculative actions that must occur before the threatened

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

injury -- the monitoring of respondents' calls under Section 1881a -- would actually occur, including: (1) the government's decision to target certain communications; (2) the government's decision to utilize Section 1881a to conduct such surveillance as opposed to doing so through other means; (3) approval of such surveillance by the court; (4) the government's success in intercepting calls; and (5) that respondents will be the parties to the monitored communications. *Id.* at *8. The Court found such speculation falls well short of Article III's requirements. In so holding, the Court reiterated its "usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." *Id.* at *10. The Court also found it significant that respondents "fail to offer any evidence that their communications have been monitored under § 1881a, a failure that substantially undermines their standing theory." *Id.* at *8. Moreover, the Court held that, even if respondents could establish that their future injury would imminently occur, they still lacked standing because they could not demonstrate that such harm would be "fairly traceable to § 1881a." *Id.* at *9. "[B]ecause respondents can only speculate as to whether any (asserted) interception would be under 1881a or some other authority, they cannot satisfy the 'fairly traceable' requirement." *Id.*

The Court also definitively rejected respondents' second theory, in which they claimed that they could establish standing "on the measures that they have undertaken to avoid § 1881a-authorized surveillance." *Id.* at *11. Respondents claimed that they took certain prophylactic measures, including avoiding certain email or phone conversations, speaking in generalities, or incurring costs traveling to conduct in-person conversations. *Id.* Relying on its earlier analysis, the Court rejected this theory as well, stating:

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

> Respondents' contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing -- because the harm respondents seek to avoid is not certainly impending. *In other words, respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.* [Citations] . . . .
>
> If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear. . . . Thus, allowing respondents to bring this action based on costs they incurred in response to a speculative threat would be tantamount to accepting a repackaged version of respondents' first failed theory of standing. [Citations].

*Id.* (emphasis added). The Court went on to hold: "Because respondents do not face a threat of certainly impending interception under §1881a, the costs that they have incurred to avoid surveillance are simply the product of their fear of surveillance." *Id.* This, the Court found, is "insufficient to create standing." *Id.*

The *Clapper* decision confirms the fundamental principle, argued by Zappos in its Motion and applied in the numerous cases cited therein, that future harm must be *certainly impending* in order to confer Article III standing. *Clapper* also reaffirms the rule that costs incurred to prevent speculative, non-imminent future harm, no matter how desirable the purchaser subjectively believes them to be, do not manufacture standing. As demonstrated in the Motion and further argued below, this wholly precludes Plaintiffs' theories of standing, requiring dismissal of their claims.

**2. Plaintiffs Fail To Allege That Their Purported Future Harm Is "Certainly Impending."**

As demonstrated in the Motion, virtually all Plaintiffs allege only hypothetical increased risk of future injury, but no real-world impact to

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

them as a result of the Incident. No Plaintiffs allege sufficient facts to support a claim that the supposed harm of identity theft or identity fraud is certainly impending. Thus, they fail to meet Article III's imminence requirement. *Clapper*, 2013 WL 673253, at *7.

In their Oppositions, both the Stevens Plaintiffs and the Preira Plaintiffs largely rely on the Ninth Circuit's decision in *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010) ("*Krottner I*"). Stevens Opposition at p. 7; Preira Opposition at pp. 7, 9. As discussed in Zappos's Motion, in *Krottner I*, the Ninth Circuit found that plaintiffs sufficiently alleged standing because there was a "credible threat of real and immediate harm" stemming from the theft of a laptop containing their *unencrypted social security numbers*, names and addresses, *as well as a subsequent specific attempt* to open a bank account with one of the plaintiff's information. *Id.* at 1142-43. This set of allegations showed, according to the *Krottner I* court, that plaintiffs were "*immediately* in danger of sustaining some direct injury . . . ." *Id.* at 1142 (*citing Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656 (9th Cir. 2002)) (emphasis in original). Plaintiffs' reliance on *Krottner I* is misplaced for two reasons.

*First*, to the extent that the Ninth Circuit's application of the "credible threat of real and immediate harm" standard in *Krottner I* is inconsistent with *Clapper*, it no longer reflects the current state of the law as laid down by the Supreme Court.[3] The Third Circuit, on the other hand, set forth the proper rule, now consistent with the law of the land as set forth in

[3] Notably, the "credible threat of real and immediate harm" standard adopted by the Ninth Circuit in *Krottner I* originates in the context of environmental claims addressed in *Central Delta Water Agency v. United States*, 306 F.3d 938, 945 (9th Cir. 2002). *See Krottner I*, 628 F.3d at 1142. The Ninth Circuit in *Central Delta*, however, premised its future-harm standard for standing on the unique nature of environmental harms, which may be permanently irremediable. *Central Delta*, 306 F.3d at 950. No similar concerns apply here.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

*Clapper*, in *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) *cert. denied*, 132 S. Ct. 2395, 182 L. Ed. 2d 1021 (2012). In *Reilly*, defendant was the victim of a data security breach where the illegally-accessed information included first name, last name, social security number and, in several cases, birth date and/or the bank account that is used for direct deposit. *Id.* at 40. Plaintiffs had not alleged that they suffered any identity theft or other fraud as a result of the incident, and the Third Circuit therefore concluded that plaintiffs' "allegations of hypothetical, future injury are insufficient to establish standing." *Id.* The Third Circuit noted, "It was not known whether the hacker read, copied, or understood the data." *Id.* Thus, according to the Third Circuit, plaintiffs' "contentions rely on *speculation* that the hacker: (1) read, copied, and understood their personal information; (2) intends to commit future criminal acts by misusing the information; and (3) is able to use such information to the detriment of Appellants by making unauthorized transactions in Appellants' names. Unless and until these conjectures come true, Appellants have not suffered any injury; there has been no misuse of the information, and thus, no harm." *Id.* at 42 (emphasis added); *see also Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 607 F. Supp. 2d 500, 508 (S.D.N.Y. 2009), aff'd, No. 09-3293-cv, 2011 U.S. App. LEXIS 25074 (2d Cir. Dec. 19, 2011) (finding no standing where plaintiffs' "patchwork of guesses and contradictions" had "failed to adequately allege an injury in fact"); *Stein v. Bank of Am. Corp.*, 887 F. Supp. 2d 126, 131 (D.D.C. 2012) (dismissing claim alleging improper government access to financial data because plaintiffs had "not adequately pleaded a concrete and particularized injury, free of conjecture or speculation"). Under this rule, Plaintiffs' claims fail.

*Second*, even assuming the Ninth Circuit's analysis in *Krottner I* can be reconciled with the *Clapper* decision, *Krottner I* itself still reveals the

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

fundamental deficiencies in Plaintiffs' allegations. As argued in the Motion, the *Krottner I* analysis of future harm turned on a critically different set of alleged facts; specifically that the thief in that case *actually made an attempt to open a new bank account* in plaintiff's name *using his stolen, unencrypted social security number*. *Krottner I*, 628 F.3d at 1141. The court in *Krottner I* relied heavily on the reasoning in *Pisciotta v. Old National Bancorp*, 499 F.3d 629 (7th Cir. 2007), in which the Seventh Circuit found allegations of future harm sufficient where the "name, address, *social security number*, *driver's license number*, *date of birth*, *mother's maiden name* and *credit card or other financial account numbers*" of each plaintiff was stolen. *Pisciotta*, 499 F.3d at 631 (emphasis added). Thus, in both *Krottner I*, and *Pisciotti* on which it relied, the nature of information accessed was significantly more sensitive than the limited information potentially involved in the Incident: names, e-mail addresses, billing and shipping addresses, phone numbers, credit card tail and/or cryptographically scrambled Zappos account passwords. Plaintiffs are unable to cite *any* authority in which access to the limited information at issue here created a future risk of harm sufficient to confer Article III standing. All cases cited by Plaintiffs involve, at the very least, access to complete, unencrypted social security numbers, and usually additional sensitive financial information which could have allowed takeover of other financial accounts.[4]

---

[4] *See Krottner I*, 628 F.3d at 1143 (social security numbers); *Pisciotta*, 499 F.3d at 631 (social security numbers, driver's license numbers, credit card and other financial account numbers, mother's maiden name); *Ruiz v. Gap, Inc.*, 380 F. App'x 689, 690 (9th Cir. 2010) (social security numbers); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, MDL No. 11-MD-2258 AJB MDD, 2012 WL 4849054, at *1 (S.D. Cal. Oct. 11, 2012) ("names, mailing addresses, email addresses, birth dates, credit and debit card information (card numbers, expiration dates and security codes) and login credentials"); *McLoughlin v. People's United Bank, Inc.*, CIVA 308CV-00944 VLB, 2009 WL 2843269, at *1 (D. Conn. Aug. 13, 2009) ("various items of personal financial

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

This distinction is fundamental. Access to complete, unencrypted social security numbers or full financial account information with corresponding passwords creates a more extreme risk of subsequent fraud, unlike the limited information here potentially accessed through the Incident, which could not have been used to commit identity-theft, and where no plaintiff alleges even an *attempt* to commit identity theft. *Compare Krottner I*, 628 F.3d at 1141 (noting that thief "attempted to open a new account using [plaintiff's] social security number"). This is confirmed by the data security breach notice statutes Plaintiffs cite, which are not triggered unless social security or full financial account numbers, with corresponding access codes (or other information not at issue here) is involved in a data security breach. *See* Motion at pp. 21-23 (addressing Plaintiff's claims under Washington and California statutes). Simply put, Plaintiffs have not alleged sufficient facts to demonstrate that their alleged harm -- identity theft or identity fraud -- is "certainly impending" as a result of the Incident, even though "certainly impending" harm is what *Clapper* requires.

Plaintiffs do not and cannot allege that the information potentially accessed in the Incident will allow anyone to open new financial accounts in Plaintiffs' names, to take over an existing account or to otherwise commit identity fraud. Rather, Plaintiffs' theory relies upon a purely speculative chain of events, contingent on numerous decisions made by third parties (*e.g.*, the hacker), in which the hacker is able to: (1) read Plaintiffs' information; (2) copy Plaintiffs' information for future use; (3) unscramble Plaintiffs' Zappos.com account passwords; (4) locate other

---

information that included their names, addresses, and Social Security Numbers, and bank account information . . . ."); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 276 (S.D.N.Y. 2008) (social security numbers).

websites that Plaintiffs use; (5) have the good fortune to discover a web-based account where the Plaintiff uses the same password as the Zappos.com account; (6) before the password on the other account is changed; (7) successfully access such other account; (8) which contains additional, more sensitive personal information; and (9) utilize the additional sensitive information to commit identity theft or other fraud; (10) without being captured. *See* Preira Complaint, ¶¶ 35-36, 40; Stevens Complaint, ¶¶ 31, 33, 35-37. The Stevens Plaintiffs posit an even more speculative scenario in which third parties are able to trick them into thinking the hacker is a Zappos representative and then convince Plaintiffs to part with further personal information that the hacker might use to commit some future unspecified wrong against them. This theory, of course, ignores Plaintiffs' concession that Zappos communicated to them in its notification email, "As always, please remember that Zappos.com will never ask you for personal or account information in an e-mail. Please exercise caution if you receive any emails or phone calls that ask for personal information or direct you to a web site where you are asked to provide personal information." Stevens Complaint, ¶¶ 35-36. Plaintiffs' allegations are purely conjectural and too speculative to support *Clapper*'s mandate to plead only "certainly impending" harms. *See Clapper*, 2013 WL 673253, at *8 ("a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending").

Finally, the fact that no Plaintiff alleges he or she has been the victim of identity theft, experienced unauthorized charges or even was the subject of any specific identity theft attempt, even though almost a year has passed since the Incident, further undermines their standing theories. *Clapper*, 2013 WL 673253, at *8 ("Accordingly, it is no surprise that respondents fail to offer any evidence that their communications have been



MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

monitored under § 1881a, a failure that substantially undermines their standing theory.").

**3. Voluntary Costs Incurred To Purchase Credit Monitoring Cannot Create Standing Where It Otherwise Does Not Exist.**

*Clapper* also establishes that credit monitoring expenses incurred cannot manufacture standing. Because Plaintiffs allege no non-speculative threat of "certainly impending" identity theft, costs voluntarily incurred allegedly to avoid identity theft are simply the product of their subjective fear of identity theft, and thus do not create standing. *Clapper*, 2013 WL 673253, at *12. "Respondents' contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing -- because the harm respondents seek to avoid is not certainly impending." *Id.*

Plaintiffs fail to cite a single published case in their Oppositions in which the purchase of credit monitoring or other prophylactic services was sufficient, in and of itself, to confer Article III standing.[5] The Preira

[5] The Nevada state court's decision to *grant* Zappos's Motion to Dismiss in *Metoyer v. Zappos.com, Inc.*, Clark County, Nevada, Case No. A-12-655516-C, does not help Plaintiffs here. The statements in the hearing transcript merely are dicta and do not reflect the state of the law in Nevada. *See Md. v. Wilson*, 519 U.S. 408, 412-13 (1997) (holding that dictum does not constitute binding precedent); *see also Pardo v. Olson & Sons, Inc.*, 40 F. 3d 1063, 1067 (9th Cir. 1994) (finding that dictum cannot be the basis for collateral estoppel) (citing *Clark v. Bear Stearns & Co.*, 966 F. 2d 1318, 1320 (9th Cir. 1992)). Indeed, the *Metoyer* court has not yet entered any order on Zappos's motion. *See University of Nevada v. Tarkanian*, 110 Nev. 581, 598, 879 P.2d 1180, 1191 (1994) (stating that for res judicata to apply, the "initial ruling must have been on the merits and have become final"). Furthermore, the Nevada court's assessment of state court standing is not dispositive in this federal lawsuit because federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also U.S. ex rel. Chapman v. Fed. Power Comm'n.*, 345 U.S. 153, 156 (1953) (standing is a "complicated specialty of federal jurisdiction").

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

Plaintiffs' Opposition is the only of the two briefs to address this, and they cite only to *Caudle*, in which the court found standing, but did so on the grounds that the increased risk of future harm was sufficient, but not based on the purchase of credit monitoring services. *Caudle*, 580 F. Supp. 2d at 278-280. In fact, the court in *Caudle* went on to dismiss plaintiff's negligence claim on the ground that the purchase of credit monitoring was *not* cognizable damage. *Id.* at 284.

Again, *Clapper* is instructive on this issue. The Supreme Court found, "The Second Circuit's analysis improperly allowed respondents to establish standing by asserting that they suffer present costs and burdens that are based on a fear of surveillance, so long as that fear is not 'fanciful, paranoid, or otherwise unreasonable.'" *Clapper*, 2013 WL 673253, at *11. In so finding, the Court stressed, "This improperly waters down the fundamental requirements of Article III" because "the harm respondents seek to avoid is not certainly impending." *Id.* As demonstrated in the Motion and above, Plaintiffs' allegations fail to show certainly impending future harm, and thus Plaintiffs cannot manufacture standing based on their purchase of credit monitoring services as a result of their fear of a harm that is not certainly impending. Accordingly, Plaintiffs' claims must be dismissed.

**4. Plaintiffs Hasner And Nobles Fail To Allege The Unauthorized Access To Their AOL Email Accounts Is Fairly Traceable To The Incident.**

As argued in the Motion, Plaintiffs Nobles's and Hasner's allegations that their AOL email accounts, which allegedly happened to have the same passwords on their Zappos accounts, were accessed also are insufficient to demonstrate injury in fact. Nobles and Hasner fail to sufficiently allege that this alleged access was caused by the Incident (as opposed to other myriad potential causes).

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

The Supreme Court addressed an analogous situation in *Clapper*. There, the Court found that "even if respondents could demonstrate that the targeting of their foreign contacts is imminent, respondents can only speculate as to whether the Government will seek to use § 1881a-authorized surveillance (rather than other methods) to do so." *Clapper*, 2013 WL 673253, at *9. The Court then noted that the surveillance of respondents' contacts could occur in numerous ways and under several statutes other than Section 1881a, and "because respondents can only speculate as to whether any (asserted) interception would be under § 1881a or some other authority, they cannot satisfy the 'fairly traceable' requirement.'" *Id.*

Here, like in *Clapper*, Plaintiffs generally, and Hasner and Nobles specifically, only speculate that the alleged access to their email accounts is "fairly traceable" to the Incident. Nobles and Hasner do not allege *any* facts supporting their allegation that unauthorized access to their email accounts was caused by the Incident as opposed to the numerous other sources that, according to Plaintiffs, result in the theft of 9 million identities each year. Nobles barely attempts to respond to the glaring hole in her allegations that in 2010 her personal information was compromised by Facebook in an unrelated incident, as she alleged in litigation pursued by her same counsel here. *See* RJN, Ex. A. Nobles attempts to argue that this is irrelevant because that incident did not involve a data breach committed by a hacker. She does not explain, however, how that reconciles with her prior assertion to another court that her personal information was significantly compromised prior to the Zappos Incident.

Likewise, Hasner's name, address and phone number already are publically available. *See* http://www.whitepages.com/name/Patti-R-Hasner/Delray-Beach-FL/5q7bupb. This is important because Hasner alleges, quoting a Professor Fred H. Cate, that "[i]f I have your name,

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

address and phone number, in many states I can get your property tax records and other publically available information. With that additional information a criminal is in an even better position to commit fraud in your name or to access password protection sites . . . ." Preira Complaint, ¶ 36. Thus, according to her own allegations, Hasner already was at risk of unauthorized access to her personal information prior to the Incident. In spite of these admissions, she fails to explain how her alleged injury was "fairly traceable" to the Zappos Incident, rather than to some other cause, such as from information already being available.

As demonstrated in the Motion, Plaintiffs Hasner and Nobles also fail to allege that their Zappos passwords were secure prior to the Incident and could only have been discovered as a result of the Incident, rather than through some other means. Nor do they allege that their AOL email accounts were hacked after the Incident but before they could respond to Zappos's warning by changing their AOL passwords. Nobles does not allege when, specifically, her AOL account was accessed, and Hasner alleges that her account was accessed significantly *after* she was warned by Zappos to change passwords. Plaintiffs must allege facts to support a sufficient causal connection between the Incident and their purported harm, and they have failed to do so. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 13228 (11th Cir. 2012) (finding it significant that plaintiffs did allege that they had never previously been the victim of a data security breach, and that they had taken specific, detailed security measures). Having failed to allege how their AOL email account incident is fairly traceable to the Zappos Incident, Plaintiffs lack standing for this additional reason and their claims must be dismissed.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

**B. All of Plaintiffs' Claims Are Governed By Nevada Law.**

Notwithstanding Plaintiffs' lack of standing, the substance of their claims is governed by Nevada law. Thus, non-Nevada claims must be dismissed for this reason as well.

The Preira Plaintiffs concede that Nevada law applies to their claims. *See* Preira Opposition at p. 12 ("[Zappos] takes the position that Nevada law governs all of Plaintiffs and the Class' claims, Def. Br. At 18-21, and Plaintiffs hereby agree."). The Stevens Plaintiffs also effectively recognize that Nevada law applies to the majority of the Stevens Plaintiffs' claims, because the laws of each jurisdiction are fundamentally the same. Stevens Opposition at p. 9. Accordingly, pursuant to the substantial agreement of the parties, all tort claims should be governed by Nevada law, the Preira Plaintiffs' non-Nevada statutory claims must be dismissed (Preira Complaint Counts V, VI, VII, VIII (except to the extent pursued under Nevada law) and IX) and the Stevens Plaintiffs' non-Nevada deceptive trade practices claims also must be dismissed (Stevens Complaint Count VI, except to the extent pursued under Nevada law).

The Stevens Plaintiffs, however, contend that Texas and California law must be applied to their statutory claims (Counts VII-X) because corresponding claims are not available under Nevada law. Stevens Opposition at p. 9. Even if the Court were to apply Texas and California law to these Counts, which it should not, Plaintiffs' claims nonetheless fail on the merits, as explained below.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

### C. Plaintiffs' Lack An Ascertainable, Enforceable Contract Or Damages.

#### 1. Plaintiffs' Previous Positions Taken In This Case Establish The Lack Of A "Meeting Of The Minds" Or Corresponding Ascertainable Agreement.

It is a fundamental principle of contract law, whether applied under an express or implied contractual theory, that there must be an "ascertainable agreement" that reflects a "meeting of the minds" between the parties with respect to the terms offered and accepted. *Smith v. Recrion Corp.*, 91 Nev. 666, 668, 541 P.2d 663, 664-65 (1975); *Mizrahi v. Wells Fargo Home Mortg.*, 2:09-CV-01387-RLH, 2010 WL 2521742, at *3 (D. Nev. June 16, 2010). Zappos's understanding of its contracts with its customers was that all had agreed to arbitrate claims. Plaintiffs successfully argued that they had no such understanding, and that accordingly Zappos could not enforce what it had thought was its right to arbitrate claims. There was no meeting of the minds.

Plaintiffs' arguments in the Oppositions fail to overcome the simple fact that they proved, over Zappos's objection, that *no* meeting of the minds occurred with respect to contract formation. The Court found, "Where, as here, there is no acceptance by Plaintiffs, no meeting of the minds, and no manifestation of assent, there is no contract pursuant to Nevada law." Docket No. 21, p. 10. In their attempt to overcome this insurmountable bar to their contract claim, Plaintiffs argue that the parties nonetheless formed agreements. Plaintiffs cannot have it both ways.

The Stevens Plaintiffs contend that by only asserting breach of an *implied* contract, as opposed to an express contract as alleged by the Preira Plaintiffs, they somehow avoid their prior inconsistent position on the motion to compel arbitration and as set forth in this Court's ruling. Stevens Opposition at p. 22. Notably, the Stevens Plaintiffs cite no authority for the

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

proposition that they may change their legal position so drastically. To the contrary, their arguments lack merit because an implied contract, just like an express contract, must be based on an "ascertainable agreement." *Smith*, 91 Nev. at 668, 541 P.2d at 664-65. All Plaintiffs, including the Stevens Plaintiffs, are therefore judicially estopped from arguing the existence of an "ascertainable agreement," because they have successfully argued directly to the contrary. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position" (internal quotations omitted)).

Plaintiffs' other arguments are likewise without merit. Specifically, the Preira Plaintiffs improperly rely on the decision in *Hines v. Overtock.com*, 668 F. Supp. 2d 362 (E.D.N.Y. 2009), claiming that the court in that case "declined to bar the *Overstock* plaintiffs from pursuing a breach of contract claim based on more prominent misrepresentations on the Overstock.com website." Preira Opposition at p. 20. This confuses the procedural posture of the *Overstock* decision. There, the court was considering defendant's motion to dismiss or stay pending arbitration pursuant to the Federal Arbitration Act, or transfer pursuant to 28 U.S.C. § 1406(a), *not* a motion to dismiss for failure to state a claim under Rule 12(b)(6) . *Overstock*, 668 F. Supp. 2d at 365. Thus, defendant in *Overstock* did not argue, and the court did not consider, whether plaintiff's contract claim could proceed notwithstanding plaintiff's denial of a meeting of minds with respect to the arbitration provision at issue. *Overstock*, therefore, is wholly inapposite to the present case.

Likewise, *Van Tassell v. United Mktg. Group, LLC*, 795 F. Supp. 2d 770, 776-93 (N.D. Ill. 2011), also cited by the Preira Plaintiffs, is inapplicable.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

There, a group of defendants moved to dismiss all claims asserted (which included, among many others, a breach of contract claim) under Rule 12(b)(6) based on the specific and limited argument that the conduct alleged in the complaint was not deceptive as a matter of law. *Id.* The court denied defendants' motion to dismiss, but did so on limited grounds, expressly stating that "the Court declines to dismiss Plaintiffs' claims *on the grounds that the enrollment process is not deceptive as a matter of law*." *Id.* at 781 (emphasis added). Again, defendants there did not argue, and the court did not consider, the specific contractual issues argued by Zappos here, rendering *Van Tassell* inapposite as well. *Nguyen v. Barnes & Noble, Inc.*, No. 12-0812, 2012 WL 3711081, at *5 n.2 (C.D. Cal. Aug. 28, 2012), also is distinguishable. *See* Preira Opposition at p. 21. In *Nguyen*, defendant argued that plaintiff's reference in his complaint to the choice-of-law provision found in defendant website's terms of use barred plaintiff from avoiding the arbitration provision also found in the terms of use. *Id.* The procedural posture of *Nguyen* makes it completely distinguishable from the present case.

All the contract claims should be barred by judicial estoppel.

**2. If A Contract Did Exist, Which It Does Not, Zappos's Disclaimer Of Complete Security Would Operate To Bar Their Contract Claims.**

Even if there were some meeting of the minds, it necessarily must include Zappos's written disclaimer. Indeed, acceptance of a credit card does not create any implied contractual duties relating to how the customer's data will be handled, even where there is no specific disclaimer. *Frezza v. Google, Inc.*, No. 12-CV-0023, 2012 WL 5877587, at *4 (N.D. Cal. Nov. 20, 2012). Zappos's disclaimer expressly states, "While we use industry-standard precautions to safeguard your personal information, we cannot guarantee complete security. 100% complete security does not presently

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

exist anywhere online or offline." *See* Motion, Ex. C; Preira Opposition at pp. 22-23, 26.

This Court should reject the Preira Plaintiffs' argument that the disclaimer cannot be considered in connection with Zappos's Safe Shopping Guarantee because "the [Safe Shopping Guarantee] and the disclaimer are not communicated to customers in the same place, or for that matter, the same prominence." Preira Opposition at p. 22. Putting aside the reality that Zappos's belief that the disclaimer would be part of any contract, the Preira Plaintiffs' argument also wholly ignores that the Preira Plaintiffs *expressly admit that they viewed Zappos's Privacy Policy*, which contains the disclaimer. *See* Preira Complaint, ¶ 25 ("In an effort to calm consumers' reasonable apprehensions regarding the risk of identity theft attendant to online transactions, Zappos' 'Privacy Policy' falsely represents to Zappos' customers that '[a]cess to your personal information is restricted. Only employees who need access to your personal information to perform a specific job are granted access to your personal information.'"); *id.* at ¶ 75 (stating in breach of contract claim that "[t]hrough its statements regarding its security measures," Zappos promised to take adequate measures to protect Plaintiffs' personal information); *see also* Stevens Plaintiffs Complaint, ¶ 24 (citing the Zappos Privacy Policy).

As argued in the Motion, given Zappos's express disclaimer in its Privacy Policy, which policy all Plaintiffs admit they saw, Zappos could not have any separate implied contractual obligation to provide complete security of Plaintiffs' data. *See Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 2012 WL 4849054, at *17 ("in the presence of clear admonitory language that Sony's security was not 'perfect,' no reasonable consumer could have been deceived"); *see also McCoy v. Chase Manhattan Bank, USA,*

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

*N.A.*, 654 F.3d 971, 975 (9th Cir. 2011) ("'where the subject at issue is expressly covered by the contract . . . the implied duty to perform in good faith does not come into play'" (quoting *Dave Greytak Enters., Inc. v. Mazda Motors of Am., Inc.*, 622 A.2d 14, 23 (Del. Ch. 1992)). Moreover, despite the fact that the "Zappos Guarantee" referenced by Plaintiffs expressly states that Zappos will reimburse any unauthorized charges, Plaintiffs do not allege that any such unauthorized charges occurred.

**3. Plaintiffs Fail To Allege Cognizable Damages.**

As set forth in the Motion, even if the Court finds some or all Plaintiffs have standing to pursue claims, which they do not, none has sufficiently alleged cognizable damages sufficient to support an individual cause of action, including breach of contract. Indeed, damages are an element of a contract claim under Nevada law. *Keife v. Metro. Life Ins. Co.*, 797 F. Supp. 2d 1072, 1076 (D. Nev. 2011). And although it does not appear that the issue has been considered by a Nevada court in any published ruling, numerous courts have noted that the purported harm alleged by Plaintiffs here is not a cognizable injury. *See Pisciotta*, 499 F.3d at 639-40 ("Without more than allegations of increased risk of future identity theft, the plaintiffs have not suffered a harm that the law is prepared to remedy. Plaintiffs have not come forward with a single case or statute, from any jurisdiction, authorizing the kind of action they now ask this federal court, sitting in diversity, to recognize as a valid theory of recovery under Indiana law."); *Hammond v. The Bank of New York Mellon Corp.*, 08 CIV. 6060 RMB RLE, 2010 WL 2643307, at *11 (S.D.N.Y. June 25, 2010) ("Summary judgment for Defendant as to Plaintiffs' breach of implied contract claim would also be appropriate because, among other reasons, of Plaintiffs' inability to demonstrate damages."); *Shafran v. Harley-Davidson, Inc.*, 07 CIV. 01365 (GBD), 2008 WL 763177, at *3 (S.D.N.Y. Mar. 20, 2008) (dismissing contract

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

claim, noting that "[c]ourts have uniformly ruled that the time and expense of credit monitoring to combat an increased risk of future identity theft is not, in itself, an injury that the law is prepared to remedy.").

Accordingly, Plaintiffs state no viable theory of contractual liability, and all Counts asserting contract claims should be dismissed without leave to amend.

**D. No Claims May Proceed Under The California And Washington Data Breach Notice Statutes.**

As demonstrated in the Motion, claims asserting that Zappos did not give proper statutory notice of the Incident (Preira Complaint Count VII; Stevens Complaint Count VIII) also should be dismissed without leave to amend because the Incident did not involve "personal information" subject to those statutes.[6] Apparently conceding this point, the Preira Plaintiffs do not even argue this issue in their Opposition.[7]

This Court also should reject the Stevens Plaintiffs' novel argument that, although the information at issue in the Incident does not meet the definition of "personal information," the statute should nonetheless apply because they say that it is "likely that a statistically significant number of Class Members used the same Zappos.com passwords that were exposed by the Data Breach on other financial accounts." First, this assertion is grossly speculative. Second, it cannot be that the statute is triggered, as the

---

[6] Moreover, as demonstrated in the Motion and discussed above, no California or Washington statutory claims may be asserted because Nevada law applies.

[7] Strangely, they cite Nevada's version of the statute for the first time in support of their negligence claim, arguing that the statute imposes a duty of care on Zappos. Preira Opposition at p. 16. However, as stated in Zappos's Motion (*see* Motion at p. 23 n.15), and argued below, the Nevada statute does not apply for the same reason the Washington and California statutes do not apply: the Incident did not involve "personal information" subject to the Nevada statute. *See* N.R.S. § 603A.040.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

Stevens Plaintiffs contend, not by access to "personal information" itself defined under the statute, but by accessing information that admittedly is *not* "personal information" that hypothetically then is used to collect "personal information" by some unknown individual at some unknown point in the future.

Nor can the Stevens Plaintiffs manufacture an "issue of fact" regarding whether "financial account" passwords for some undefined but "likely . . . statistically significant number of [putative] Class Members" were hypothetically accessed. Stevens Opposition at p. 39. Critically, the Stevens Plaintiffs do *not* allege that *their* financial account passwords were accessed, and they may not sue based on something that might hypothetically happen to someone else, or even a "likely . . . statistically significant number of" someone elses. Zappos highlighted this pleading deficiency in its Motion, and the Stevens Plaintiffs cannot now use their Opposition to create a factual issue unsupported by the allegations in their Complaint. *See Schneider*, 151 F.3d at 1197 n.1. Because the information at issue in the Incident does not meet the definitions of "personal information," as carefully defined by the California and Washington breach notice statutes, those claims should be dismissed with prejudice as a matter of law.

All plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Gratz v. Bollinger*, 539 U.S. 244, 289, 123 S. Ct. 2411, 156 L. Ed. 2d 257 (2003) (internal quotation marks and citations omitted). None of the Stevens Plaintiffs even alleges that his or her *financial* account was accessed, or even faced a material risk of access, and thus they cannot proceed on the speculative theory that some other putative class members hypothetically

may have their financial accounts accessed at some point in the future. These claims should be dismissed without leave to amend.

**E. Plaintiffs Deceptive Trade Practices Claims Fail.**

**1. Zappos Did Not Engage In Any Deceptive Trade Practices.**

As demonstrated in the Motion, Plaintiffs' claims under the unfair practices acts of California, Nevada, Florida, Alabama, Massachusetts, Virginia, New York and Washington (Preira Complaint Counts VI and VIII; Stevens Complaint Counts VI, VII and X) fail for multiple reasons. The most notable reason is that they do not allege that Zappos "engaged in consumer-oriented fraud or other misconduct which caused actual damages within the meaning of the laws of their respective states." *Hammond*, 2010 WL 2643307, at *13. Rather, Zappos was the victim of a crime.

**2. Plaintiffs Cannot Establish The Required Element Of Damages To Their Deceptive Trade Practices Act Claims.**

Furthermore, every single state unfair practices statute Plaintiffs assert requires, at a minimum, a sufficient allegation of damages. *See* Motion at pp. 32-41. As also set forth in the Motion, courts that have considered whether credit monitoring or other prophylactic expenses amount to damages have responded with a resounding "NO." *See Hammond*, 2010 WL 2643307, at *13 ("Thus, it is not surprising that the United States District Courts in New York, California, Illinois and Michigan (applying state law) have each found that the increased risk of identity theft (in the future) is not a cognizable claim."); *see also Shafran*, 2008 WL 763177, at *2 ("As damages are an essential element . . . of plaintiff's claims . . . , plaintiff's claims fail as a matter of law."); *Ruiz v. Gap, Inc.*, 07-5739 SC, 2009 WL 250481, at *4 (N.D. Cal. Feb. 3, 2009), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) (stating that credit monitoring and repair expenditures are not the "kind of



MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

loss of money or property necessary for standing to assert a claim under section 17200"). Plaintiffs respond not by citing contrary authority, but regurgitating their same theories of injuries that have been routinely rejected by courts throughout the country.

The Stevens Plaintiffs try to further argue that they suffered harm in the form of a "diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI)." Stevens Opposition at p. 31. The Northern District of California rejected this theory recently in *In re LinkedIn User Privacy Litig.*, 5:12-CV-03088 EJD, 2013 WL 844291 (N.D. Cal. Mar. 6, 2013), dismissing a similar data breach action. There, plaintiffs were users of LinkedIn's professional networking services whose personal information, including email addresses and LinkedIn account passwords, allegedly were subject to a data breach. *Id.* at *1-2. Although LinkedIn's services generally are free, plaintiffs paid money for a premium version of the service. *Id.* Like Plaintiffs here, plaintiffs in *LinkedIn* argued that they did not receive the benefit of their bargain because LinkedIn's security allegedly failed to live up to promises on the website for the premium service. *Id.* at *4. In rejecting this contention, the court noted that "any alleged promise LinkedIn made to paying premium account holders regarding security protocols was also made to non-paying members. Thus, when a member purchases a premium account upgrade, the bargain is not for a particular level of security, but actually for the advanced networking tools and capabilities to facilitate enhanced usage of LinkedIn's services." *Id.*

Just like in *LinkedIn*, here the numerous representations cited by Plaintiffs regarding Zappos's protection of personal information, including those in the Privacy Policy, apply equally to all customers who create Zappos accounts regardless of whether they ever make a purchase from Zappos. *See* Motion, Ex. C (Zappos Privacy Policy). Indeed, Plaintiffs do

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

not exclude from their class definitions Zappos customers who provided information to Zappos but never made a purchase from Zappos. This confirms that any purchase of goods from Zappos is unrelated to the underlying bargain upon which Plaintiffs base their deceptive trade practices claims. Accordingly, any money Plaintiffs spent on purchasing goods from Zappos cannot be considered "damages" arising from the Incident. *See In re LinkedIn*, 2013 WL 844291, at *4 ("The FAC does not sufficiently demonstrate that included in Plaintiffs' bargain for premium membership was the promise of a particular (or greater) level of security that was not part of the free membership."). The money spent to purchase goods was spent for the goods, and for nothing else.

**3. Zappos Did Not "Waive" Any Arguments Relating To One Of The Stevens Plaintiffs' Two "Separate" TDTPA Claims.**

The Stevens Plaintiffs' contention that Zappos waived any argument challenging one of their two TDTPA claims is simply wrong. A defense of failure to state a claim is not waivable as they suggest. Fed. R. Civ. P. 12(h)(2). Regardless, in the Motion, Zappos in fact argued that *all* of Plaintiffs' state statutory unfair practices claims fail for multiple reasons. Motion at p. 25. Zappos then expressly references Counts VI and X -- *both* of the Stevens Plaintiffs' allegedly separate claims for violation of TDTPA. *Id.* More specifically, Zappos argues that, as a threshold matter, Nevada law applies and therefore no non-Nevada claims (including claims for violation of TDTPA) may be asserted. *Id.* at pp. 14, 25. Additionally, Zappos argues that Plaintiffs have failed to adequately plead, among other things, causation and damages, which are necessary elements of any claim for violation of the TDTPA. *Id.* at pp. 30-31. Indeed, the plain language of TDTPA requires a plaintiff to prove causation and damages under any theory of liability. *See* Tex. Bus. & Com. Code § 17.50(a) ("A consumer may

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish . . . ."); *see also Doe v. Boys Clubs of Greater Dallas*, 907 S.W.2d 472, 478 (Tex. 1995) ("The elements of these [T]DTPA actions are: . . . the defendant engaged in false, misleading, or deceptive acts, and. . .these acts constituted a producing cause of the consumer's damages."). As explained above in connection with standing, Plaintiffs do not adequately plead causation and damages. Accordingly, "both" of the Stevens Plaintiffs' TDTPA claims must be dismissed. Zappos need not repeat the same argument twice in its Motion simply because the Stevens Plaintiffs purport to assert two claims under the same statute (which does not apply in any event because Nevada law applies).

**F. The Economic Loss Doctrine Bars Plaintiffs' Tort Claims.**

In the event any of Plaintiffs' claims for breach of contract (Preira Complaint Counts III-IV; Stevens Complaint Count V) survive dismissal, Plaintiffs' tort claims for negligence and PDPF (Preira Complaint Counts I-II; Stevens Complaint Counts III-IV) should be dismissed pursuant to the economic loss doctrine.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

**1. It Is Appropriate For The Court To Determine Whether The Economic Loss Doctrine Applies On A Motion To Dismiss.**

This Court should reject the Stevens Plaintiffs' erroneous argument that the economic loss doctrine's bar of their tort claims cannot be addressed at the motion to dismiss stage. *See* Stevens Opposition at p. 16. Courts in this Circuit, including this Court just last month, grant motions to dismiss where the economic loss doctrine bars a tort claim as a matter of law. *See, e.g., Desert Salon Services, Inc. v. KPSS, Inc.*, 2:12-CV-1886 JCM CWH, 2013 WL 497599, at *4-5 (D. Nev. Feb. 6, 2013); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 2012 WL 4849054.

**2. NRS Chapter 603A Does Not Apply To This Action.**

In their Opposition, the Preira Plaintiffs wrongly argue that the economic loss doctrine does not apply because Zappos had a statutory duty to protect Plaintiffs' personal information under NRS Chapter 603A. Preira Opposition at pp. 15-19. Allegations of this supposed statutory duty, however, are conspicuously absent from both Complaints. Thus, the Court should not consider NRS Chapter 603A because it is not alleged. Regardless, the Chapter 603A argument is frivolous because the statute does not apply. NRS Chapter 603A applies only to the protection of "personal information," which is expressly defined as:

> [A] natural person's first name or first initial and last name in combination with any one or more of the following data elements, when the name and data elements are not encrypted:
>
> 1. Social security number.
>
> 2. Driver's license number or identification card number.
>
> 3. Account number, credit card number or debit card number, in combination with any required security code, access code or password that would permit access to the person's financial account.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

> The term does not include the last four digits of a social security number, the last four digits of a driver's license number or the last four digits of an identification card number or publicly available information that is lawfully made available to the general public.

In this case, Plaintiffs do not allege that any of the statutorily-specified information in Section 603A.040 was compromised in the Incident. Accordingly, the Complaints fail to adequately allege the breach of a statutory duty allegedly created by NRS Chapter 603A.

**3. Plaintiffs Have Only Alleged Economic Loss.**

The Stevens Plaintiffs' additional argument that, in addition to economic loss, they suffered anxiety, emotional distress, loss of privacy, and the value of the time spent mitigating the increased risk of identity theft, does not overcome the economic loss doctrine's bar of their tort claims. Stevens Opposition at pp. 16-19. Under Nevada law, "the economic loss doctrine precludes recovery of economic loss that is otherwise recoverable under a contract remedy." *Lucatelli v. Texas De Brazil (Las Vegas) Corp.*, 2:11-CV-01829-RCJ, 2012 WL 1681394, at *4 (D. Nev. May 11, 2012) (citing *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 125 Nev. 66, 206 P.3d 81 (2009)). Here, the Stevens Plaintiffs seek *identical* damages on their contract and tort theories. *See* Stevens Complaint, ¶¶ 81, 96, 102. Consequently, if Plaintiffs' contract claims survive, Plaintiffs' tort claims must be dismissed under the economic loss doctrine because they are redundant to the contract claims.

**G. Plaintiffs' Negligence Claims Fail Independently Of The Economic Loss Doctrine.**

Plaintiffs' negligence claims (Preira Complaint Count I; Stevens Complaint Count IV) also fail because Plaintiffs do not adequately allege legal duty, proximate causation, and cognizable damages.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

### 1. Zappos Breached No Legal Duty To Plaintiffs.

In their Opposition, the Preira Plaintiffs contend that NRS Chapter 603A also imposes a negligence duty upon Zappos to protect Plaintiffs' personal information. Preira Opposition at pp. 15-16. However, as discussed above, NRS Chapter 603A is inapplicable because Plaintiffs do not allege that any statutorily-protected "personal information" was accessed during the Incident.

Additionally, the Stevens Plaintiffs argue that Zappos owed a duty to exercise reasonable care in safeguarding Plaintiffs' data because "courts routinely find that businesses have a special relationship with their customers that implies certain duties." Stevens Opposition at p. 19. Plaintiffs, however, fail to allege what the legal duty of Zappos, or any merchandiser, would be with respect to the storage of data. Rather, Plaintiffs purport to impose a strict liability standard on Zappos to provide complete security of all data about all of its customers, which supposed duty Zappos expressly disclaimed in the Privacy Policy upon which Plaintiffs rely in asserting their claims. Plaintiffs do not cite any cases applying what is, as a practical matter, a strict liability standard.

Furthermore, the Stevens Plaintiffs concede that a special relationship between a business and a patron only arises if a criminal attack by a third person "could reasonably have been anticipated." Stevens Opposition at p. 19. Under Nevada law, the foreseeability of criminal activity is determined on "a totality-of-the-circumstances basis." *Scialabba v. Brandise Const. Co., Inc.*, 112 Nev. 965, 970, 921 P.2d 928, 931 (1996). Here, Plaintiffs' alleged damages are not a foreseeable result of the Incident. In particular, Plaintiffs fail to allege that it was foreseeable that Zappos would be the victim of a cybercrime committed by a computer hacker; that the hacker would gain access to a limited amount of data about Zappos's

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

customers, including names, email addresses, billing and shipping addresses, phone numbers, credit card tail and/or cryptographically-scrambled Zappos account passwords; that the data would not otherwise be publicly available; that Plaintiffs would not promptly take remedial measures to protect their identities after Zappos notified them of the Incident; that the hacker would use this information to access Plaintiffs' other accounts (including financial accounts); that Plaintiffs would not otherwise be subject to identity theft because, for example, they use common passwords that are easily hacked; and that, as a result, Plaintiffs would suffer legally cognizable damages. Absent concrete allegations showing that this tenuous and speculative chain of events was foreseeable by Zappos, Plaintiffs cannot establish that Zappos breached any duty to Plaintiffs.

**2. The Criminal Act Here Breaks The Chain Of Proximate Causation.**

In their Oppositions, Plaintiffs concede that criminal third-party conduct may sever the chain of proximate causation, but nevertheless argue that the intervening criminal act of the third-party computer hacker in this case does not sever the chain of causation because it was reasonably foreseeable. Stevens Opposition at pp. 20-21; Preira Opposition at p. 17. However, as discussed above, Plaintiffs fail to allege sufficient facts to establish that the Incident and allegedly-resulting harm to Plaintiffs were reasonably foreseeable under the circumstances.

The Preira Plaintiffs also contend that NRS Chapter 603A was enacted to protect Plaintiffs from the data theft that occurred during the Incident and therefore NRS Chapter 603A establishes proximate causation as a matter of law. *See* Preira Opposition at p. 17. For the reasons explained above, NRS Chapter 603A does not apply here. To the contrary, NRS Chapter 603A was enacted with text that specifically *excludes* this Incident

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

from its purview. Thus, Plaintiffs fail to adequately allege proximate causation.

**3. Zappos's Alleged Negligence Did Not Proximately Cause Plaintiffs' Alleged Damages.**

Finally, as discussed above, Plaintiffs have not adequately pled the element of damages for any of their causes of action, including negligence. Thus, even if the Court were to determine that Plaintiffs have Article III standing to pursue this action and that Zappos breached a duty owed to Plaintiffs, Plaintiffs' negligence claims must be dismissed because "[t]he mere danger of future harm, unaccompanied by present damage, will not support a negligence action." *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 132 (9th Cir. Dec. 2010) (applying Washington law) ("*Krottner II*"); *see also In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, WL 4849054, at *12 ("[W]ithout specific factual statements that Plaintiffs' Personal Information has been misused, in the form of an open bank account, or un-reimbursed charges, the mere 'danger of future harm, unaccompanied by present damage, will not support a negligence action.'"). In fact, *Krottner II* is particularly instructive because in that case, unlike here, plaintiff alleged the theft of her social security number and an actual attempt to open a bank account using her social security number, *see Krottner I*, 628 F.3d at 1141, but the Ninth Circuit still found these allegations insufficient to show present damage. Accordingly, in this case, Plaintiffs' negligence claims must be dismissed for the failure to allege cognizable damages.

**H. Plaintiffs' Claim For Invasion Of Privacy Should Be Dismissed.**

Recognizing their failure to plead intent in connection with their PDPF claim, the Stevens Plaintiffs argue in their Opposition that Zappos intentionally failed to safeguard Plaintiffs' personal information. Stevens Opposition at pp. 14-15. The Stevens Plaintiffs cite no authority supporting

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

their position that the failure to take adequate measures to protect private facts may be grounds for a claim for PDPF. Rather, in *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 711 (D.C. Cir. 2009), the court held that nearly identical allegations failed to establish the intentional element of a claim for PDPF as a matter of law. *See id.* ("Notwithstanding [plaintiff's] claim that [defendant's] 'willful and intentional' conduct violated their right of privacy, the allegations of the complaint (*e.g.*, the failure to establish safeguards to protect employee records) do not appear to allege intentional conduct."). Thus, Plaintiffs do not adequately plead their intentional tort of PDPF.

Additionally, contrary to the Stevens Plaintiffs' assertions, a claim for PDPF requires the publication of "embarrassing" facts. Nevada has adopted Professor William Prosser's analysis of the tort of invasion of privacy. *See People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 111 Nev. 615, 628-29, 895 P.2d 1269, 1278 (1995) (noting that privacy law "was conceived almost entirely by Professor William Prosser, who, in a 1960 law review article in the California Law Review, expounded that the right of privacy gave rise not to one but to four different tort actions, sometimes called 'Prosser's Four Torts of Privacy.' . . . Nevada has long recognized the existence of the right to privacy."); *see also Montesano v. Donrey Media Group*, 99 Nev. 644, 654, 668 P.2d 1081, 1088 n.8 (1983). Prosser describes the PDPF tort as involving "public disclosure of *embarrassing* private facts about the plaintiff." Prosser, *Privacy*, 48 Cal.L.Rev. 383, 389 (1960) (emphasis added). According to Prosser, PDPF is intended to protect a plaintiff from reputational harm resulting from a "highly personal portrayal of [plaintiff's] intimate private characteristics or conduct." *Id.* at 397-98. Here, Plaintiffs do not, and cannot, allege embarrassment or reputational harm due to the Incident. Indeed, the limited pieces of data at issue (names, addresses, email

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

addresses, credit card tail, and cryptographically-scrambled Zappos passwords) are not "intimate private characteristics" or "embarrassing private facts"; nothing about the data is shameful, and no Plaintiff alleges that release of the data has caused him to be shunned or ridiculed. *See Melvin v. Reid*, 112 Cal. App. 285, 291, 297 P. 91 (1931) (explaining that PDPF is designed to protect a plaintiff from unnecessary public "scorn and contempt"). A claim for PDPF is not appropriate here.

Furthermore, as the Stevens Plaintiffs recognize, a claim for PDPF requires the "publicity" of private facts. The Stevens Plaintiffs contend that they satisfy this element by alleging that their data has been disseminated to the "public domain," to "national and international markets," and to the "world." Stevens Opposition at p. 15. Belying this assertion, the Stevens Complaint concedes that only a single hacker may have access to Plaintiffs' data. *See* Stevens Complaint, ¶ 37 ("the hacker(s) and/or their customers . . . now have [Plaintiffs'] PCAI"). In addition, the Stevens Plaintiffs merely speculate about what, if anything, might have happened to the data after the Incident. Under similar facts in *Randolph*, the court held that merely *potential* dissemination of stolen personal data to the public domain will not satisfy the publicity element of a claim for PDPF. *See Randolph*, 973 A.2d at 711-12 ("[I]t is possible that the thief unloaded the computer without ever accessing appellants' data or that the thief . . . deleted the data from the hard drive without ever scrolling through it. Without an allegation that the data involved here were disclosed to and viewed by someone unauthorized to do so, [plaintiffs] have failed to state a claim for invasion of privacy.").[8] Moreover, in the event the hacker(s) sold Plaintiffs'

[8] Plaintiffs do not even allege that the data potentially subject to the Incident was even "intercepted," because they do not allege that any person actually *viewed* it. "INTERCEPTION means the acquisition . . . through electronic means of a nonpublic communication . . . and the processing of the contents

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

information to the allegedly "robust international market," Plaintiffs claim for PDPF is only proper against the hacker(s). Accordingly, no PDPF claim against Zappos is stated, as a matter of law, and the claim should be dismissed without leave to amend.

**I. The Stevens Plaintiffs' Credit Reporting Claims Fail.**

The Stevens Plaintiffs' argument in their Opposition only serves to confirm the inapplicability of the FCRA to Zappos and the Incident. As shown by Zappos in its Motion, the FCRA governs "consumer reporting agencies," which are defined as "any person which . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing *consumer reports* to third parties . . . ." 15 U.S.C. § 1681a(f) (emphasis added). Thus, whether an entity is governed by the FCRA largely turns on whether it furnishes "consumer reports." In an attempt to distort the scope of the statute, the Stevens Plaintiffs cite only half of the definition of "consumer report," noting that it is "any written oral, or other communication . . . bearing on a consumer's credit worthiness . . . personal characteristics or mode of leaving," but leaving out the following qualifying language: "which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—(A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other

---

of that communication into an intelligible form, but does not include the display of signals on visual display devices intended to permit the examination of the technical characteristics of the signals without reference to the information content carried by the signal." Nat'l Sec. Agency/ Cent. Sec. Serv., United States Signals Intelligence Directive 18, § 9.11 (July 27, 1993), available at http://www.gwu.edu/~nsarchiv/NSAEBB/NSAEBB23/07-02.htm (declassified version with some language redacted by the NSA).

purpose authorized under section 1681b of this title." Stevens Opposition at pp. 35-36; *see* 15 U.S.C. § 1681a(d)(1). Plaintiffs make *zero* allegations in the Complaint regarding Zappos's provision of any of the above information to any third party at all, let alone that Zappos furnishes such information for purposes of establishing eligibility for credit, employment, insurance or any other permissible purpose under the FCRA.

Moreover, it is entirely unknown what provision of the FCRA Zappos is alleged to have violated. In their Opposition (but not in the Complaint), the Stevens Plaintiffs cite 15 U.S.C. § 1681b and contend that "Plaintiffs allege an actual improper disclosure." Stevens Opposition at p. 37. Section 1681e(a) provides that "[e]very consumer reporting agency shall maintain reasonable procedures designed to . . . limit the *furnishing of consumer reports* to the purposes listed under section 1681b of this title. . . ." *Id.* (emphasis added). Thus, in order to accept the Stevens Plaintiffs' theory, the information potentially accessed in the Incident (supposedly constituting the "improper disclosure") must itself meet the definition of "consumer report" to fall under Section 1681b. Plaintiffs do not allege, and cannot plausibly contend, that Zappos expected Plaintiffs' information to be used for purposes of establishing credit, employment or insurance or any other purposes under the FCRA, or that it "furnished" such information to criminal hackers. *See Willingham v. Global Payments, Inc.*, 1:12-CV-01157-RWS, 2013 WL 440702, at *13 (N.D. Ga. Feb. 5, 2013) (recommending dismissal with prejudice of plaintiffs' FCRA claim where a third party stole defendant's customer information because "the data was stolen, not furnished" within the meaning of the FCRA); *Holmes v. Countrywide Fin. Corp.*, 5:08-CV-00205-R, 2012 WL 2873892 (W.D. Ky. July 12, 2012) ("No coherent understanding of the words "furnished" or "transmitted" would

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

implicate Countrywide's action under the FCRA. This allegation is improper.").

Nor do the Stevens Plaintiffs adequately respond to numerous authorities cited by Zappos demonstrating that basic identifying information like that at issue here does not constitute a "consumer report," or the fact that "experience information" between Zappos and its customers expressly is exempted from the statute. *See, e.g.*, *Malik v. AT&T Mobility, LLC*, No. 1:08-cv-234, 2009 WL 198710, at *7-8 (W.D. Mich. Jan. 23, 2009); *Ali v. Vikar Mgmt. Ltd.*, 994 F. Supp. 492 (S.D.N.Y. 1998); *Dotzler v. Perot*, 914 F. Supp. 328 (E.D. Mo. 1996), *aff'd* 124 F.3d 207 (8th Cir. 1997); *Gomon v. TRW, Inc.*, 28 Cal. App. 4th 1161 (1994); *DiGianni v. Stern's*, 26 F.3d 346, 348-49 (2d Cir. 1994); *Rush v. Macy's New York, Inc.*, 775 F.2d 1554, 1557 (11th Cir. 1985); *Rice v. Montgomery Ward & Co.*, 450 F. Supp. 668, 670 (M.D.N.C. 1978); *Todd v. Associated Credit Bureau Servs.*, 451 F. Supp. 447, 448 (E.D. Pa. 1977), *aff'd without opinion*, 578 F.2d 1376 (3d Cir. 1978), *cert. denied*, 439 U.S. 1068, 99 S. Ct. 834, 59 L. Ed. 2d 33 (1979); *Laracuente v. Laracuente*, 252 N.J. Super. 384, 599 A.2d 968, 969-70 (N.J. Super. Ct. 1991); *Smith v. First Nat'l Bank*, 837 F.2d 1575, 1579 (11th Cir. 1998) (bank that reported information concerning experience with a customer not a consumer reporting agency), *cert. denied*, 488 U.S. 821, 109 S. Ct. 64, 102 L. Ed. 2d 41 (1988). The Stevens Plaintiffs' FCRA claims are frivolous, and should be dismissed with prejudice.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

## III. CONCLUSION

For the foregoing reasons, the Preira Complaint and the Stevens Complaint should be dismissed in their entirety without leave to amend.

MORRIS LAW GROUP

By /s/ Robert McCoy
Robert McCoy, No. 9121
Raleigh C. Thompson, No. 11296
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101

STROOCK & STROOCK & LAVAN LLP
Julia B. Strickland *(Pro Hac Vice)*
Stephen J. Newman *(Pro Hac Vice)*
Brian C. Frontino *(Pro Hac Vice)*
2029 Century Park East, Suite 1600
Los Angeles, California 90067

Attorneys for Defendant
Zappos.com, Inc.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification on the 22nd Day of March, 2013.

By /s/ Heather Suter