# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

IN RE:

**ZAPPOS.COM, INC. CUSTOMER DATA
SECURITY BREACH LITIGATION**

_____

**This Document Relates To:**

**Plaintiffs Theresa Stevens (3:12-cv-00339-
RCJ-VPC), Stacy Penson (3:12-cv-00340-
RCJ-VPC), Tara J. Elliot, Brooke C.
Brown, and Christa Seal (3:12-cv-00341-
RCJ-VPC), Denise Relethford, and Emily E.
Braxton[1]**

**Case No. 3:12-cv-00325-RCJ-VPC
MDL No. 2357**

## STEVENS PLAINTIFFS' SECOND
## AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Theresa D. Stevens, Stacy Penson, Tara J. Elliot, Brooke C. Brown, Christa

Seal, Denise Relethford and Emily E. Braxton (collectively, "Stevens Plaintiffs"[2] or

"Plaintiffs"), on behalf of themselves and all other persons similarly situated, file this Second

---

[1] On October 4, 2013, plaintiffs Denise Relethford and Emily E. Braxton filed a Stipulation to Voluntarily Dismiss Without Prejudice Pursuant to F.R.C.P. 41(a)(1)(A)(ii) their pending complaint in this District. *See* Case No. 2:12-CV-00864-RCJ-PAL [D.E. #18]. The voluntary dismissal was filed "solely for the purpose of joining Plaintiffs and their claims within the amended complaint being filed in *In re Zappos.com, Inc., Customer Data Security Litigation*, Civil No. 3:12-cv-00325-RCJ-VPC, MDL No. 2357 (D. Nev.)." *Id.*

[2] Plaintiffs Theresa D. Stevens, Stacy Penson, Tara J. Elliot, Brooke C. Brown and Christa Seal originally filed their actions in the Western District of Kentucky. Plaintiffs Denise Relethford and Emily E. Braxton originally filed their action in the Southern District of California. Plaintiff Theresa D. Stevens was the first plaintiff to file an action in this litigation. The Stevens Plaintiffs have also been referred to as the Kentucky/California Plaintiffs in this MDL proceeding.

Amended Consolidated Class Action Complaint ("CAC") against defendant Zappos.com, Inc. ("Zappos" or "Defendant"), and respectfully allege the following:

## NATURE OF THE ACTION

1.      Stevens Plaintiffs, individually and on behalf of over 24 million similarly situated persons (the "Class Members"), bring this national consumer class action seeking to redress Zappos' intentional, willful, reckless and/or negligent violations of their privacy rights and Class Members' privacy rights. Stevens Plaintiffs and Class Members are consumers of shoes, apparel and other products sold by Zappos, an online retailer. Stevens Plaintiffs and Class Members, as part and parcel of their retail transactions with Zappos, (i) entrusted their confidential personal customer account information including, *inter alia*, their names, email addresses, billing and shipping addresses, phone numbers, and the last four digits of their credit cards to Zappos, and (ii) created a Zappos.com website account password (collectively, "PCAI").   Zappos betrayed Stevens Plaintiffs' and Class Members' trust by failing to properly safeguard and protect their PCAI and publicly disclosing their PCAI, without authorization, in violation of numerous statutes and the common law of various states.

2.      Zappos, a wholly-owned subsidiary of Amazon.com, is an online retailer of apparel, shoes, handbags, home furnishings, beauty products and accessories. During the relevant period, Stevens Plaintiffs and Class Members were Zappos customers. On or sometime prior to Sunday, January 15, 2012, Zappos' servers in Kentucky and Nevada containing Stevens Plaintiffs' and Class Members' PCAI were improperly accessed without authorization (the "Data Breach"). Stevens Plaintiffs contend Zappos failed to properly safeguard and protect the servers and, in the process, failed to safeguard and protect their PCAI stolen by unauthorized third parties in the Data Breach.

3.      On January 16, 2012, Zappos sent Stevens Plaintiffs and Class Members an email notifying them that its servers had been breached and their PCAI stolen and compromised. Zappos also closed its customer service telephone lines for the week immediately following the Data Breach.

4.      Zappos flagrantly disregarded Stevens Plaintiffs' and Class Members' privacy rights by intentionally, willfully, recklessly and/or negligently failing to take the necessary precautions required to safeguard and protect Stevens Plaintiffs' and Class Members' PCAI from unauthorized disclosure. Stevens Plaintiffs' and Class Members' PCAI was improperly handled and stored, and either unencrypted or improperly partially encrypted, inadequately protected, readily able to be copied by data thieves, and not kept in accordance with basic security protocols.

5.      Zappos' intentional, willful, reckless and/or negligent disregard of Stevens Plaintiffs' and Class Members' privacy rights caused one of the largest unauthorized disclosures of PCAI in history. The improper use of PCAI by an unauthorized third party can and does result in an adverse impact on, among other things, a victim's credit rating and finances. The type of wrongful PCAI disclosure made by Zappos is insidiously harmful because it can take a significant amount of time for a victim to become aware of the theft and its consequences.

6.      Stevens Plaintiffs have standing to bring this suit because, as a direct and/or proximate result of Zappos' wrongful actions and/or inactions and the resulting Data Breach, they have incurred (and will continue to incur) harm and damages in the form of, *inter alia,* (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive

Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud[3] pressed upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.

7.       Zappos' wrongful actions and/or inaction and the resulting Data Breach have also placed Stevens Plaintiffs and Class Members at an imminent, immediate, and continuing increased risk of identity theft and/or identity fraud. Indeed, Javelin Strategy & Research ("Javelin"), a leading provider of quantitative and qualitative research, recently released its 2013 Identity Fraud Report (the "Javelin Report"), quantifying the impact of data breaches. According to the Javelin Report, almost one (1) in four (4) consumers whose PCAI is compromised in a data breach and who receive a data breach notification letter—such as the Data Breach at issue here—also are victims of identity fraud and/or identity theft. Moreover, there is a high likelihood that significant identity theft and/or identity fraud has not yet been discovered or reported, and a high probability that criminals who may now possess Stevens Plaintiffs' and Class Members' PCAI and have not yet used the information will do so at a later date or re-sell it.

---

[3] According to the United States Government Accounting Office, the terms "identity theft" or "identity fraud" are broad terms encompassing various types of criminal activities, such as when PCAI is used to commit fraud or other crimes (credit card fraud, phone or utilities fraud, bank fraud and government fraud (theft of government services)).

8.      Accordingly, Stevens Plaintiffs and Class Members seek redress against and from Zappos for, *inter alia*, negligent misrepresentation, violations of various state consumer statutes, violations of certain other state statutes, including California's Security Requirements for Consumer Records (Cal. Civ. Code §§ 1714, 1798.29 and 1798.80, *et seq.*), and unjust enrichment.

9.      Stevens Plaintiffs, therefore, on behalf of themselves and Class Members, seek (i) actual damages, statutory damages, and/or double or treble damages (as available), (ii) punitive damages, (iii) injunctive relief, and (iv) attorneys' fees, litigation expenses and court costs.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over Stevens Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d) (CAFA) because (a) there are 100 or more Class Members, (b) at least one Class Member is a citizen of a state that is diverse from Zappos' citizenship, and (c) the matter in controversy exceeds $5,000,000 USD, exclusive of interest and costs. This Court also has subject matter jurisdiction over Stevens Plaintiffs' claims pursuant to 28 U.S.C. § 1367.

11.      This Court has personal jurisdiction over Zappos because at all relevant times, Zappos conducted (and continues to conduct) substantial business in the District of Nevada.

12.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because (i) Zappos is subject to personal jurisdiction in the District of Nevada, (ii) per Zappos, the wrongful disclosure of Stevens Plaintiffs' and Class Members' PCAI giving rise to their claims was made through Zappos' servers located in Nevada, and (iii) Zappos resides, is located, can be found and/or conducts substantial business in the District of Nevada.

13. The class action lawsuits included in this CAC were transferred to this Court and consolidated for pre-trial proceedings by order of the Judicial Panel on Multi-District Litigation. Stevens Plaintiffs, however, reserve their right to remand these actions to the districts from which they were transferred at or before conclusion of the pre-trial proceedings.[4]

## PARTIES

14. Plaintiff Theresa D. Stevens is a resident of Beaumont, Texas. Zappos possesses Plaintiff Stevens' PCAI, which Zappos was (and continues to be) required to safeguard and protect. Based on her review of Zappos' website, when Stevens supplied her PCAI to Zappos, she believed Zappos would safeguard and protect her PCAI. On January 16, 2012, Stevens received an email from Zappos notifying her that her PCAI was stolen and compromised as part of the Data Breach. As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, Stevens has suffered (and will continue to suffer) economic damages and other actual harm (as detailed above). Zappos' wrongful disclosure of Stevens' PCAI has also placed her at an imminent, immediate and continuing increased risk of harm for identity theft and/or identity fraud.

15. Plaintiff Stacy Penson is a resident of Miami, Florida. Zappos possesses Penson's PCAI, which Zappos was (and continues to be) required to safeguard and protect. When Penson supplied her PCAI to Zappos, she believed Zappos would safeguard and protect her PCAI. On January 16, 2012, Penson received an email from Zappos notifying her that her PCAI had been stolen and compromised as part of the Data Breach. As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, Penson has suffered (and will continue to suffer) economic damages and other actual harm (as detailed above).

---

[4] *See Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

Zappos' wrongful disclosure of Penson's PCAI has also placed her at an imminent, immediate and continuing increased risk of harm for identity theft and/or identity fraud.

16.     Plaintiff Tara J. Elliott is a resident of Birmingham, Alabama. Zappos possesses Elliott's PCAI, which Zappos was (and continues to be) required to safeguard and protect. When Elliott supplied her PCAI to Zappos, she believed Zappos would safeguard and protect her PCAI. On January 16, 2012, Elliott received an email from Zappos notifying her that her PCAI had been stolen and compromised as part of the Data Breach. As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, Elliott has suffered (and will continue to suffer) economic damages and other actual harm (as detailed above). Zappos' wrongful disclosure of Elliott's PCAI has also placed her at an imminent, immediate and continuing increased risk of harm for identity theft and/or identity fraud.

17.     Plaintiff Brooke C. Brown is a resident of Birmingham, Alabama. Zappos possesses Brown's PCAI, which Zappos was (and continues to be) required to safeguard and protect. When Brown supplied her PCAI to Zappos, she believed Zappos would safeguard and protect her PCAI. On January 16, 2012, Brown received an email from Zappos notifying her that her PCAI had been stolen and compromised as part of the Data Breach. As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, Brown has suffered (and will continue to suffer) economic damages and other actual harm (as detailed above). Zappos' wrongful disclosure of Brown's PCAI has also placed her at an imminent, immediate and continuing increased risk of harm for identity theft and/or identity fraud.

18.     Plaintiff Christa Seal is a resident of Birmingham, Alabama. Zappos possesses Seal's PCAI, which Zappos was (and continues to be) required to safeguard and protect. When

Seal supplied her PCAI to Zappos, she believed Zappos would safeguard and protect her PCAI. On January 16, 2012, Seal received an email from Zappos notifying her that her PCAI had been stolen and compromised as part of the Data Breach. As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, Seal has suffered (and will continue to suffer) economic damages and other actual harm (as detailed above). Zappos' wrongful disclosure of Seal's PCAI has also placed her at an imminent, immediate and continuing increased risk of harm for identity theft and/or identity fraud.

19.     Plaintiff Denise Relethford is a resident of La Mesa, California. Zappos possesses Relethford's PCAI, which Zappos was (and continues to be) required to safeguard and protect. When Relethford supplied her PCAI to Zappos, she believed Zappos would safeguard and protect her PCAI. On January 16, 2012, Relethford received an email from Zappos notifying her that her PCAI had been stolen and compromised as part of the Data Breach. As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, Relethford has suffered (and will continue to suffer) economic damages and other actual harm (as detailed above). Zappos' wrongful disclosure of Relethford's PCAI has also placed her at an imminent, immediate and continuing increased risk of harm for identity theft and/or identity fraud.

20.     Plaintiff Emily E. Braxton is a resident of Parkland, Florida. Zappos possesses Braxton's PCAI, which Zappos was (and continues to be) required to safeguard and protect. When Braxton supplied her PCAI to Zappos, she believed Zappos would safeguard and protect her PCAI. On January 16, 2012, Braxton received an email from Zappos notifying her that her PCAI had been stolen and compromised as part of the Data Breach. As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, Braxton has

suffered (and will continue to suffer) economic damages and other actual harm (as detailed above). Zappos' wrongful disclosure of Braxton's PCAI has also placed her at an imminent, immediate and continuing increased risk of harm for identity theft and/or identity fraud.

21.     Defendant Zappos.com, Inc. is a Delaware corporation with its principal place of business in Henderson, Nevada. Zappos is an online retailer of apparel, shoes, handbags, home furnishings, beauty products and accessories through its websites, Zappos.com and 6pm.com. Zappos has annual sales of over a $1 billion USD.  At all relevant times, Zappos sold shoes, apparel and other products to Stevens Plaintiffs and Class Members in retail consumer transactions—to-wit, in order to receive the shoes, apparel and other products from Zappos, Stevens Plaintiffs and Class Members were required to, *inter alia*, provide Zappos with their PCAI and create a Zappos.com account password. At all relevant times, Zappos was (and continues to be) entrusted with, and obligated to safeguard and protect, Stevens Plaintiffs' and Class Members' PCAI. Zappos is a wholly-owned subsidiary of Amazon.com, Inc., the world's largest online retailer with 2011 revenues of over $48 billion USD. Zappos already has been served with Summons and a copy of the CAC, and appeared in this litigation.

## SUBSTANTIVE ALLEGATIONS

22.     On Zappos' online retail websites, Zappos.com and 6pm.com, Zappos' customers create accounts to purchase shoes, apparel and other products. The customer accounts contain PCAI—which includes, *inter alia*, their names, account numbers, passwords, e-mail addresses, billing and shipping addresses, phone numbers, and the last four digits of their credit cards. Each account is accessed by the customer using a unique username and password.

23.     In its "Privacy Policy," Zappos represents on its website that "[a]ccess to your personal information is restricted. Only employees who need access to your personal information

to perform a specific job are granted access to your personal information." Zappos also represents that it "take[s] several steps to protect your personal information in our facilities."

24.    Zappos also makes a "Safe Shopping Guarantee," promising that the use of credit card information on its websites is secure.

25.    Zappos also places a yellow, lock-shaped icon on its website payment page that confirms entry of a consumer's PCAI as part of an online retail transaction with Zappos is safe and secure.

26.    Zappos, however, did not live up to its "Privacy Policy," "Safe Shopping Guarantee" and other PCAI security representations, thereby resulting in the Data Breach and the wrongful disclosure of Stevens Plaintiffs' and Class Members' PCAI.

27.    On January 16, 2012, Stevens Plaintiffs and over 24 million Class Members received an email from Zappos notifying them that their PCAI had been stolen and compromised.

28.    According to Tony Hsieh, Zappos' CEO, Stevens Plaintiffs' and Class Members' PCAI was stolen by hackers who gained access to Zappos internal network through its unprotected servers.

29.    As a direct and/or proximate result of Zappos' failure to safeguard and protect Stevens Plaintiffs' and Class Members' PCAI including, *inter alia*, failing to maintain a proper firewall and computer security system, failing to properly encrypt data, including Stevens Plaintiffs' and Class Members' PCAI, and violating standard industry practices and protocols for protecting consumer financial data and personal identification information, Stevens Plaintiffs' and Class Members' privacy was invaded. The compromised and stolen information was private

and sensitive in nature and, on information and belief, was left either unencrypted or weakly encrypted by Zappos on its data servers.

30.     Further compounding the problem, Zappos closed its customer service telephone lines after the Data Breach was announced which, in turn, prevented Stevens Plaintiffs and Class Members from contacting Zappos about the Data Breach which, in turn, delayed the implementation of appropriate and reasonable security precautions to prevent identity theft and/or identity fraud.

31.     As a further direct and/or proximate result of the Data Breach, Stevens Plaintiffs and Class Members were required to take the time to change their Zappos.com account passwords (as specifically recommended by Zappos), change the passwords "on any other web site where [Stevens Plaintiffs and Class Members] use the same or a similar password" (as further recommended by Zappos), and change other elements of their compromised PCAI. Stevens Plaintiffs and Class Members also now face a greater risk of identity theft and/or identity fraud—including identity theft and other losses, such as usage of and interference with their computers and other electronic devices, including smartphones, battery usage, space /capacity usage, service provider charges and the like, from "phishing" and "pharming."

32.     Identity theft occurs when a person's personally identifying information, such as the person's name, e-mail address, billing and shipping addresses, phone number and credit card information is used without his or her permission to commit fraud or other crimes. *See* Federal Trade Commission, Fighting Back against Identity Theft. *See* www.ftc.gov/bcp/edu/microsites/ idtheft/consumers/ about-identity-theft.html (Oct. 19, 2011).

33.     According to the Federal Trade Commission ("FTC"), "the range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions and

that any privacy framework should recognize additional harms that might arise from unanticipated uses of data".[5] Furthermore, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute PII."[6]

34.     The FTC estimates that the identities of as many as 9 million Americans are stolen each year. *Id.*

35.     "Phishing" is a form of online identity theft that lures consumers into divulging their personal financial information to fraudulent websites, also known as spoofed websites. For example, a phisher sends an email message to an unsuspecting victim instructing him or her to click on the link to a bank's website (provided in the email) to confirm the consumer's account information. Unbeknownst to the consumer, the website is a convincing fake or copy of the authentic website. The unsuspecting consumer takes the bait and provides the information, thereby enabling the phisher to steal the consumer's personal financial information. The phisher can then use the stolen information to clean out the victim's bank accounts or commit other forms of identity theft.

36.     "Pharming" is similar to phishing albeit more sophisticated. Pharmers also send emails. A consumer compromises his or her personal financial information simply by opening a pharmer's email. The pharming email contains a virus (or Trojan horse) that installs a small

---

[5] *Protecting Consumer Privacy in an Era of Rapid Change* FTC, Report March 2012 (http://www.ftc.gov/os/2012/03/120326privacyreport.pdf).

[6] *Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers*, *Preliminary FTC Staff Report*, 35–38 (Dec. 2010), *available at* http://www.ftc.gov/os/2010/12/101201privacyreport.pdf; *Comment of Center for Democracy & Technology,* cmt. #00469, at 3; *Comment of Statz, Inc.*, cmt. #00377, at 11-12.

software program on a consumer's computer. Thereafter, when the consumer tries to visit an official website, the pharmer's software program redirects the browser to the pharmer's fake version of the website. In this way, the pharmer is able to capture the personal financial information the consumer enters into the counterfeit website, thereby compromising the consumer's account.

37. As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, the hacker(s) and/or their customers (there is a robust international market for information such as the purloined PCAI) now have Stevens Plaintiffs' and Class Members' PCAI, as well as the knowledge that Stevens Plaintiffs and Class Members are accustomed to receiving emails from Zappos. This, in turn, makes Stevens Plaintiffs and Class Members much more likely to respond to requests from Zappos for more personal information, such as bank account numbers, login information or even Social Security numbers. As such, consumers—such as Stevens Plaintiffs and Class Members—are more likely to unknowingly give away their sensitive PCAI to "phishing" and "pharming" thieves who specialize in constructing spoof websites and emails that mirror the brand they are spoofing— such as Zappos.com and/or other popular online retailers and financial institutions.

38. According to the FTC, "Identity theft is serious. While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit."

39.     Identity theft crimes often involve more than just crimes of financial loss, such as various types of government fraud (*e.g*., obtaining a driver's license or official identification card in the victim's name but with their picture), using a victim's name and Social Security number to obtain government benefits and/or filing a fraudulent tax return using a victim's information. Identity thieves also obtain jobs using stolen Social Security numbers, rent houses and apartments and/or obtain medical services in a victim's name. Identity thieves also have been known to give a victim's personal information to police during an arrest, resulting in the issuance of an arrest warrant in the victim's name and an unwarranted criminal record.

40.     The United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report") that identity thieves use personal identifying data to open financial accounts, receive government benefits and incur charges and credit in a person's name.[7] As the GAO Report states, this type of identity theft is the most harmful because it may take some time for the victim to become aware of the theft and can adversely impact the victim's credit rating.  The GAO Report also states that victims of identity theft will face "substantial costs and inconveniences repairing damage to their credit records . . . [and their] good name."

41.     According to the FTC, identity theft wreaks havoc on consumers' finances, credit history and reputation and can take time, money and patience to resolve.[8] Identity thieves use

---

[7] *See* Government Accountability Office, *Personal Information: Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown* (June 2007), available at http://www.gao.gov/new.items/d07737.pdf.

[8] *See Taking Charge, What to Do If Your Identity is Stolen*, FTC, at 3 (2012), available at http://www.consumer.ftc.gov/articles/pdf-0009-taking-charge.pdf.

stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[9]

42.    A person whose personal information has been compromised may not see any signs of identity theft for *years*. According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

43.    In fact, "[a] quarter of consumers that received data breach letters [in 2012] wound up becoming a victim of identity fraud."[10]

44.    Zappos' wrongful actions and/or inaction here directly and/or proximately caused the theft and wrongful dissemination into the public domain of Stevens Plaintiffs' and Class Members' PCAI without their knowledge, authorization, or consent. As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, Stevens Plaintiffs and Class Members have suffered, and will continue to suffer, harm and damages including, without limitation, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos'

---

[9] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id.*

[10] *One in Four that Receive Data Breach Letters Affected By Identity Theft*, available at http://blog.kaspersky.com/data-breach-letters-affected-by-identity-theft/.

attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, and was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.

45.     Although in its emails to Stevens Plaintiffs and Class Members, Zappos recommended they reset their Zappos.com account passwords and change the passwords "on any other web site where [they] use the same or a similar password," to date, Zappos has not offered Stevens Plaintiffs and Class Members any compensation or basic personal protection from the Data Breach—such as credit monitoring services and/or identity theft insurance.

46.     In addition, the FTC publication, "Protecting Personal Information: A Guide for Business," details the following guidelines that businesses should follow to protect against the theft of personal, sensitive information in their files:

a.      Do not collect confidential personal identifying information if there is no legitimate business need. If there is a legitimate business need, only keep the information as long as necessary;

b.      Encrypt the confidential personal identifying information particularly if the sensitive information is shipped to outside carriers or contractors;

c.      Do not store sensitive computer data on any computer with an Internet connection unless it is essential for conducting the business;

      d.      Control access to sensitive information by requiring that employees use "strong" passwords; tech security experts believe the longer the password, the better; and

      e.      Implement information disposal practices reasonable and appropriate to prevent an unauthorized access to personally identifying information.

47.      PCAI is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for a number of years.[11] Identity thieves and other cyber criminals openly post stolen credit card numbers, Social Security numbers, and other PCAI directly on various Internet websites, thereby making the information publicly available. In one study, researchers found hundreds of websites displaying stolen PCAI. Strikingly, none of these websites were blocked by Google's safeguard filtering mechanism—the "Safe Browsing list."  The study concluded:

> It is clear from the current state of the credit card black-market that cyber criminals can operate much too easily on the Internet. They are not afraid to put out their email addresses, in some cases phone numbers and other credentials in their advertisements. It seems that the black market for cyber criminals is not underground at all. In fact, it's very "in your face."[12]

48.      At a FTC public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's personal information:

> The use of third party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy.  Even [Federal Reserve] Chairman [Alan] Greenspan suggested here some time ago that it's something on the order of the life blood, the free flow of information.[13]

---

[11] *See* T. Soma, *et al.*, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3–4 (2009) ("Soma").

[12] http://www.stopthehacker.com/2010/03/03/the-underground-credit-card-blackmarket/.

[13] Federal Trade Commission Public Workshop, *The Information Marketplace: Merging and Exchanging Consumer Data*, available at http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm.

49. Commissioner Swindle's 2001 remarks are even more relevant today, as consumers' personal data functions as a "new form of currency" supporting a $26 billion per year online advertising industry in the United States.[14]

50. The FTC has formally recognized consumer data is a new (and valuable) form of currency. In a recent FTC roundtable presentation, another former Commissioner, Pamela Jones Harbour, underscored this point:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis—and profit.[15]

51. Recognizing the high value consumers place on their PCAI, many companies now offer consumers an opportunity to sell their PCAI to advertisers and other third parties. The idea is to give consumers more power and control over sharing their information, including who ultimately receives it. And, by making the transaction transparent, consumers—not data thieves—will make the profits.[16] This business has created a new robust market for the sale and purchase of this valuable consumer data.[17]

52. Consumers place a high value not only on their PCAI, but also on the *privacy* of their data. Researchers have already begun to shed light on the considerable value consumers

---

[14] *See* Julia Angwin and Emily Steel, *Web's Hot New Commodity: Privacy*, THE WALL STREET JOURNAL, available at http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html.

[15] *Statement of FTC Commissioner Pamela Jones Harbour—Remarks Before FTC Exploring Privacy Roundtable*, (Dec. 7, 2009), available at http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf.

[16] Steve Lohr, *You Want My Personal Data? Reward Me for It*, THE NEW YORK TIMES, available at http://www.nytimes.com/2010/07/18/business/18unboxed.html.

[17] *See Web's Hot New Commodity: Privacy*, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html.

place on their data privacy. Indeed, studies confirm that "[a]mong U.S. subjects, protection against errors, improper access, and secondary use of personal information is worth US$30.49–44.62."[18]

53.   When consumers were surveyed as to how much they valued their personal data in terms of its protection against improper access and unauthorized secondary use—the very concerns at issue here—they valued the restriction of improper access to their data at between $11.33 and $16.58 per website, and prohibiting secondary use to between $7.98 and $11.68 per website.[19]

54.   The value of Stevens Plaintiffs' and Class Members' PCAI on the black market is substantial.[20] As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, Zappos deprived Stevens Plaintiffs and Class Members of the substantial value of their PCAI, to which they are entitled.

55.   Zappos flagrantly disregarded and/or violated Stevens Plaintiffs' and Class Members' privacy rights, and harmed them in the process, by depriving Stevens Plaintiffs and Class Members of the value of their PCAI, for which there is a well-established national and international market. *See, e.g.,* Soma, *supra* ("[PCAI], which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

---

[18] Il-Horn Hann *et al.*, *The Value of Online Information Privacy: An Empirical Investigation* (Oct. 2002) available at http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (emphasis added); Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on Purchasing Behavior*, 22 (2) Information Systems Research 254, 254 (June 2011).

[19] *Id.*

[20] *The Cyber Black Market: What's Your Bank Login Worth*, available at http://www.ribbit.net/frogtalk/id/50/the-cyber-black-market-whats-your-bank-login-worth; Office of the National Counterintelligence Executive, *How Much Do You Cost on the Black Market*, available at http://www.ncix.gov/issues/cyber/identity_theft.php.

56.     Stevens Plaintiffs and Class Members, not data thieves, should have the right to sell their PCAI and receive the corresponding financial benefits.

## CLASS ACTION ALLEGATIONS

57.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Stevens Plaintiffs bring this action against Zappos as a national class action on behalf of themselves and all members of the following class of similarly situated persons (the "Nationwide Class"):

> All persons whose Zappos.com personal customer account information including, *inter alia*, name, account number, password, e-mail address, billing addresses, phone number, and the last four digits of the credit cards used to make purchases, was stolen by hackers who gained access to Zappos.com's internal network through unprotected servers. Excluded from the Nationwide Class are Defendant, any parent corporation, subsidiary corporation and/or affiliate entity of Defendant, Defendant's officers, directors, employees, agents and legal representatives, and the Court.

58.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or the statutes of the respective states listed below, Stevens Plaintiffs also bring this action against Defendant on behalf of themselves and all members of the following classes of similarly situated persons (collectively, the "State Sub-Classes"):

> **ALABAMA:** All persons in Alabama whose Zappos.com personal customer account information including, *inter alia*, name, account number, password, e-mail address, billing and shipping addresses, phone number, and the last four digits of the credit cards used to make purchases, was stolen by hackers who gained access to Zappos.com's internal network through unprotected servers (the "Alabama Sub-Class"). Excluded from the Alabama Sub-Class are Defendant, any parent corporation, subsidiary corporation and/or affiliate entity of Defendant, Defendant's officers, directors, employees, agents and legal representatives, and the Court.

> **CALIFORNIA:** All persons in California whose Zappos.com personal customer account information including, *inter alia*, name, account number, password, e-mail address, billing and shipping addresses, phone number, and the last four digits of the credit cards used to make purchases, was stolen by hackers who gained access to Zappos.com's internal network through unprotected servers (the "California Sub-Class"). Excluded from the California Sub-Class are Defendant, any parent corporation, subsidiary corporation and/or affiliate entity of Defendant,

Defendant's officers, directors, employees, agents and legal representatives, and the Court.

**FLORIDA:**   All persons in Florida whose Zappos.com personal customer account information including, *inter alia*, name, account number, password, e-mail address, billing and shipping addresses, phone number, and the last four digits of the credit cards used to make purchases, was stolen by hackers who gained access to Zappos.com's internal network through unprotected servers (the "Florida Sub-Class").. Excluded from the Florida Sub-Class are Defendant, any parent corporation, subsidiary corporation and/or affiliate entity of Defendant, Defendant's officers, directors, employees, agents and legal representatives, and the Court.

**TEXAS:** All persons in Texas whose Zappos.com personal customer account information including, *inter alia*, name, account number, password, e-mail address, billing and shipping addresses, phone number, and the last four digits of the credit cards used to make purchases, was stolen by hackers who gained access to Zappos.com's internal network through unprotected servers (the "Texas Sub-Class"). Excluded from the Texas Sub-Class are Defendant, any parent corporation, subsidiary corporation and/or affiliate entity of Defendant, Defendant's officers, directors, employees, agents and legal representatives, and the Court.

59.    The members of the Nationwide Class and State Sub-Classes are so numerous that their joinder is impracticable. According to Zappos, there are over 24 million Nationwide Class Members. The precise Nationwide Class and State Sub-Class Members and their addresses (and email addresses) can be easily derived from Zappos' internal records that were used to send the Data Breach notification emails to Stevens Plaintiffs and Class Members.

60.    The rights of each Stevens Plaintiff, each Nationwide Class Member, and each respective State Sub-Class Member were violated in a virtually identical manner as a result of Zappos' wrongful actions and/or inaction that caused the Data Breach and the unauthorized disclosure of their PCAI.

61.    There are questions of law and fact common to the Nationwide Class and individual State Sub-Classes as a whole. The common questions of law and fact predominate

over any questions affecting only individual members of the Nationwide Class and individual

State Sub-Classes, and include, without limitation:

     a.     whether Zappos adequately designed, adopted, implemented, controlled, directed, oversaw, managed, monitored, and/or audited the appropriate data security processes, controls, policies, procedures, and/or protocols to safeguard and protect Stevens Plaintiffs' and Class Members' PCAI disclosed without authorization in the Data Breach;

     b.     whether Zappos' failure to properly safeguard and protect Stevens Plaintiffs' and Class Members' PCAI was willful, reckless, arbitrary, capricious, and/or otherwise not in accordance with the applicable protocols, procedures, guidelines, laws, and/or regulations;

     c.     whether Zappos failed to inform Stevens Plaintiffs and Class Members of the Data Breach and the unauthorized disclosure of their PCAI in a manner and within the time period required by its own internal policies and procedures and/or the applicable laws;

     d.     whether Zappos' actions and/or inaction that caused the Data Breach and the unauthorized disclosure of Stevens Plaintiffs' and Class Members' PCAI violated applicable laws;

     e.     whether Stevens Plaintiffs and Class Members were harmed by Zappos' actions and/or inaction that caused the Data Breach and the unauthorized disclosure of their PCAI; and

     f.     whether Stevens Plaintiffs and Class Members suffered damages as a direct result of Zappos' actions and/or inaction that caused the Data Breach and the unauthorized disclosure of their PCAI.

62.     Stevens Plaintiffs' claims are typical of the claims of the Nationwide Class

Members and State Sub-Class Members because Stevens Plaintiffs, like all Class Members, are

victims of Zappos' wrongful actions and/or inaction that caused the Data Breach, caused the

unauthorized disclosure of their PCAI, and caused them to suffer the resulting damages.

63.     Stevens Plaintiffs and their counsel will fairly and adequately represent the

interests of the Nationwide Class Members and respective State Sub-Class Members. Stevens

Plaintiffs have no interests antagonistic to, or in conflict with, other Class Members' interests.

Additionally, Stevens Plaintiffs' lawyers are highly experienced in the prosecution of complex commercial litigation, consumer class actions, and data breach cases.

64.     A class action is superior to all other available methods for fairly and efficiently adjudicating Stevens Plaintiffs' and Class Members' claims. Stevens Plaintiffs and Class Members have been irreparably harmed as a result of Zappos' wrongful actions and/or inaction that caused the Data Breach and the unauthorized disclosure of Stevens Plaintiffs' and Class Members' PCAI. Litigating this case as a class action is appropriate because (i) it will avoid a multiplicity of suits and the corresponding burden on the courts and Parties, (ii) it would be virtually impossible for all Nationwide Class Members and State Sub-Class Members to intervene in this action, (iii) it will allow numerous individuals with claims too small to adjudicate on an individual basis because of prohibitive litigation costs to obtain redress for their injuries, and (iv) it will provide for court oversight of the claims process once Zappos' liability is adjudicated.

65.     Certification of the Nationwide Class and/or the respective State Sub-Classes, therefore, is appropriate under FED. R. CIV. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

66.     Certification of the Nationwide Class and/or the respective State Sub-Classes also is appropriate under FED. R. CIV. P. 23(b)(2) because Zappos has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and/or equitable relief with respect to the Class as a whole.

67.     Certification of the Nationwide Class and/or the respective State Sub-Classes also is appropriate under FED. R. CIV. P. 23(b)(1) because the prosecution of separate actions by

individual Class Members would create a risk of establishing incompatible standards of conduct for Zappos. For example, one court might decide the challenged actions and/or inaction are illegal and enjoin Zappos, while another court might decide the same actions and/or inaction are not illegal. Individual actions also could be dispositive of the interests of the other Class Members who are not parties to such actions and substantially impair or impede their ability to protect their interests.

68.     Zappos' wrongful actions and/or inaction are generally applicable to the Nationwide Class and/or the respective State Sub-Classes as a whole and, therefore, Stevens Plaintiffs also seek equitable remedies for the Nationwide Class and/or respective State Sub-Classes.

69.     Zappos' systemic policies and practices also make injunctive relief for the Nationwide Class and/or the respective State Sub-Classes appropriate.

70.     Absent a class action, Zappos will retain the benefits of its wrongdoing despite its serious violations of the law and infliction of harm and loss on Stevens Plaintiffs and Class Members.

## CLAIMS AND CAUSES OF ACTION

### COUNT I

### NEGLIGENT MISREPRESENTATION

**(Nationwide Class under Nevada Common Law and/or State Sub-Classes under Alabama, California, Florida and Texas Common Law)**

71.     The preceding factual statements and allegations are incorporated by reference.

72.     Zappos had a duty to exercise reasonable care in safeguarding and protecting Stevens Plaintiffs' and Class Members' PCAI according to the representations and promises on its website and in its "Safe Shopping Guarantee."

73.    Zappos had (and continues to have) a duty to use ordinary care in activities from which harm might be reasonably anticipated (such as in the storage of private, non-public PCAI within its possession, custody and control), as well as the affirmative duty expressly imposed upon Zappos from its representations to safeguard and protect Stevens Plaintiffs' and Class Members' PCAI.

74.    Zappos had (and continues to have) a duty to design, adopt, implement, control, direct, oversee, manage, monitor and/or audit appropriate data security processes, controls, policies, procedures and/or protocols in order to safeguard and protect the PCAI entrusted to them—including Stevens Plaintiffs' and Class Members' PCAI.

75.    The representations, standards, and duties outlined above are for the express purpose of protecting Stevens Plaintiffs, all Class Members, and their PCAI.

76.    Zappos' above-referenced representations, standards, and duties were made in the ordinary course of its regular business with the intent to induce Stevens Plaintiffs and Class Members to use its website and supply their PCAI to Zappos for the purpose of purchasing goods from Zappos.

77.    Zappos knew that reasonable consumers—such as Stevens Plaintiffs and Class Members—would rely on the above-referenced representations, standards, and duties on its website and supply their PCAI to Zappos for the purpose of purchasing goods from Zappos.

78.    Zappos violated these representations, standards, and duties by failing to exercise reasonable care by failing to safeguard and protect Stevens Plaintiffs' and Class Members' PCAI, as Zappos promised to do.

79.    It was reasonably foreseeable—in that Zappos knew or shold have known—that Zappos' failure to exercise reasonable care in safeguarding and protecting Stevens Plaintiffs' and

Class Members' PCAI would result in an unauthorized third party stealing such information and disseminating such information to the world for no lawful purpose.

80.     Zappos, by and through its above negligent actions and/or inaction, unlawfully breached its responsibilities and duties to Stevens Plaintiffs and Class Members by, among other things, failing to exercise reasonable care in safeguarding and protecting their PCAI within its possession, custody and control.

81.     Zappos, by and through its above negligent actions and/or inaction, further breached its duties to Stevens Plaintiffs and Class Members by failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and safeguarding and protecting Stevens Plaintiffs' and Class Members' PCAI within its possession, custody and control.

82.     The unauthorized third-party access was without Stevens Plaintiffs' and Class Members' authorization or consent.

83.     But for Zappos' negligent and wrongful breach of its responsibilities and duties owed to Stevens Plaintiffs and Class Members, their PCAI would not have been disseminated to the world and compromised.

84.     Stevens Plaintiffs' and Class Members' PCAI was compromised, viewed, and/or stolen as the direct and/or proximate result of Zappos' failure to design, adopt, implement, control, direct, oversee, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and safeguarding and protecting Stevens Plaintiffs' and Class Members' PCAI within its possession, custody, and control.

26

85.     Stevens Plaintiffs and Class Members justifiably relied on Zappos' website representations to safeguard and protect their PCAI—which Zappos failed to do, as evidenced by the Data Breach.

86.     Stevens Plaintiffs and Class Members have suffered (and will continue to suffer) harm and damages as a direct and/or proximate result of Zappos' failure to safeguard and protect their PCAI (as promised on the Zappos website) and the resulting Data Breach in the form of, *inter alia*, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.

87.     Zappos' wrongful actions and/or inaction (as described above) constituted (and continue to constitute) negligent misrepresentation under common law.

**COUNT II**

**VIOLATION OF STATE DECEPTIVE TRADE PRACTICES
AND/OR CONSUMER PROTECTION ACTS**

**(Nationwide Class Under Nevada Law and/or a State Sub-Class Under Florida Law)**

88.    The preceding factual statements and allegations are incorporated by reference.

89.    The uniform publication and advertising of Zappos' commitment to preserving and maintaining the confidentiality and integrity of PCAI entrusted to it in connection with the sales of shoes, apparel and other goods to its customers—including Stevens Plaintiffs' and Class Members' PCAI—were consumer transactions as defined by the consumer protection statutes set forth below.

90.    Zappos is a supplier as defined by the consumer protection statutes set forth below.

91.    Stevens Plaintiffs and Class Members are persons and consumers as defined by the consumer protection statutes set forth below.

92.    Zappos' retail sales of shoes, apparel and other goods to its customers was (and continues to be) a consumer oriented enterprise having a broad impact on consumers at large within the meaning of the consumer protection statutes set forth below.

93.    Zappos' uniform publication and advertising of its commitment to safeguard and protect the confidentiality and integrity of PCAI entrusted to it in connection such retail sales— including Stevens Plaintiffs' and Class Members' PCAI—that, in fact, Zappos failed to do (as evidenced by the Data Breach), constitute deceptive acts and practices within the meaning of the consumer protection statutes set forth below.

94.    Zappos violated the consumer protection statutes set forth below by engaging in the unfair and deceptive practices described herein, all of which offend public policies and are immoral, unethical, unscrupulous, and/or substantially injurious to consumers.

95.    In connection with the Data Breach, Zappos specifically engaged in unfair, unlawful, unconscionable, and/or deceptive acts and practices in violation of the consumer protection statutes set forth below by, *inter alia*:

a.    uniformly misrepresenting to Stevens Plaintiffs and Class Members that their PCAI would be preserved in strictest confidence with the utmost data integrity when, as alleged herein, Zappos routinely failed to follow corporate and/or industry standards in safeguarding and protecting such information;

b.    failing to disclose to Stevens Plaintiffs and Class Members the material fact that their PCAI was not preserved in strictest confidence with the utmost data integrity;

c.    failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and industry standards for safeguarding and protecting Stevens Plaintiffs' and Class Members' PCAI within its possession, custody and control;

d.    failing to properly encrypt Stevens Plaintiffs' and Class Members' PCAI;

e.    failing to properly train its employees in principles of cyber security policies and procedures including, *inter alia*, handling, storing, safeguarding, and protecting PCAI; and

f.    failing to adequately inform Stevens Plaintiffs and Class Members about the Data Breach and the risk of identity theft and/or identity fraud resulting from the Data Breach.

96.    Zappos' conduct, as set forth above, would likely deceive a reasonable consumer.

97.    Zappos' above uniform willful and wrongful actions and/or inaction, along with its disregard of cyber security and the resulting Data Breach , were (and continue to be) the direct and/or proximate cause of the harm and damages Stevens Plaintiffs and Class Members have

suffered (and will continue to suffer) in the form of, *inter alia*, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, and which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.

98.     The injury, harm and damages suffered by Stevens Plaintiffs and Class Members sufficiently outweigh any of Zappos' possible justifications or motives for its failure to safeguard and protect their PCAI.

99.     Zappos lost Stevens Plaintiffs' and Class Members' sensitive PCAI entrusted to it. Unless restrained and enjoined, Zappos will continue to engage in the above described wrongful conduct.

100.     Zappos' wrongful actions and/or inaction (as described above) constitute (and continue to constitute) unconscionable conduct in violation of the laws prohibiting unfair and deceptive acts and practices of the states wherein Class Members reside.

101.   By its above wrongful actions and/or inaction, Zappos engaged in unfair competition or unfair or deceptive acts or practices in violation of FLA. STAT. § 501.201, *et seq.* ("FDUTPA"), and, further:

a.   FDUTPA provides that unfair methods of competition, unconscionable acts and practices, and unfair or deceptive acts or practices in the conduct "of any trade or commerce" are unlawful, Fla. Stat. §501.204; and

b.   under FDUTPA, "trade or commerce" is defined to include any advertisement or solicitation relating to any "thing of value," Fla. Stat. §501.203(8).

102.   By its above wrongful actions and/or inaction, Zappos engaged in unfair competition or unfair or deceptive acts or practices in violation of NEV. STAT. § 598.0905, *et seq.*, including, *inter alia*, the following deceptive trade practices:

a.   Knowingly making a false representation as to the characteristics, uses, and benefits of its services, NEV. STAT. § 598.0915(5);

b.   Knowingly making other false representations in in connection with online retail transactions, NEV. STAT. § 598.0915(15); and

c.   Failing to disclose material facts in connection with the online retail sale of goods, NEV. STAT. § 598.0923(2).

103.   As a direct and/or proximate result of Zappos' above statutory violations, Stevens Plaintiffs and Class Members have suffered (and continue to suffer) cognizable injury, harm, ascertainable loss and/or actual damages (as set forth above).

## COUNT III

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
**(California Business & Professions Code §17200 *et seq.*)**
**(California Sub-Class)**

104.   The preceding factual statements and allegations are incorporated by reference.

105.   The California Unfair Competition Law, California Business & Professions Code §17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or

practice and any false or misleading advertising, as those terms are defined by the UCL and relevant case law.  By reason of the wrongful actions and/or inaction alleged herein, Zappos engaged in unlawful, unfair and fraudulent practices within the meaning of the UCL.

106.    As alleged herein, California Plaintiff has suffered (and continue to suffer) injury in fact and lost money or property as a result of Zappos' wrongful actions and/or inaction including, *inter alia*, the loss of her PCAI, for which she is entitled to compensation by virtue of Zappos' violations of the Security Requirements for Consumer Records Act, California Civil Code §1798.29 and 1798.80, *et seq*., as well as costs incurred to protect against the use of and mitigate the loss of the unlawful or unauthorized use of their confidential PCAI.

107.    In the course of conducting business, Zappos committed "unlawful" business practices by, *inter alia*, failing to provide reasonable security measures for the collection and storage of California Plaintiff's PCAI and California Sub-Class Members' PCAI and violated the statutory and common law alleged herein, including the Security Requirements for Consumer Records Act, California Civil Code §§ 1714, 1798.29 and 1798.80, *et seq*.  California Plaintiff and California Sub-Class Members reserve the right to allege other violations of law constituting other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

108.    Zappos also violated the UCL by failing to immediately notify California Plaintiff and California Sub-Class Members about their stolen and compromised PCAI.  If California Plaintiff and California Sub-Class Members had been notified in an appropriate fashion, they could have (and would have) taken precautions to safeguard and protect their PCAI.

109.    Zappos' wrongful actions and/or inaction, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of California Business and Professions Code §17200 *et seq*., in that

Zappos' conduct was (and continues to be) substantially injurious to consumers, offensive to public policy, immoral, unethical, oppressive and unscrupulous; the gravity of Zappos' conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to further Zappos' legitimate business interests other than the wrongful conduct described herein.

110.    California Business and Professions Code §17200 also prohibits any "fraudulent business act or practice."

111.    Zappos' claims, nondisclosures and misleading statements, as set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of California Business and Professions Code §17200.

112.    Zappos' wrongful actions and/or inaction caused (and continues to cause) substantial injury to the California Plaintiff and California Sub-Class Members.  Zappos lost sensitive data entrusted to it.  Unless restrained and enjoined, Zappos will continue to engage in the above described wrongful conduct leading to further thefts of its customers' PCAI.

113.    As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, California Plaintiff and California Sub-Class Members have suffered (and will continue to suffer) harm and damages in the form of, *inter alia*, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach, (viii) the value of their time

spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.

114.    California Plaintiff, on behalf of herself, the California Sub-Class Members and the general public, seek (i) restitution, (ii) an injunction prohibiting Zappos from continuing such wrongful practices, (iii) an injunction requiring Zappos to take further actions to protect California Plaintiff and California Sub-Class Members, and (iv) all other relief this Court deems appropriate, consistent with California Business and Professions Code §17203.

## COUNT IV

### VIOLATION OF SECURITY REQUIREMENTS FOR CONSUMER RECORDS
**(California Civil Code §1798.29 and 1798.80, *et seq*.)**
**(California Sub-Class)**

115.    The preceding factual statements and allegations are incorporated by reference.

116.    California law requires any business obtaining PCAI from its customers (including financial and/or personal identification data) to implement and maintain reasonable security procedures and practices to protect such information from unauthorized access, destruction, use, modification or disclosure.

117.    California Civil Code §§1798.29 and 1798.82 further require any business obtaining and/or retaining PCAI from its customers must promptly and "in the most expedient

time possible and without unreasonable delay" disclose any breach of the security of the system containing such retained data.

118.    Zappos failed to implement and maintain reasonable security systems that directly and/or proximately caused the Data Breach, including its failure to properly encrypt, safeguard and protect California Plaintiff's and California Sub-Class Members' PCAI.

119.    Zappos also unreasonably delayed and failed to disclose the Data Breach to California Plaintiff and California Sub-Class Members in the most expedient time possible and without unreasonable delay when it knew, or reasonably believed, California Plaintiff's and California Sub-Class Members' PCAI had been stolen, compromised and disseminated to the world.

120.    On information and belief, no law enforcement agency determined that notifying California Plaintiff and California Sub-Class Members about the Data Breach would impede a criminal investigation and/or directed Zappos not to send such Data Breach notification.

121.    Zappos also failed to comply with the privacy notification rights required in California Civil Code §1798.83.

122.    As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, California Plaintiff and California Sub-Class Members have suffered (and will continue to suffer) harm and damages in the form of, *inter alia*, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity

theft and/or identity fraud pressed upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.

**COUNT V**

**<u>VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT</u>**
**(California Civil Code §1750, *et seq.*)**
**(California Sub-Class)**

123.    The preceding factual statements and allegations are incorporated by reference.

124.    California Plaintiff and California Sub-Class Members are "consumers" within the meaning of California Civil Code § 1761(d), as they purchased shoes, apparel and other goods from Zappos for personal, family and/or household purposes, and not for resale.

125.    The shoes, apparel and other goods are "goods" within the meaning of California Civil Code § 1761(a) as they are tangible chattels bought for private purposes.

126.    The purchase of shoes, apparel and other goods from Zappos by California Plaintiff and California Sub-Class Members were (and continue to be) "transactions" within the meaning of California Civil Code § 1761(e).

127.    As set forth in detail above, Zappos engaged in deceptive acts and practices, unlawful methods of competition and/or unfair acts, as defined by California Civil Code § 1750, *et seq.*, to the detriment of California Plaintiff and California Sub-Class Members.

128.    California Plaintiff and California Sub-Class Members reasonably expected their PCAI would be safeguarded and protected by Zappos.  Based on this reasonable expectation, California Plaintiff and California Sub-Class Members purchased shoes, apparel and other goods from Zappos' retail websites.  Despite its website promises, Zappos failed to safeguard and protect California Plaintiff's and California Sub-Class Members' PCAI in violation of the following California Consumers Legal Remedies Act provisions: (i) California Civil Code § 1770(a)(5) (representing goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which they do not have); (ii) California Civil Code § 1770(a)(7) (representing goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another); and (iii) California Civil Code § 1770(a)(14) (representing a transaction confers or involves rights, remedies or obligations which it does not have or involve, or which are prohibited).  Zappos also failed to inform California Plaintiff and California Sub-Class Members that it did not maintain appropriate safeguards and procedures to reasonably safeguard and protect their PCAI.

129.    As a direct and/or proximate result of Zappos' wrongful actions and/or inaction and the resulting Data Breach, California Plaintiff and California Sub-Class Members have suffered (and will continue to suffer) harm and damages in the form of , *inter alia*, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach, (viii) the value of their time

spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation. Pursuant to California Civil Code § 1780(a), therefore, California Plaintiff seeks (i) actual damages, (ii) an order enjoining Zappos from engaging in the wrongful methods, acts and/or practices alleged herein, (iii) restitution, (iv) punitive damages, and (v) all other affirmative relief this Court deems just and proper. California Plaintiff also seek to recover her attorneys' fees, litigation expenses and court costs.

## COUNT VI

### VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT
### (TEX. BUS & COM. CODE § 17.50(a)(3) (Unconscionable Acts and Practices))
### (Texas Sub-Class)

130.    The preceding factual statements and allegations are incorporated by reference.

131.    As described above, Texas Plaintiff and Texas Sub-Class Members are consumers of shoes, apparel and other goods purchased from Zappos and, as such, they are "consumers" as defined in the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"). TEX. BUS & COM. CODE § 17.45(4).

132.    In order to obtain shoes, apparel and other goods from Zappos, Texas Plaintiff and Texas Sub-Class Members were required to provide their PCAI to Zappos. At all relevant times, Zappos was (and continues to be) entrusted with, and obligated to safeguard and protect,

Texas Plaintiff's and Texas Sub-Class Members' PCAI in connection with such consumer transactions.

133.    Zappos' ongoing acts and practices; to wit, *inter alia*, (i) failing to safeguard and protect Texas Plaintiff's and Texas Sub-Class Members' PCAI entrusted to it (as described in detail above), (ii) failing to properly encrypt all of Texas Plaintiff's and Texas Sub-Class Members' PCAI, and (iii) failing to timely notify Texas Plaintiff and Texas Sub-Class Members of the Data Breach were (and continue to be) glaringly noticeable, flagrant, complete, unmitigated and unconscionable.

134.    Zappos' above unconscionable acts and practices directly and/or proximately caused (and continue to cause) Texas Plaintiff and Texas Sub-Class Members to suffer a glaringly noticeable, flagrant, complete, unmitigated unfairness in the form of, *inter alia*, the wrongful dissemination of their PCAI to the world without their authorization.

135.    Zappos' above unconscionable acts and practices—in particular, Zappos' failure to properly safeguard and protect Texas Plaintiff's and Texas Sub-Class Members' PCAI entrusted to it—occurred in connection with the retail sales of shoes, apparel and other goods to Texas Plaintiff and Texas Sub-Class Members in consumer transactions—to wit, in order to receive such shoes, apparel and other goods, Texas Plaintiff and Texas Sub-Class Members were required to provide their PCAI to Zappos.

136.    As a direct and/or proximate result of Zappos' above-described willful and wrongful actions and/or inaction and the resulting Data Breach, Texas Plaintiff and Texas Sub-Class Members have suffered (and will continue to suffer) harm and damages in the form of, *inter alia*, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv)

loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.

137.    Zappos' wrongful actions and/or inaction (as described above) constitute (and continue to constitute) unconscionable conduct in violation of the DTPA—to wit, ongoing and continuous violations of TEX. BUS & COM. CODE § 17.50(a)(3).

## COUNT VII

### UNJUST ENRICHMENT
**(Nationwide Class Under Nevada Law and/or State Sub-Classes Under Alabama, California, Florida and Texas Common Law)**

138.    The preceding factual statements and allegations are incorporated by reference.

139.    Stevens Plaintiffs and Class Members conferred a valuable benefit on Zappos in the form of their PCAI that Zappos (and, on information and belief, Amazon.com, its parent corporation), among other things, could use to track their buying habits and enaged in targeted marketing of specific shoes, apparel, and other goods that, in turn, increased Zappos' (and

therefore Amazon.com's) revenues and profits. Stevens Plaintiffs' and Class Members' PCAI also has intrinsic value on the robust domestic and internantional "big data" market.

140.    By providing their valuable PCAI to Zappos, Stevens Plaintiffs and Class Members conferred substantial commercial and financial advantages on Zappos.

141.    Although Zappos appreciated (and continues to appreciate) such substantial commercial and financial advantages conferred conferred on it by Stevens Plaintiffs and Class Members, Zappos provided no like-kind benefits to Stevens Plaintiffs and Class Members in return pertaining to their PCAI, thereby rendering the substantial commercial and financial advantages conferred on Zappos by Stevens Plaintiffs and Class Members gratuitous.

142.    In light of the Data Breach and unauthorized dissemination of Stevens Plaintiffs' and Class Members' PCAI, under principles of equity and good conscience, Zappos should not be rewarded for failing to safeguard and protect Stevens Plaintiffs' and Class Members' PCAI; to wit, Zappos should not continue to be unjustly enriched by the substantial commercial and financial advantages pertaining to Stevens Plaintiffs' and Class Members' stolen and compromised PCAI, which Zappos continues to use (and prosper from) while Stevens Plaintiffs and Class Members suffer the above-described harm and damages.

143.    Accordingly, Stevens Plaintiffs, on behalf of themselves and the Class Members, seek to impose a constructive trust over (and recover) all amounts by which Zappos has been (and continues to be) unjustly enriched. Stevens Plaintiffs and Class Members are also entitled to restitution and/or disgorgement of Zappos' ill-gotten gains pursuant to common law.

## RELIEF REQUESTED

144.     The preceding factual statements and allegations are incorporated by reference.

145.     **DAMAGES.**   As a direct and/or proximate result of Zappos' wrongful actions and/or inaction (as described above) and the resulting Data Breach, Stevens Plaintiffs and Class Members have suffered (and will continue to suffer) harm and actual, consequential, incidental and/or nominal damages in the form of, *inter alia*, (i) untimely and/or inadequate notification of the Data Breach, (ii) improper disclosure of their PCAI, (iii) closure of Zappos' customer service telephone lines, (iv) loss of the unencumbered use of their extant passwords and the loss of their passwords, (v) the oppressive Zappos.com website arbitration clause and Zappos' attempted enforcement of same, (vi) loss of privacy, (vii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach, (viii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud including, *inter alia*, changing their Zappos.com account passwords and passwords for other accounts using the same passwords, (ix) deprivation of the value of their PCAI, for which there is a well-established national and international market, (x) receipt of a diminished value of the services they paid Zappos to provide (*e.g.*, protection of their PCAI), and (xi) loss of the customer service access that was part of the services provided for by Zappos, which was willfully severed by Zappos at a time of high need by its customers—for which they are entitled to compensation.   Stevens Plaintiffs and Class Members also are entitled to recover statutory damages under the applicable state statutes set forth above.   Stevens Plaintiffs' and Class Members' damages were (and continue to be) foreseeable by Zappos and exceed the minimum jurisdictional limits of this Court.

146.   **DOUBLE/TREBLE DAMAGES.**   Stevens Plaintiffs and Class Members also are entitled to double or treble damages for Zappos' knowing, willful, intentional, unconscionable and deceptive acts and practices under the applicable state statutes set forth above.

147.   **PUNITIVE DAMAGES.**   Stevens Plaintiffs and Class Members also are entitled to punitive damages from Zappos as punishment and to deter such wrongful conduct in the future.

148.   **EQUITABLE RELIEF.**   Stevens Plaintiffs and Class Members also are entitled to recover all amounts by which Zappos has been unjustly enriched. Stevens Plaintiffs and Class Members are also entitled to restitution and/or disgorgement of Zappos' ill-gotten gains pursuant to common law.

149.   **INJUNCTIVE RELIEF.**   Stevens Plaintiffs and Class Members also are entitled to injunctive relief in the form of, *inter alia*, without limitation, (i) credit monitoring, (ii) internet monitoring, (iii) identity theft insurance, (iv) periodic compliance audits by a third party to insure Zappos is properly safeguarding and protecting its customers' PCAI in its possession, custody and control, and (v) clear and effective notice to Class Members about the serious risks posed by the Data Breach and the precise steps that must be taken to protect themselves.

150.   **ATTORNEYS' FEES, LITIGATION EXPENSES AND COURT COSTS.**   Stevens Plaintiffs and Class Members also are entitled to recover their attorneys' fees, litigation expenses and court costs in prosecuting this action under the applicable the state statutes and common law set forth above.

**WHEREFORE**, Stevens Plaintiffs, on behalf of themselves and Class Members, respectfully request that (i) this action be certified as a class action, (ii) Stevens Plaintiffs be designated the Nationwide Class and/or State Sub-Class Representatives, and (iii) Stevens Plaintiffs' Counsel be appointed as Class Counsel.  Stevens Plaintiffs, on behalf of themselves

and Class Members, further request that upon final trial or hearing, judgment be awarded against

Zappos for:

    (i)     actual, consequential, incidental and/or nominal damages (as set forth above) to be determined by the trier of fact;

    (ii)    statutory damages;

    (iii)   double/treble damages (as available);

    (iv)   punitive damages;

    (v)    all amounts by which Zappos has been unjustly enriched;

    (vi)   restitution and/or disgorgement of Zappos' ill-gotten gains;

    (vii)   appropriate injunctive relief, as described above, including, without limitation, (a) requiring Zappos to comply with its obligations to design, adopt, implement, control, direct, oversee manage, monitor and/or audit the appropriate processes, controls, policies, procedures and/or protocols to safeguard and protect PCAI with which it has been entrusted in compliance with its internal policies and procedures, industry standards, cyber-security standards and all applicable laws and regulations, and (b) providing the appropriate and effective monitoring services and educating Stevens Plaintiffs Class Members;

    (viii)  pre- and post-judgment interest at the highest legal rates;

    (ix)   attorneys' fees and litigation expenses;

    (x)    costs of suit; and

    (xi)   such other and further relief this Court deems just and proper.

Dated:  October 7, 2013

Respectfully submitted,

By: /s/ *Ben Barnow*
Ben Barnow
Erich P. Schork
**BARNOW AND ASSOCIATES, P.C.**
One N. LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Facsimile: (312) 641-5504
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

Richard L. Coffman
**THE COFFMAN LAW FIRM**
First City Building
505 Orleans St., Suite 505
Beaumont, TX 77701
Telephone: (409) 833-7700
Facsimile: (866) 835-8250
rcoffman@coffmanlawfirm.com

Timothy G. Blood
Thomas J. O'Reardon II
**BLOOD HURST & O'REARDON, LLP**
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
tblood@bholaw.com
toreardon@bholaw.com

Edward K. Wood
**WOOD LAW FIRM, LLC**
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone: (205) 612-0243
Fax: (866) 747-3905
ekirkwood1@bellsouth.net

Lance A. Harke
Howard M. Bushman
**HARKE, CLASBY & BUSHMAN, LLP**
9699 NE Second Avenue
Miami Shores, FL 33138
Telephone: (305) 536-8220
Facsimile: (305) 536-8229
lharke@harkeclasby.com
hbushman@harkeclasby.com

Mark. K Gray
**GRAY & WHITE**
713 East Market Street
Louisville, KY 40202
Telephone: (502) 210-8942
Facsimile: (502) 618-4059
MGray@grayandwhitelaw.com

45

**<u>CERTIFICATE OF SERVICE</u>**

  I hereby certify that on October 7, 2013, I electronically filed the foregoing Stevens Plaintiffs' Second Amended Consolidated Class Action Complaint with the Clerk of Court by using the CM/ECF system, thereby electronically serving a copy of same on all counsel of record.


       <u>/s/ *Ben Barnow*</u>
       Ben Barnow