David C. O'Mara**,** Esq.
**The O'Mara Law Firm, P.C.**
311 E. Liberty Street
Reno, NV 89501
Tel: (775) 323-1321
Fax: (775) 323-4082
david@omaralaw.net

Peter J. Mougey (*pro hac vice*)
James L. Kauffman (*pro hac vice*)
**Levin Papantonio Thomas**
**Mitchell Rafferty & Proctor, P.A.**
316 South Baylen Street, Suite 600
Pensacola, Florida  32502-5996
Tel: (850) 435-7068
Fax: (850) 436-6068
pmougey@levinlaw.com
jkauffman@levinlaw.com

Jeremiah Frei-Pearson (*pro hac vice*)
D. Greg Blankinship (*pro hac vice*)
**Meiselman Packman Nealon**
**Scialabba & Baker, P.C.**
1311 Mamaroneck Avenue
White Plains, New York 10605
Tel: (914) 517-5000
Fax: (914) 517-5055
gblankinship@mdpcelaw.com
jfrei-pearson@mdpcelaw.com

Michael M. Goldberg (*pro hac vice*)
Marc L. Godino (*pro hac vice*)
**Glancy Binkow & Goldberg, LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel: (310) 201-9150
Fax: (310) 201-9160
info@glancylaw.com

*Attorneys for the Consolidated Nevada Plaintiffs and the Putative Class*
[Additional counsel are listed on the signature page.]

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

IN RE ZAPPOS.COM INC., CUSTOMER )
DATA SECURITY BREACH )
LITIGATION )
 )
-------------------------------------- )
 )
THIS DOCUMENT RELATES TO: )
 )
ALL ACTIONS )
 )
 )

No. 3:12-cv-325- RCJ-VPC
MDL No. 2357

(Class Action)

**NEVADA PLAINTIFFS' OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINTS**

1

2

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     BRIEF RECITATION OF RELEVANT FACTS........................................... 2

III.    PROCEDURAL HISTORY .............................................................................. 4

IV.   APPLICABLE LEGAL STANDARDS........................................................... 6

V.    ARGUMENT ....................................................................................................... 6

     A.    Defendant's Motion Is an Impermissible Motion for Reconsideration ................... 6

     B.    As the Court Previously Held, Plaintiffs Have Adequately Alleged Standing ................................................................................................. 9

     C.    *Clapper v. Amnesty Int'l USA* Does Not Provide Grounds for Dismissal ................. 10

     D.    The SACC States a Claim for Violations of the New York General Business Law and Negligent Misrepresentation ................................................ 15

     E.    The SACC States a Claim for Violations of the Nevada Deceptive Trade Practices Act ............................................................................................... 15

     F.    The SACC States a Claim for Violations of the Florida Deceptive and Unfair Trade Practices Act ........................................................................ 15

     G.    The SACC Properly Alleges Violation of California Law............................................. 16

VI.   CONCLUSION ..................................................................................................... 17

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

  
# TABLE OF AUTHORITIES

**CASES**

*389 Orange St. Partners v. Arnold,*
    179 F.3d 656 (9th Cir. 1999) ................................................................. 8

*Ashcroft v. Iqbal,*
    556 U.S. 662 ......................................................................................... 6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................. 6

*Babbitt v. Farm Workers,*
    442 U.S. 289 (1979) ............................................................................ 14

*Blum v. Yaretsky,*
    457 U.S. 991 ........................................................................................ 14

*Clapper v. Amnesty Int'l USA,*
    133 S. Ct. 1138 (2013) ................................................................. passim

*Hussein v. Univ. & Cmty. Coll. Sys. of Nevada,*
    3:04-CV-0455 JCM (RAM), 2008 WL 746921  (D. Nev. Mar. 18, 2008) ................................ 8

*In re Barnes and Noble Pin Pad Litig.,*
    No. 12-cv-8617, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013) ....................... 14

*In re Maui Indus. Loan & Fin. Co.,*
    483 B.R. 346 (Bankr. D. Haw. 2012) ............................................... 8

*Johnson v. Florida Dep't of Corr.,*
    3:04-CV-522-J-25HTS, 2007 WL 4404209 (M.D. Fla. Feb. 22, 2007) ........................... 9

*Knapp v. Miller,*
    873 F. Supp. 375 (D. Nev. 1994) ...................................................... 8

*Libertarian Party of Los Angeles Cty. v. Bowen,*
    709 F.3d 867 (9th Cir. 2013) ........................................................... 11

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,*
    571 F.3d 873 (9th Cir. 2009) ............................................................ 8

*Mkhitaryan v. U.S. Bank, N.A.,*
    2:11-cv-01055-JCM-CWH, 2013 WL 3943552  (D. Nev. July 30, 2013) ......................... 8

*N. Star Int'l v. Ariz. Corp. Comm'n,*
    720 F.2d 578 (9th Cir. 1983) ............................................................ 6

*NL Indus., Inc. v. Kaplan,*
    792 F.2d 896 (9th Cir. 1986) ............................................................ 6

*Pennell v. City of San Jose*,
   485 U.S. 1 (1988) ................................................................................................ 14

*Qestec, Inc. v. Krummenacker*,
   367 F. Supp. 2d 89 (D. Mass. 2005) ................................................................... 9

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ............................................................................... 6

*U.S. v. Ogilvie*,
   3:12-cr-00121-MMD-WGC, 2013 WL 1737243 (D. Nev. April 22, 2013) ............... 8

*Waterfall Homeowners Ass'n v. Viega, Inc.*,
   283 F.R.D. 571 (D. Nev. 2012) ............................................................................ 6


**RULES AND REGULATIONS**

Cal. Bus. & Prof. Code §17200 ......................................................................... 2, 5, 10

Cal. Bus. & Prof. Code §17500 ......................................................................... 2, 5, 10

Cal. Civil Code §1798.80 ................................................................................... 5, 10, 16

Cal. Civil Code §1798.82(e) ............................................................................... 16

Cal. Civil Code §1798.82(e)(3) .......................................................................... 17

Cal. Civil Code §1798.82(g)(2) .......................................................................... 17

Cal. Civil. Code §1798.82 .................................................................................. 2, 5, 10

Fla. Deceptive Trade Practices Act §501.201 .................................................... 5

N.Y. Gen. Bus. Law §349 .................................................................................. 2, 5

Nev. Deceptive Trade Pratices Act §598.0903 ................................................. 5

Federal Rule of Civil Procedure 8(a)(2) ............................................................ 6

1    Plaintiffs Stephanie Preira, Robert Ree, Shari Simon, Patti Hasner, Dahlia Habashy, and Zetha

2    Nobles, on behalf of themselves and all other persons similarly situated (collectively, "Plaintiffs", "Priera

3    Plaintiffs" or "Nevada Plaintiffs"), by and through their undersigned counsel, hereby submit the

4    following opposition to Defendant Zappos.Com, Inc.'s ("Zappos" or "Defendant") Motion to Dismiss

5    (Dkt. No. 122, the "Motion") Plaintiffs' Second Amended Consolidated Complaint (Dkt. No. 118, the

6    "SACC").

7    **I.      INTRODUCTION**

8    Defendant's Motion – its *third* attempt to dismiss the claims in this case – constitutes an

9    improper and untimely attempt at reconsideration of the Court's September 9, 2013, Order on

10   Defendant's first motion to dismiss, wherein the Court clearly held that Plaintiffs adequately alleged

11   standing *vis-à-vis* their purchase of credit monitoring services in response to Defendant's data breach.

12   Like its previously unsuccessful attempts (which were grounded in arguments that Zappos merely

13   regurgitates here), Defendant's motion should be denied.

14   Defendant urges this Court to reconsider and reverse its previous Order on standing, and to

15   instead hold that Plaintiffs' purchase of credit monitoring services to mitigate potential theft or fraud

16   resulting from the data breach is insufficient to confer Article III standing.  In support of this argument,

17   Defendant again cites the Supreme Court's holding in *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138

18   (2013).  *Clapper*, however, was substantially briefed previously in this case, and this Court already has

19   (rightfully) determined that *Clapper* and it progeny do not favor dismissal of Plaintiffs' claims here on

20   standing grounds.  As this Court (and the state court in the parallel proceeding) already has held:

21   Plaintiffs have pled the existence of a "certainly impending" injury that justified the reasonable purchase

22   of credit monitoring services, thereby conferring Article III standing under long established precedent,

23   including *Clapper*.

24   The result urged by Defendant would be detrimental to consumers and frustrate the purposes of

25   recently-enacted state data breach notice statutes, which are intended to help mitigate and minimize the

26   risks of identity theft and fraud following a breach of security in online information.  In arguing that the

27   purchase of credit monitoring services to minimize the risk of fraud does not confer standing under

28   Article III, Defendant would shift the burden associated with mitigation following a data breach *entirely*

- 1 -

1   to the consumer – the one party with both the least fault and the least amount of power or control in

2   these transactions.  Thus, Defendant's urged result would discourage fraud and identity theft mitigation

3   efforts, simultaneously increasing the likely cost of resulting fraud and identity theft occurrences – along

4   with the potential liability of Defendant (and companies like it).  This is an especially unjust result in

5   cases where, as here, consumers have alleged that the breach occurred in the first place due to the

6   company's failure to implement appropriate safety protocols with respect to the collecting, storing, and

7   maintaining of personal information online.

8          Defendant also argues (again) that the case should be dismissed because no consumer (so

9   Defendant claims) has suffered any harm in the form of fraud or identity theft as a result of the breach.

10   Not only does this misstate the allegations of the SACC (which does allege the occurrence of such harm,

11   at ¶5), it is an especially untenable defense here, where Defendant has yet to produce any information in

12   response to Plaintiffs' discovery requests.[1]  Defendant's defense of "no harm, no foul" – even if it were

13   true and provable – must fail.

14          Finally, Defendant renews a number of arguments regarding the individual causes of action in

15   the SACC.  All of these must fail.  Whereas the Court already ruled that Plaintiffs successfully stated

16   their claims for violations of California statutes (Cal. Bus. & Prof. Code §§17200 & 17500 and Cal. Civil.

17   Code §1798.82) as well as New York law (N.Y. Gen. Bus. Law §349), these causes of action are not up

18   for a second debate.  Moreover, where the Court granted Plaintiffs leave to amend their causes of action

19   under Nevada and Florida law, they have done so in accordance with the Order, and curiously without

20   challenge from Defendant in its Motion.  In sum, Defendant's Motion to Dismiss should be denied in

21   its entirety.

22 **II.**       **BRIEF RECITATION OF RELEVANT FACTS**

23          Zappos is an online retailer of apparel, shoes, handbags, home furnishings, beauty products and

24   accessories.  SACC ¶2.  Plaintiffs are Zappos customers who entrusted their confidential personal

25

---

26 [1] Plaintiffs served document requests on Defendant on September 10, 2013, just two days after the
27 Court issued its ruling on the Motion to Dismiss.  *See* Declaration of Marc L. Godino filed concurrently herewith ("Godino Dec."), Ex. A).  Defendant has engaged in various delay tactics, and has failed to produce any responsive documents in the two months since the document requests were served.

28

1    information to Zappos, at Zappos' request, so they could purchase goods via Zappos.com.  Plaintiffs

2    entrusted this information to Zappos because Zappos goes to great lengths to convince its customers

3    that their information is safe.  For example, Zappos' website informs consumers that "**shopping on**

4    **Zappos.com is safe and secure-guaranteed.**"  *Id.* (emphasis in original).  Zappos' website further

5    boasts that "Zappos.com servers are protected by secure firewalls -- communication management

6    computers specially designed to keep information secure and inaccessible by other Internet users.  So

7    *you're absolutely safe while you shop*."  *Id.* at ¶28 (emphasis in original).

8         Zappos' security guarantees, however, proved to be false.  Zappos failed to properly secure its

9    servers or to perform even the most rudimentary of security precautions, such as encrypting the

10   Plaintiffs' confidential information.  *Id.* at ¶¶30-31.  As a direct result of Zappos' defective security,

11   cyber criminals accessed insufficiently protected servers belonging to Zappos, thus obtaining extensive

12   personal information belonging to approximately 24 million Zappos customers, including, *inter alia*,

13   names, account numbers, passwords, email addresses, billing and shipping addresses, phone numbers

14   and the last four digits of the credit or debit cards Class Members used to make their Zappos

15   purchases (the personally identifying information, or "PII").  *Id.* at ¶3 (describing the

16   "Breach").

17        The SACC explains the imminent risk faced by class members as a result of the breach:

18   "whether or not credit card numbers were taken doesn't mean that customers are any less at risk and in

19   fact might be MORE at risk.  In the case of credit card numbers, customers can simply cancel that credit

20   card and put that worry behind them.  However, when email addresses, passwords, addresses, and other

21   sensitive information is compromised it's an entirely new, larger issue that can continue for a long time."

22   *Id.* at ¶39.  Indeed, the theft of passwords substantially increases the risk that Zappos' customers could

23   be the victims of identity theft.  The SACC further alleges that identity thieves often hold onto stolen

24   personal and financial information for several years before using and/or selling the information to other

25   identity thieves.  *Id.* at ¶21.  For its part, Zappos has done nothing to assist victims of the breach.

26   Rather than provide even minimal assistance to its customers, Zappos' customer service

27   phone lines were shut down for the week immediately following the breach.  *Id.* at ¶33.

28

1    Zappos admitted that it received so many phone calls from breach victims that it was unable

2    to operate its phone lines. Dkt. No. 62, at 6.

3          Given this heightened risk of fraud and identity theft following the breach, and Zappos' absolute

4    failure to assist those who were victimized by its negligent security, Plaintiffs took prophylactic

5    protective measures, such as the purchase of credit monitoring, which was reasonable and necessary to

6    prevent and mitigate future loss. *Id.* at ¶6.

7    **III.    PROCEDURAL HISTORY**

8          This Multi-District Litigation is headed by two distinct groups of plaintiffs: the Nevada Plaintiffs

9    group (the filers of this opposition brief)[2] and the Stevens Plaintiffs group.  This Court denied Zappos'

10   motion to dismiss by compelling arbitration on September 27, 2012.  Dkt. No. 21.  Nevada Plaintiffs

11   filed their Amended Consolidated Complaint (the "ACC") on November 13, 2012.  Dkt. No. 59.  The

12   Stevens Plaintiffs Filed their Consolidated Amended Class Action Complaint (the "CACAC") on

13   November 12, 2012.  Dkt. No. 58.  Defendant filed a single motion to dismiss the ACC and the

14   CACAC on December 14, 2012.  Dkt. No. 62 (the "initial motion to dismiss").  By Order dated

15   September 9, 2013, the Court granted, in part, and denied, in part, Defendant's initial motion to dismiss.

16   Dkt. No. 114 (the "Order").  Pursuant to the Order, Nevada Plaintiffs filed their Second Amended

17   Consolidated Complaint (the "SACC") on October 7, 2013.  Dkt. No. 118.

18         Central to Defendant's argument on its initial motion to dismiss was that all plaintiffs

19   purportedly lacked standing.  Significantly, the Court rejected this argument, clearly stating:

20         As a general matter, the Court finds that Plaintiffs have standing.  Plaintiffs have
           sufficiently alleged that they have had to pay money to monitor their credit scores and
21         secure their financial information due to the increased risk of criminal fraud against
           them occasioned by Defendant's negligent loss of their personal information.
22

23   Order at 5:3-6.

24   _____

25   [2] Defendant refers to the Nevada Plaintiffs as the "Priera Plaintiffs" in its Motion.  As discussed further
     herein, the Nevada Plaintiffs group also can be divided into two subgroups: those who purchased credit
26   monitoring or fraud prevention services as a result of the data breach (Plaintiffs Hasner, Priera and
     Habashy, collectively, the "Credit Monitoring Plaintiffs") and those who did not but have separate and
27   independent standing under California law (Plaintiffs Ree, Simon and Nobles, collectively, the
     "California Plaintiffs").
28

- 4 -

1   The Court did, however, agree (in part) that *the CACAC Plaintiffs* "being from Texas, Florida,

2   and Alabama, variously, have no standing to assert violations of California statutes" noting that "the

3   putative California Plaintiff in the CACAC is not properly joined therein." *Id.* at 5:18-20.  In short, the

4   Court clearly held that the Nevada Plaintiffs sufficiently alleged standing in the ACC.  *Id.* at 5:3-6.

5   With respect to the individual causes of action asserted by the Nevada Plaintiffs, the Court held

6   that the ACC sufficiently stated claims for violations of California's unfair competition law (Cal. Bus. &

7   Prof. Code §17200), misleading advertising (Cal. Bus. & Prof. Code §17500), and for violations of data

8   breach reporting requirements (Cal. Civ. Code §§1798.80 & 1798.82).  Order at 10:7-11:3.  The Court

9   also held that the ACC stated a claim under the New York Deceptive Trade Practices Act (N.Y. Gen.

10  Bus. Law §349), as well violations of Washington Statutes §19.225.020 *et seq.* (for failure to notify of

11  security breach) and §19.86 *et seq.* (for unfair competition and/or unfair or deceptive acts in the conduct

12  of trade or commerce).  Order at 12:2-6, 13:7-16.  The Court treated the ACC's negligence claim as one

13  for negligent misrepresentation, and held that claim was sufficiently stated, but suggested that the

14  negligence claim may be amended to reflect the Court's treatment.  Order at 7:10-11, n.2.

15  The Court dismissed with leave to amend the ACC's Nevada Deceptive Trade Practices Act

16  claim (Nev. Rev. Stat. §598.0903 *et seq.*), clarifying that Plaintiffs must "identi[fy] which kinds of

17  violations are alleged."  Order at 11:20-24.[3]  Finally, while the Court dismissed the CACAC Stevens

18  Plaintiffs' Florida Deceptive Trade Practices Act claim (Fla. Stat. §501.201) with leave to amend (Order

19  at 11:5-8, stating "CACAC Plaintiffs must make a more definite statement as to violations of this

20  statute"), it did not specifically address the ACC's pleading of this claim.  Whether or not the Court

21  intended to dismiss this claim with leave to amend as to the ACC as well, the SACC nonetheless

22  contains amended allegations of the violation of this Florida statute to "make a more definite statement"

23  (as the Court ordered the Stevens Plaintiffs to do).  *See* SACC at ¶¶91-98.

24

25

_____

26  [3] The Court also dismissed the ACC's claims under the Virginia Consumer Protection Act with leave to amend, clarifying that Plaintiffs "must make a more definite statement as to violations of this statute."

27  Order at 13:4-5.  Nevada Plaintiffs, however, voluntarily omitted this claim from their SACC.  In addition, two claims in the ACC (for public disclosure of private facts and breach of contract) were

28  dismissed with prejudice.

1  In sum, the only causes of action that are even arguably up for review on Defendant's "second

2  time around" motion to dismiss are the SACC's claims for violations of the Nevada and Florida

3  Deceptive Trade Practices Acts.  As set forth herein, Nevada Plaintiffs properly pled these causes of

4  action in their SACC in accordance with the guidance issued by the Court in its September 9, 2013

5  Order, and Defendant has failed to challenge those claims.

6  **IV.    APPLICABLE LEGAL STANDARDS**

7  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim

8  showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . .

9  claim is and the grounds upon which it rests.'" *Waterfall Homeowners Ass'n v. Viega, Inc.*, 283 F.R.D. 571,

10  574 (D. Nev. 2012) (Jones, C.J.) (citation omitted).  A Rule 12(b)(6) motion to dismiss "tests the

11  complaint's sufficiency," *id.* (citing *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983)),

12  and "dismissal is appropriate only when the complaint does not give the defendant fair notice of a

13  legally cognizable claim and the grounds on which it rests." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

14  544, 555 (2007)).  While "the court will take all material allegations as true and construe them in the light

15  most favorable to the plaintiff," it "is not required to accept as true allegations that are merely

16  conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* (citing *NL Indus., Inc. v.*

17  *Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

18  2001)).  Plaintiffs need only plead sufficient facts to show that a violation is plausible. *See Ashcroft v.*

19  *Iqbal*, 556 U.S. 662, 677-80 (2009) (citing *Twombly*, 550 U.S. at 555).

20  **V.    ARGUMENT**

21  **A.    Defendant's Motion Is an Impermissible Motion for Reconsideration**

22  On December 14, 2012, having already lost its initial motion to dismiss that sought to compel

23  arbitration, Defendant filed its Motion to Dismiss Plaintiffs' First Amended Complaint.  Dkt. No. 62.

24  After the parties fully briefed the motion and submitted multiple notices of supplemental authority, the

25  Court denied the motion in part and granted it in part in its Order dated September 9, 2013.  Order.

26  Zappos did not timely file a motion for reconsideration of the Order.

27

28

On October 7, 2013, Plaintiffs filed a Consolidated Second Amended Complaint that reflected the guidance provided by the Court's Order. Dkt. No. 118 (the "SACC"). This operative Complaint was filed only on behalf of those Plaintiffs who had standing under the Order, and it alleged only those claims that the Order indicated were viable. In careful deference to the Order, Plaintiffs did not file claims on behalf of three plaintiffs (Josh Richards, Sylvia Saint Lawrence and Kathryn Vorhoff) who were plaintiffs in Plaintiffs' First Amended Complaint (the ACC) but who did not have standing under the Order, Dkt. No. 118.[4] Plaintiffs' deference to the Order is also reflected in their decision not to re-allege five claims previously alleged. *Id.*

Nonetheless, Zappos has again moved to dismiss – and in this motion Zappos simply renews the very same arguments that this Court has already squarely rejected. For instance, Zappos' present motion argues that Plaintiffs Hasner, Priera and Habashy's (the "Credit Monitoring Plaintiffs") purchase of credit monitoring to protect themselves after Defendant's negligent release of their personal information does not confer standing under *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013). Dkt. No. 122 at 3. But in briefing Zappos' previous motion to dismiss, the parties already submitted multiple briefs addressing Zappos' argument that *Clapper* changed the standing analysis and militates in favor of dismissal. *See, e.g.*, Dkt. No. 96, Defendant's Reply at *passim* (citing *Clapper* more than 25 times and arguing that *Clapper* requires dismissal for lack of standing); Dkt. No. 110, Plaintiffs' Reply In Support of Motion For Leave To File Supplemental Authority at 4 (demonstrating that Plaintiffs have standing under *Clapper* and citing to several authorities supporting Plaintiffs' standing). The Court reviewed these briefs, considered them, and then correctly rejected Zappos' strained interpretation of *Clapper*. *See* Order at 5. The Court's Order unambiguously held that the Credit Monitoring Plaintiffs have standing:

> As a general matter, the Court finds that Plaintiffs have standing.
> Plaintiffs have sufficiently alleged that they have had to pay money to

---

[4] Plaintiffs, of course, contend that all of the original plaintiffs and claims should have survived. Plaintiffs respectfully reserve the right to appeal the Court's Order when the time to appeal is ripe.

1
2

monitor their credit scores and secure their financial information due to the increased risk of criminal fraud against them occasioned by Defendant's negligent loss of their personal information.

3   *Id.* at 5:3-6. *See also Metoyer v. Zappos Development, Inc. et al.*, No. 12-655516-C (Nev. Dist. Ct.) (in a parallel

4   state court proceeding, holding post-*Clapper* that victims of the Breach have standing against Zappos)

5   (Godino Dec., Ex. B).

6

7          In attempting to relitigate issues that this Court has already decided, Zappos is essentially making

8   a motion for reconsideration.  "To promote the interests of finality and conservation of judicial

9   resources, reconsideration is to be afforded only in extraordinary circumstances." *In re Maui Indus. Loan*

10  *& Fin. Co.*, 483 B.R. 346, 350 (Bankr. D. Haw. 2012).  Indeed, the Ninth Circuit has repeatedly held that

11  "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the

12  district court is presented with newly discovered evidence, committed clear error, or if there is an

13  intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571

14  F.3d 873, 880 (9th Cir. 2009); *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (same).[5]

15

16         Unfortunately, Zappos presents no new evidence or law.  Moreover, this Court's Order is plainly

17  correct (with regard to the issues that Zappos wishes to be reconsidered) and is far from the "clear

18  error" necessary to justify reconsideration.  Thus, Defendant's latest motion to dismiss amounts to an

19  inappropriate attempt at reconsideration, is a waste of judicial resources, and should be swiftly rejected.

20  *See Mkhitaryan v. U.S. Bank, N.A.*, 2:11-cv-01055-JCM-CWH, 2013 WL 3943552, at *1 (D. Nev. July 30,

21  2013) (motion for reconsideration filed 48 days after the original opinion was untimely); *Knapp v. Miller*,

22  873 F. Supp. 375, 384 (D. Nev. 1994) (refusing to consider an untimely motion for reconsideration); *see*

23  *also, e.g.*, *U.S. v. Ogilvie*, No. 3:12-cr-00121-MMD-WGC, 2013 WL 1737243, at *4 (D. Nev. April 22,

24  2013) (denying a renewed motion to dismiss because it "simply rehashes many of the same arguments

25

26

27  ---
[5] *Marlyn Nutraceuticals* and *Orange St. Partners* addressed Rule 59 motions for reconsideration of judgment, but the Ninth Circuit's holding is applicable to motions for reconsideration governed by other federal rules.  *See Knapp v. Miller*, 873 F. Supp. 375, 384 (D. Nev. 1994).

28

- 8 -

presented…[and] it is duplicative of [defendant's] previous filings…"); *Hussein v. Univ. & Cmty. Coll. Sys. of Nevada*, 3:04-CV-0455 JCM (RAM), 2008 WL 746921, at *2 (D. Nev. Mar. 18, 2008) (the "current motion to dismiss . . .  merely rehashes his earlier arguments and provides no reason for the court to depart from its previous conclusion."); *Johnson v. Florida Dep't of Corr.*, 3:04-CV-522-J-25HTS, 2007 WL 4404209, at *2 (M.D. Fla. Feb. 22, 2007) (striking a duplicative motion to dismiss); *Qestec, Inc. v. Krummenacker*, 367 F. Supp. 2d 89, 94 n.1 (D. Mass. 2005) (declining to consider a duplicative motion to dismiss).

### B.      As The Court Previously Held, Plaintiffs Have Adequately Alleged Standing

As set forth above, the Court already has clearly held that standing is adequately alleged in this case:

> As a general matter, the Court finds that Plaintiffs have standing.  Plaintiffs have sufficiently alleged that they have had to pay money to monitor their credit scores and secure their financial information due to the increased risk of criminal fraud against them occasioned by Defendant's negligent loss of their personal information.

Order at 5:3-6.

Thus, Defendant's claim in its Motion that the Court "dismissed most of the claims asserted in Plaintiffs' First Amended Complaints and required Plaintiffs to allege actual harm, such as the purchase of credit monitoring services, to establish standing" (Motion at 2:26-28) is simply wrong.  Moreover, Defendant ignores the fact that Nevada Plaintiffs in their SACC again allege, and again consistent with the Court's Order on standing, such actionable injury here:

> As a result of Zappos actions, Plaintiffs were forced to take remedial steps to protect themselves from future loss. Indeed, all of the Class Members are currently at a very high risk of direct theft and prophylactic protective measures, like the purchase of credit monitoring, are reasonable and necessary to prevent and mitigate future loss.

SACC ¶6; ACC ¶7 (same).

Thus, the Credit Monitoring Plaintiffs "purchased a credit and personal identity monitoring service to alert [the individual] to potential misappropriation of [his/her] identity and to combat risk of further identity theft, and thus [he/she] suffered economic loss that is at minimum equal to the cost of the monitoring service."  SACC at ¶11 (Plaintiff Hasner), ¶12 (Plaintiff Preira), ¶15 (Plaintiff Habashy). The SACC further alleges that the Credit Monitoring Plaintiffs reasonably purchased such services in

- 9 -

1   response to the data breach, as the breach subjected them to "imminent, immediate and continuing risk

2   of further identity theft-related harm." *Id.* at ¶¶11-16; *see also id.* at ¶43 ("Plaintiffs and Class Members

3   have suffered, and will continue to suffer, damages including, without limitation,…expenses for credit

4   monitoring and identity theft insurance, out-of-pocket expenses….").

5         The Court also indicated that standing may be conferred in this case by state statute.  Order at

6   5:13-14.  The SACC's "California Plaintiffs" (Plaintiffs Ree, Simon and Nobles) have such standing here

7   by virtue of the California Data Breach Notice Act (Cal. Civil Code §§1798.80 *et seq.*) and California's

8   consumer protection laws (Bus. & Prof. Code §§17200 and 17500).  *See* Ex. A (attaching Order denying

9   demurrer; court held plaintiff adequately alleged standing for purposes of California consumer

10   protection statutes, including California Bus. & Prof. Code §17200, where violations of §1798.82 were

11   alleged, even though the plaintiffs' unjust enrichment claim was dismissed because the plaintiffs failed to

12   plead the loss of a sum certain).[6]

13         In sum, the SACC again sufficiently alleges standing consistent with the Court's Order.

14       **C.**    ***Clapper v. Amnesty Int'l USA* Does Not Provide Grounds for Dismissal**

15         Defendant again cites *Clapper v. Amnesty Int'l USA* in support of its position that a "voluntary

16   purchase, post-incident, of credit monitoring services" does not constitute economic injury sufficient to

17   confer Article III standing.  Motion at 3:3-14, 11:15-22, 13:1-15:2.  Not only does this argument directly

18   contradict the Court's explicit holding (post-*Clapper*) as to what is required to plead standing in this case

19   (*i.e.*, the purchase of identity protection services or credit monitoring services, Order at 5:3-6, 5:14-16), it

20   fatally assumes that the purchase of credit monitoring services in response to the data breach was, in

21   fact, truly "voluntary" in the face of a merely "hypothetical" harm.

22         Even Defendant concedes in its Motion (at 12:1-5) that it already briefed *Clapper* "at length" in

23   connection with its initial motion to dismiss (*see, e.g.,* Dkt. Nos. 96 & 104-1).  *Clapper*'s holdings certainly

24   were before the Court at the time of the September 9 Order on Defendant's initial motion to dismiss.

25   

26   [6] The Court previously ruled that plaintiffs adequately alleged violations of California law, including
   unfair competition (Bus & Prof. Code §17200), misleading advertising (Bus & Prof. Code §17500) and

27   the Data Breach Notice Statute (Cal. Civil Code §1798.80 et seq.).  Defendant's Motion does not
   challenge the adequacy of these causes of action as alleged in the SACC (nor could it properly do so in

28   light of the Court's prior Order).  As such, the elements of these claims are not briefed herein.

1    That the Court did not explicitly reject Defendant's mistaken reliance on *Clapper* by explaining to

2    Defendant in the Order why Defendant's reading of *Clapper* was wrong does not mean that the Court, in

3    error, failed or refused to consider the case, as Defendant suggests.  *See* Motion at 3:7-8 (complaining

4    that *Clapper* was "not addressed" in the Court's Order).

5          Moreover, contrary to Zappos' (repeated) view, *Clapper* does nothing to change the law on

6    Article III standing.  *See Libertarian Party of Los Angeles Cty. v. Bowen*, 709 F.3d 867, 870 n.3 (9th Cir. 2013)

7    (explaining that *Clapper* "does not change our analysis" regarding standing).  If anything, *Clapper* merely

8    confirms that the SACC sufficiently alleges Article III standing (again) here.

9          While the Court is undoubtedly familiar with the holding of *Clapper* at this point, Plaintiffs will

10   provide a brief overview.  The plaintiffs in *Clapper* challenged the constitutionality of the Foreign

11   Intelligence Surveillance Act of 1978 ("FISA"), and the Foreign Intelligence Surveillance Courts

12   ("FISC"), alleging that "there is an objectively reasonable likelihood that their communications will be

13   acquired under [FISA]."  133 S. Ct. at 1146.  Based on this alleged (and subjective) likelihood, the

14   plaintiffs claimed to have incurred costs to avoid the surveillance and protect their privacy.  *Id.*  These

15   costs, they alleged, constituted an actual injury which would confer Article III standing.  *Id.*  The Court

16   disagreed, concluding that the alleged feared harm – whether the Government actually would acquire the

17   plaintiffs' communications under FISA – was itself so speculative such that the expenses incurred to

18   avoid the harm were not reasonable.  *Id.* at 1148-50 ("[plaintiffs'] speculative chain of possibilities does

19   not establish that injury based on *potential* future surveillance is certainly impending….").  *Id.* at 1150

20   (emphasis added).

21         In so holding, the Court recounted its previous holdings that have "found standing based on a

22   'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to

23   mitigate or avoid that harm."  *Id.* at n.5 (collecting cases).  In sum, the Supreme Court merely clarified

24   that, to adequately allege an injury in fact, the "'threatened injury must be certainly impending...' and

25   '[a]llegations of *possible* future injury' are not sufficient.'"  *Id.* at 1147 (alterations in original).  The

26   Supreme Court further clarified that this standard does not require "literal certainty."  *Id.* at 1160.

27   Rather, a "certainly impending" injury is one which does not rely "on a highly attenuated chain of

28   possibilities."  *Id.* at 1148.  Thus, the Supreme Court in *Clapper* did not change the standard required to

1    allege Article III standing; rather, it merely held that the plaintiffs in *Clapper* failed to show that the

2    surveillance program (which only *potentially* applied to them) posed a sufficiently dangerous threat of

3    injury under *either* the "substantial risk" or "certainly impending" standard as to justify the costs they

4    incurred to avoid it.  *Id.* at 1150, n.5.

5          The Court here, on the other hand, and on the distinguishable facts of this case, reasonably and

6    rightfully determined otherwise.  For starters, unlike the speculative *potential* surveillance in *Clapper*, the

7    data breach here *actually happened.*  There is no *speculation* that Plaintiffs' personal information (including

8    names, email addresses, passwords, billing and shipping addresses, phone numbers, and last four digits

9    of credit cards) that had been collected and stored by Defendant was compromised.  Defendant admits

10   this.  Rather, Defendant is suggesting that the danger of identity theft, itself, was too "speculative" or

11   remote of a possibility to justify the purchase of credit protection services in response to the data breach

12   such that Plaintiffs do not have standing under *Clapper* in this case.  In so arguing, Defendant is not only

13   misreading *Clapper*, it is distorting reality.

14         Far from a "speculative" or "highly attenuated" threat, identity theft costs Americans

15   approximately $54 billion per year, and individual victims spend more than 100 hours dealing with the

16   crime, with a typical personal out-of-pocket loss of over $500.  SACC ¶18.  The SACC provides further

17   detail of the seriousness and pervasiveness of identity theft.  *Id.* at ¶¶19-21.  Far from "a highly

18   attenuated chain of possibilities," the SACC details precisely why such data breaches pose such a real

19   threat both generally, and on the specific facts of this case, including that Zappos failed to take basic

20   security precautions to prevent the breach and was ill-prepared to respond to it.  *Id.* at ¶¶1, 3-5, 18-26,

21   29-47.  Thus, the SACC adequately alleges that Plaintiffs were placed in an "imminent, immediate and

22   continuing risk" of identity theft-related harm (*i.e.*, a "certainly impending injury") such that their

23   attempt to mitigate the harm through the purchase of credit monitoring services was reasonable.  *Id.* at

24   ¶¶11-16; 133 S. Ct. at 1146, n.5.

25         To this end, Defendant's characterization of the post-incident purchase of credit protection and

26   monitoring services as "voluntary" is not a fair depiction of events.   First, it may be inferred from the

27   Court's post-*Clapper* Order that the Court deemed Plaintiffs' purchase of such services in response to

28   the data breach to mitigate the risk of identity theft in this case to be reasonable and necessary.

1    Moreover, Defendant's argument that "no one suffered any out-of-pocket loss in the form of fraud,

2    identity theft or unauthorized purchases as a result of the incident" (Motion at 4:10-12) not only

3    prematurely assumes facts that have not yet been fully developed in this case, it is counterintuitive and

4    completely misses the mark on what is required to confer Article III standing.  Plaintiffs in fact suffered

5    out-of-pocket losses through the purchase of identity theft protection precisely to avoid later incurring

6    potentially more substantial out-of-pocket losses in the form of fraud, identity theft or unauthorized

7    purchases.  (As set forth above, and as this Court previously -- and rightfully -- held, Plaintiffs' purchase

8    of such fraud prevention services in the face of the substantial risk of identity theft confers standing in

9    this case.)

10           Indeed, if it does ultimately prove to be true that Plaintiffs and putative class members were

11   fortunate enough to avoid costly identity theft or fraud resulting from the data breach (as Defendant

12   claims), such avoidance would likely be due to the individuals' purchase of credit protection and

13   monitoring services in order to thwart such theft *in the first place*.  It is ironic that Defendant claims "no

14   harm, no foul" based on the (unsupported) presumption that Plaintiffs and class members have not

15   suffered actual fraud or identity theft; indeed, to the extent that such fraud *did result* from the breach, the

16   potential economic liability Defendant faces here would be exponentially higher.  Defendant should be

17   thankful to the extent that plaintiffs and other class members made reasonable attempts to mitigate their

18   losses (and Defendant's potential liability) by purchasing credit protection services.

19           Consider the broader implications of the result urged by Defendant: consumers exposed to the

20   substantial and imminent risk of identity theft as a result of a data breach by a corporation that has

21   collected and stored their personal information would be without recourse or protection (and the

22   corporation would be utterly without liability) unless and until consumers are struck by actual fraud or

23   identity theft as a result of the breach.  Defendant's urged result would only frustrate the purpose of

24   Data Breach Notice Statutes such as California's, which is intended to inform consumers of potential

25   breaches so that consumers may take mitigating steps in order to "prevent or limit financial losses and

26   theft of personal data."  *See* Defendant's RJN, Ex. A, Dkt. No. 123-1, at 17.  This is because

27   Defendant's desired scheme shifts the entire burden for any such reasonable mitigation efforts to the

28   one party with the least amount of both fault and power: the consumer.  It is entirely inequitable to

- 13 -

1    demand that consumers, alone, bear the costs associated with mitigating the risks resulting from a

2    corporation's data breach, especially where, as here, it was plainly the corporation's failure to take

3    appropriate security precautions that enabled the breach in the first place.

4          Despite the extensive briefing of *Clapper* that already has been done in this case, and despite the

5    Court's prior consideration and rejection of Defendant's position, Defendant again urges this Court to

6    dismiss on standing grounds by adopting the view of one lone out-of-Circuit district court, which

7    applied *Clapper* broadly (and in a manner contrary to decades of Supreme Court precedent on Article III

8    standing) to deny the existence of standing in a seemingly similar data breach case.  Motion at 15:3-16:20

9    (citing *In re Barnes and Noble Pin Pad Litig.*, No. 12-cv-8617, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013)).[7]

10   Not only is *Barnes & Noble* not controlling authority and an outlier in terms of its holding on standing

11   and its substantial departure from decades of Supreme Court precedent on standing,[8] it is factually

12   inapposite.  There, the court noted that the plaintiffs failed to allege with the requisite specificity what

13   their mitigation expenses were.  *Id.* at *4.  Here, the Credit Monitoring Plaintiffs specifically alleged that

14   they purchased "a credit and personal identity monitoring service" which would "alert [plaintiffs] to

15   potential misappropriation of [their] identity."  SACC at ¶¶11, 12, 15.[9]  Moreover, the court in *Barnes &*

16   *Noble* held that the "[p]laintiffs have not pled the harm they potentially face is imminent, and, as

17   previously discussed, they cannot do so because they have not sufficiently alleged the information they

18   are trying to protect was actually stolen."  2013 WL 4759588, at *4.  Here, Nevada Plaintiffs not only

19   allege that the personal information they are trying to protect was actually stolen (SACC at ¶¶3, 6),

20   Defendant has admitted that it was stolen.  Also unlike *Barnes & Noble*, Nevada Plaintiffs here further

21   alleged that the harm they faced associated with identity theft and fraud was "imminent."  SACC at

22

23   ───────────────────────

     [7] The lead counsel preferred by the other plaintiffs group was counsel in that matter.

24

     [8] In *Clapper*, the Supreme Court noted that it has "found standing based on a 'substantial risk' that the

25   harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm."
     133 S. Ct. at 1150, n.5 (citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010); *Pennell v. City of San*

26   *Jose*, 485 U.S. 1, 8 (1988); *Blum v. Yaretsky*, 457 U.S. 991, 1000-01 (1982); *Babbitt v. Farm Workers*, 442 U.S.
     289, 298 (1979)).

27   [9] Although Zappos has provided virtually no substantive discovery, the Credit Monitoring Plaintiffs
     have already produced proof of purchase to Zappos.

28

¶¶11-16.   In sum, this Court should not dismiss this case on standing grounds based on the uncontrolling decision in *Barnes & Noble*.

Thus, the Nevada Plaintiffs have alleged standing under *Clapper* and the substantial Supreme Court precedent preceding it.

**D.    The SACC States a Claim for Violations of the New York General Business Law and Negligent Misrepresentation**

The Court previously rejected Defendant's motion to dismiss Plaintiffs' claims for negligent misrepresentation and Plaintiff Priera's claim on behalf of a New York class pursuant to New York law. *See* Order at 6:18-8:12 (declining to dismiss claims for negligent misrepresentation); 12:1-6 (denying Zappos' motion to dismiss New York claims).  Although Zappos reiterates standing arguments that this Court already rejected, it does not even attempt to argue against the merits of Plaintiffs' claims for negligent misrepresentation or violations of New York law.

**E.    The SACC States a Claim for Violations of the Nevada Deceptive Trade Practices Act.**

The Court dismissed Nevada Plaintiffs' claim for violations of the Nevada Deceptive Trade Practices Act with leave to amend, advising that the claim must identify "which kinds of violations are alleged."  Order at 11:20-24.  Nevada Plaintiffs so amended their allegation in the SACC.  *See* SACC ¶¶105-107; *compare id. with* ACC ¶¶129-135.  Defendant fails to make any challenge to these amended allegations and thus concedes that the SACC properly states a claim for violations of the Nevada Deceptive Trade Practices Act.

**F.    The SACC States a Claim for Violations of the Florida Deceptive and Unfair Trade Practices Act.**

Without making any specific challenge to the amended allegations detailing Defendant's violations of the Florida Deceptive and Unfair Trade Practices Act (or, for that matter, the restated allegations regarding violations of New York law in the SACC), Zappos renews another argument it previously made in its initial motion to dismiss (and which was rejected by the Court) -- that plaintiffs supposedly have conceded that Nevada state law precludes application of any other state law in this case.  Motion at 23:27-24:10 (copying verbatim from its previous briefing).  This argument is not based on anything found on the face of plaintiffs' complaints; rather, it is based entirely on one sentence taken

1    out of context from plaintiffs' prior briefing).

2            The Court rejected this argument the first time around in its September 9 Order, which

3    thoroughly analyzed the application of various state laws to the facts of this case and held that Nevada

4    Plaintiffs could proceed under states' laws other than Nevada.  *See, e.g.,* Defendant's Reply in support of

5    its initial motion to dismiss (Dkt. No. 96 at 16, advancing the *exact same* argument); Order at 10 (Nevada

6    Plaintiffs adequately alleged California statutory violations), 12 (New York violations adequately alleged),

7    and 13 (Washington violations adequately alleged, and Virginia violations dismissed with leave to

8    amend).[10]

9            The SACC (just like the ACC that came before it) states a claim for violations of New York law.

10   The underlying facts have not changed and (apart from renewing a previously-rejected argument with no

11   basis in the complaints) the Court's Order on this claim has not been (and cannot be) challenged.

12   Moreover, the SACC contains amended allegations of the Florida statutory claims to provide a more

13   definite statement of the specific violations.  *Compare* ACC ¶¶106-115 (grouping together state statutory

14   violations of 5 states) *with* SACC ¶¶92-98 (detailing violations of Florida statute).

15           Thus, the SACC states a claim for Defendant's violation of the Florida Deceptive and Unfair

16   Trade Practices Act.

17       **G.    The SACC Properly Alleges Violation of California Law**

18           As with its attack on Credit Monitoring Plaintiffs' standing, Zappos also impermissibly renews

19   its attacks on the sufficiency of the SACC's allegations regarding Zappos' violation of California law.

20   The Court previously held that Nevada Plaintiffs properly pled claims pursuant to the California Data

21   Breach Notice Statute because "Plaintiffs allege that Zappos failed to notify customers of the breach

22   who had cancelled their accounts and opted not to receive future emails."  Order at 11:1-3.  The SACC

23   again alleges this.  SACC at ¶87.

24           The SACC properly states a claim under the California Data Breach Notice Statute (Cal Civ.

25   Code §1798.80 *et seq.*), and under the statute as amended (effective January 1, 2014).  The SACC alleges

26   ─────────────────────

27   [10] As set forth above, Nevada Plaintiffs opted not to move forward with their claims under the
     Washington and Virginia statutes out of deference to the Court's September 9, 2013 Order and its
28   holding with respect to standing.

1  that putative class members' "names, account numbers, passwords, email addresses, billing and shipping

2  addresses, phone numbers and the last four digits of the credit cards" were compromised.  This

3  constitutes "personal information" under Cal. Civil Code §1798.82 (e), because names and partial credit

4  card numbers were released that may permit access to an individual's financial account, as well as under

5  the amended Cal. Civil Code §1798.82(g)(2), which includes: "A user name or email address, in

6  combination with a password or security question and answer that would permit access to an online

7  account."

8       Indeed, neither the original nor the amended statute requires that a plaintiff plead or prove *actual*

9  fraudulent or unauthorized access to an account; rather, the only requirement to allege a violation is that

10  the type of information compromised be such that it *may* permit unauthorized or fraudulent access.  *See*

11  Cal. Civil Code §1798.82(e)(3), and as amended at §1798.82(g)(2).  The SACC further alleges that the

12  very day following the breach, putative class members reported fraudulent activity in their financial

13  accounts (indeed, in the very credit cards that they had maintained on file at Zappos), and two named

14  plaintiffs here (Plaintiffs Hasner and Nobles) reported fraudulent access in their AOL accounts.  SACC

15  ¶5.  Thus, the SACC alleges the requisite potential for fraudulent access to either financial or other

16  online accounts as a result of the data breach.  Indeed, the SACC (again) properly alleges a violation of

17  California law, including the California Data Breach Notice Statute.  Under California law, violations of

18  data breach statutes create standing.  *See Saint Joseph Health System Medical Info. Cases*, JCCP No. 4716,

19  (Cal. Sup. Ct. Apr. 12, 2013) (denying a demurrer as to plaintiffs statutory claims in a data breach where

20  the defendant alleged there was no injury) (Godino Dec., Ex. C).

21       Simply put, the Court has already rejected Zappos' motion to dismiss these claims and Zappos'

22  attempt to rehash these issues are without merit.  Order at 9:5-10:8.

23  **VI.     CONCLUSION**

24       For the foregoing reasons, Plaintiffs respectfully request that this Court again deny Defendant's

25  Motion to Dismiss.

26  Dated: December 18, 2013                    By: */s/ Marc L. Godino*

27                                               Michael Goldberg (*pro hac vice*)
                                                 Marc L. Godino (*pro hac vice*)
28                                               **GLANCY BINKOW & GOLDBERG LLP**

- 17 -

1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
info@glancylaw.com

David C. O'Mara
**The O'Mara Law Firm, P.C.**
311 E. Liberty Street
Reno, NV 89501
Telephone: (775) 323-1321
Facsimile: (775) 323-4082
david@omaralaw.net

*Proposed Interim Liaison Counsel For Plaintiffs And The Putative Class*

Peter J. Mougey (*pro hac vice*)
James L. Kauffman (*pro hac vice*)
**LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR, P.A.**
316 South Baylen Street, Suite 600
Pensacola, Florida  32502-5996
Telephone:  (850) 435-7068
Facsimile:   (850) 436-6068
pmougey@levinlaw.com
jkauffman@levinlaw.com

Jeremiah Frei-Pearson (*pro hac vice*)
D. Greg Blankinship (*pro hac vice*)
**MEISELMAN PACKMAN NEALON SCIALABBA & BAKER, P.C.**
1311 Mamaroneck Avenue
White Plains, New York 10605
Tel: (914) 517-5000
Fax: (914) 517-5055
jcarton@mdpcelaw.com
gblankinship@mdpcelaw.com
jfrei-pearson@mdpcelaw.com

*Proposed Interim Lead Counsel For Plaintiffs And The Putative Class*

Brent Carson
**WINNER & CARSON**
510 S. Eighth Street
Las Vegas, NV 89101
Tel: (702) 471-1111
Fax: (702) 471-0110

1    bac@winnercarson.com

2    J. Andrew Meyer
     **Morgan & Morgan, P.A.**
3    One Tampa City Center, 7th Floor
     Tampa, Florida  33602
4    Telephone:  (813) 223-0955
     Facsimile:   (850) 223-5402
5    dcharlip@charliplawgroup.com

6

7    Reginald V. Terrell
     **The Terrell Law Group**
8    PO Box 13315, PMB# 148, CA 94661
     Oakland, CA 94661
9    reggie2@aol.com

10   David H. Charlip
     **Charlip Law Group, LLC**
11   17501 Biscayne Blvd., Suite 510
     Aventura, Florida  33160
12   Telephone:  (305) 354-9313
     Facsimile:   (305) 354-9314
13   dcharlip@charliplawgroup.com

14
     *Counsel for the Nevada Plaintiffs*
15   *and the Putative Class*

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2
3
4

      This is to certify that on December 18, 2013, I caused to be electronically filed Nevada Plaintiffs' Opposition to Defendant Zappos.com Inc.'s Motion to Dismiss with the Clerk of Court using ECF.  Accordingly, I also certify that the foregoing is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

5

6

                                */s/ Marc L. Godino*

7

                                  Marc L. Godino

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28