# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

In re ZAPPOS.COM, INC., CUSTOMER DATA SECURITY BREACH LITIGATION

3:12-cv-00325-RCJ-VPC

MDL No. 2357

**ORDER**

This multidistrict litigation case arises out of a security breach of Zappos.com's customer data. Pending before the Court is a Motion to Dismiss (ECF No. 254), filed by Amazon.com, Inc. doing business as Zappos.com ("Zappos"). Also pending are Zappos's Motion to Strike (ECF No. 255), three Motions to Seal (ECF Nos. 244, 248, 266), and a Motion for Leave to File Excess Pages (ECF No. 275).

## I.    FACTS AND PROCEDURAL HISTORY

On January 15, 2012, a hacker or group of hackers targeted Zappos's servers located in Kentucky and Nevada. The servers contained the personal identifying information ("PII") of approximately 24 million Zappos's customers. On January 16, 2012, Zappos sent an email to its customers notifying them that its servers had been breached and that data had been stolen, including customers' names, account numbers, passwords, email addresses, billing and shipping addresses, phone numbers, and the last four digits of their credit cards used to make purchases. Shortly thereafter, a number of lawsuits were filed against Zappos seeking damages.

1    On June 14, 2012, the U.S. Judicial Panel on Multidistrict Litigation ("JPML") granted

2 Zappos's motion to create the present case pursuant to 28 U.S.C. § 1407, transferring six

3 extra-district actions to this District, consolidating them with three actions from this District, and

4 assigning the consolidated case to this Court. (Transfer Order, ECF No. 1). Zappos moved to

5 compel arbitration and stay the case. While that motion was pending, the JPML transferred an

6 additional action to be consolidated with the instant case. (Conditional Transfer Order, ECF No.

7 5). The Court denied the motion to compel arbitration because the arbitration contract was

8 "browsewrap" not requiring any objective manifestation of assent (as opposed to a "clickwrap"

9 agreement), and there was no evidence that Plaintiffs had knowledge of the offer such that assent

10 could be implied merely by use of the website. (*See* Order, 7–10, ECF No. 21).

11    Plaintiffs then amended their pleadings into two separate consolidated class action

12 complaints, and Zappos filed a motion to dismiss the amended complaints for lack of standing

13 and for failure to state a claim. (ECF No. 62). On September 9, 2013, the Court granted in part

14 and denied in part Zappos's motion. (ECF No. 114). Thereafter, Plaintiffs Preira, Ree, Simon,

15 Hasner, Habashy, and Nobles ("the Preira Plaintiffs") filed their Second Amended Consolidated

16 Complaint (the "Preira SAC"). (ECF No. 118). And Plaintiffs Stevens, Penson, Elliot, Brown,

17 Seal, Relethford, and Braxton (the "Stevens Plaintiffs") filed their Second Amended

18 Consolidated Class Action Complaint (the "Stevens SAC"). (ECF No. 119).

19    On November 4, 2013, Zappos moved to dismiss the Preira SAC and the Stevens SAC.

20 (ECF No. 122). While that motion was pending, the parties engaged in mediation in an attempt

21 to reach a settlement. The parties stipulated to stay the proceedings various times, each time

22 representing to the Court that settlement negotiations were progressing. (*See* ECF Nos. 192, 196,

23 201). Despite the progress made during mediation as to class-wide relief, a final agreement could

24

not be reached between the parties due to a disagreement over attorneys' fees. However, on December 4, 2014, Plaintiffs filed a motion to enforce a supposed settlement, which the Court denied. (ECF No. 227). Zappos then renewed its previous dismissal arguments. The Court granted the motion to dismiss, holding that Plaintiffs have no standing because, among other reasons, they failed to allege a threat of imminent future harm or instances of actual identity theft or fraud. (ECF No. 235). The Court dismissed the complaints without prejudice, granting Plaintiffs leave to amend their complaints to allege instances of actual identity theft or fraud.

Following the Court's order, the Preira Plaintiffs and the Stevens Plaintiffs ("Prior Plaintiffs") filed a consolidated Third Amended Complaint ("TAC"). (ECF Nos. 245, 246). In the TAC, two new Plaintiffs—Kristin O'Brien and Terri Wadsworth ("New Plaintiffs")—were added to the case. Once again, Zappos moves the Court to dismiss the case or, alternatively, to strike the class allegations in the TAC.

## II.  LEGAL STANDARDS

"Lack of standing is a defect in subject-matter jurisdiction and may properly be challenged under Rule 12(b)(1)." *Wright v. Incline Vill. Gen. Imp. Dist.*, 597 F. Supp. 2d 1191, 1199 (D. Nev. 2009) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). Zappos argues that the TAC fails to establish Plaintiffs' standing to sue. This is considered a "facial" challenge to subject-matter jurisdiction. *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). If the movant's challenge is a facial one, then the "court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff." *Nevada ex rel. Colo. River Comm'n of Nev. v.*

3

*Pioneer Cos.*, 245 F. Supp. 2d 1120, 1124 (D. Nev. 2003) (citing *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989)).

"Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). When a party's allegations of injury rest on future harm, standing arises only if that harm is "*certainly* impending," *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (internal quotation marks and citation omitted), "or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014) (citation omitted). Allegations "of *possible* future injury are not sufficient." *Clapper*, 133 S. Ct. at 1147 (quotation marks and citation omitted). The alleged injury must be "'fairly traceable to the challenged action of the defendant,' rather than to 'the independent actions of some third party not before the court.'" *Ass'n of Pub. Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939, 953 (9th Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A plaintiff does not need to show that a defendant's actions are the "proximate cause" of the plaintiff's injury, but a plaintiff "must establish a 'line of causation' between defendants' action and their alleged harm that is more than 'attenuated.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (quoting *Allen v. Wright*, 468 U.S. 737, 757 (1984)). The links of a causal chain must be plausible and not hypothetical or tenuous. *Id.* In addition, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (quotations omitted).

The party invoking federal jurisdiction has the burden of establishing actual or imminent injury. *Id.* at 561. In a class action, the named plaintiffs attempting to represent the class "must

4

allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

## III.   DISCUSSION

### A.   Article III Standing

Zappos moves the Court to dismiss the TAC for lack of standing (ECF No. 254), whereas Prior Plaintiffs attempt to establish standing to revive their claims, and New Plaintiffs attempt to establish standing for the first time.

#### 1.   Prior Plaintiffs

In a previous order, the Court rejected in detail Prior Plaintiffs' three primary arguments for standing. First, the Court rejected the argument that standing exists because the data breach devalued Prior Plaintiffs' PII. The Court explained:

> Even assuming that Plaintiffs' data has value on the black market, Plaintiffs do not allege any facts explaining how their personal information became less valuable as a result of the breach or that they attempted to sell their information and were rebuffed because of a lower price-point attributable to the security breach.

(Order, 6, ECF No. 235).

Second, the Court held that an increased threat of identity theft and fraud stemming from Zappos's security breach is insufficient to constitute an injury-in-fact. It found that Prior Plaintiffs' alleged damages rely almost entirely on conjecture and that not one of Prior Plaintiffs "alleges to have detected any irregularity whatsoever in regards to unauthorized purchases or

other manifestations that their personal information has been misused." (*Id.* at 12). The Court added: "three-and-a-half years after Zappos's security breach Plaintiffs have not sought leave to amend their Complaints to include any facts relating to instances of actual identity theft or financial fraud." (*Id.* at 16).

Third, the Court found that incurring costs to mitigate a threat cannot serve as the basis for this action. Although the Court found that Prior Plaintiffs lacked standing, it granted leave to amend the complaints for a third time "to allege instances of actual identity theft or fraud." (Order, 20).

In the TAC, Prior Plaintiffs still allege no instances of actual identity theft or fraud. Plaintiffs Hasner and Nobles re-allege that their email accounts were "accessed by hackers and used to send unwanted advertisements to people in [their] address book[s]." (TAC ¶¶ 34, 40). The Court has already rejected these allegations as insufficient to establish standing.[1] The only attempt Prior Plaintiffs make to revive their claims is to re-package their allegations that the data breach resulted in a devaluation of their personal information. They allege that when "[f]aced with the choice of having [their] PII wrongfully released . . . and otherwise used without [their] authorization," they would choose to sell their PII to receive compensation for it. (*Id.* ¶ 16). This allegation still does not allege any actual, concrete injury—it is merely conjectural. Prior Plaintiffs do not allege facts to show the value of their PII decreased following the data breach. For instance, they do not allege that their PII has been disseminated over the Internet or that any actual damage has occurred because of the breach. As the Court stated in its prior order, they do not allege "that they attempted to sell their information and were rebuffed because of a lower

---

[1] The Court noted that "[b]esides the advertisements . . . no additional misuse of the accounts or actual damages is alleged. Moreover, Hasner and Noble also took quick remedial measures by changing the passwords on their AOL accounts." (Order, 16, n.3). The Court held that "[i]n this case . . . there are no allegations of actual financial harm or that Plaintiffs' personal information has been disseminated over the Internet." (*Id.* at 16).

price-point attributable to the security breach." (Order, 6). Thus, even if Prior Plaintiffs' PII has actual market value, they have failed to allege any facts showing the data breach actually deprived them of any value attributable to this "unique and valuable property right." (TAC ¶ 15).

Once again, Prior Plaintiffs have failed to establish standing. As a result, the Court dismisses them from the case, this time with prejudice. Although "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. Pro. 15(2), Prior Plaintiffs have failed to allege instances of actual identity theft or fraud, as the Court gave them leave to do. The Court dismisses Prior Plaintiffs' claims with prejudice.

  2. New Plaintiffs

New Plaintiffs—O'Brien and Wadsworth—make the same general allegations as Prior Plaintiffs but also attempt to allege instances of actual identity theft and fraud. Zappos argues that New Plaintiffs have failed to allege any actual injury and that the injury is not fairly traceable to the Zappos data breach. O'Brien makes three specific allegations:

> [O]n January 25, 2012, O'Brien . . . received a 'welcome letter' from Sprint thanking her for opening an account with two telephone lines and purchasing multiple telephones—none of which she did. The next day, she received a similar letter from AT&T regarding the purchase of three telephones she did not purchase. O'Brien spent a considerable amount of time (approximately two hours a day for a week and a half) on the telephone with Sprint and AT&T closing these accounts and extinguishing the account balances, including multiple telephone calls with an attorney to whom Sprint and AT&T had turned over the accounts for collection.
>
> Fraudsters also opened a Radio Shack in-store credit account in her name to which they charged over $400 of merchandise.
>
> Additional fraudulent purchases were made at Radio Shack using O'Brien's compromised Chase Visa credit card tied to her Zappos.com account.

(TAC ¶ 43). Wadsworth makes two allegations:

> [T]he fraudsters used her debit card to overdraw her bank account, which the bank unilaterally closed.

7

> The fraudsters also hacked her Paypal account, generating a $1000 balance that Paypal requires Wadsworth to pay in order to continue selling on Ebay. Until the balance is paid, her selling business, and corresponding revenue stream, are shut down.

(*Id.* ¶ 48).

These allegations are sufficient to establish standing. O'Brien and Wadsworth allege several types of injury they have suffered, including use of their credit, harm to their credit, lost time spent closing fraudulent accounts, and lost funds and business due to fraudulent charges. Zappos argues that the allegations of injury are merely conclusory and self-contradictory. For example, Wadsworth alleges that "[s]he utilizes different passwords for each of her online financial, credit card, and retail accounts, changing them on a regular basis," (*id.* ¶ 47), but then she alleges that she "used the same . . . password on her Zappos.com and Ebay accounts," (*id.* ¶ 48). Although this apparent contradiction makes Wadsworth's allegations somewhat confusing, it is inconsequential because it appears that her first allegation is a general statement of her conduct, whereas the second involves the specific circumstances related to her allegations of fraud. Moreover, Wadsworth does not allege that fraudsters hacked her eBay account, just her Paypal account.

Zappos also argues that Wadsworth failed to allege "when her PayPal account was hacked or whether she used the same password on her Zappos and PayPal accounts." (Mot., 13, ECF No. 254). This lack of specificity is also inconsequential because "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (quotation omitted). Of course, at the summary judgment stage, "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'" *Id.* (citation omitted).

8

The alleged injury is fairly traceable to the Zappos data breach. New Plaintiffs allege that hackers breached servers storing the PII of Zappos customers and stole the data, which Zappos admitted in an e-mail sent to its customers. They allege that following the data breach fraudulent activity occurred as a direct result of the breach. This chain of events is certainly plausible. They also allege that they "meticulously protect [their] PII" and have "never been victimized by a data breach other than the Zappos Data Breach." (TAC ¶¶ 42, 47).

Zappos argues that the alleged fraudulent activity is not fairly traceable to the Zappos data breach because "Plaintiffs do not allege any widespread fraudulent activity affecting Zappos's 24 million customers in the days or weeks (or now years) following the incident. . . . Given the lack of any allegations of widespread payment card fraud shortly following the incident, it is entirely implausible to conclude that complete credit/debit card data was stolen." (Mot., 12). Zappos also argues that Social Security numbers are necessary to open new credit accounts, and that Plaintiffs do not allege that Social Security numbers were stolen. (*Id.* at 13).

As time passes from the Zappos data breach and few Zappos customers have made allegations of actual fraud, it is a fair argument that fraudulent activity is less likely to have arisen from the Zappos breach and more likely to have arisen from another source.[2] However, even if true, this argument does not preclude the possibility that the alleged injury is fairly traceable to the Zappos breach. First, Plaintiffs allege that "[a] person whose PII has been obtained and compromised may not see the full extent of identity theft or identity fraud for years." (TAC ¶ 77). Second, although only two Zappos customers in the case have alleged actual injury resulting from the breach, New Plaintiffs present a list of customer complaints and records alleging misconduct shortly following the breach. (*Id.* ¶ 67). The list is brief, but additional

---

[2] Data theft is fairly common. *See, e.g.*, *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 34 (D.D.C. 2014) ("roughly 3.3% of Americans will experience identity theft of some form, regardless of the source").

discovery could uncover other allegations of actual fraud. Third, even if another data breach might have exposed New Plaintiffs' PII, Zappos has the burden to show its actions were not the "but for" cause of the injury. *See Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 696 (7th Cir. 2015) ("If there are multiple companies that could have exposed the plaintiffs' private information to the hackers, then 'the common law of torts has long shifted the burden of proof to defendants to prove that their negligent actions were not the 'but for' cause of the plaintiff's injury.'" (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 263 (1989) (O'Connor, J. concurring))). Fourth, even if the hackers did not steal full debit or credit card numbers or Social Security numbers, Plaintiffs allege that fraudsters can link various sources of information on the Internet "to create a mosaic of information." (TAC ¶ 56). Thus, although the Zappos breach might not have been the original source of all the information required to commit fraud, it might have been the catalyst, or a necessary link in the chain, that made the fraud possible. Finally, Zappos argues that the injuries are not fairly traceable to the Zappos breach because New Plaintiffs fail to allege when the actual fraud occurred. New Plaintiffs include a specific date in only one of their allegations, (*see id.* ¶ 42), but they generally allege that the fraudulent activity occurred after the data breach, which is sufficient.

At this stage, it is sufficient for purposes of standing to allege that Zappos sent its customers an e-mail notifying them that their PII had been compromised in a breach of its servers and that actual fraud occurred as a direct result of the breach. Whether or not New Plaintiffs' allegations suffer from defects that prevent them from ultimately prevailing in the case, the allegations show the connection between the alleged injury and breach is more than just hypothetical or tenuous. The Court finds that New Plaintiffs have standing.

///

**B.     Claims**

1.     California Claims

The Court grants the motion to dismiss the California claims (III, IV, and V) because New Plaintiffs (hereinafter "Plaintiffs") are not residents of California. Plaintiffs can move the Court to reconsider if they believe the California claims should proceed.

2.     Breach of the Covenant of Good Faith and Fair Dealing; Breach of the Settlement Agreement

Plaintiffs were not parties to the case when Prior Plaintiffs and Defendant were discussing possible settlement. As a result, the Court dismisses the claims because Plaintiffs have no standing to make them.

3.     Negligence/Negligent Misrepresentation

Zappos moves the Court to dismiss this claim for failure to state a claim. In a prior order, the Court dismissed Plaintiffs' simple negligence claim as barred by the economic loss doctrine because Plaintiffs failed to allege personal injury or property damage. (Order, 6–7, ECF No. 144). Plaintiffs now argue that their simple negligence claim is not barred by the economic loss doctrine because Zappos's duty to safeguard and protect their PII is imposed by state law. *See Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 879 (9th Cir. 2007) (holding that the economic loss doctrine "does not bar recovery in tort where the defendant had a duty imposed by law rather than by contract and where the defendant's intentional breach of that duty caused purely monetary harm to the plaintiff"). In the TAC, however, Plaintiffs make no allegation of any statutory duty. Moreover, although Plaintiffs allege actual economic injury for purposes of standing, they still fail to allege any personal injury or property damage. The Court will not revive the simple negligence claim.

In the prior order, the Court treated the simple negligence claim as a negligent misrepresentation claim, which the economic loss doctrine does not bar. (*Id.* at 7–8). Zappos does not challenge this claim as alleged in the TAC.

4.  Breach of Contract

Zappos moves the Court to dismiss the breach of contract claim for failure to state a claim. In the Court's prior order, it dismissed this claim with the following explanation:

> The only allegations alleged to give rise to any contract are that customers agreed to pay money for goods and that statements on Zappos's website indicated that its servers were protected by a secure firewall and that customers' data was safe. The first type of contract for the sale of goods is not alleged to have been breached, and the unilateral statements of fact alleged as to the safety of customers' data do not create any contractual obligations.

(Order, 6, ECF No. 114). The TAC does not make any new allegations that cure the deficiencies in the claim. Plaintiffs allege additional facts[3] that also constitute unilateral statements and, thus, fail to show that any contractual obligation existed. Plaintiffs also make additional allegations to support their claim that a contract existed because Zappos obtained value from Plaintiffs by possessing their PII, which they received in exchange for Zappos's promises to protect their PII. (*See* TAC ¶¶ 164–165). However, because the statements regarding PII safety are only unilateral, any value deriving from Plaintiffs' PII is only an incidental benefit of the contract for the sale of goods. Finally, Plaintiffs allege that they "relied on this covenant and, in fact, would not have disclosed their PII to Zappos without assurances that their PII would be properly safeguarded." (*Id.* ¶ 168). This allegation shows that Plaintiffs relied on Zappos's unilateral statements, but it does not show that Plaintiffs provided their PII to Zappos as consideration for Zappos's

---

[3] E.g., "Zappos also made a 'Safe Shopping Guarantee,' promising that the use of credit card information on its websites is secure. . . . Zappos also placed a yellow, lock-shaped icon on its website payment page that confirmed entry of a consumer's PII as part of an online retail transaction with Zappos was 'safe and secure.'" (TAC ¶¶ 59–60).

promise to protect it. Indeed, they allege that they "entrusted their confidential personal customer account information" to Zappos "[a]s part and parcel of their purchase transactions." (*Id.* ¶ 2). In other words, Plaintiffs provided their PII to Zappos as a means for completing an online transaction for the purchase of goods—not because Zappos was offering a service to protect Plaintiffs' PII. The Court dismisses the claim.

5. Unjust Enrichment

The elements of an unjust enrichment claim, or "quasi contract," include the following: "a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Leasepartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) (quotation omitted). A claim of unjust enrichment "is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Id.* (quotation omitted). "The doctrine of unjust enrichment . . . applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another or should pay for." *Id.* (quotation omitted).

In the Court's prior order, it dismissed Plaintiffs' unjust enrichment claim because they failed to allege that they conferred any benefit upon Zappos outside of the contracts they formed to purchase goods. (Order, 8–9, ECF No. 114). Plaintiffs have not cured this defect. They allege that it would be inequitable for Zappos to retain their PII without payment in light of the data breach; however, they also allege that they "entrusted their confidential personal customer account information" to Zappos "[a]s part and parcel of their purchase transactions." (TAC ¶ 2).

1  Even if Zappos has benefitted from retaining Plaintiffs' PII, Zappos obtained it as part of the
2  parties' contract for the sale of goods. Plaintiffs cannot maintain a claim of unjust enrichment
3  based on that contract. Plaintiffs do not allege that they provided Zappos their PII for any other
4  purpose that would make it inequitable for Zappos to retain the benefit of possessing their PII
5  without payment. The Court dismisses the claim.

6  **C.     Motion to Strike**

7  Zappos moves the Court to strike the class allegations from the TAC pursuant to Federal
8  Rules of Civil Procedure 12(f)(2) and 23(d)(1)(D) (ECF No. 255). Plaintiffs argue that Zappos's
9  motion is premature because class-related discovery has not been completed.

10     1.     Legal Standards

11  Under Rule 12(f), "[t]he Court may strike from a pleading an insufficient defense or any
12  redundant, immaterial, impertinent, or scandalous matter." Rule 23(d)(1)(D) allows a court to
13  "require that the pleadings be amended to eliminate allegations about representation of absent
14  persons." Rule 23 does not prohibit a defendant from filing a motion to deny class certification
15  before a plaintiff seeks to certify a class. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935,
16  941 (9th Cir. 2009). Also, "[d]istrict courts have broad discretion to control the class certification
17  process, and '[w]hether or not discovery will be permitted . . . lies within the sound discretion of
18  the trial court.'" *Id.* at 942 (quoting *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir.
19  1975)). In most cases, a district court should "'afford the litigants an opportunity to present
20  evidence as to whether a class action was maintainable,'" *id.* (quoting *Doninger v. Pac. Nw. Bell,*
21  *Inc.*, 564 F.2d 1304, 1313 (9th Cir.1977)), because "often the pleadings alone will not resolve the
22  question of class certification and [thus] some discovery will be warranted," *id.* Class
23  certification may be denied without discovery "where plaintiffs could not make a *prima facie*

14

showing of Rule 23's prerequisites or that discovery measures were 'likely to produce persuasive information substantiating the class action allegations'"). *Id.* (citing and quoting *Doninger*, 564 F.2d at 1313).

To obtain class certification under Rule 23, Plaintiffs must show each of the following:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

*Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(a)). Plaintiffs must also satisfy the requirements of Rule 23(b)(1)–(3). *Id.*

2.   Analysis

The Court must strike the class allegations from the TAC. Plaintiffs propose the following nationwide class:

> All persons whose personally identifiable information (PII) was obtained by hackers from Zappos.com, without authorization, and compromised during the Data Breach first announced by Zappos.com on January 16, 2012. Excluded from the Nationwide Class are Defendant, any parent corporation, subsidiary corporation and/or affiliate entity of Defendant, Defendant's officers, directors, employees, agents and legal representatives, and the Court.

(TAC ¶ 90). Plaintiffs also propose a list of sub-classes of putative Plaintiffs in various states. (*Id.* ¶ 91), using language similar to the nationwide class. Although discovery is not complete and Plaintiffs have not yet moved to certify the class, the Court can strike the class allegations because it is clear from the face of the TAC that Plaintiffs cannot make a prima facie showing of Rule 23's prerequisites.

In a prior order, the Court informed Plaintiffs that it "would not certify a class as broadly defined as Plaintiffs propose specifically because a majority of the putative class

15

cannot claim any measurable damages." (Order, 19, ECF No. 235). Plaintiffs have failed to heed the Court's warning. The proposed class would include any person whose PII was compromised during the Zappos data breach, whether or not the person was the victim of actual fraud following the breach. The proposed class is far too broad, which prevents Plaintiffs from meeting the requirements of commonality and typicality.

The Court grants the motion to strike and gives Plaintiffs leave to amend to limit the proposed class to individuals who have suffered actual injury as a result of the Zappos data breach. If Plaintiffs attempt to narrow the proposed class, then the Court will entertain additional arguments for striking or certifying the class based on the revised class allegation.

### D. Choice of Law

Zappos argues that Plaintiffs' claims must be limited to those pursued under Nevada law. Plaintiffs argue that claims under the laws of other states are appropriate. Given the Court's decision to grant Zappos's motion to strike the class allegations, the Court elects to defer to a later time a decision on the choice-of-law issue because whether Plaintiffs choose to amend their complaint to seek class certification will affect the Court's analysis. In addition, much of the parties' briefing on this issue focuses on the circumstances involving Prior Plaintiffs rather than New Plaintiffs; thus, the Court would benefit from briefing that is more applicable and thorough in light of the changing circumstances of the case. The Court invites the parties to brief the issue fully when it is raised either in a motion to certify the class or another relevant motion.

### E. Miscellaneous Motions

The parties have also filed several Motions to Seal (ECF Nos. 244, 248, 266) and a Motion for Leave to File Excess Pages (ECF No. 275). The Court grants the motions.

**CONCLUSION**

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (ECF No. 254) is GRANTED in part and DENIED in part, with leave to amend as indicated, within 30 days.

IT IS FURTHER ORDERED that Defendant's Motion to Strike (ECF No. 255) is GRANTED.

IT IS FURTHER ORDERED that the Motions to Seal (ECF Nos. 244, 248, 266) are GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion for Leave to File Excess Pages (ECF No. 275) is GRANTED.

IT IS SO ORDERED.

Dated this 6th day of May, 2016.

_____
ROBERT C. JONES
United States District Judge