BARNOW AND ASSOCIATES, P.C.
BEN BARNOW
205 W. Randolph St., Suite 1630
Chicago, IL 60606
Tel: 312/621-2000
b.barnow@barnowlaw.com

THE COFFMAN LAW FIRM
RICHARD L. COFFMAN
350 Pine St., Suite 700
Beaumont, TX 77701
Tel: 409/833-7700
rcoffman@coffmanlawfirm.com

FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
JEREMIAH FREI-PEARSON
445 Hamilton Avenue, Suite 605
White Plains, NY 10601
Tel: 914/298-3281
jfreo-pearson@fbfglaw.com

GLANCY PRONGAY & MURRAY LLP
MARC L. GODINO
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel: 310/201-9150
mgodino@glancylaw.com

*Co-Lead Settlement Class Counsel*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE ZAPPOS SECURITY BREACH LITIGATION<br><br>------------------------------------------------<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | MDL No. 2357<br><br>Case No. 3:12-CV-00325-RJC-VPC |

**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES,
COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS**

1    TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 23(h),

3    plaintiffs Theresa Stevens, Dahlia Habashy (also known as Dahlia Bonzagni), Patti Hasner, Shari

4    Simon, Stephanie Preira (also known as Stephanie Huppert), Katharine Vorhoff, Denise

5    Relethford, Robert Ree, and Emily Braxton (collectively, "Plaintiffs"), move this Honorable Court

6    for entry of an Order granting Plaintiffs' requests for reimbursement of $109,553 in out-of-pocket

7    costs and payment of a service award to each Plaintiff in the amount of $2,500 (for a total of

8    $22,500). Additionally, after receiving a final report from the Parties detailing the total value of

9    Discount Codes actually redeemed, Plaintiffs also request that the Court award attorneys' fees

10   using the following formula: (total value of Discount Codes actually redeemed) * 1/3 = attorneys'

11   fees awarded (not to exceed $1,597,500 – costs awarded).

12   Dated: November 15, 2019                    Respectfully submitted,

13

14                                               BARNOW AND ASSOCIATES, P.C.
                                                 BEN BARNOW (*pro hac vice*)
15                                               ERICH P. SCHORK (*pro hac vice*)

16                                               By:_____/s Ben Barnow_____
                                                        BEN BARNOW
17

18                                               BARNOW AND ASSOCIATES, P.C.
                                                 205 West Randolph Street, Suite 1630
19                                               Chicago, Illinois 60606
                                                 Tel: 312/621-2000
20                                               312/641-5504 (fax)
                                                 b.barnow@barnowlaw.com
21                                               e.schork@barnowlaw.com

22                                               THE COFFMAN LAW FIRM
                                                 RICHARD L. COFFMAN (*pro hac vice*)
23                                               Edison Plaza
                                                 350 Pine St., Suite 700
24                                               Beaumont, TX  77701
                                                 Tel: 409/833-7700
25                                               866/835-8250 (fax)
                                                 rcoffman@coffmanlawfirm.com

26

27

28

FINKELSTEIN, BLANKINSHIP
FREI-PEARSON & GARBER, LLP
JEREMIAH FREI-PEARSON
(*pro hac vice*)
445 Hamilton Avenue, Suite 605
White Plains, NY 10601
Tel: 914/298-3281
914/824-1561 (fax)
jfreo-pearson@fbfglaw.com

GLANCY PRONGAY & MURRAY LLP
MARC L. GODINO (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel: 310/201-9150
310/432-1495 (fax)
mgodino@glancylaw.com

*Co-Lead Settlement Class Counsel*

O'MARA LAW FIRM, P.C.
DAVID C. O'MARA
311 E. Liberty Street
Reno, NV 89501
Tel: 775/323-1321
david@omaralaw.net

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD
501 W. Broadway, Ste. 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

*Other Plaintiffs' Counsel*

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ......................................................................................................1

II.   HISTORY OF THE LITIGATION ...........................................................................3

III.  THE SETTLEMENT .................................................................................................6

IV.   PLAINTIFFS' FORMULA FOR AWARDING ATTORNEYS' FEES IS
      REASONABLE AND CONSISTENT WITH NINTH CIRCUIT AUTHORITY .............7

      A.   The Fee Request Complies with CAFA Requirements
           and Ninth Circuit Authority ...........................................................................7

      B.   A Lodestar Crosscheck Supports the Requested Award ................................8

      C.   Analysis of the *Vizcaino* Factors Supports the Reasonableness
           of the Requested Award ..................................................................................9

           1.   The Results Achieved ...........................................................................9

           2.   The Risks of Litigation ......................................................................11

           3.   The Skill of Counsel ..........................................................................12

           4.   The Contingent Nature of the Fee .....................................................13

           5.   The Burdens Carried by Class Counsel .............................................14

           6.   Fee Awards in Similar Cases ..............................................................15

V.    PLAINTIFFS' COUNSEL ARE ENTITLED TO REIMBURSEMENT OF
      REASONABLE LITIGATION COSTS ..................................................................15

VI.   THE REQUESTED REPRESENTATIVE PLAINTIFF SERVICE AWARDS ARE
      REASONABLE AND APPROPRIATE ..................................................................16

VII.  CONCLUSION ......................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Barbosa v. Cargill Meat Sols. Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) ...........................................................................12

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) ................................................................................11

*Cifuentes v. CEVA Logistics U.S., Inc.*,
No. 16-CV-01957, 2017 WL 4792425 (S.D. Cal. Oct. 23, 2017) ...............................9

*Davis v. Cole Haan, Inc.*,
No. 11-CV-01826, 2015 WL 7015328, (N.D. Cal. Nov. 12, 2015) ............................7

*Dieffenbach v. Barnes & Noble, Inc.*,
887 F.3d 826 (7th Cir. 2018) ................................................................................12

*Dennis v. Kellogg Co.*,
No. 09-CV-1786, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) .............................17

*Fernandez v. Victoria Secret Stores, LLC*,
No. 06-CV-4149, 2008 WL 8150856 (C.D. Cal. July 21, 2008) ...............................8

*Galaria v. Nationwide Mut. Ins. Co.*,
No. 18-3063/18-3064, 2018 WL 3472315 (6th Cir. 2018) ....................................12

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. 08-cv-01365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)............................17

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)...........................................................................11, 14

*In re Anthem, Inc. Data Breach Litig.*,
No. 15-02617, 2018 WL 3960068 (N.D. Ca. Aug. 17, 2018) ...........................15, 16

*In re Countrywide Fin. Corp. Customer Data Security Breach Litig.*,
No. 08-CV-1998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) .............................15

*In re Department of Veterans Affairs Data Theft Litig.*,
584 F. Supp. 2d 395 (D. D.C. 2008) ......................................................................15

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
293 F.R.D. 21 (D. Me. 2013) ...............................................................................11

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
846 F.3d 625 (3d Cir. 2017)...............................................................................12

*In re HP InkJet Printer Litig.*,
716 F.3d 1173 (9th Cir. 2013) ...............................................................................7

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007).................................................................16

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................................17

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Antitrust Litig.*,
    768 F. App'x 651 (9th Cir. 2019) ...........................................................................8

*In re Nuvelo, Inc. Sec. Litig.*,
    No. 07-CV-4056, 2011 WL 2650592 (N.D. Cal. July 6, 2011)...............................14

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ....................................................................................9

*In re TJX Companies Retail Sec. Breach Litig.*,
    246 F.R.D. 389 (D. Mass. 2007).............................................................................11

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) ............................................................................17

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ...........................................................................13, 14

*Jenson v. First Tr. Corp.*,
    No. 05-CV-3124, 2008 WL 11338161 (C.D. Cal. June 9, 2008)............................11

*Kearney v. Hyundai Motor Co.*,
    No. SACV 09–1298–JST (MLGx), 2013 WL 3287996 (C.D. Cal. June 28, 2013)....................7

*Knight v. Red Door Salons, Inc.*,
    No. 08-1520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ......................................13

*Krottner v. Starbucks Corp.*,
    628 F.3d 1139 (9th Cir. 2010) ...............................................................................12

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ...............................................................................10

*Lofton v. Verizon Wireless (VAW) LLC*,
    No. 13-CV-5665, 2016 WL 7985253 (N.D. Cal. May 27, 2016)............................13

*Munoz v. UPS Ground Freight, Inc.*,
    No. 07-CV-970, 2009 WL 1626376 (N.D. Cal. June 9, 2009)..................................9

*Officers for Justice v. Civil Servs. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...................................................................................9

*Park v. Carlyle/Galaxy San Pedro, L.P.*,
    No. 09-CV-793, 2009 WL 10669742 (C.D. Cal. Oct. 8, 2009)..............................10

*Pelletz v. Weyerhaeuser Co.*,
    592 F. Supp. 2d 1322 (W.D. Wash. 2009)..............................................................17

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) ................................................................8

*Reilly v. Ceridian Corp.*,
   664 F.3d 38 (3d Cir. 2011)....................................................................11

*Rigo v. Kason Indus., Inc.*,
   No. 11-CV-00064, 2013 WL 3761400 (S.D. Cal. July 16, 2013) ...............10

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................16

*Sinanyan v. Luxury Suites Int'l, LLC*,
   No. 15-CV-00225, 2018 WL 815551 (D. Nev. Feb. 8, 2018) ....................8

*Szymborski v. Ormat Techs., Inc.*,
   No. 10-CV-132, 2012 WL 4960098 (D. Nev. Oct. 16, 2012) ....................14

*Van Vranken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ........................................................16

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ................................................ 8, 9, 11, 14

*Williams v. Costco Wholesale Corp.*,
   No. 02-cv-2003, 2010 WL 761122 (S.D. Cal. Mar. 4, 2010) ....................17

*Wilson v. Airborne, Inc.*,
   No. 07-cv-00770, 2008 WL 3854963 (C.D. Cal. Aug. 13, 2008) ...............16

<u>Statutory Authority and Federal Rules</u>

28 U.S.C. § 1712(a) ...................................................................................7

Fed. R. Civ. P. 23(h) ..................................................................................7

<u>Miscellaneous Authorities</u>

4 William B. Rubenstein, et al.,
   *Newberg on Class Actions* §11:38 (4th ed. 2008)..................................16

Lester Brickman, *Effective Hourly Rates of Contingency–Fee Lawyers:*
*Competing Data and Non–Competitive Fees*, 81 Wash. U.L.Q. 653 (Fall 2003) ...........8

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Dahlia Habashy (also known as Dahlia Bonzagni), Emily E. Braxton, Patti Hasner, Stephanie Preira (also known as Stephanie Huppert), Robert Ree, Denise Relethford, Shari Simon, Theresa D. Stevens, and Katharine Vorhoff (collectively, "Plaintiffs"), individually and on behalf of the Settlement Class,[1] by and through Co-Lead Settlement Class Counsel, respectfully submit this memorandum of points and authorities in support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs, and Class Representative Service Awards.

## I.   INTRODUCTION

After more than seven years of hard-fought litigation, Plaintiffs reached a Settlement Agreement (the "Settlement") with Zappos, Inc. ("Zappos" or "Defendant"), making available valuable relief to millions of Settlement Class Members in the form of a 10% Discount Code usable on a single order of goods purchased from Zappos.com or the Zappos.com mobile app. The Discount Codes are transferable via gift or sale to others for personal use, stackable with other discounts and sales offered by Zappos, and there is no cap on the number or value of goods in an order to which the Discount Code is applied.[2]

After receiving a final report from the Parties detailing the total value of Discount Codes redeemed following the December 31, 2019 deadline to use the codes, Plaintiffs request that the Court award attorneys' fees by multiplying the total value of Discount Codes actually redeemed by 1/3 (not to exceed $1,597,500 - costs awarded). Plaintiffs seek also reimbursement of out-of-pocket costs of $109,553 and a $2,500 service award for each Class Representative (for a total of $22,500). Amounts awarded will be paid directly by Zappos and Co-Lead Settlement Class

---

[1] The definitions contained in the Settlement Agreement are incorporated herein by reference.

[2] Although the Settlement Agreement does not require the Discount Codes to be stackable with other discounts, Zappos has advised Co-Lead Settlement Class Counsel that since the beginning of implementation of the Settlement, Zappos has voluntarily made the Discount Codes stackable with other discounts and that it will continue to do so.

Counsel will allocate attorneys' fees, costs, and service awards to the firms that worked on the litigation.

As detailed herein, the requested award of attorneys' fees is reasonable and appropriate. The fee request amounts to 1/3 of the total value of coupons actually redeemed under the Settlement, which is consistent with the Class Action Fairness Act and Ninth Circuit authority on coupon settlements. A lodestar crosscheck confirms the reasonableness of the requested award. From inception to October 31, 2019, Co-Lead Settlement Class Counsel and Other Plaintiffs' Counsels' firms collectively report having spent more than 7,100 hours advancing the litigation and a total lodestar of in excess of $3,600,000 calculated using current billing rates.[3] Assuming Plaintiffs' cost request is granted in full, approval of the requested fee award will result in, at most, a negative lodestar multiplier of .41.[4] That number will be further reduced by Co-Lead Settlement Class Counsels' post-October 31 work in support of the Settlement, including preparing for and appearing at the final approval hearing and responding to Settlement Class Member inquiries regarding the Settlement.

Plaintiffs' request for costs of $109,553 incurred to advance the matter is reasonable and consistent with what the market would award in a private setting. The requested service award of $2,500 for each Representative Plaintiff (for a total of $22,500) is also reasonable given the time and effort Plaintiffs put into the litigation and consistent with service awards approved in analogous cases.

Plaintiffs respectfully request that the Court grant this motion.

---

[3] The Declaration of Ben Barnow ("Barnow Declaration") filed herewith details the significant work performed by counsel in furtherance of the litigation and the Settlement. A summary of the time and costs as reported by counsel is attached as Exhibit 1 to the Barnow Declaration. Declarations for other Co-Lead Settlement Class Counsels' and Other Plaintiffs' Counsels' firms are attached as Exhibits B through F hereto.

[4] ($1,597,500 − 109,553) / $3,600,000 = .41.

## II.   HISTORY OF THE LITIGATION

The Settlement was reached after more than seven years of hard-fought litigation, extensive discovery, an appeal to the Ninth Circuit Court of Appeals, a petition for writ of certiorari with the Supreme Court of the United States, three mediation sessions with the Honorable Edward A. Infante (Ret.), and months of additional negotiations between counsel for the Parties.

This 10-case multidistrict litigation stems from a data breach announced by Zappos on January 16, 2012, in which one or more criminal accessed Zappos's network and the personal information of millions of its customers, including their names, email addresses, billing and shipping addresses, the last four digits of their credit card numbers, and their cryptographically scrambled passwords (the "Data Breach").[5] Plaintiffs allege that contrary to its promises and obligations to do so, Zappos failed to maintain reasonable, industry-standard security measures and such failures directly let to the Data Breach and Plaintiffs' and other Settlement Class Members' personally identifiable information ("PII") falling into the hands of criminals.

On June 13, 2012, the Judicial Panel on Multidistrict Litigation transferred each of the related actions to this Court for coordinated or consolidated pretrial proceedings under 28 U.S.C. §1407. ECF 1. The next day, Zappos moved to compel arbitration of all claims and to stay the litigation. ECF 3. After briefing and a hearing on the matter, the Court denied Zappos's motion. ECF 21.

In early November 2012, two groups of plaintiffs in the MDL, the Kentucky/California Plaintiffs and the Preira Plaintiffs, filed Consolidated Class Action Complaints. ECF 58, 59. Zappos responded by moving to dismiss both complaints. ECF 62. On September 9, 2013, the

---

[5] *Richards v. Amazon.com, Inc.*, C.A. No. 6:12-00212 (M.D. Fla.), *St. Lawrence v. Zappos.com, Inc.*, C.A. No. 0:12-60133 (S.D. Fla.), *Stevens v. Amazon, Inc.*, NO. 3:12-CV-00032 (W.D. Ky.), *Penson v. Amazon, Inc.*, NO. 3:12-CV-00036 (W.D. Ky.), *Elliot v. Amazon, Inc.*, NO. 3:12-CV-00037(W.D. Ky.), *Habashy v. Amazon.com, Inc.*, 1:12-CV-10145 (D. Mass.), *Preira v. Zappos.com, Inc.*, NO. 2:12-C-00182 (D. Nev.), *Simon v. Amazon, Inc.*, No. 2:12-CV-00232 (D. Nev.), and *Ree v. Amazon, Inc., dba Zappos.com*, No. 3:12-CV-00072 (D. Nev.). On July 16, 2012, an additional related action, *Nobles v. Zappos.com, Inc.*, initially filed in the United States District Court for the Northern District of California, was transferred into this MDL.

Court entered an order recognizing Plaintiffs' Article III standing to assert their claims and granting in part, and denying in part, Zappos's motion to dismiss for failure to state a claim. ECF 114.

On October 7, 2013, the Preira Plaintiffs and the Kentucky/California Plaintiffs filed Second Amended Consolidated Complaints. ECF 118–29. Zappos responded by moving to dismiss the complaints and to strike the plaintiffs' prayers for punitive damages and restitution. ECF 124. On June 18, 2014, the Parties stipulated to stay all proceedings pending the outcome of a July 30, 2014 mediation before the Honorable Edward A. Infante (Ret.) of JAMS. ECF 192. After that session ended, negotiations between the Parties continued for months with the assistance of Judge Infante (Ret.), including additional mediation sessions occurring on November 12, 2014, and November 21, 2014. Despite these extensive efforts, the Parties were unable to reach agreement on all terms of a settlement.

After settlement negotiations broke down, Zappos re-filed its motion to dismiss the plaintiffs' Second Amended Consolidated Complaints and its motion to strike the plaintiffs' class allegations. ECF 217, 219. On June 1, 2015, the Court held that Plaintiffs lacked Article III standing to pursue their claims and dismissed their claims with leave to amend to allege instances of actual identity theft or fraud. ECF 235.

On September 28, 2015, Plaintiffs filed their Third Amended Consolidated Class Action Complaint ("TAC"). ECF 245. The TAC alleged claims against Zappos on behalf of fourteen named plaintiffs, including two individuals alleging having suffered actual identity theft or fraud as a result of the Data Breach. ECF 245. Zappos responded by moving to dismiss the TAC and to strike Plaintiffs' class allegations. ECF 254, 255. On May 6, 2016, the Court dismissed all plaintiffs not alleging identity theft or identity fraud for lack of standing, held that the two plaintiffs alleging identity theft or fraud had standing to bring their claims, granted in part, and denied in part, Zappos's motion to dismiss such plaintiffs' claims for failure to state a claim for relief, and granted Zappos's motion to strike Plaintiffs' class allegations. ECF 280. On August 29, 2019, the

Court substantially denied Plaintiffs' motion for reconsideration of the May 6, 2016 Order. ECF 289.

On September 12, 2016, the Parties stipulated to the voluntary dismissal with prejudice of all remaining claims in the litigation, allowing Plaintiffs to appeal the Court's rulings on Article III Standing to the United States Court of Appeals for the Ninth Circuit. ECF 288. The Court granted the Parties' stipulation the next day. ECF 289.

After full briefing and oral argument, the Ninth Circuit Court of Appeals recognized Plaintiffs' Article III Standing to assert their claims against Zappos relating to the Data Breach, reversing the Court's May 6, 2016 Order. ECF 298, 301. On July 6, 2018, the Ninth Circuit Court of Appeals granted Zappos's request to stay issuance of its mandate until final disposition of its petition for writ of certiorari by the Supreme Court of the United States. ECF 308.

On August 20, 2018, Zappos filed its petition for writ of certiorari seeking review and reversal of the Ninth Circuit's decision. Plaintiffs' brief in opposition to Zappos's petition was submitted on November 8, 2018, and Zappos's reply brief was filed on November 19, 2018. On March 25, 2019, the Supreme Court denied Zappos's petition for a writ of certiorari.

Following entry of the Ninth Circuit's mandate, the Parties renewed their settlement discussions. After months of additional negotiations, the Parties executed the Settlement Agreement on September 11, 2019, and Plaintiffs moved for preliminary approval of the Settlement the next day. ECF 331, 331-1. A preliminary approval hearing was held on September 17, 2019, and the Court entered its Preliminary Approval Order on September 19, 2019. ECF 335. Since that time, Co-Lead Settlement Class Counsel have worked closely with Zappos's counsel to effectuate the Settlement and bring as much value as possible to the Settlement Class.

Discovery in this action was lengthy, complex, and at times contested. Plaintiffs served and responded to written discovery and reviewed more than 160,000 pages of documents produced by Zappos. Plaintiffs filed three motions to compel Zappos to comply with its discovery obligations, and Magistrate Judge Valerie Cooke heard argument from counsel regarding discovery disputes on three separate occasions. Pursuant to the order of Magistrate Judge Cooke,

Plaintiffs identified an e-discovery consultant who, along with certain Plaintiffs' counsel, participated in conference calls with Zappos's counsel and designated e-discovery consultant regarding the scope of ESI in the litigation. Plaintiffs' counsel also participated in many meet-and-confer conferences and exchanged numerous communications with Zappos's counsel regarding discovery related issues.

## III.   THE SETTLEMENT

Under the Settlement, Settlement Class Members were emailed a Discount Code for 10% off an online purchase of goods (exclusive of shipping costs and taxes) on Zappos.com or the Zappos.com app. SA ¶ II.A.1. The Discount Code is usable for a single order that may include multiple items or premium products, subject to no caps on the value of goods purchased or the number of items included in the concerned transaction. SA ¶ III.C.2. For price-reduced or sale goods, the 10% discount will be calculated against the lowest price (*i.e.*, the reduced or sale price) and not the original list price. SA ¶ III.C.2. Discount Codes are stackable with other discounts applied at the time of sale, such as a military or school-teacher discount. Discount Codes are also transferable via gift or sale to individuals intending to use the code for personal use. SA ¶ III.C.6.

Settlement Class Members have until 11:59 p.m. PT on December 31, 2019, to redeem the Discount Codes. SA ¶ III.C.5. If, within thirty (30) days of their expiration, a Settlement Class Member with an expired Discount Code presents reasonable proof in writing to the Settlement Administrator that they were not able to use the Discount Code because of hospitalization, serious illness, or military service, a Substitute Code will be provided to the Settlement Class Member. SA ¶ III.C.7. Substitute Codes are not transferable and will only be valid for sixty (60) days following the email transmission of the Substitute Code to the Settlement Class Member.  SA ¶ III.C.7.

Under the Settlement, Zappos is responsible for paying all costs of Notice and Settlement Administration. SA ¶ III.D. Subject to Court approval, Zappos agreed not to oppose Plaintiffs' requests for attorneys' fees and costs not to exceed $1,597,500 and payment of a service award to each Plaintiff in amount of $2,500 ($22,500 total). SA ¶ III.G. The Parties did not discuss

attorneys' fees, costs, or service awards until after the substantive elements of the Settlement were agreed upon. SA ¶ III.G. Additionally, the amounts of any awards of attorneys' fees, costs, and service awards are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. SA ¶ III.G.

## IV. PLAINTIFFS' FORMULA FOR AWARDING ATTORNEYS' FEES IS REASONABLE AND CONSISTENT WITH NINTH CIRCUIT AUTHORITY

### A. The Fee Request Complies with CAFA Requirements and Ninth Circuit Authority

Courts presiding over certified class actions "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

The Settlement qualifies as a coupon settlement specifically allowed by CAFA. *Kearney v. Hyundai Motor Co.*, No. CV 09–1298, 2013 WL 3287996, at *7 n. 5 (C.D. Cal. June 28, 2013) ("A coupon settlement is one that provides benefits to class members in the form of a discount towards the future purchase of a product or service offered by the defendant"); *see also* 28 U.S.C. § 1712(a). As a result, the Court must determine a reasonable contingency fee based on the aggregate value of Discount Codes actually redeemed by Settlement Class Members. *In re HP InkJet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013).

Settlement Class Members have until 11:59 p.m. PT on December 31st to redeem their Discount Codes. As of November 12, 2019, more than 126,000 Discount Codes have been redeemed, resulting in a redemption value of approximately $1,739,000. ECF 368 at 2.

Following that deadline and upon receipt of a final report from the Parties, Co-Lead Settlement Class Counsel respectfully submit that the Court should use the following formula to determine the amount of attorney's fees to award: aggregate value of Discount Codes redeemed * 1/3 = fee award (not to exceed $1,597,500 - costs awarded). *See, e.g., Davis v. Cole Haan, Inc.*, No. 11-CV-01826, 2015 WL 7015328, at *5–6 (N.D. Cal. Nov. 12, 2015) (finding that a reasonable contingency fee would be 33 percent in connection with approval of a coupon settlement); Order Granting Plaintiffs' Renewed Motion for Attorneys' Fees and Costs, *Knapp v. Art.com, Inc.*, No. 16-cv-00768 (N.D. Cal. Oct. 24, 2018) (finding a reasonable attorney fee to be

50% of the value of redeemed coupons), attached as Exhibit G.1;[6] *Fernandez v. Victoria Secret Stores, LLC*, No. 06-CV-4149, 2008 WL 8150856, at  *16 n.59 *C.D. Cal. July 21, 2008) ("Awarding a percentage fee of 34% is supported by the fact that typical contingency fee agreements provide that class counsel will recover 33% if the case is resolved before trial and  40% if the case is tried.") (citing Lester Brickman, *Effective Hourly Rates of Contingency–Fee Lawyers: Competing Data and Non–Competitive Fees,* 81 Wash. U.L.Q., 653, 659 n. 11 (Fall 2003)).

The requested formula is consistent with the 25% benchmark percentage in this Circuit for calculating attorneys' fees in connection with a common fund settlement. *Sinanyan v. Luxury Suites Int'l, LLC*, No. 15-CV-00225, 2018 WL 815551, at *3 (D. Nev. Feb. 8, 2018) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). In the common fund context, the benchmark percentage is applied to the total fund amount; a figure that includes the attorney fee amount to be awarded. Multiplying the value of Discount Codes actually redeemed by 1/3 is mathematically equivalent to adding the value of Discount Codes actually redeemed to the attorney fee award and then multiplying that figure by .25. By way of example, assuming the total value of Discount Codes actually redeemed is $4,500,000, multiplying that figure by 1/3 equals $1,500,000. In the common fund context, the fee would be calculated as follows: ($4,500,000 + $1,500,000) * .25 = $1,500,000. Both approaches yield the exact same result.

### B.  A Lodestar Crosscheck Supports the Requested Award

A lodestar crosscheck confirms the reasonableness of the requested award.  Attached in support of this motion are sworn declarations for Co-Lead Settlement Class Counsels' and Other Plaintiffs' Counsels' firms. In each declaration, the declarant attorney attests to the total time their firm spent litigating this matter, the hourly rates, and the titles or years of experience of the attorneys from their firm. Exhibit 1 to the Barnow Declaration summarizes the total hours and lodestar reported. *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid  Antitrust Litig.*, 768

---

[6] Group Exhibit G contains the unpublished authorities cited herein not available on Westlaw.

F. App'x 651, 654 (9th Cir. 2019) (recognizing that in conducting a lodestar crosscheck analysis, a "district court may rely on attorney fee summaries rather than actual billing records") (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306  (3d Cir. 2005) (noting  that "[t]he  lodestar cross-check calculation need entail neither mathematical precision nor bean-counting" and that "[t]he district courts may rely on summaries submitted by the attorneys and need not review actual billing records").

Co-Lead Settlement Class Counsels' firms and Other Plaintiffs' Counsels' firms report having spent in excess of 7,100 hours advancing the matter and a collective lodestar of in excess of $3,600,000 calculated at current rates. Assuming Plaintiffs' cost request is granted in full, approval of the requested award will result in, at most, a negative lodestar multiplier of .41. This multiplier will necessarily be further reduced by the post-October 31 time Co-Lead Settlement Class Counsel spend preparing for and appearing at the final fairness hearing and responding to Settlement Class Members. The fact that Plaintiffs' fee request will result in a negative lodestar multiplier further supports the reasonableness of the requested award.

### C. Analysis of the *Vizcaino* Factors Supports the Reasonableness of the Requested Award

The Ninth Circuit Court of Appeals has outlined the following factors that may be relevant in determining whether a requested fee award is reasonable: "(1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases." *Cifuentes v. CEVA Logistics U.S., Inc.*, No. 16-CV-01957, 2017 WL 4792425, at *6 (S.D. Cal. Oct. 23, 2017) (citing *Vizcaino*, 290 F.3d at 1048–50 (9th Cir. 2002)). Analysis of these factors supports the reasonableness of the requested fee award.

### 1. The Results Achieved

"Settlement is necessarily a 'compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Munoz v. UPS Ground Freight, Inc.*, No. 07-970, 2009 WL 1626376, at *4 (N.D. Cal. June 9, 2009) (quoting *Officers for Justice v. Civil Servs. Comm'n*, 688 F.2d 615, 624 (9th

Cir. 1982)). "'The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" *Park v. Carlyle/Galaxy San Pedro, L.P.*, No. 09-CV-793, 2009 WL 10669742, at *7 (C.D. Cal. Oct. 8, 2009) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

Here, the Settlement provides relief to millions of Settlement Class Members in the form of a 10% Discount Code usable on a single order of goods purchased from Zappos.com or the Zappos.com mobile app. There is no cap on the number or value of goods that may be included in the order to which the Discount Code is applied. The Discount Codes are also transferable via gift or sale to others for personal use and stackable with other discounts and sales offered by Zappos. The relief offered is that much more valuable when viewed against the difficulties Plaintiffs' Counsel confronted and overcame in this case as described herein. Currently, the average recovery for a participating Settlement Class Member is approximately $13.80, resulting in a total redemption value of approximately $1,739,000, as of November 12, 2019. Plaintiffs' Counsel expect these benefits will further increase leading up to the December 31, 2019 deadline to redeem the Discount Code.

Plaintiffs allege in the Third Amended Compliant that the value of the restriction of improper access to the disclosed data is "between $11.33 and $16.58" for each class member. ECF 245 at 86. The recovery of $13.80 per person is therefore in line with the damages Plaintiffs' asserted. Such a recovery strongly supports Plaintiffs' fee request. *Cf. Rigo v. Kason Indus., Inc.*, No. 11-CV-64, 2013 WL 3761400, at *5 (S.D. Cal. July 16, 2013) ("While settlement amounts that are close to the plaintiff's estimate of damages provide strong support for approval of the settlement, settlement offers that constitute only a fraction of the potential recovery do not preclude a court from finding that the settlement offer is fair.").

The results achieved support the reasonableness of the requested award.

### 2. The Risks of Litigation

Complex data breach MDLs are inherently high risk. Many data breach cases are defeated on motions to dismiss. *See, e.g.*, *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017) (dismissed for lack of standing); *Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011) (same). Furthermore, when Co-Lead Settlement Class Counsel initiated their respective underlying cases culminating in the present action, to the best of their knowledge, there was *no* state or federal court precedent in the country granting class certification to victims in a data breach case other than for settlement purposes. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying class certification in data breach case); *In re TJX Companies Retail Sec. Breach Litig.*, 246 F.R.D. 389, 392 (D. Mass. 2007) (same); *see also Goldberger v. Integrated Res.*, 209 F.3d 43, 55 (2d Cir. 2000) ("It is well-established that litigation risk must be measured as of when the case is filed.").

Indeed, this case was more difficult than the average data breach case, as reflected by the Court's Order initially granting Defendant's motion to dismiss. ECF 280. Nonetheless, Plaintiffs' Counsel accepted this case on a contingency basis with no guarantee they would receive any compensation for the over 7,100 hours spent litigating the action or recover any of the $109,553 in out-of-pocket costs they ultimately advanced in furtherance of the matter. To achieve the Settlement, they needed to prevail in opposing Zappos's motion to compel arbitration, survive multiple rounds of motions to dismiss, prevail on their appeal to the Ninth Circuit Court of Appeals, and convince the United States Supreme Court to deny Zappos's certiorari petition. This factor supports the reasonableness of the requested award. *See, e.g., Vizcaino*, 290 F.3d at 1048–49 (finding risk to be a relevant factor because the case was "extremely risky for class counsel," as evidenced by the fact that the plaintiffs twice lost in the district court and "twice counsel succeeded in reviving their case on appeal"); *Jenson v. First Tr. Corp.*, No. 05-CV-3124, 2008 WL 11338161, at *12 (C.D. Cal. June 9, 2008) ("Uncertainty that any recovery ultimately would be obtained is a highly relevant consideration.") (citations omitted).

### 3.  The Skill of Counsel

Co-Lead Settlement Class Counsel are experienced class action litigators and have substantial experience prosecuting and successfully resolving data breach class actions. ECF 331-2 (Barnow Decl. Exhibits A–D: Resumes of Co-Lead Settlement Class Counsel). For example, Ben Barnow was actively involved in four data breach cases in which significant appellate victories were achieved. *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010); *Galaria v. Nationwide Mut. Ins. Co.*, No. 18-3063/18-3064, 2018 WL 3472315 (6th Cir. 2018); *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826 (7th Cir. 2018); *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625 (3d Cir. 2017). Additionally, Jeremiah Frei-Pearson also served co-lead class counsel in the first data breach case where a court granted a contested motion for class certification. *See Saint Joseph Health System Medical Information Cases*, JCCP No. 4716, at 7 (Cal. Sup. Ct. Dec. 5, 2014), attached as Exhibit G.2. As their experience and past successes show, Co-Lead Settlement Class Counsel have a thorough understanding of the issues presented in complex data breach class actions, such as this MDL matter.

Litigating this matter was no easy task. Zappos retained an elite law firm to mount an aggressive defense. Class Counsel's ability to contend with an elite adversary is an indicator of Class Counsel's skill. *See, e.g.*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) ("The quality of opposing counsel is important in evaluating the quality of Class Counsel's work."). Zappos' vigorous defense included, *inter alia*, filing an MDL petition, moving to compel arbitration of Plaintiffs' claims and to stay the litigation, moving on multiple occasions to dismiss Plaintiffs' claims for lack of Article III standing and for failure to state a claim upon which relief can be granted, moving to strike Plaintiffs' prayers for punitive damages and restitution, and moving to strike Plaintiffs' class allegations. In the face of such tactics, Co-Lead Settlement Class Counsel continued to advance the litigation, defeating Zappos's attempt to force Plaintiffs into arbitration, opposing Zappos's repeated requests to dismiss the litigation, navigating a complex and contested discovery process, and prevailing on an appeal to the Ninth Circuit Court of Appeals.

After entry of the Ninth Circuit Court of Appeals' decision, Zappos retained Paul Clement, a former United States Solicitor General who has argued more than 90 cases before the Supreme Court of the United States, to prepare and file its petition for writ of certiorari. A substantial amount of skill, time, and effort went into successfully opposing Zappos's petition. The same day the Supreme Court's decision denying Zappos's petition was entered, Co-Lead Settlement Class Counsel reached out to Zappos's counsel to schedule a meet-and-confer to discuss existing discovery disputes. Co-Lead Settlement Class Counsel continued to pursue discovery until settlement discussions reached an advanced stage. Their ability to obtain the settlement despite excellent work done by Defendant's highly-resourced, elite law firm is an additional indicator of their skill and quality of work. *See, e.g.*, *Knight v. Red Door Salons, Inc.*, No. 08-CV-1520, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (where defense counsel "understood the legal uncertainties in this case[] and were in a position to mount a vigorous defense," the favorable class settlement was "some testament to Plaintiffs' counsel's skill"); *Lofton v. Verizon Wireless (VAW) LLC*, No. 13-CV-5665, 2016 WL 7985253, at *1 (N.D. Cal. May 27, 2016) (the "risks of class litigation against an able defendant well able to defend itself vigorously" support an upward adjustment in the award of fees).

The Settlement is a direct result of the skill and perseverance of Co-Lead Settlement Class Counsel. This factor reinforces the reasonableness of the requested fee award.

#### 4.  The Contingent Nature of the Fee

Plaintiffs' counsel prosecuted this MDL litigation on a contingency basis, assuming the risk of no payment for a considerable amount of work over an extended period of time. Plaintiffs' counsel and their firms spent over 7,100 hours advancing this case without any compensation, and without knowing whether their efforts would ever be rewarded. This factor strongly supports the reasonableness of the fee request. *See, e.g*, *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) ("Contingent fees that may far exceed the market  value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly

basis regardless of whether they win or lose."); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 54 (2d Cir. 2000) ("[A]ttorneys' risk is perhaps the foremost factor in determining an appropriate fee award.") (citation and quotation omitted); *Szymborski v. Ormat Techs., Inc.*, No. 10-CV-00132, 2012 WL 4960098, at *3 (D. Nev. Oct. 16, 2012) (Jones, J.) ("Plaintiffs' counsel shouldered the risk of non-payment by taking the class action suit on a contingency fee basis. 'It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.'") (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)); *In re Nuvelo, Inc. Sec. Litig.*, No. 07-CV-4056, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) ("It is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all. . . . This practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney.") (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d at 1299)).

## 5.   The Burdens Carried by Class Counsel

Co-Lead Settlement Class Counsel prosecuted this action on a contingency basis for over seven years, collectively spending more than 7,100 hours on the matter, and advancing more than $109,000 in out-of-pocket costs. These burdens, which exceeded those expended in many data breach cases, further support the reasonableness of the requested award. *See, e.g., Vizcaino*, 290 F.3d at 1050 ("[T]he court found that counsel's representation of the class—on a contingency basis—extended over eleven years, entailed hundreds of thousands of dollars of expense, and required counsel to forgo significant other work, resulting in a decline in the firm's annual income. These burdens are relevant circumstances."); *Sackin v. Transperfect Global, Inc.*, No. 17-CV-1469, ECF 74 (S.D.N.Y. Dec. 14, 2018) (approving class counsel's fee request in a data breach class action that lasted less than two years), attached as Exhibit G.3.

### 6. Fee Awards in Similar Cases

As noted above in Sections IV.A and B, the requested fee award complies with the requirements of CAFA, is justified by fee awards in similar cases, and a lodestar crosscheck confirms the reasonableness of the requested award. Courts across the country have regularly approved substantially higher fee awards in comparable data breach class actions.

For example, the court in *In re Anthem, Inc. Data Breach Litigation*, No. 15-MD-2617, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018), approved an award of over $33 million in fees and costs to class counsel after less than four years of litigation in a data breach case affecting approximately 80 million consumers. The court in *In re Countrywide Fin. Corp. Customer Data Security Breach Litigation*, No. 08-CV-1998, 2010 WL 3341200, at *8-11 (W.D. Ky. Aug. 23, 2010), approved $3.5 million in fees in a data breach class action impacting approximately 17 million consumers. The court in *In re Department of Veterans Affairs Data Theft Litigation*, 584 F. Supp. 2d 395 (D.D.C. 2008), approved a settlement with over $3.7 million in fees and costs awarded to class counsel in a data breach litigation impacting 26.5 million individuals. And in *Corona v. Sony Pictures Entertainment, Inc.*, No. 14-CV-9600, 2016 WL 5921077 (C.D. Cal. Apr. 12, 2016), the court approved an attorneys' fee award of approximately $2.3 million in a class action affecting fewer than 100,000 employees.

## V. PLAINTIFFS' COUNSEL ARE ENTITLED TO REIMBURSEMENT OF LITIGATION COSTS

Plaintiffs' Counsel request reimbursement of $109,553 in costs advanced to prosecute the litigation.

In the aggregate, Co-Lead Settlement Class Counsels' and Other Plaintiffs' Counsels' firms incurred $109,553 in costs advancing the litigation. *See* Barnow Declaration Exhibit 1. As detailed in Co-Lead Settlement Class Counsels' and Other Plaintiffs' Counsel's declarations, the costs sought are for travel costs, filing fees, service of process, photocopies, overnight delivery, mediation costs, online legal research, and conference calls. All of these costs are the types typically charged to paying clients in the marketplace and are also routinely reimbursed in class

action settlements. *See, e.g., In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (awarding expenses including the following: "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees"). That number will increase as Co-Lead Settlement Class Counsel seek final approval of the Settlement and work to implement the Settlement benefits. The requested costs of $109,553 are especially reasonable when compared to other data breach MDLs. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, No. 15-02617, 2018 WL 3960068, at *28–29 (N.D. Ca. Aug. 17, 2018) (awarding reimbursement of over $2 million in costs to plaintiffs' counsel in connection with approval of a data breach settlement).

Plaintiffs' Counsel's request for reimbursement of $109,553 in out-of-pocket costs is reasonable and appropriate.

## VI. THE REQUESTED REPRESENTATIVE PLAINTIFF SERVICE AWARDS ARE REASONABLE AND APPROPRIATE

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 William B. Rubenstein *et al.*, *Newberg on Class Actions* §11:38 (4th ed. 2008)). The Ninth Circuit recognizes that service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59.

Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of criteria including the amount of time and effort spent on the litigation, the duration of the litigation, and the degree of personal gain obtained as a result of the litigation. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); *accord Wilson v. Airborne, Inc.*, No. 07-cv-00770, 2008 WL 3854963, at *12–13 (C.D. Cal. Aug. 13, 2008).

Here, Plaintiffs respectfully request that the Court approve a modest service award of $2,500 for each Class Representative in recognition of their contributions toward the successful prosecution of this case. They all served the Class well. They reviewed relevant pleadings and regularly communicated with their counsel throughout the Litigation. They provided information for their disclosures, responded to interrogatories, gathered and produced responsive documents, and were willing to be deposed and testify at trial if needed. Zappos does not oppose the payment of these service awards.

The requested service awards fall below service awards approved in comparable cases. *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving $5,000 incentive awards); *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act Litig.*, 295 F.R.D. 438, 470-72 (C.D. Cal. 2014) (approving $5,000 incentive awards); *Dennis v. Kellogg Co.*, No. 09-CV-1786, 2013 WL 6055326, at *8 (S.D. Cal. Nov. 14, 2013) (citing cases and stating "the amount of the incentive payments requested, $5,000, is well within if not below the range awarded in similar cases"); *Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 WL 761122, at *3 (S.D. Cal. Mar. 4, 2010) (approving $5,000 service award); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-01365, 2010 WL 1687832, at *17 and n.8 (N.D. Cal. Apr. 22, 2010) (service award of $20,000 was "well justified" given plaintiffs' efforts on behalf of the class) (compiling cases); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1330 (W.D. Wash. 2009) ("When compared to service awards in other cases, the $7,500 payments requested here are justified."). The requested service awards are reasonable and should be approved.

## VII. CONCLUSION

Plaintiffs' requested attorneys' fees, costs, and Representative Plaintiff service awards are reasonable, appropriate, and should be approved. Plaintiffs, therefore, respectfully pray that this Honorable Court enter an Order granting Plaintiffs' request for reimbursement of out-of-pocket costs in the amount of $109,553, and awarding service awards to Plaintiffs in the amount of $2,500 each (for a total of $22,500). Additionally, after receiving a final report from the Parties detailing the total value of Discount Codes actually redeemed, Plaintiffs pray that the Court award attorneys'

fees using the following formula: (total value of Discount Codes actually redeemed) * 1/3 = attorneys' fees awarded (not to exceed $1,597,500 - costs awarded).

Date:   November 15, 2019

Respectfully submitted,

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW (*pro hac vice*)
ERICH P. SCHORK (*pro hac vice*)


By:_____/s Ben Barnow_____
          BEN BARNOW

BARNOW AND ASSOCIATES, P.C.
205 West Randolph Street, Suite 1630
Chicago, Illinois 60606
Tel: 312/621-2000
312/641-5504 (fax)
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

THE COFFMAN LAW FIRM
RICHARD L. COFFMAN (*pro hac vice*)
350 Pine St., Suite 700
Beaumont, TX  77701
Tel: 409/833-7700
866/835-8250 (fax)
rcoffman@coffmanlawfirm.com

FINKELSTEIN, BLANKINSHIP
FREI-PERASON & GARBER, LLP
JEREMIAH FREI-PEARSON
(*pro hac vice*)
445 Hamilton Avenue, Suite 605
White Plains, NY 10601
Tel: 914-298-3281
914/824-1561 (fax)
jfreo-pearson@fbfglaw.com

GLANCY PRONGAY & MURRAY LLP
MARC L. GODINO (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel: 310/201-9150
310/432-1495 (fax)
mgodino@glancylaw.com

*Co-Lead Settlement Class Counsel*

O'MARA LAW FIRM, P.C.
DAVID C. O'MARA
311 E. Liberty Street
Reno, NV 89501
Tel: 775/323-1321
david@omaralaw.net

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD
501 W. Broadway, Ste. 1490
San Diego, CA 92101
Tel: 619/338-1100
Fax: 619/338-1101
tblood@bholaw.com

*Other Plaintiffs' Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and that I shall cause the foregoing document to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

/s  Ben Barnow

BEN BARNOW
BARNOW AND ASSOCIATES, P.C.
205 West Randolph Street, Suite 1630
Chicago, Illinois 60606
(312) 621-2000
(312) 641-5504 (fax)
b.barnow@barnowlaw.com